# 25-73

_____

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
_____

Andrew Delaney,
*Appellant*,
v.
HC2, Inc.,
Stephanos Zannikos,
Michael John Esker Nacchio,
and
Toyota Motor North America, Inc.,
*Appellees*.

On Appeal from the United States District Court for the Southern District of New York

**APPELLANT'S BRIEF**

| For Appellant: | For HC2 Appellees: | For TMNA: |
|---|---|---|
| Andrew Delaney | Thomas Bellefemine, Esq. | Beth L. Kaufman, Esq. |
| *Appellant* | Ogletree, Deakins, Nash, | Schoeman Updike |
| Sen. Gil Puyat Avenue | Smoak & Stewart P.C. | & Kaufman LLP |
| Makati Central No. 1057 | 10 Madison Ave. Ste. 400 | 551 Fifth Ave. |
| Brgy. San Antonio | Morristown, NJ 07960 | New York, NY 10176 |
| Makati 1250 | (973) 385-1806 | (212) 661-5030 |
| Republic of the Philippines | thomas.bellefemine@ogletree.com | bkaufman@schoeman.com |
| 63-90-6049-3000 | | |
| srview1@gmail.com | | |

April 14, 2025

1

# **TABLE OF CONTENTS**

**Page**

I. STATEMENT OF JURISDICTION……………………………………..... 6

II. STATEMENT OF THE ISSUES PRESENTED…………………………. 6

III. PRELIMINARY STATEMENT…………………………………….… 8

IV. STATEMENT OF THE CASE……………………………………….… 10

    A. Statement of Relevant Facts………………………………….... 10

    B. Statement of the Procedural History of the Case………………..… 11

V. SUMMARY OF ARGUMENT………………………………………… 13

VI. ARGUMENT………………………………………………...…… 14

    A. Standard of Review……………………………………..… 14

    B. N.Y. Jud. Law § 487 Applies in Federal Court……………………… 14

    C. The Question Should Be Certified to the N.Y. Court of Appeals…… 18

    D. Appellant's N.Y. Jud. Law § 487 Was Plausible……………………. 18

    E. The Motion to Dismiss Was Not the Trial under *Palin II*…………..... 26

    F. Exhibit B Should Not Have Been Rejected……………………...... 27

    G. The Appellant's Claims Were Plausible…………………………….. 29

    H. The Claims Should Not Have Been Dismissed With Prejudice…….. 32

    I. The Appellant Was Not Served…………………………………... 32

J.      The Initial Pleading Under Rule 81 Is the Complaint……………….. 34

VII.  CONCLUSION…………………………………………………………… 35

VIII. CERTIFICATE OF COMPLIANCE WITH RULE 32(a)………………..… 36

IX.   CERTIFICATE OF SERVICE…………………………………………….. 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007)…………………………………... 28

*Amalfitano v. Rosenberg*, 533 F.3d 117 (2d Cir. 2008)…………………..….. 25

*Andrew Delaney v. HC2, Inc. et al.*, 157092/2024 (Sup. Ct. N.Y. County August 5, 2024)………………………………………………………….. 11

*Arazi v. Cohen Brothers Realty Corporation*, 1:20-cv-8837-GHW, 2022 WL 912940 (S.D.N.Y. March 28, 2022)……………………………………………..… 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………...….. 27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)………………………...…… 14, 27

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 852 F. Supp. 226 (S.D.N.Y. 1994)…………………………………………………………...…… 21

*Delaney v. HC2, Inc. et al.*, 1:24-cv-06287 (S.D.N.Y. 2024)…………………….. 11

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)……………………………… 14

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)…………………………… 7, 16

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1869)……………………………... 21

*Greene v. Paramount Pictures Corp.*, 2017 WL 4011240 (E.D.N.Y. Sept. 11, 2017)………………………………………………………………... 21

*Hansen v. Miller*, No. 20-3591 (2d Cir. 2022)……………………………….. 17

*HC2, Inc. v. Delaney*, 1:20-cv-03178 (S.D.N.Y. April 22, 2020)………………………………………………………11, 15, 18-20, 23, 25, 31

*In the Matter of Andrew John Delaney*, Case No. 2024-03336 (1st Dep't 2024)……………………………………………………………….. 33-34

*In Re Delaney*, No. 20-44372 (Bankr. ED.N.Y. 2020)…………..… 18, 23, 28, 29, 31

*MTGLQ Investors, L.P. v. Guire*, 286 F.Supp.2d 561 (D. Md. 2003)……………... 21

*O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345 (6th Cir., 2003). ……………………………………………………………………… 32

*Palin v. New York Times Co.*, No. 22-558 (2d Cir. 2024)…………....… 7, 10, 26, 35

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)……………………………………………………………….. 21

*Sanders v. Farina*, 67 F. Supp. 3d 727 (E.D. Va. 2014)………………………... 21

*Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978)............................................... 17

*Settles v. Comm 'r of Internal Revenue*, 138 T.C. 19 (U.S.T.C. 2012)……………. 21

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)….. 21

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)……………….…………… 26
*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)…………... 14
*Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120 (2nd Cir. 2019)…..... 21
*Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 15 N.E.3d 1172 (N.Y. 2014)............................................................................................ 18, 30-31
*Wks. v. Home Depot U.S.A., Inc.*, No. CV 19-6780 FMO (ASX), 2020 WL 1652539 (C.D. Cal. Jan. 21, 2020)…………………………………………..…………… 29

## Statutes

*Federal*

28 US.C. § 1291……………………………………………….…………… 6
28 U.S.C. § 1331………………………………………………………………... 6
28 U.S.C. § 1367……………………………………………………………….6
42 U.S.C. § 12101…………………………………………………..… 8, 30-31
42 U.S.C. § 2000e et seq…………………………………………………….. 8, 31
Employee Retirement Income Security Act of 1974, Pub. L. 93–406…………… 31

*State*

N.Y. Jud. Law § 487……………………………… 7, 13-15, 22, 24-26, 29, 32, 35
N.Y. Labor Law § 740…………………………………..……………… 8, 30

*Rules*

Fed. R. Civ. P. 11………………………………………………………… 15, 16
Fed. R. Civ. P. 12(a)(1)(A)……………………………………………...… 32
Fed. R. Civ. P. 12(b)(6)……………………………………………...… 6, 14
Fed. R. Civ. P. 12(d)…………………………………………………… 28
Fed. R. Civ. P. 56………………………...…………………………... 28
Fed. R. Civ. P. 81…………………………………………… 6, 10, 12-13, 34
Second Circuit Local Rule 27.2………………………………………… 7

## Other Authorities

The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters……………………………………………...…… 32

## I.  STATEMENT OF JURISDICTION

This Court has jurisdiction because the appellant brought his amended complaint pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over his state law claims.  This appeal is from a final judgment, order, or decree.  The Court has jurisdiction over the final order of the district court, dismissing the amended complaint with prejudice, pursuant to 28 US.C. § 1291.

On January 3, 2025, the district court granted a motion to dismiss the amended complaint under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), filed by the appellees.

On January 21, 2025, the appellant timely filed a notice of appeal to this Court.

## II.  STATEMENT OF THE ISSUES PRESENTED

*The September 13, 2024 Order*

On de novo review, whether the district court erred when it ordered that in a removed action under Fed. R. Civ. P. 81(b)(2)(A) the appellee Toyota Motor North America, Inc.'s ("TMNA") time to respond was 21 days from the date of its receipt of the amended complaint, not the date of the "initial pleading" as is clearly stated in the rule.

*The January 3, 2025 Order*

On de novo review, whether the district court erred when it ordered that N.Y. Jud. Law § 487 does not apply in the federal courts where there are 253 federal court cases involving N.Y. Jud. Law § 487 including in this very Court.

On de novo review, whether under the *Erie* Doctrine, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and this Court's precedents per Second Circuit Local Rule 27.2, the district court should have certified the question of the applicability of N.Y. Jud. Law § 487 in the federal courts to the New York State Court of Appeals, especially where this is a federal question case involving the district court's exercise of supplemental jurisdiction over state law claims.

On de novo review, whether the district court erroneously relied on void orders and proceedings in a case in which it lacks subject-matter jurisdiction.

On de novo review, whether the district court adopted the appellees' "prima facie case" standard in conflict with this Court's recent holding in *Palin v. New York Times Co.*, No. 22-558 (2d Cir. 2024) ("*Palin II*"), and treated the motions to dismiss like the trial where the appellant had to "prove his case".

On de novo review, whether the district court erred in rejecting the appellant's billing records evidence attached to the amended complaint and clearly highlighted as to the relevant few pages (since the appellant did not want to file part of the document) while accepting all of the appellees' extrinsic documents.

On de novo review, whether the district court erred in dismissing the appellant's plausible N.Y. Jud. Law § 487, conspiracy to violate N.Y. Jud. Law § 487, negligent infliction of emotional distress ("NIED"), breach of contract and stipulation, violation of N.Y. Labor Law § 740, violation of The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (the "ADA"), and violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") claims.

On de novo review, whether the district court erred in holding that the appellant was an attorney when the case was filed, which was not true, and that he was therefore not entitled to be treated as a pro se litigant, but then inconsistently treating him as a pro se litigant as to other rulings.

On de novo review, whether the district court should have entered a default judgment due to the appellees' failure to serve the appellant.

On abuse of discretion review, whether the district court erred in dismissing all of the appellant's claims with prejudice especially where he was a pro se litigant.

## III.    PRELIMINARY STATEMENT

The marquee issue in this appeal is whether the district court effectively overruled this Court when it held that N.Y. Jud. Law § 487 does not apply in the federal courts.  If the district court is not reversed, it will have far reaching consequences for an important and long-standing New York statute broadly addressing attorney misconduct that has ancient roots.

8

Starting on September 30, 2019, the appellant worked for Toyota Motor Corporation and its subsidiaries and specifically Toyota Motor Thailand Company Limited ("Toyota") through their outsourcing agent, HC2, Inc. ("HC2"), an appellee-defendant in this action. Toyota illegally terminated the appellant due to his filing of a public health and safety complaint during the height of COVID-19, the worst pandemic in recent history, in March 2020. It paid millions of dollars to unethical lawyers, including two appellees here, to file a jurisdictionally fraudulent case against the appellant, to file a false proof of claim for $1,180,157.67 for a non-existent "judgment" against him in his chapter 7 case (APP at 39), to file false affidavits in support of that false proof of claim (APP at 192), to violate a court order withdrawing HC2's false proof of claim by continuing to appear as a "creditor" in and unlawfully interfering with the appellant's chapter 7 case, to lie and manufacture evidence to the chapter 7 trustee that the appellant owned "four properties in Westchester County" and had "undisclosed financial accounts" (APP at 166-167, 169), to falsely accuse the appellant of "extortion" by lying about the contents of his lawyer's April 7, 2020 letter to Toyota (APP at 188), to spy on and harass him (APP at 82), to lie to multiple federal and New York state courts, and to lie repeatedly to a federal court in which it sued the appellant that the amount in controversy (the amount he was paid) was "in the low six figures" when HC2's own proof of claim shows it to be only for "$67,458.91" (APP at 190).

9

The appellant sued the appellees in New York state court.

The appellees removed the case to federal court based on federal question jurisdiction.

This appeal is of two orders dated September 13, 2024 (ordering that a defendant's deadline for filing an answer in a removed action is 21 days from the date of the amended complaint, which is not the "initial pleading" under Fed. R. Civ. P. 81) and January 3, 2025 (dismissing all of the appellant's claims with prejudice). APP at 244 and 266.

In its orders, the district court effectively overruled this Court and the New York State Court of Appeals, which it should have followed especially when exercising supplemental jurisdiction over state law claims in an action filed in state court.

The district court also did not follow this Court's recent precedent in *Palin II* by treating the motion to dismiss like the trial where the appellant was held to an unfair standard and where he effectively had to prove his case.

## IV. STATEMENT OF THE CASE

### A. Statement of Relevant Facts

The appellant is a disabled pro se senior who is domiciled and resides in the Republic of the Philippines.

10

The appellant's amended complaint plausibly alleged that the appellees Stephanos Zannikos ("Zannikos") and Michael John Esker Nacchio ("Nacchio"), two New York attorneys, and their co-appellees employer and client/principal engaged in egregious, recurring, concerted, and systematic fraud and deceit and collusion aimed at misleading the New York federal and state courts. It further alleged that Zannikos and Nacchio repeatedly lied, misquoted the law, authority, and judgments, and committed fraud and perjury in the courts.

**B.      Statement of the Procedural History of the Case**

On August 5, 2024, the appellant sued HC2, Zannikos, Nacchio (together with HC2 and Zannikos, the "HC2 appellees"), and TMNA, for which HC2 is the agent. *Andrew Delaney v. HC2, Inc. et al.*, 157092/2024 (Sup. Ct. N.Y. County August 5, 2024) (Torts - Other Professional Malpractice (Judiciary Law §487)). APP at 12.

On August 18, 2024, the appellant filed an amended complaint. APP at 15.

On August 20, 2024, the appellees filed a notice of removal of the case to the district court. *Delaney v. HC2, Inc. et al.*, 1:24-cv-06287 (S.D.N.Y. 2024).

On August 20, 2024, TMNA's lawyer filed a "related case affirmation" asserting that the case was related to a lawsuit *HC2, Inc. v. Delaney*, 1:20-cv-03178 (S.D.N.Y. April 22, 2020) (Liman, J.) (the "HC2 Lawsuit"). The appellant objected that the cases were not related. The case was re-assigned to Judge Liman.

11

On August 26, 2024, the HC2 appellees filed a motion to dismiss for failure to state a claim. The fact that the HC2 appellees filed within 21 days of the complaint, August 5, 2024 + 21 days = August 27, 2024, shows that, unlike TMNA, they interpreted the Fed. R. Civ. P. 81(c)(2) deadline for a defendant to file an answer in the same way as the appellant.

On September 6, 2024, the appellant filed a proposed certificate of default against TMNA since it had not filed either an answer or a motion to dismiss.

On September 6, 2024, in response to a letter to the judge from TMNA disputing the deadlines, the appellant wrote a letter to the judge citing Fed. R. Civ. P. 81(c)(2) that TMNA's answer was due 21 days from the date of the "initial pleading", i.e., the complaint (which was August 5, 2024). APP at 204. Rule 81(b)(2)(A) gives the defendant until "(A) 21 days after receiving - through service or otherwise - a copy of the initial pleading stating the claim for relief." (emphasis added).

On September 9, 2024, after the appellant's proposed default, TMNA filed a motion to dismiss.

On September 11, 2024, 16 days after they e-filed a motion to dismiss, the HC2 appellees suddenly e-filed a certificate of service by mail. They claimed that they "lost" their original mail receipt.

On September 11, 2024, the appellant filed a response to the HC2 appellees' motion to dismiss. APP at 206.

On September 11, 2024, the appellant filed a response to TMNA's motion to dismiss. APP at 220.

On September 13, 2024, while cautioning that its interpretation of Rule 81 was "not free from doubt", the district court entered an order that "TMNA was not in default on September 6, 2024, and Plaintiff's request for a certificate of default must be DENIED." APP at 244.

On September 15, 2024, the appellant wrote a letter to the district judge objecting to the appellees' requests for retroactive e-mail service in this case. APP at 252. The district court did not order e-mail service.

On September 15, 2024, the appellant filed a motion to reconsider the September 13, 2024 order. APP at 256.

On September 17, 2024, the district court denied the appellant's motion for reconsideration of its September 13, 2024 order. APP at 259.

On January 3, 2025, the district court dismissed all of the appellant's claims with prejudice. APP at 238.

## V.     SUMMARY OF ARGUMENT

The district court erroneously decided that N.Y. Jud. Law § 487 does not apply in the federal courts. It relied on orders and proceedings in a case in which it lacks

subject-matter jurisdiction. Notably, the district court order does not counter that it has or ever had subject-matter jurisdiction. It also erroneously dismissed the appellant's plausible claims.

## VI. ARGUMENT

### A. Standard of Review

This Court reviews a district court's dismissal under Fed. R. Civ. P. 12(b)(6) de novo, accepting the complaint's factual allegations as true and drawing all reasonable inferences in the appellant's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). Any ambiguities must be construed "in the light most favorable to upholding to upholding the Appellant's claims," *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

### B. N.Y. Jud. Law § 487 Applies in Federal Court

In its January 3, 2025 opinion and order, the district court held that: "Because both Congress and the federal courts themselves have authority to regulate proceedings in the federal court, and because application of Judiciary Law § 487 creates the potential for conflict with the already robust regulatory regime that governs attorney conduct in federal court, the most reasonable interpretation of Judiciary Law § 487 is that it applies only to state court proceedings." APP at 283-284. It stated: "New York's interest in protecting the integrity of its own judicial

system is significant.  By contrast, its interest in protecting the integrity of a federal court which happens to be located in New York state is minimal."  APP at 285.  It explained referring to Fed. R. Civ. P. 11: "Moreover, and importantly, it is unreasonable to read Judiciary Law § 487 as a regulation on attorney deceit in federal court given the clear federal interest in regulating such behavior and the extensive and carefully-balanced federal scheme in place to do so."  APP at 285.

The opinion reflects the district judge's view, seen elsewhere, including in the HC2 Lawsuit,[1] that sanctions against attorneys should be "limited": "Sanctions for each of these purposes are carefully limited to provide proper process for attorneys and 'so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'… Sanctions for a violation 'must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'"  APP at 286.  "A typical sanction is 'payment of the other side's reasonable attorney's fees which were incurred as a result of the improper filing' or the payment of a penalty to the court."  APP at 286-287.  "'Although Rule 11 sanctions may involve the payment of a penalty for deterrence rather than compensation, such payment must be only what is necessary to deter the conduct, and 'a court should impose the least

---

[1] In fact, the district court quotes its own opinion in the HC2 Lawsuit: "In addition, the state tort of legal malpractice is clearly applicable to attorneys practicing in federal court, and 'unlawful interference with a person or property under the color of' federal process may give rise to the tort of abuse of process. *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106-07 (S.D.N.Y. 2020)."  APP at 290.

15

severe sanctions necessary to achieve the goal.'" APP at 287. After stating that § 487 was not needed due to "the extensive and carefully-balanced federal scheme," the district court then states that § 487 uses "an entire different and incompatible manner of addressing this conduct." APP at 285, 287. "However, Section 487 is unlike these forms of regulation in that it directly targets attorney deceit within a court proceeding." APP at 290. "The fact that New York can properly regulate attorney behavior in other ways does not mean it can regulate the conduct that occurs in a federal court." APP at 292.

The order then applied its conclusion to this case: "Here, Plaintiff's Section 487 claims seek to punish Zannikos and Nacchio for purportedly false statements made in federal bankruptcy court. For the reasons stated above, the statute does not apply to these statements." APP at 293. The opinion then extended the inapplicability of § 487 to the bankruptcy courts: "However, there is nothing about this distinction that suggests Section 487 should apply to bankruptcy proceedings." APP at 293.

There is a contradiction between the district court's opinion that the federal courts do not need § 487 due to Fed. R. Civ. P. 11 and its opinion that § 487 is "incompatible" with the federal court system. The district court argues that it should not be subjected to state laws like § 487 just by virtue of the fact that it sits in New York. That is the *Erie* Doctrine. The appellant did not file his state law claims in

16

federal court. He filed them in state court. The district court was reviewing the appellant's § 487 claim based on supplemental jurisdiction and should have applied New York law. By dismissing his § 487 claim with prejudice, it unfairly created an obstacle to the appellant's refiling of the case in state court without the federal claims. In such case, it should have declined to exercise supplemental jurisdiction over the appellant's § 487 claim and should have remanded it to state court where he could have proceeded.

The district court's theory that § 487 was not intended to be applied in the New York federal court system is not correct. The attorneys are still New York attorneys appearing in New York State and should not be exempted because they walk across the street to a different court. This is especially true in a case such as this which was removed from state court.

This Court has previously ruled that § 487 applies in the New York federal court system. *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978). While the statute primarily addresses attorney misconduct in state court proceedings, federal courts recognize and may enforce its provisions, especially when the misconduct affects the integrity of their proceedings or, as here, involves state-law claims. *See also Hansen v. Miller*, No. 20-3591 (2d Cir. 2022)(vacating in part the dismissal of the plaintiff's claims under § 487).

17

**C.      The Question Should Be Certified to the N.Y. Court of Appeals**

Although the appellant did not file either case in federal court, this is the second case in which this district court declined to apply New York state law in federal court.  In the HC2 Lawsuit, the district court declined to follow *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 15 N.E.3d 1172, 1175 (N.Y. 2014).  Instead of trying to decide whether New York intended § 487 to apply in the federal courts or not, the district court should have certified the question to the New York Court of Appeals.

**D.      Appellant's N.Y. Jud. Law § 487 Was Plausible**

The district court also ruled on the ultimate issue, which should have gone to the jury, as to whether the appellees violated § 487.  It first stated: "Zannikos and Nacchio were not HC2's attorneys in the Bankruptcy Proceeding, which was handled by non-party Goldstein."  APP at 293.  But Exhibit B to the amended complaint, which the district court expressly refused to consider, showed Zannikos' and Nacchio's acting in *In Re Delaney*, No. 20-44372 (Bankr. ED.N.Y. 2020)(the "Bankruptcy Proceeding"), for which Nacchio's law firm billed time.  That is not accepting the appellant's facts as true.  Zannikos is HC2's general counsel who was running the Bankruptcy Proceeding and Nacchio was HC2's outside counsel who was instructing Douglas A. Goldstein, Esq. (they are both based in Morristown, New Jersey).  The court then stated that the lawyer in the bankruptcy proceedings was

"Goldstein". APP at 294. The opinion states: "Plaintiff has not adequately pled that these statements are false or made with intent to deceive." APP at 294. "Zannikos did not assert that Plaintiff's demand letter was extortionate. He stated that Delaney engaged counsel to demand $450,000 from TMNA, that Delaney threatened litigation and disclosure of TMNA's privileged and confidential information if his demands were not met, and that TMNA refused to agree." APP at 294.

The district court is incorrect.[2] The complaint correctly alleged that Zannikos lied to and deceived five New York state courts and three New York federal courts (including a bankruptcy court) on multiple occasions about the contents of the Toyota demand letter.[3] APP at 212. The opinion then stated: "While this Court

---

[2] The opinion also stated: "Though not described in the complaint here, HC2 alleged that Delaney manufactured a false wrongful termination claim and demanded $450,000 from a corporate client while threatening the disclosure of privileged and confidential information." APP at 267. This is untrue. The complaint mentions the $450,000 issue five times. APP at 17, 21, 24, 25, 30, and 32. The complaint clearly alleged that the appellees made these false allegations by lying about the contents of the appellant's lawyer's April 7, 2020 letter to Toyota in the HC2 Lawsuit and that this was part of the attorney misconduct. Exhibit C to the amended complaint is the actual letter.

[3] *See*, *e.g.*, from the amended complaint:

"7. Delaney engaged counsel to demand $450,000 from the Corporate Client [Toyota], but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel emailed a letter to the Corporate Client's [Toyota] Chief Executive Officer [Akio Toyoda] and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's [Toyota] privileged and confidential information if his demand was not met by April 14, 2020."
APP at 21.

"However, the defendants continued to lie about the contents of the demand letter (including falsely adding a demand for money of $450,000, which specific demand for money is a requirement for extortion) to make Delaney appear like a criminal while themselves ignoring the ruling of a federal judge and, worse, then telling the trustee and his lawyers that Judge Liman had issued a judgment against Delaney for extortion. This is clear and unequivocal deceit and fraud on the court".
APP at 21.

concluded at the preliminary injunction stage, based on a redacted copy of the letter, that it was routine, *HC2 Lawsuit*, Dkt. No. 65 at 21, that conclusion did not foreclose the possibility that HC2 would ultimately be able to prove that Delaney had engaged in extortion and, in any event, it was not free from doubt."  APP at 295.  But the appellant was not sued for extortion.  Extortion is a crime in New York.  The appellant was sued for breach of contract and faithless servant doctrine which are both civil claims.  There is no circumstance in the world that the district court could rule that the appellant was guilty of extortion because that is not what he was sued for[4].  For that reason alone, the opinion and order should be reversed and vacated.

---

"13. Delaney engaged counsel to demand \$450,000 from the Corporate Client [Toyota], but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel.  On April 13, 2020, Delaney's new counsel **e-mailed a letter** to the Corporate Client's [Toyota] Chief Executive Officer [Akio Toyoda] and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's [Toyota] privileged and confidential information if his demand was not met by April 14, 2020…."

APP at 24 (emphasis added).

"14. **Subsequently, Delaney engaged counsel to demand \$450,000 directly from the Corporate Client [Toyota]. (See Ex. E; see also HC2 Inc. v. Andrew Delaney, 20-cv-03178-LJL, Dkt. No. 1, annexed to Amended Proof of Claim, Ex. 2 ("S.D.N.Y Compl.")). *The letter*,** though dated April 7, 2020, was emailed directly to the Corporate Client [Toyota] on April 13, 2020. In it, Delaney's lawyer threatened to commence legal action and publicly disclose such confidential and privileged information about the Corporate Client [Toyota] that Delaney had obtained during the Project if Delaney's demand was not met by the next day. (S.D.N.Y Compl. ¶ 6). The Corporate Client [Toyota] did not pay Delaney's \$450,000 demand. (Id. ¶ 7). Instead, on April 14, 2020 the Law Firm Customer [Wilmer Hale] sent an email to Delaney's counsel warning him not to contact the Corporate Client [Toyota] again and objecting to Delaney's threat to disclose the Corporate Client's [Toyota] privileged and confidential information. (Id.)."

APP at 25 (emphasis added) (the above quotation also cites to the HC2 Lawsuit complaint, where Zannikos, HC2, and Nacchio also lied about the Toyota demand letter).

[4] Also, it is undisputed that there is no subject-matter jurisdiction which the district court has refused to rule on for over five years.  The opinion states: "In the HC2 Lawsuit, Delaney similarly moved to dismiss Plaintiff's claims for lack of subject-matter jurisdiction, arguing that the amount

The opinion then stated: "And, even if the Court had reached a final conclusion that the letter was not extortionate under its view of the law, that would not have foreclosed Defendants from attempting to argue otherwise as long as they did not lie about the underlying facts." APP at 295. But lying about the facts (e.g. the contents of the letter) is exactly what the appellees did and what the appellant accused them of. The district court, at this stage, was required to accept the

---

in controversy did not exceed $75,000 because the maximum recovery would be what Plaintiff paid Delaney, which was $67,458.91. HC2 Lawsuit, Dkt. No. 100 § 34. This motion was never adjudicated, because the Court learned that Delaney had filed for bankruptcy. HC2 Lawsuit, Dkt. No. 126. The HC2 Lawsuit was therefore stayed on February 22, 2021, and remains stayed at the time of this order." APP at 269. The failure of the district court to rule as to subject-matter jurisdiction was raised since the April 29, 2020 hearing in the HC2 Lawsuit. A federal court has a continuing obligation to examine its subject-matter jurisdiction sua sponte. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). The issue is not "stayed" due to the appellant's bankruptcy filing, which occurred eight months after the case was filed. 11 U.S.C. § 362(a), does not prevent this Court or the district court from dismissing the action. The dismissal of an action by the court is not the "continuation of an action against the debtor." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 852 F. Supp. 226, 228 (S.D.N.Y. 1994) ("Moreover, unilateral dismissal of a claim against a bankrupt under Fed. R. Civ. P. 41 or its equivalent by agreement and judicial approval assists rather than interferes with the goals of Chapter 11; the purposes of the Bankruptcy Code were in no way infringed by the dismissal by a plaintiff of a case against the bankrupt without any additional cost or risk to the bankrupt or its creditors. *See In re Terio*, 158 B.R. 907 (S.D.N.Y.1993), *aff'd*, Dkt No 93-5099, 5100 (2d Cir April 25, 1994)."); *MTGLQ Investors, L.P. v. Guire*, 286 F.Supp.2d 561, 563 (D. Md. 2003) ("[D]ismissing or transferring the case on jurisdictional grounds does not constitute a prohibited 'continuation' of the action under § 362."); *Sanders v. Farina*, 67 F. Supp. 3d 727, 729 (E.D. Va. 2014); *Settles v. Comm 'r of Internal Revenue*, 138 T.C. 19 (U.S.T.C. 2012). Likewise, the district court's references to its substitution of the chapter 7 trustee were orders that it should not have been making in the first place in the absence of subject-matter jurisdiction, which were void ab initio, and which it erroneously relied on in issuing the January 3, 2025 opinion and order. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"); *Greene v. Paramount Pictures Corp.*, 2017 WL 4011240 (E.D.N.Y. Sept. 11, 2017); *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 146 (2nd Cir. 2019). In other words, the order references and relies on orders issued in a case in which the district court does not have subject-matter jurisdiction. This is further grounds for reversal.

appellant's facts as true, not to argue against them. The opinion concluded: "There is no actionable claim for deceit under Section 487 based on Zannikos' certification." APP at 295.

The district court wrote: "The second alleged instance of deceit is that the HC2 Defendants falsely informed the Trustee that Plaintiff had a judgment against him for extortion in the *HC2 Lawsuit*…. These statements are untrue." APP at 296. Firstly, the amended complaint cited more than two examples of deceit. Secondly, the appellant alleged that the HC2 appellees lied to the trustee that the appellant "owned four properties in Westchester County" and that he had several "undisclosed financial accounts", both of which HC2's own private investigator Capital Investigations' report showed to be untrue. The opinion conceded: "Under this plain language, an attorney who does not directly make a deceitful statement to the court may be liable under Section 487 if he colludes or consents to the making of the false statement." But the district court stated: "Here, however, no facts are alleged to support the inference that Zannikos and Nacchio made false statements to the Trustee or colluded with him to deceive the court." APP at 296-297. It is untrue that the appellant did not allege that Zannikos and Nacchio made the false statements to the trustee which was also supported by Exhibit B from the Bankruptcy Proceeding, which the district court erroneously refused to consider. That was the appellant's whole point. Exhibit B showed five pages of highlighted multiple calls, emails, and

faxes to the trustee from the appellees at the relevant times, mostly in March-April 2021. Moreover, this was not the trial where the appellant had to prove his case.

The district court then wrote that the appellees did not file a false proof of claim[5], again not accepting the plaintiff's facts as true, and wrote: "HC2 could properly submit a contingent proof of claim based on fees it is seeking, but has not yet received, in the HC2 lawsuit." APP at 298. No they could not have. The $1,180,152.67 proof of claim was for legal work done, mostly by Kasowitz Benson Torres LLP, in connection with their Preliminary Injunction application, which after months of work was denied[6]. There is no circumstance under which the appellant could have been liable for the losing party's fees. Part of their fraud and deceit is that the appellees told the trustee and the bankruptcy court in March and April of

---

[5] The January 3, 2025 opinion and order states: "On March 15, 2021, Delaney filed an amended schedule and affidavit which included a nonpriority unsecured claim by HC2 for $67,458.91." APP at 270. Footnote 7 then states: "Delaney describes this in the Complaint as 'HC2's proof of claim.' Compl. § 11 n.1. However, the schedule was filed by Delaney. The claim is listed as 'contingent' and 'disputed,' and states that it is a nonpriority unsecured claim resulting from 'litigation being dismissed.' Bankruptcy Proceeding, Dkt. No. 17." APP at 270. However, Exhibit A to the complaint is the appellee HC2's proof of claim dated April 6, 2021 for $1,180,157.67. It is not listed as "contingent" or "disputed". HC2 filed an original proof of claim for $67,458.91 on March 15, 2021 and a proof of claim on April 6, 2021 for $1,180,157.67. Exhibit D, the appellant's amended chapter 7 petition, was filed before HC2's $1,180,157.67 proof of claim to list "HC2's proof of claim dated March 15, 2021 is for $67,458.91." The point is not academic because the complaint alleged that the appellees filed a false and fraudulent proof of claim.

[6] Regarding the injunction applications, the opinion states: "The Complaint alleges that '[o]n April 20, 2020, Judge Liman denied HC2's TRO application.' Compl. 11 n.1. This is inaccurate. HC2's complaint was not filed until April 22, 2020, and the Court granted a temporary restraining order." APP at 268. But Docket Entry 9 in the HC2 Lawsuit, clearly shows the opposite: "04/22/2020…. ENDORSEMENT: Plaintiff's request for ex parte relief is DENIED. An ex parte grant of a TRO is 'an emergency procedure' that is 'appropriate only where irreparable injury will be caused absent prompt judicial intervention in circumstances where the adversary cannot be contacted, or where advance contact with the adversary would itself he likely to trigger irreparable injury.'"

23

2021 that there was a judgment against the appellant for extortion in the amount of $67,458.91 and for $1,180,152.67 in legal fees.

The opinion then stated that the appellees' instructing Goldstein to continue to appear at the hearings after HC2 had withdrawn from the case was not actionable: "Regardless whether such appearances were proper or not, this does not state a cause of action for deceiving the court or a party. Goldstein openly appeared at the hearings." APP at 298. The alleged fraud and deceit were not that Goldstein's appearances were clandestine. They had to do with the appellees' representations to the court and the undertakings when it proposed the settlement agreement and unlawfully continued to appear in the case after its proof of claim had been withdrawn with prejudice. Also, the claims against the appellees regard the withdrawal with prejudice of HC2's proof of claim, settlement agreement, bankruptcy court order of dismissal, and continuation as a creditor in the appellees' bankruptcy case were not only for § 487 violations. The appellees' new excuse that they attended those hearings for years afterwards to protect their settlement agreement is not true because they appeared as a creditor to object to the appellant's motions to voluntarily dismiss the bankruptcy case and their settlement agreement was not in issue, nor did they raise it. As they know perfectly well, the dismissal of the case would not have affected the validity of their settlement agreement.

The district court's mischaracterization of the appellees' conduct and the letter not only does not accept the facts in the amended complaint as true but is also totally at odds with its May 27, 2020 order in the HC2 Lawsuit.[7]

This Court has previously held that, contrary to the district court's order, § 487 does apply in the federal courts and that a single deceitful statement can trigger § 487 liability. *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008) (quoting N.Y. Jud. Law § 487). The district court is bound by the decisions of this Court. Moreover, compared to *Amalfitano*, the amended complaint alleged much more than a single statement but rather numerous statements and acts of egregious, recurring, concerted, and systematic fraud and deceit and collusion aimed at misleading eight different New York federal and state courts.

Although Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the amended complaint was factually detailed. As a matter of law, the claims (N.Y. Jud. Law § 487, civil

---

[7] "And, finally, the evidence does not support plaintiff's claim that defendant attempted to extort plaintiff (sic) by publicly disclosing plaintiff's confidential information if Delaney was not paid. That assertion appears at paragraph 40 of the Zannikos declaration. It also appears in the parties' briefing. **It's a characterization of a demand letter from Delaney's lawyer attached as Exhibit Z.** I have been provided a redacted copy of the letter. It makes no threat or mention of publicly disclosing information if Delaney is not paid. Delaney's lawyer makes the allegation that plaintiff violated Delaney's rights and then states 'I hereby grant you seven days from the date of this letter to contact me with your offer to settle this case. If you fail to contact me by this date, I will commence legal action against you without further notice.' The evidence is that letter was only given to the plaintiff in this case shortly before the state court complaint was filed and not with the full seven days. Even then it is a routine demand letter and it's not an extortion. *See U.S. v. Jackson*, 180 F.3d 55, 61, that a claim of right is not an extortion."
HC2 Lawsuit Docket No. 65 at 20-21 (emphasis added).

conspiracy, etc.) were fact-intensive inquiries not resolvable on a motion to dismiss without any discovery, and also involved questions of intent. Violation of § 487 requires an intent to deceive. The HC2 appellees' motion to dismiss itself disputed that Zannikos and Nacchio "acted with an intent to deceive", which was an issue for discovery.

### E. The Motion to Dismiss Was Not the Trial under *Palin II*

The district court went beyond the "limited gatekeeping function" assigned to it by this Court as per *Palin II*.

Similar to *Palin II*, the district court also improperly relied on matters outside the pleadings to decide the appellees' motion to dismiss without converting that motion into one for summary judgment." *Palin II* at 12.

The HC2 appellees' motion to dismiss used the wording that the complaint failed to establish a prima facie case six times. ECF No. 8 at 8, 10, 11, 21, and 26. TMNA's used it four times. ECF No. 22 at 15, 16, and 19. A prima facie case is based on preponderance of the evidence. The Supreme Court has ruled that a plaintiff does not need to plead specific facts that establish a prima facie case to survive a motion to dismiss for failing to state a claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Moreover, this Circuit has ruled that a prima facie case is an evidentiary standard, not a pleading requirement.

The district court failed to apply the proper standard, which is whether a complaint alleged enough facts to state a claim to relief that is plausible on its face, *Twombly*, such that a court could draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the appellant's amended complaint satisfies the standards for pleading, the appellant respectfully submits that the Court should reverse the district court and remand for discovery.

### F. Exhibit B Should Not Have Been Rejected

The opinion summarized: "He states that billing records produced in the Bankruptcy Proceeding, see Bankruptcy Proceeding Dkt. No. 61-5, show the communications between Defendants and the Trustee." APP at 270.

In footnote 1 to its opinion, the district court considered the appellees' extrinsic documents but refused to consider the appellant's court-filed billing records. APP at 266-267. It stated: "Exhibit B, which consists of over 100 pages of billing records which Plaintiff cites to in a general fashion, may not be considered for this purpose consistent with 'Rule 8(a)'s requirement of a short and plain statement of a claim for which relief could be granted.'" APP at 267. Exhibit B was clearly highlighted to five pages. APP at 160, 165-167, and 169. This part of the order was especially prejudicial to the appellant when in the same opinion the district court stated that the appellant failed to provide any proof linking Zannikos and

Nacchio to the attorney misconduct. The district court's justification for considering the appellees' extrinsic documents but not the plaintiff's Exhibit B was that the appellees' were "judicial documents": "Because each exhibit is a judicial document, the Court may properly consider the statements in each exhibit 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation.'" APP at 267. However, Exhibit B was also a "judicial document" because it had been filed in the Bankruptcy Proceeding as is clearly shown in the ECF e-filing confirmation line at the top of the document. APP at 40. Also, Fed. R. Civ. P. 12(d) dictates that if extrinsic evidence is presented and not excluded, the motion to dismiss should be converted into a motion for summary judgment.

The appellant complained that the appellees' attachment of extrinsic documents should be disregarded and stricken as a violation of Fed. R. Civ. P. 56. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure … do not compel a litigant to anticipate potential affirmative defenses… and to affirmatively plead facts in avoidance of such defenses.").

However, instead of disregarding the appellees' extrinsic documents, the district court instead rejected the appellant's key exhibits attached to the amended complaint. This created an "unequal playing field" in a context in which the district court dismissed the case with prejudice based on the supposed lack of evidence

28

linking the appellees to the wrongdoing. This is what William Safire calls "a self-fulfilling prophesy".

The appellees' attempt to convert the motion to dismiss into a pseudo summary-judgment proceeding in which it got to submit any material it wanted - while the appellant was given no chance to test the strength of that evidence or develop a record – should have been rejected.

The motions to dismiss should have been denied. *See Wks. v. Home Depot U.S.A., Inc.*, No. CV 19-6780 FMO (ASX), 2020 WL 1652539, at *1 (C.D. Cal. Jan. 21, 2020) (denying motion to dismiss for "improperly referencing materials outside the pleadings").

### G.     The Appellant's Claims Were Plausible

Regarding the conspiracy claim, it was plausible because the underlying § 487 was plausible and should therefore not have been dismissed.

Regarding the NIED claim, the district court dismissed it because Zannikos and Nacchio did not have ethical duties towards him as an opposing party and breached those duties by making false statements and accusations. APP at 299. That is not the case and is also not the extent of the appellant's allegations against them. Also, the district court's ruling that the appellant's damages were "conclusory" and that he did not suffer "genuine distress" is again like the trial. During this period, as

shown in his ADA claim, the appellant became disabled and certainly would have been able to prove this at trial if given the chance to present his case to the jury.

Regarding the breach of contract and stipulation claim, the district court dismissed it because "Delaney has not alleged breach of such settlement." APP at 301-302. The amended complaint certainly did allege breach of contract, which was one of his claims. APP at 34-35. The district court stated: "The plain terms of the stipulation concerned withdrawal of a claim, not withdrawal of any right to participate in the bankruptcy." APP at 302. That is not what the amended complaint alleged. It alleged that the appellees continued to appear as a creditor in the Bankruptcy Proceeding to successfully object to the appellant's motion to dismiss the Bankruptcy Proceeding, which only a creditor could do. It also alleged that the appellees breached their representations to the bankruptcy court and the appellant when they proposed the settlement, where they represented that they would withdraw from the proceedings permanently.

Regarding the N.Y. Labor Law § 740 claim, the district court ruled that the appellant "does not explain what he did to 'complain[] to the government' or why he would have believed HC2's failure to provide him with a plan description was contrary to law, rule, or regulation, or in any way improper" and that he "must identify the particular activities, policies or practices in which the employer allegedly engaged" under *Webb-Weber*. APP at 303. The appellant sufficiently

alleged that HC2 failed to provide him with a copy of the plan and that this was a violation of the Employee Retirement Income Security Act of 1974, Pub. L. 93–406 ("ERISA").[8]   The appellant satisfied the requirements of *Webb-Weber*, which interestingly the district court declined to follow in the HC2 Lawsuit, which was criticized by another district court judge.[9]

Regarding the ADA claim, the district court dismissed it because "Delaney does not allege that he is disabled."  APP at 304.  But it then contradicts itself that: "Delaney simply asserts that he 'is an individual with a disability within the meaning of 42 U.S.C. § 12102.'"  APP at 304.

Regarding the Title VII claim, the district court once again ruled that the facts were "formulaic" and not sufficient.   APP at 305.

Regarding "TMNA's Additional Arguments", the district court dismissed all claims against TMNA because the appellant supposedly did not "prove" that he was TMNA's employee.  APP at 306-307.  The district court admits that "In his opposition to the motion to dismiss, Plaintiff explains that he worked for TMNA 'through a three-party outsourcing agreement,' between HC2, WilmerHale, and

---

[8] An employer's failure to provide a copy of the plan, upon written request, is a violation of ERISA. ERISA requires employers to disclose plan information to participants and beneficiaries, including the plan documents.  If a participant or beneficiary requests these documents and they are not provided within 30 days, the plan administrator can be sued for penalties of up to $110 per day.

[9] *Arazi v. Cohen Brothers Realty Corporation*, 1:20-cv-8837-GHW, 2022 WL 912940, n.13 (S.D.N.Y. March 28, 2022) (Woods, G.) (questioning whether *HC2 v. Delaney* reached "conclusions [that] might rest on a misunderstanding of the appropriate standard for analysis of § 740 claims.").

TMNA, Dkt. No. 26 § 39, and that 'e-mails about the plaintiff's employment, daily work, and termination were all managed, supervised, and ordered by Toyota,' id. However, Plaintiff did not plead this in his Complaint, only asserting it in opposition to the motion to dismiss." It then wrote: "As previously stated, Plaintiff receives no such solicitude as an attorney representing himself." APP at 307.

**H.      The Claims Should Not Have Been Dismissed With Prejudice**

The appellant's claims should not have been dismissed with prejudice where it would not have been futile for him to amend his complaint, where he could have added Goldstein and the trustee as defendants, and where he could refile the § 487 claim in state court.

**I.      The Appellant Was Not Served**

Fed. R. Civ. P. 12(a)(1)(A) requires defendants to "serve" their responsive pleading. "Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir., 2003). But the appellees did not serve documents on the appellant.

The opinion stated that "subsequent judicial documents" do not have to be served pursuant to The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention). APP at 279. It stated: "Here, Defendants mailed the papers to Plaintiff's last known

address, a proper means of service under Rule 5(b)(2)(C)…. Although Plaintiff states that he 'does not receive ECF filings in this case,' Dkt. Nos. 22, 24, Plaintiff is a former attorney admitted to practice in the Southern District of New York and at the time of the relevant filings was a registered user of the electronic filing system…. On September 14, 2024, Plaintiff emailed the S.D.N.Y. Attorney Services office stating that he is retired from the practice of law, and that his admission to practice in this Court and corresponding ECF access should be revoked. Plaintiff then filed a letter with the Court dated the next day, September 15, 2024, stating that '[t]he United States District Court for the Southern District of New York does not allow e-filing by non-attorneys and I have not received any e-filings in this case.' Dkt. No. 39. This suggests that Plaintiff has not been candid regarding purported service issues." APP at 278-279.

There is no proof that the appellant received a single filing by the appellees in this case. As to the district court's research into the appellant's supposed lack of candor, the docket in this case, which was constructed from the appellees' removal papers, lists nothing other than the appellant's name. APP at 4. Also, contrary to the implication that the appellant was a member of the Bar up until September 14-15, 2024, the N.Y. Supreme Court Appellate Division First Department approved and ordered the appellant's voluntary resignation from the Bar in good standing "effective the date hereof" on July 31, 2024, before this case was filed. *In the Matter*

*of Andrew John Delaney*, Case No. 2024-03336 (1st Dep't 2024). The September 14-15, 2024 emails were only to follow up with the courts. Moreover, there is a difference between the ability to e-file into a case, which is what the September 14-15, 2024 correspondence related to, and *receiving* ECF filings. The district court's opinion does not provide a scintilla of evidence that the appellant ever received ECF filings in this case and, as it well knows, nor could he have, since there is no contact information for him on the docket. APP at 4. Even the appellees did not claim that the appellant ever received any ECF filing, which is why they asked the district court for e-mail service.

### J.     The Initial Pleading Under Rule 81 Is the Complaint

The district court wrote an interesting opinion on September 13, 2024 in response to the appellant's assertion that TMNA was in default because its time to file an answer ran from the date of the original complaint, which was August 5, 2024, with a deadline of August 26, 2024, but did not file a motion to dismiss until September 9, 2024, 14 days later. The district court ruled that, "while not free from doubt", the deadline ran from the date of the amended complaint, or August 18, 2024. But Rule 81 refers to the "initial pleading" which has been consistently held to be the first pleading in the case or the original complaint.

The district court stated: "The Court also stated that if default had been entered, it would have set aside the entry of default for good cause shown." APP at

34

275. The district court erred in ruling that it would have vacated the default in advance.

## VII. CONCLUSION

First and foremost, N.Y. Jud. Law § 487 applies in the federal courts in this Circuit. Secondly, the January 3, 2025 order relies on a case in which the district court lacks jurisdiction. Thirdly, the district court treated the motion to dismiss like the trial, accepting the appellees' judicial records but excluding the appellant's, in contradiction of *Palin II*. The orders should be reversed and remanded for further proceedings. Alternatively, the January 3, 2025 order should be modified to be without prejudice since the district court itself pointed to other attorneys' potential misconduct and facts that were contained in response briefs that could easily be incorporated into an amended complaint. The appellant should at least have been given the opportunity to amend the complaint or to re-file in state court.

RESPECTFULLY SUBMITTED this 14th day of April 2025.

/s/Andrew Delaney
Andrew Delaney

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(C)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,191 words, excluding the parts of the brief exempted by 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally faced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: April 14, 2025                                    /s/Andrew Delaney
                                                        Andrew Delaney

## CERTIFICATE OF SERVICE

I certify that on April 14, 2025, the foregoing document was served on all parties or their counsel of record through the CM/ECF system and via United States mail.

Dated: April 14, 2025           /s/Andrew Delaney
                                     Andrew Delaney