# 25-73-cv

# United States Court of Appeals

*for the*

# Second Circuit

ANDREW DELANEY,

*Plaintiff-Appellant,*

– v. –

HC2, INC., STEPHANOS ZANNIKOS, MICHAEL JOHN ESKER NACCHIO, TOYOTA MOTOR NORTH AMERICA, INC.,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT SUPPLEMENTAL APPENDIX
### Volume 2 of 2 (Pages SA-151 to SA-379)

BETH L. KAUFMAN
SCHOEMAN UPDIKE & KAUFMAN LLP
*Attorneys for Defendant-Appellee*
  *Toyota Motor North America, Inc.*
551 Fifth Avenue, 12th Floor
New York, New York 10176
(212) 661-5030

THOMAS BELLIFEMINE
OGLETREE DEAKINS
*Attorneys for Defendants-Appellees*
  *HC2, Inc., Stephanos Zannikos and*
  *Michael John Esker Nacchio*
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
(973) 656-1600

CP COUNSEL PRESS    (800) 4-APPEAL • (381758)

i

# TABLE OF CONTENTS

**Page**

Notice of Removal, by Defendant Toyota Motor
North America, Inc. ("TMNA"), dated
August 20, 2024 ..................................................... SA-1

Exhibit A to Notice -
Summons and Complaint, in *Delaney v. HC2,
Inc.*, New York County Supreme Court Index No.
157092/2024 ("Second State Court Action"),
dated August 5, 2024 ............................................ SA-4

Related Case Statement, dated July 11, 2024 ............ SA-31

Consent to Removal, by Defendants HC2, Inc.,
Stephanos Zannikos and Michael John Esker
Nacchio (collectively, " HC2 Defendants"), dated
August 20, 2024 ..................................................... SA-33

Notice of Motion, by HC2 Defendants, for an Order
to Dismiss Plaintiff's Amended Complaint, dated
August 26, 2024 ..................................................... SA-35

Brief, of HC2 Defendants, in Support of Motion,
dated August 26, 2024 .......................................... SA-36

Declaration of Stephanos Zannikos, for HC2
Defendants, in Support of Motion, dated
August 26, 2024 ..................................................... SA-71

Exhibit A to Zannikos Declaration -
Excerpts from Summary Plan Description of
HCMC Legal, Inc. Employee Stock Ownership
Plan, effective August 19, 2011 ............................. SA-73

Exhibit B to Zannikos Declaration -
Email from HC2, Inc. to Andrew Delaney, dated
February 8, 2024 .................................................... SA-78

Letter from Beth L. Kaufman to the Honorable
Lewis J. Liman, dated September 6, 2024 ............. SA-80

**ii**

                                                                                       **Page**

Exhibit A to Letter -
Affirmation of Service, in Second State Court
Action, dated August 14, 2024 .............................. SA-82

Exhibit B to Letter -
NYSCEF Document List of Second State Court
Action ................................................................. SA-84

Letter from Beth L. Kaufman to the Honorable
Lewis J. Liman, dated September 9, 2024............. SA-87

Notice of Motion, by Defendant TMNA, for an
Order to Dismiss Plaintiff's Amended Complaint,
dated September 9, 2024...................................... SA-89

Declaration of Beth L. Kaufman, for Defendant
TMNA, in Support of Motion, dated
September 9, 2024 ............................................... SA-91

Exhibit 1 to Kaufman Declaration -
Employment Agreement between HC2, Inc. and
Andrew Delaney, dated December 28, 2016 ......... SA-93

Exhibit 2 to Kaufman Declaration -
Agreement between Wilmer Cutler Pickering
Hale and Dorr LLP and HC2, Inc. d/b/a Hire
Counsel, dated September 25, 2019 ...................... SA-97

Memorandum of Law, by Defendant TMNA, in
Support of Motion, dated September 9, 2024........ SA-108

Certificate of Service, dated September 11, 2024...... SA-137

Letter from Beth L. Kaufman to the Honorable
Lewis J. Liman, dated September 13, 2024........... SA-139

Reply Declaration of Beth L. Kaufman, for
Defendant TMNA, in Further Support of Motion,
dated September 25, 2024.................................... SA-141

Exhibit 3 to Kaufman Reply Declaration -
NYSCEF Confirmation Notice, in Second State
Court Action......................................................... SA-143

**iii**

|  | Page |
|---|---|

Letter from Beth L. Kaufman to the Honorable
Lewis J. Liman, dated September 26, 2024........... SA-146

Letter from Beth L. Kaufman to the Honorable
Lewis J. Liman, dated September 26, 2024........... SA-148

Judgment, dated January 3, 2025............................. SA-150

**Exhibits to Supplemental Appendix**

Exhibit A to Supplemental Appendix -
Order of the Honorable George B. Turner
Granting Defendant's Motion, in *Doe v. Toyota
Motor Corporation*, Brevard County, Florida
Circuit Court Case No. 05-2020-CA-024281,
dated December 30, 2020 ..................................... SA-151

Exhibit B to Supplemental Appendix -
Proposed Order to Show Cause for Temporary
Restraining Order and Preliminary Injunction, in
*HC2, Inc. v. Delaney*, U.S. District Court, SDNY
Case No. 1:20-cv-3178 ("HC2 Action"), dated
April 2020.............................................................. SA-156

Exhibit C to Supplemental Appendix -
Temporary Restraining Order of the Honorable
Lewis J. Liman, in HC2 Action, dated
April 29, 2020....................................................... SA-160

Exhibit D to Supplemental Appendix -
Excerpts from the Transcript of Proceedings held
before the Honorable Lewis J. Liman, in HC2
Action, dated May 27, 2020 ................................. SA-163

Exhibit E to Supplemental Appendix -
Answer and Counterclaims, by Defendant, in
HC2 Action, dated May 12, 2020 ......................... SA-167

Exhibit F to Supplemental Appendix -
Letter from Michael Nacchio to the Honorable
Lewis J. Liman, in HC2 Action, dated
February 9, 2021................................................... SA-187

iv

**Page**

Exhibit G to Supplemental Appendix -
Order of the Honorable Lewis J. Liman, in HC2
Action, dated February 22, 2021 ........................... SA-189

Exhibit H to Supplemental Appendix -
Letter from Robert Rotman to the Honorable
Lewis J. Liman, in HC2 Action, dated
April 22, 2021 ....................................................... SA-191

Exhibit I to Supplemental Appendix -
Objection, by the Chapter 7 Trustee to the
Debtor's Motion to Dismiss, in *In re: Delaney*,
U.S. Bankruptcy Court, EDNY Case No. 1-20-
44372 (JMM) ("Bankruptcy Proceedings"), dated
March 26, 2021 ...................................................... SA-193

Exhibit J to Supplemental Appendix -
Opposition of HC2, Inc. d/b/a Hire Counsel, to
Debtor's Motion to Dismiss Case, in Bankruptcy
Proceedings, dated March 26, 202(1) .................... SA-201

Exhibit K to Supplemental Appendix -
Certification of Stephanos Zannikos, for HC2,
Inc. d/b/a Hire Counsel, in Opposition to
Debtor's Motion to Dismiss Case, in Bankruptcy
Proceedings, dated March 26, 2021 ....................... SA-212

Exhibit L to Supplemental Appendix -
Summons and Complaint, in *Delaney v. HC2,
Inc. d/b/a Hire Counsel*, New York County
Supreme Court Index No. 651740/21 ("First State
Court Action"), dated March 16, 2021 .................. SA-217

Exhibit M to Supplemental Appendix -
Decision and Order of the Honorable Alexander
M. Tisch, in First State Court Action, dated
May 27, 2021 ......................................................... SA-242

v

**Page**

Exhibit N to Supplemental Appendix -
Decision and Order of the Honorable Alexander
M. Tisch, in First State Court Action, dated
September 13, 2021 ............................................... SA-247

Exhibit O to Supplemental Appendix -
Order of the Honorable Jil Mazer-Marino, in
Bankruptcy Proceedings, dated August 1, 2021 .... SA-249

Exhibit P to Supplemental Appendix -
Joinder of HC2, Inc. to the Chapter 7 Trustee's
Objection, and HC2, Inc.'s Objection, to Debtor's
Motion to Dismiss, in Bankruptcy Proceedings,
dated December 6, 2021 ......................................... SA-251

Exhibit Q to Supplemental Appendix -
Notice of Removal, by Defendant TMNA, in
*Delaney v. HC2, Inc.*, U.S. District Court, SDNY
Case No. 1:24-cv-05211-JMF ("First Delaney
Fed. Action"), dated July 10, 2024 ........................ SA-257

    Exhibit A to Notice -
    Summons and Complaint, in *Delaney v. HC2,
    Inc.*, New York County Supreme Court Index
    No. 155158/24, dated June 4, 2024.................... SA-261

Exhibit R to Supplemental Appendix -
Related Case Statement, in First Delaney Fed.
Action, dated August 20, 2024 .............................. SA-288

Exhibit S to Supplemental Appendix -
Consent to Related Case Statement, in First
Delaney Fed. Action, dated July 12, 2024 ............. SA-291

Exhibit T to Supplemental Appendix -
Notice in First Delaney Fed. Action, dated
July 17, 2024......................................................... SA-293

Exhibit U to Supplemental Appendix -
Notice, by Plaintiff, of Voluntary Dismissal of
Complaint, in First Delaney Fed. Action, dated
July 16, 2024......................................................... SA-295

vi

**Page**

Exhibit V to Supplemental Appendix -
(i) Summons and Complaint, in *Delaney v. HC2, Inc.*, Commonwealth of Massachusetts, Superior Court Docket No. 2484CV01386-BLS2 ("Mass. Action"), dated May 24, 2024 .............................. SA-297

(ii) Notice of Acceptance Into Business Litigation Session, in Mass. Action, dated July 30, 2024....... SA-322

(iii) Notice of Voluntary Dismissal, in Mass. Action, dated August 11, 2024.............................. SA-324

Exhibit W to Supplemental Appendix -
Excerpts from the Revised Statutes of the State of New York, dated 1829 .......................................... SA-326

Exhibit X to Supplemental Appendix -
Opinion and Order of the Court of Appeals of New York, in *Looff v. Lawton*, dated December 2, 1884.................................................. SA-342

Exhibit Y to Supplemental Appendix -
Excerpt from Enumeration of Courts ("Section 2").......................................................... SA-347

Exhibit Z to Supplemental Appendix -
Affirmation of Michael Nacchio, for Defendant, in First State Court Action, in Support of Order to Show Cause, dated March 25, 2021 ...................... SA-349

Exhibit AA to Supplemental Appendix -
Order of the Honorable Jil Mazer-Marino Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), in Bankruptcy Proceedings, dated October 6, 2021.......................................... SA-354

Exhibit BB to Supplemental Appendix -
Memorandum Opinion and Order of the Honorable Laura Taylor Swain, in *Leary v. Al-Mubaraki*, U.S. District Court, SDNY Case No. Case 1:18-cv-00048-LTS-SLC, dated September 30, 2019 ............................................. SA-357

**vii**

**Page**

Exhibit CC to Supplemental Appendix -
Redacted Letter from Christopher T. Beres to
Toyota Motor Corporation, dated April 7, 2020 ....   SA-376

SA-151

# EXHIBIT A

SA-152

Filing # 118913874 E-Filed 12/30/2020 05:48:01 PM

<div style="text-align: right">

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT IN AND
FOR BREVARD COUNTY, FLORIDA

CASE NO. 05-2020-CA-024281

</div>

JOHN DOE

      Plaintiff,

v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR NORTH
AMERICA, INC., and AKIO TOYODA

      Defendants.

_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DETERMINE CONFIDENTIALITY OF COURT RECORDS PURSUANT TO FLA. R. JUD. ADMIN. 2.420(c)(9)

**THIS MATTER** coming before the Court for hearing on December 9, 2020 and December 30, 2020 on the *Emergency Motion to Determine Confidentiality of Court Records Pursuant to Florida Rule of Judicial Administration 2.420(e)(1)* (Filing #106470209 E-Filed on 4/20/2020) (the "Motion to Seal") filed by Defendant, Toyota Motor Corporation ("Defendant"), and the Court having considered the arguments of counsel for Plaintiff "John Doe" ("Plaintiff") and Defendant, Toyota Motor Corporation, legal authority presented, the evidence and testimony presented at the hearings, and the Court enters the following order determining the confidentiality of the following information relative to the above captioned civil action:

_____ the party's name on the progress docket.

__**X**__ particular documents within the court file, specifically: (a) the Complaint filed in the above captioned action (Docket No. 1 E-Filed on 04/15/2020; Filing#106271018); and (b) Plaintiff's *Motion To Determine The Confidentiality Of Court Records Pursuant To Fla. R. Jud. Admin. 2.40 And To Unseal The Unredacted Complaint* (Filing #117197477 E-Filed 11/24/2020); and (c) Plaintiff's *Memorandum In Support Of Plaintiff's Motion To Unseal The Complaint* Filing (#117197477 E-Filed 11/24/2020); and (d) all hearing transcripts that refer to or describe the Complaint including, without limitation, those certain *Transcripts of Proceedings* of the hearings with the Court in this action on June 22, 2020, December 9, 2020, and December 30, 2020; and (e) Defendant's *Emergency Motion to Determine Confidentiality of Court Records Pursuant to Florida Rule of*

<div style="text-align: center">1</div>

<div style="text-align: right">HC2-00000407</div>

SA-153

*Judicial Administration 2.420(e)(1)* (Filing #106470209 E-Filed on 4/20/2020); and (h) Plaintiffs *Motion In Limine No. 5 (Public Health and Safety)* and attached *Affidavit* of Andrew Delaney and draft order (Filing # 117818538 E-filed 12/08/2020).

_____ the entire court file and the progress docket.

This motion [ __X__ was/_____was not] contested and a hearing
_____ was not conducted
__X__ was conducted on December 9, 2020 and December 30, 2020.

Having considered the arguments of the parties, legal authority, the evidence and testimony presented at the hearing on the Motion to Seal, and otherwise being fully advised, the Court **GRANTS** Defendant's *Emergency Motion to Determine Confidentiality of Court Records Pursuant to Florida Rule of Judicial Administration 2.420(e)(1)* (Filing #106470209 E-Filed on 4/20/2020) as follows:

1.  Confidentiality of the information is required to protect the following interest(s): [select all that apply]
    _____ a.  Preventing a serious and imminent threat to the fair, impartial, and orderly administration of justice, specifically: _____.
    _____ b.  A trade secret.
    _____ c.  A compelling government interest, specifically _____.
    _____ d.  Obtaining evidence to determine the legal issues in a case;
    _____ e.  Avoiding substantial injury to innocent third parties, specifically _____.
    __X__ f.  Avoiding substantial injury to a party by the disclosure of matters protected by a common law or privacy right not generally inherent in this type of proceeding, specifically: Defendant's confidential, attorney-client privileged and attorney work product information.
    _____ g.  Complying with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law, specifically:_____.

    __X___.  Preventing disclosure of records made confidential under the Florida and United States Constitutions and Florida and federal law [see Rule 2.420 (c)(7)].

    __X___.  Preventing disclosure of records presently deemed to be confidential by court rule, including the Rules of Admission to the Bar, by Florida Statutes, by prior case law of the State of Florida, and by the rules of the Judicial Qualifications Commission [see Rule 2.420 (c)(8)].

2

HC2-00000408

SA-154

2.  The Court further finds that no less restrictive measure is available to protect this/these interest(s), and that the degree, duration and manner of confidentiality ordered herein are no broader than necessary to protect the interest(s).

**IT IS HEREBY ORDERED:**

The Clerk of the Circuit Court is hereby directed to treat as confidential immediately the following materials related to this matter and to keep such materials from public access: [*select only one*]

_____ 1.  The party's name on the progress docket. On the public progress docket, the Clerk of the Circuit Court shall substitute the following for the party's name: _____. Further, the Clerk shall ensure that the party's name is redacted from all public materials in the file and that the final judgment is recorded in a manner that does not reveal the identity of the party. However, the progress docket and the file shall otherwise remain available to the public.

_X_ 2.  The following documents within the court file: (a) Each of paragraphs 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 40, 48, 49, 56, 58, 66, 78, 85, 86, 90, 97, 101, 105, 109, 110, 114, 122, and 125 set forth in the Complaint filed in the above captioned action (Docket No. 1 E-Filed on 04/15/2020; Filing#106271018); and (b) Plaintiff's *Motion To Determine The Confidentiality Of Court Records Pursuant To Fla. R. Jud. Admin. 2.40 And To Unseal The Unredacted Complaint* (Filing #117197477 E-Filed 11/24/2020); and (c) Plaintiff's *Memorandum In Support Of Plaintiff's Motion To Unseal The Complaint* Filing (#117197477 E-Filed 11/24/2020); and (d) all hearing transcripts that refer to or describe the Complaint including, without limitation, those certain *Transcripts of Proceedings* of the hearings with the Court in this action on June 22, 2020, December 9, 2020, and December 30, 2020; and (e) Defendant's *Emergency Motion to Determine Confidentiality of Court Records Pursuant to Florida Rule of Judicial Administration 2.420(e)(1)* (Filing #106470209 E-Filed on 4/20/2020); and (h) Plaintiffs *Motion In Limine No. 5 (Public Health and Safety)* and attached *Affidavit* of Andrew Delaney and draft order (Filing # 117818538 E-filed 12/08/2020).

_____ 3.  The entire court file. However, the progress docket shall remain open to the public subject to any substitution of a party's name set forth above.

_____ 4.  The entire court file and the progress docket. The progress docket shall not be available on any public information system. However, the case number shall remain public.

It is further **ORDERED** that any materials treated as confidential pursuant to this Order may be disclosed only as follows:

1.  to any judge of this Circuit for case-related reasons;

3

HC2-00000409

SA-155

2.  to the Chief Judge or his or her designee;
3.  to authorized government agencies;
4.  to the following specific individuals: the Plaintiff and the named Defendants in this action and the attorneys providing legal services relating to this action for Plaintiff and the named Defendants in this action; or
5.  by further order of the Court.

It is further **ORDERED** that, within 10 days of the date of this Order, the Clerk shall post a copy of this Order in a prominent public location and the Melbourne Courthouse, 51 Nieman Ave, Melbourne, FL 32901 and the Clerk's website for a period of 30 days to provide public notice.

It is further **ORDERED** that the Clerk is hereby authorized to open any materials determined to be confidential pursuant to this Order for the purpose of filing, microfilming or imaging files, or transmitting a record to an appellate tribunal. The materials shall be treated as confidential immediately upon completion of the filing.

**DONE AND ORDERED** in Chambers, at the Melbourne Courthouse, 51 Nieman Ave, Melbourne, FL 32901, this 30th day of December, 2020.

The Honorable George B. Turner
Circuit Judge

**Conformed Copies furnished via the Florida E-Portal to:**
Christopher T. Beres, Esq.
Tino Gonzalez, Esq.
James H. Fallace, Esq.
Vincent A. Citro, Esq.

4

HC2-00000410

SA-156

# EXHIBIT B

SA-157

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

HC2, INC.,

                      Plaintiff,

                      -v-

ANDREW DELANEY,

                      Defendant.

-------------------------------------------------- X

Civil Action No.: 1:20-cv-3178

**ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

Upon the Court's consideration of the application by Plaintiff, HC2, Inc. ("HC2"), seeking a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Verified Complaint, Memorandum of Law, and other submissions submitted herewith, and this Court having determined that good and sufficient reasons exist to proceed by way of Order to Show Cause, it is hereby:

**ORDERED** that the Defendant appear and show cause on the _____ day of _____, 2020, before the United States District Court for the Southern District of New York, Hon. _____, in the United States Courthouse, located at _____, New York _____, at _____, or as soon thereafter as counsel can be heard, why an Order should not be entered provisionally granting, pending a final determination of this action or further Order of this Court, a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure:

1.      Preliminarily enjoining and restraining the Defendant from:

SA-158

(i)     Continuing to possess and not return any and all Project documents he acquired while employed with HC2;

(ii)    In any way disclosing, disseminating revealing or continuing to disclose, disseminate or reveal any information he acquired during the Project; and

(iii)   Filing, or causing to be filed, on this Court's public docket any document that discloses, disseminates, or reveals information acquired during the Project; and

(b) ordering Delaney:

(i)     To provide an accounting of all documents, material or other Confidential Information, or copies thereof, that he has retained from the Project, including but not limited to any and all emails or text messages containing Confidential Information in form or substance, photographs or screenshots of Confidential Information, and any notes or other records he may have made; and

(ii)    To return, within 24 hours, any and all documents, files, property, and/or data he acquired from, or otherwise belonging to HC2, the Law Firm Customer, or the Corporate Client.

2.    Granting such other relief as the Court deems equitable and just.

2

SA-159

And it is further **ORDERED** that pending further hearing on this Order to Show Cause, Defendant is temporarily enjoined from:

a) In any way disclosing, disseminating, revealing or continuing to disclose, disseminate, or reveal any information he acquired during the Project; and

b) Filing, or causing to be filed, on this Court's public docket, any document that in any way, directly or indirectly, discloses, disseminates, or reveals information acquired during the Project.

Defendant shall file and serve a written response to this Order to Show Cause and proof of service by _____, 2020.

The Plaintiff must file and serve any written reply to the Defendant's opposition to the Order to Show Cause by _____, 2020.

A copy of this Order to Show Cause, Verified Complaint, supporting affidavit, declaration and Memorandum of Law submitted in support of this application, together with a summons, shall be served upon the Defendant within _____ days of the date hereof, in accordance with Rule 4 of the Federal Rules of Civil Procedure.

The Plaintiff must file with the court its proof of service of the pleadings and supporting documents on the Defendant on or before 5 p.m. on _____, 2020 or no later than _____ days before the return date.

**SO ORDERED**.

Dated: April ____, 2020

_____
United States District Court Judge

3

SA-160

# EXHIBIT C

SA-161

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------  X
HC2, INC.,                                            :
                                                     :     Civil Action No. 1:20-cv-3178 (LJL)
                                                     :
                          Plaintiff,                 :
                                                     :
                                                     :
              -v-                                    :
                                                     :
                                                     :
ANDREW DELANEY,                                      :
                                                     :
                                                     :
                          Defendant.                 :
                                                     :
----------------------------------------------------  X
```

<center>

**TEMPORARY RESTRAINING ORDER**

</center>

Upon the Court's consideration of the motion by Plaintiff HC2, Inc. ("HC2"), seeking a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Plaintiff's PI Motion"), the Verified Complaint, and the Memorandum of Law and its related attachments, as well as Defendant Andrew Delaney's responsive filings, and following a hearing conducted on April 29, 2020 beginning at noon EST ("Hearing"), this Court having determined that good and sufficient reasons exists, it is hereby:

**ORDERED** that:

a. Starting immediately from the time of the Hearing, the Defendant is temporarily restrained from divulging any information that is privileged, confidential or protected by his non-disclosure and/or employment agreement(s) with the Plaintiff, and that he learned through his employment with Plaintiff.

SA-162

b.      This Court finds that in light of the current COVID-19 climate and Defendant's related out-of-state unavailability, good cause exists to extend this temporary restraining through and including May 27, 2020;

c.      The parties shall appear for a status telephonic status conference, by dialing the Court's conference line at 888-251-2909 (access code 2123101), at 12:00 p.m. on May 6, 2020 to discuss the scheduling of a preliminary injunction hearing and the scheduling of other matters relating to this case on a going forward basis;

d.      The parties shall confer, and by 5:00 p.m. on Monday, May 4, 2020 submit a proposed case management plan with respect to discovery generally; and,

e.      In preparation for a preliminary injunction hearing on the matters raised in Plaintiff's PI Motion, expedited discovery is permitted; the parties shall have the right to take discovery on an expedited basis in advance of the preliminary injunction hearing.

**SO ORDERED**.

Dated: April 29, 2020

_____
Lewis J. Liman
United States District Court Judge

2

SA-163

# EXHIBIT D

SA-164

K5R7HC2C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HC2, INC.,

                Plaintiff,

          v.                          20 Civ. 3178 (LJL)

ANDREW DELANEY,

                Defendant.

------------------------------x

                                      New York, N.Y.
                                      May 27, 2020
                                      12:00 p.m.

Before:

                    HON. LEWIS J. LIMAN

                                      District Judge

                APPEARANCES (via telephone)

KASOWITZ BENSON LLP
     Attorneys for Plaintiff
BY:  RONALD ROSSI
     ANN ST. PETER-GRIFFITH
     ANDREW MUIR

ROBERT ROTMAN
     Attorney for Defendant

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K5R7HC2C

and not with the full seven days.  Even then it is a routine demand letter and it's not an extortion.  See U.S. v. Jackson, 180 F.3d 55, 61, that a claim of right is not an extortion.

With respect to the request for injunctive relief, in a similar circumstance in American Airlines, Inc. v. Imhof, 620 F. Supp. 2d 574, 580 (S.D.N.Y June 3, 2009), Judge Kaplan found that the defendant -- who has misappropriated trade secrets from his employer and was subsequently sued and placed on administrative leave -- "has learned -- by reason of plaintiff's claim, his new employer's reaction, and consultation with his newly acquired counsel -- that there is substantial limitations on his freedom of action," which realization was made clear by defendant's subsequent behavior. Judge Kaplan concluded that under such circumstances, "there is no material risk that defendant will retain copies of documents, much less that he would disclose them ..."  So too here.  That defendant has repeatedly stated in the face of threats of sanctions and the complaint here that he retains no confidential or privileged information, and that he will not attempt to disclose confidential information.  I will also cite Braun, Inc. v. Optiva, 2000 WL 1234590, at *2 (S.D.N.Y. August 31, 2000) (holding that defendant's statements and actions indicate there is not a danger of a future violation, and therefore an injunction is not warranted).

One final point.  Although the issue has not been

SA-166

K5R7HC2C

would ask that the parties meet and confer and file redacted papers by one week from today redacting the information that's truly confidential and unredacting any information that has already been revealed on the public record, particularly by the plaintiff.

Second, I will note that this is an ongoing case. I have a case management plan in front of me that I have reviewed. I would also ask the parties to meet and confer as to whether there are any alterations that need to be made on that case management plan in light of this ruling or in light of the plaintiff's intention to make counterclaims. And you can do that also by one week from today.

Any questions by any of the parties?

MR. ROSSI: None from plaintiff, your Honor.

MR. ROTMAN: None from the defendant, your Honor.

THE COURT: Thank you both. Everybody stay safe and healthy. As I mentioned, I think this case was very well argued and well briefed. I appreciate all the work that the parties did, and everybody stay safe and healthy. Thank you.

- - -

SA-167

# EXHIBIT E

SA-168

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
HC2, INC.,

               Plaintiff,                          1:20-cv-03178-LJL

         -against-                     DEFENDANT'S ANSWER AND
                                      COUNTERCLAIMS_____
ANDREW DELANEY,

               Defendant.                **JURY TRIAL DEMANDED**
----------------------------------------------------------------x

Defendant Andrew Delaney, by his attorney Robert Rotman, Esq., hereby responds to the complaint of Plaintiff dated April 22, 2020 as follows:

ANSWER

Defendant specifically responds to the individually numbered allegations of Plaintiff's complaint as follows:

1.      The allegations in paragraph 1 are denied.

2.      The allegations in paragraph 2 are denied except that Defendant admits that "Delaney, along with two other HC2 employees, began working on the Project at HC2's facility in New York City," on September 30, 2020.

3.      The allegations in paragraph 3 are denied.

4.      The allegations in paragraph 4 are denied.

5.      The allegations in paragraph 5 are denied.

6.      The allegations in paragraph 6 are denied.

1

SA-169

7. The allegations in paragraph 7 are denied.

8. The allegations in paragraph 8 are denied.

9. The allegations in paragraph 9 are denied.

10. The allegations in paragraph 10 are denied.

11. The allegations in paragraph 11 are denied.

12. The allegations in paragraph 12 are denied.

13. The allegations in paragraph 13 are denied.

14. The allegations in paragraph 14 are admitted.

15. The allegations in paragraph 15 are denied.

16. The allegations in paragraph 16 are denied.

17. The allegations in paragraph 17 are admitted.

18. The allegations in paragraph 18 are denied.

19. The allegations in paragraph 19 are denied except admitted that on September 30, 2019, Delaney started work on the document review.

20. The allegations in paragraph 20 are denied.

21. The allegations in paragraph 21 are admitted.

22. The allegations in paragraph 22 are denied.

23. The allegations in paragraph 23 are denied.

24. The allegations in paragraph 24 are denied.

SA-170

25.     The allegations in paragraph 25 are denied.

26.     The allegations in paragraph 26 are denied.

27.     The allegations in paragraph 27 are denied.

28.     The allegations in paragraph 28 are denied.

29.     The allegations in paragraph 29 are denied.

30.     The allegations in paragraph 30 are denied.

31.     The allegations in paragraph 31 are denied.

32.     The allegations in paragraph 32 are denied.

33.     The allegations in paragraph 33 are denied.

34.     The allegations in paragraph 34 are denied except that Delaney admits he was an at-will employee.

35.     The allegations in paragraph 35 are denied.

36.     The allegations in paragraph 36 are denied.

37.     The allegations in paragraph 37 are denied.

38.     The allegations in paragraph 38 are denied.

39.     The allegations in paragraph 39 are denied.

40.     The allegations in paragraph 40 are denied.

41.     The allegations in paragraph 41 are denied.

42.     The allegations in paragraph 42 are denied.

3

SA-171

43.     The allegations in paragraph 43 are denied.

44.     The allegations in paragraph 44 are denied.

45.     The allegations in paragraph 45 are denied.

46.     The allegations in paragraph 46 are admitted.

47.     The allegations in paragraph 47 are denied.

48.     The allegations in paragraph 48 are denied.

49.     The allegations in paragraph 49 are denied.

50.     The allegations in paragraph 50 are denied.

51.     The allegations in paragraph 51 are admitted.

52.     The allegations in paragraph 52 are denied.

53.     The allegations in paragraph 53 are denied.

54.     The allegations in paragraph 54 are admitted.

55.     The allegations in paragraph 55 are denied.

56.     The allegations in paragraph 56 are denied.

57.     The allegations in paragraph 57 are denied.

58.     Defendant denies that Plaintiff is entitled to any of the relief sought in its prayer for relief.  Each and every allegation of the complaint not elsewhere responded to is hereby expressly denied.

<u>FIRST DEFENSE</u>

4

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2), Defendant asserts the defense of lack of subject-matter jurisdiction and the defense of lack of personal jurisdiction.

Plaintiff did not properly serve the complaint on him.

SECOND DEFENSE

Plaintiff has no standing to sue, and therefore the complaint should be dismissed with prejudice.[1]

THIRD DEFENSE

The complaint fails to state a claim upon which relief can be granted.

FOURTH DEFENSE

The complaint is unconstitutionally vague and is not clear about who, what, or when they are referring to.  It refers to "the Corporate Client", "the Law Firm", "the Project", "the State Court Complaint", "the Chief Executive Officer and Board of Directors," "the Employment Agreement",[2] "NDA", "Confidential Information", "Conduct Rules", and all these other meaningless defined terms.  It is impossible for Defendant to know what he is accused of doing and what he has to respond to in violation of his constitutional right to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

_____

[1] Defendant was led to believe he was working jointly for "Hire Counsel, Inc." but this entity, if it even exists at all, is not registered as d/b/a in New York State where Defendant was working.

[2] In footnote 1 of the complaint Plaintiff makes the lame excuse about "the Employment Agreement": "In order to avoid further unnecessary harm to HC2, counsel has not submitted copies of the relevant employment agreements as exhibits, but those documents are of course available if the Court requests them."  This makes no sense.  The attachment of an employment agreement could not possibly cause harm to Plaintiff.  The real reason for not attaching it is there is no such agreement because Defendant was not working for Plaintiff on December 28, 2016 as alleged.

5

FIFTH DEFENSE

The complaint violates Defendant's rights under the First Amendment to the United States Constitution.[3]  Defendant has a right to make public health and labor law petitions against Plaintiff which are in the public interest.

SIXTH DEFENSE

There was no employment agreement between Plaintiff and Defendant.[4]

SEVENTH DEFENSE

Any information in this case was not being treated as confidential because it was shared with third persons on the other side, and was therefore not privileged.

Also, Plaintiff illegally disclosed Defendant's private and confidential information to the other side.

EIGHTH DEFENSE

Plaintiff is not entitled to equitable relief since "he who comes into equity must come with clean hands" ("he who seeks Equity must do Equity").  Plaintiff firstly disclosed and leaked Defendant's confidential personal information to the other side in breach of contract and in

---

[3] https://law.yale.edu/sites/default/files/area/center/liman/document/50-4_cover.pdf

[4] On April 22, 2020, Marc E. Kasowitz, Plaintiff's attorney, sent an email to Defendant's attorney stating "We represent HC2, Inc. ('HC2'), a legal staffing company. HC2 has employed your client, Andrew Delaney ('Delaney'), a licensed New York attorney, as a contract attorney since December 28, 2016, pursuant to a written employment contract ('Employment Agreement')."  (emphasis added).  This is utterly false.  He makes it sound as if Defendant was working for Plaintiff continuously since December 28, 2016 and in perpetuity.  Defendant never agreed to enter into an employment agreement with Plaintiff forever, and would have had no reason to do so since he was working for them for a low hourly wage, zero benefits, and for a short time.  He is a merely a gig worker who works for many agencies and the standard practice is that he has to sign a new agreement for any new document review.  He is not allowed to work for multiple agencies at the same time, although he can be on their mailing lists.  The whole reason workers like Defendant work in the gig economy is the freedom not to have permanent contracts.

6

SA-174

violation of his privacy rights, and secondarily filed this false complaint against him. Due to Plaintiff's dirty hands, it is Defendant who should be entitled to an injunction against Plaintiff not the other way around.

<div align="center">NINTH DEFENSE</div>

The complaint should be dismissed due to Plaintiff's fraud.

<div align="center">TENTH DEFENSE</div>

Defendant is entitled to protection under applicable whistleblower laws.

<div align="center">COUNTERCLAIMS</div>

<div align="center">PARTIES</div>

1.     Plaintiff/Counterclaim Defendant HC2, Inc. ("HC2") is incorporated in the District of Columbia with its principal place of business in Chicago, Illinois.

2.     Defendant/Counterclaim Plaintiff Andrew Delaney ("Delaney") is a resident of the State of New York.

<div align="center">JURISDICTION AND VENUE</div>

3.     Jurisdiction is based on 28 U.S.C. § 1332 because (1) the amount in controversy exceeds $75,000 and (2) all plaintiffs are of different citizenship than all defendants.

4.     Venue is proper in this District under 28 U.S.C. § 1391(b) because it is a judicial district in which any defendant resides and because it is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

<div align="center">FACTS</div>

5.      Delaney works in the "gig economy".   He is a translator and a foreign language document review worker.

6.      After starting on the document review reviewing Thai documents on September 30, 2019, Delaney learned that the review involved persons and issues which could pose a grave personal danger to him in a Third World country.

7.      On November 28, 2019 (Thanksgiving), Delaney received a personal email from a party on the other side of the review[5] which made it clear that they knew he was working on the review and which was an implied "set-up" or threat.  The clear message was "we know it is you."

8.      Delaney found out that his name, involvement, personal information, and work were being disclosed to persons on the other side of the review.  The servers and review center were located offshore in Asia.

9.      Delaney emailed the document review law firm[6] and complained about this.  The law firm asked for a copy of the email on the condition it would not be shared with the company but it reneged on this.

10.     After being double-crossed by HC2 and the law firm, Delaney immediately applied for other work and left.  January 3, 2020 was his last day of work.

11.     On February 17, 2020, at HC2's request, Delaney was rehired for work on the document review.

_____

[5] Due to the TRO, Delaney is not naming the specific persons on the other side of the review.  As used herein, the "law firm" is the U.S. law firm and the "company" is the foreign company who was conducting the document review.

[6] On March 27, 2020, the law firm emailed Defendant: "You are incorrect that Hire Counsel is the agent of [the law firm] or [the company]."

12.     On March 7, 2020 – 10 days before he was fired – New York State Governor Andrew Cuomo declared a state of emergency.

13.     Starting on January 21, 2020 as the coronavirus spread throughout the United States and especially New York, HC2 was not maintaining safe and healthy office conditions.  Document review is similar to a call center. Delaney sat two feet away from the other two reviewers in a small office with no windows.  HC2's HR department simply emailed workers to commute with wipes and to watch President Trump's speech on TV.[7]

14.     On March 17, 2020, Delaney emailed HC2 and the law firm and complained to them that workers were coming into the office with flu-like symptoms and asked if he could either work remotely or if they could stay at home with pay while still being on the document review.[8] At 1:02 PM – 90 minutes later - the law firm emailed him back stating that the company said that remote work was not an option ("we have not been in a position where we are able to conduct a remote review").[9]  A few minutes later, HC2 emailed Delaney and the others saying that they were terminated:  "We are requesting all team members to gather their belongings and depart the facility

---

[7] On March 5, 2020, HC2 sent out an email subject "Inform - COVID-19 & Seasonal Flu – Update" stating:  "Due to the nature of our business, we will continue to operate all our locations, but continue to take precautionary measures, such as reducing the number of contractors per review room."  However, this did not happen.  Instead of closing its office, HC2 said "Commute with a pack of antibacterial wipes with alcohol and wipe down the surfaces you come into contact with (i.e., door handles, elevator buttons, remote control, telephone)."  It further said: "Avoid people who are obviously sick….  Make sure you, and the people around you, follow good respiratory hygiene. This means covering your mouth and nose with your bent elbow or tissue when you cough or sneeze. Then, dispose of the used tissue immediately. Droplets spread viruses. By following good respiratory hygiene, you protect the people around you from viruses such as cold, flu and COVID-19…. Stay home if you feel unwell. If you have a fever, cough and difficulty breathing, seek medical attention and call in advance."

[8] Delaney came into the office wearing a mask, latex gloves, and goggles which he bought on his own.  His hands were badly hurt from wearing the gloves at his computer all day.

[9] Now, HC2 shamelessly claims it was offering Delaney remote work.

9

in an orderly fashion and exit our environment since the project is effectively ending… We will continue to monitor the efforts of Congress in helping to off-set the impact of lost work."[10]

15.     There is no question that Delaney was terminated in unlawful retaliation for his whistleblower notification about the office conditions and for criticizing HC2's HR department.[11]

16.     Knowing that Delaney would file a public health and employment lawsuit against it, HC2 and its lawyers cooked up this bogus lawsuit accusing him of extortion[12] and stealing documents.

17.     HC2 and its lawyers knew perfectly well that it was physically impossible for Delaney to steal or download documents and that there were no hard copies of anything.[13]

<div align="center">

COUNT ONE
FRAUDULENT INDUCEMENT

</div>

18.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

---

[10] This did not stop HC2 from fabricating in the complaint that Delaney had not been terminated.  On March 30, 2020, HC2's general counsel sent an email stating that "Hire Counsel lawfully terminated his employment." It further stated: "We hope that this email clarifies …..the circumstances around Hire Counsel's decision to terminate his employment." But paragraph 23 of the complaint falsely states that: "HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2."  Like the rest of its complaint, it is the exact opposite of the truth.  To try to cover up its unlawful termination of him after the fact, HC2's HR department then started sending Defendant/Counterclaim Plaintiff uninvited harassing emails after he was terminated pretending that he was still working there unpaid and that it was offering him remote work.

[11] The immediate nature of the firing of Defendant/Counterclaim Plaintiff without any advanced notice is further proof that it was retaliatory.  HC2's Handbook paragraph 113 says "Should the Company need to terminate your employment because of reorganization, job elimination, economic downturns, or lack of work, the Company will try to give you as much advance notice as is practical."

[12] Paragraph 31 states:  "Finally, the lawyer who was assisting Delaney in carrying out his scheme to extort a significant payment from the Corporate Client, is the same lawyer who signed and caused to be filed the State Court Complaint."

[13] ABA Model Rule of Professional Conduct 3.3 (Candor Toward the Tribunal) states: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

19.     Delaney detrimentally relied on the HC2's two misrepresentations or material omissions of fact that (a) the work involved a normal document review that would not pose risks or danger to him and (b) his identity, personal information, involvement, and work-product would not be disclosed to outside third parties in this case, even worse, to the other side.  These misrepresentations or material omissions of fact were made for the purpose of inducing Delaney to rely on it and them, Delaney justifiably relied on it and them in agreeing to work and continuing to work on the document review, and he was injured as a result of that reliance.

20.     As a result, HC2 is liable to pay damages equal to the actual pecuniary loss to Delaney directly caused by the fraudulent inducement in an amount to be proven at trial.

COUNT TWO
FRAUDULENT MISREPRESENTATION

21.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

22.     Fraudulent misrepresentation involves a party making a materially false statement to another party, causing a deal between the two parties to be based on a false premise.  These were made in a number of formats including writing, speech, gestures, and silence.

23.     HC2 made three fraudulent misrepresentations to Delaney.

24.     Firstly, HC2 fraudulently misrepresented that its office would be a safe and "healthful" working environment.  This representation was known to be false when it was made or made recklessly without knowledge of its truth.  HC2 had Delaney come into the office during the coronavirus despite the unlawful, unsafe, and unhealthy public health issues present there.

25.     Secondly, HC2 fraudulently misrepresented that this was a normal document review which would not involve any dangerous issues or personal risks to Defendant.  This was either because HC2 was only interested in making a "cut" of the Delaney's work and had no idea

what the document review was about or what was happening in Asia, or that it knew but deliberately did not disclose this to Delaney.  It turned out that the work was very dangerous and posed a grave threat to Delaney's life, work, and property.

26.     Thirdly, HC2 fraudulently misrepresented that Delaney's working on the document review would be kept confidential and would not be disclosed to outside parties, in this case, to the other side, and that it would maintain his privacy rights.  Instead, without telling him, Delaney's identity, personal information, involvement, and work was disclosed to the other side.  HC2 knew perfectly well the risks of having Delaney's information and work be with the foreign company.  HC2 merely acted as a "passthrough" or "veil" for the law firm and the company to claim no relationship with Delaney whenever it suited them, such as in this lawsuit, while not controlling or protecting Delaney's information and privacy at all.

27.     As a result of HC2's multiple fraudulent misrepresentations above, any agreement with HC2 is rescinded and Delaney is entitled to actual damages in an amount to be proven at trial.

COUNT THREE
WHISTLEBLOWER RETALIATION

28.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

29. HC2 unlawfully retaliated against Delaney after he made a complaint against it under N.Y. Labor Law § 740[14] and § 215.

30.     HC2's subsequent actions were an effective admission that it had illegally retaliated against Delaney.

---

[14] Section 740 states: "2.   Prohibitions.   An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a)  discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety…."

12

SA-180

31.     HC2 also did not comply with paragraph 604 of its own Handbook which states: "Report immediately to your supervisor any indications that the environment is not being maintained in a safe and healthful fashion."

32.     The bringing of this baseless action is further retaliation for Delaney's whistleblower complaint.

33.     As a result of HC2's retaliatory and other unlawful acts, Delaney is entitled to injunctive relief, reinstatement to the same position or to an equivalent position, compensation for lost salary and benefits, and recoupment of reasonable costs, disbursements, and attorney's fees in an amount to be proven at trial but not less than $450,000.

## COUNT FOUR
## BREACH OF CONFIDENTIAL RELATIONSHIP

34.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

35.     HC2 breached the confidential relationship with Delaney when it, the law firm, and the company disclosed information about him to the other side.

36.     For the tort of breach of confidential relationship, a cause of action consists of the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.

37.     As a result of its tortious acts, HC2 is liable to pay damages to Delaney in an amount to be proven at trial.

## COUNT FIVE
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

13

39.    HC2 intentionally inflicted emotional distress on Delaney when it disclosed his identity, personal information, involvement, and work to the other side and brought this false case against him.

40.    Here, there is extreme and outrageous conduct, intent to cause, or disregard of a substantial probability of causing, severe emotional distress, and there is a causal connection between the conduct and the injury.

41.    As a result of HC2's conduct, Delaney suffered damages including medical problems, severe humiliation, mental anguish, and emotional and physical distress, has been injured in mind and body in the sum of $5,000,000, special damages including loss of wages and medical and related expenses incurred or paid, and punitive damages in an amount to be proven at trial.

<div align="center">

COUNT SIX
INVASION OF PRIVACY
</div>

42.    The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

43.    HC2's disclosure of Delaney's personal information to the other side was a violation of its own privacy policies[15] and his right to privacy.  In so doing, HC2 intruded on Delaney's solitude and private affairs and publicly disclosed private facts.

44.    N.Y. Civ. Rights L. §§ 50 and 51 protect Delaney's identity from unauthorized commercial use and recognize a person's right to be left alone.

---

[15] "Hire Counsel uses Human Resource personal information for limited purpose that includes complying with employment related laws and regulations as well as for payroll purposes." https://www.hirecounsel.com/wp-content/uploads/2018/12/Hire-Counsel-Global-GDPR-Data-Privacy-Policy_120618.pdf

45.     As a result of its unlawful acts, HC2 is liable to Delaney damages in an amount to be proven at trial.

## COUNT SEVEN
## FAILURE TO PAY N.Y. SICK LEAVE

46.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

47.     HC2 failed to pay Delaney for his accrued sick time under N.Y. Labor Law § 196-b.

48.     It is illegal to interfere with investigations or to retaliate against employees who exercise their rights under the Paid Sick Leave Law.[16]

49.     HC2 is liable to pay Delaney for all accrued and unpaid sick leave.

## COUNT EIGHT
## DEFAMATION PER SE (LIBEL PER SE)

50.     The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

51.     HC2 and its attorneys maliciously defamed Delaney when they accused him of extortion and implied that he stole  documents in paragraphs 1, 9, 29, 31, 43, and 57[17] of the complaint and accused him of being unethical in paragraphs 1, 7, 9, 32, and 39 and then publicized this.[18]

---

[16] https://www1.nyc.gov/assets/dca/downloads/pdf/about/PaidSickLeave-AnswerstoEmployerQuestions.pdf

[17] Paragraph 57(i) requests an order preventing Defendant/Counterclaim Plaintiff from "[c]ontinuing to possess and not return any and all documents in any form he acquired during and as a result of his employment with HC2". The word "continuing" is a clear statement that he had documents.

[18] From April 23-29, 2020, due to this case, various articles appeared falsely accusing Defendant/Counterclaim Plaintiff of "extortion" and "blackmail."

15

52. HC2 acted with actual malice because it knew that what they accused Delaney of was physically impossible and because it knew that Delaney was planning to file legitimate public health and employment claims against HC2.

53. Delaney has been damaged by these false statements because the statements subjected him to hatred, distrust, ridicule, contempt, and disgrace.

54. Delaney has been damaged by these false statements because the statements injured him in his profession and business.

55. HC2 is liable to Delaney for all compensatory damages including consequential and incidental damages in the amount of $15,000,000.

## COUNT NINE
## ABUSE OF PROCESS

56. The allegations of paragraphs 1 through 17 are re-alleged and incorporated herein by reference.

57. HC2 regularly issued civil process with the intent to do harm without cause or justification and used the process in a perverted manner to achieve a collateral objective.

58. Paragraph 57 of the complaint which is its request for a Temporary Restraining Order is based on the false and defamatory premise that Delaney stole documents, when it knew that he did not and that doing so was physically impossible.

59. The sole purpose of this complaint was to deter Delaney from pursuing legitimate public health and employment claims against the HC2.

60. As a result of its intentional tortious acts, HC2 is liable to Delaney in an amount to be proven at trial.

## SANCTIONS

62.     Sanctions are requested under Fed. R. Civ. P. Rule 11 against HC2 and/or its attorneys for filing a knowingly non-good faith case against Delaney for an improper purpose.

JURY DEMAND

63.     Delaney asserts his rights under the Seventh Amendment to the United States Constitution and demands, in accordance with Fed. R. Civ. P. Rule 38, a trial by jury on all issues.

PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff respectfully requests the following relief:

1.     That the claims asserted in Plaintiff's complaint be dismissed with prejudice.

2.     That Plaintiff's requests for a Preliminary Injunction and Permanent Injunction be denied.

3.     That the Defendant/Counterclaim Plaintiff be awarded all compensatory, economic, special, and punitive damages of at least $20,000,000.

4.     That the Defendant/Counterclaim Plaintiff be awarded actual damages.

5.     That the Defendant/Counterclaim Plaintiff be awarded costs, attorneys' fees and expenses.

6.     That the Defendant/Counterclaim Plaintiff be awarded pre-judgment and post-judgment interest.

7.     That the Defendant/Counterclaim Plaintiff be awarded such other relief as the Court shall deem just and proper.

Dated: May 12, 2020                    Respectfully submitted,
                                       By:/s/Robert Rotman_____
                                       Robert Rotman
                                       305 West 24th Street Apt. 17R
                                       New York, NY 10010

SA-185

(646) 606-4867
rrotmanlaw@gmail.com

*Attorney for Defendant/Counterclaim Plaintiff*

**JURY TRIAL DEMANDED**

SA-186

<u>VERIFICATION</u>

I hereby declare under penalty of perjury that I have read the foregoing Defendant's Answer and Counterclaims, and that the allegations contained therein are true to the best of my knowledge.

Dated: May 12, 2020                    /s/Andrew Delaney_____
       New York, NY                    Andrew Delaney, Esq.

SA-187

# EXHIBIT F

SA-188

**Ogletree
Deakins**

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

10 Madison Avenue, Suite 400
Morristown, NJ 07960
Telephone: 973-656-1600
Facsimile:  973-656-1611
www.ogletree.com

Michael Nacchio
Michael.Nacchio@ogletreedeakins.com

February 9, 2021

**Via ECF**

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> *Re:    HC2, Inc. v. Andrew Delaney*
> *Civil Action No. 20-cv-03178-LJL*

Dear Judge Liman:

This firm represents HC2, Inc.  Plaintiff writes to inform the Court that it today learned that Defendant filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy code on December 23, 2020.  Defendant's petition is pending under Case No. 1-20-44372-jmm in the United States Bankruptcy Court for the Eastern District of New York.  A copy of Defendant's petition is annexed hereto as Exhibit A.  Plaintiff brings this issue to this Court's attention at the first instance in light of the automatic stay set forth in 11 U.S.C. § 362.

Respectfully Submitted,

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*s/ Michael Nacchio*

Michael Nacchio

45554747.1

**A South Carolina Professional Corporation** ▪ Peter O. Hughes ▪ New Jersey Managing Shareholder

Atlanta ▪ Austin ▪ Berlin (Germany)  ▪ Birmingham ▪ Bloomfield Hills ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville
Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis
Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

SA-189

# EXHIBIT G

SA-190

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                  :

HC2, Inc.,                                    :

                        Plaintiff,       :

                                      :          20-cv-3178 (LJL)

      -v-                           :

                                        :            ORDER

ANDREW DELANEY,                  :

                                        :

                        Defendant.    :

                                        :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        In light of Defendant having filed for bankruptcy, *see* Dkt. No. 122, this action is STAYED pending further order of the Court.  *See* 11 U.S.C. § 362.

        The parties are ORDERED to file a status letter with the Court by April 22, 2021.  The motion to dismiss at Dkt. No. 100 is deemed withdrawn, without prejudice to renewal upon lifting of the stay.

        The Clerk of Court is respectfully directed to close the motion at Dkt. No. 100.

        SO ORDERED.

Dated: February 22, 2021
       New York, New York                    _____
                                            LEWIS J. LIMAN
                                     United States District Judge

SA-191

# EXHIBIT H

SA-192

Robert Rotman, Esq.
305 East 24th Street, Suite 17R
New York, NY 10010
(646) 606-4867
rrotmanlaw@gmail.com

April 22, 2021

Via ECF

The Honorable Lewis J. Liman
Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *HC2, Inc. v. Delaney*, 1-cv-20-03178-LJL

Dear Judge Liman:

I represent the defendant in the above-captioned action.

Pursuant to the Court's Order dated February 22, 2021 staying this action due to my client's pro se filing of a Chapter 7 petition and ordering the filing of a status letter by April 22, 2021 (Document No. 126), the status is that the bankruptcy case is still pending in the United States Bankruptcy Court for the Eastern District of New York.

My client has filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362 to lift the stay so that this Court can adjudicate this case.  That motion has been adjourned.

Thanking the Court in advance for considering this letter.

Respectfully,
/s/Robert Rotman

SA-193

# EXHIBIT I

SA-194

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:

ANDREW JOHN DELANEY,

          Debtor.

----------------------------------------------------------x

**Hearing Date:**    **April 8, 2021 at 2:00 p.m.**

Chapter 7

Case No. 20-44372 (JMM)

### THE CHAPTER 7 TRUSTEE'S OBJECTION TO THE DEBTOR'S MOTION TO DISMISS THE PENDING CHAPTER 7 BANKRUPTCY PROCEEDING

TO:    THE HONORABLE JIL MAZER-MARINO
       UNITED STATES BANKRUPTCY JUDGE

Gregory Messer, the Chapter 7 Trustee (the "Trustee") of the estate of Andrew John Delaney (the "Debtor"), by his proposed counsel, LaMonica Herbst & Maniscalco, LLP, submits this objection (the "Objection") to the Debtor's motion for the entry of an Order, pursuant to Bankruptcy Code §707(a), dismissing the Debtor's bankruptcy case, respectfully represents and alleges:

### BACKGROUND

1. On December 23, 2020 (the "Filing Date"), the Debtor filed a voluntary petition (the "Petition") for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2. In the Petition, the Debtor listed $1,110.00 in assets and $44,434.00 in liabilities.

3. On the Debtor's Statement of Financial Affairs ("SOFA"), the Debtor states that in 2018 his gross income was $20,270 and in 2019, his gross income was $48,993.

4. By Notice of Appointment, Gregory Messer, Esq., was appointed as the interim Chapter 7 Trustee of the estate, and has since duly qualified and is the permanent Trustee in this case.

SA-195

5.      On February 2, 2021, the Trustee conducted the initial section 341(a) meeting of creditors (the "341 Meeting").

6.      On February 4, 2021, the Trustee filed a Report of No Distribution, on the basis that there was no property available for distribution from the estate over and above that exempted by law.

7.      Subsequently, the Trustee discovered that the Debtor may have had, and may still have, interest in real properties that were neither disclosed on the Petition nor at the 341 Meeting. Additionally, the Trustee discovered several lawsuits commenced by the Debtor, none of which were disclosed on the Schedules or at the 341 Meeting.

8.      The Trustee discovered a lawsuit pending in the Supreme Court of New York, Index No. 16116/2019, captioned Andrew Delaney v. John D. Delaney, which, among other things, alleges that the Debtor's brother, John D. Delaney, took funds and property from their late mother that the Debtor asserts rights to. See complaint, annexed as **Exhibit A** (the "John Delaney Complaint"). The signature on the filed John Delaney Complaint matches the signature on the Debtor's Petition and was filed pro se. This lawsuit was not initially listed on the Debtor's Schedules or SOFA.

9.      The Trustee also discovered a lawsuit pending in the Supreme Court of New York, Index No. 657556/2019, captioned Andrew Delaney v. Sullivan & Cromwell, LLP, which alleges that Sullivan & Cromwell engaged in double dealing during an arbitration that cost the Debtor-Plaintiff millions of dollars in damages. See complaint, annexed as **Exhibit B** (the "Sullivan & Cromwell Complaint"). The signature on the filed Sullivan & Cromwell Complaint matches the signature on the Debtor's Petition and was filed pro se. This lawsuit was not initially listed on the Debtor's Schedules or SOFA. Significantly, in the Sullivan & Cromwell Complaint, the Debtor-

Case 1-20-44372-jmm    Doc 22    Filed 03/26/21    Entered 03/26/21 10:02:05

Plaintiff states he is "an attorney and expert on Southeast Asia," who "graduat[ed] from Harvard Law School in 1988, [where] he worked as an associate in the Foreign Practice Group at the law firm of Skadden Arps, Slate, Meagher & Flom, LLP ("Skadden Arps"), in New York and Hong Kong."

10.     There is also another lawsuit against the Debtor, which is being appealed, currently pending in the Court of Appeals for the Second Circuit, Case No. 21-79, captioned HC2, Inc. v. Delaney, which is an appeal of a case from the District Court for the Southern District of New York, Docket No. 20-cv-3178 (the "HC2 Lawsuit"). See appeal, annexed as **Exhibit C** (the "HC2 Appeal"). Upon information and belief, the Debtor is appealing a judgment entered against him for extorting his prior employer. Neither the judgment nor the appeal were initially listed on the Debtor's Schedules or SOFA.

11.     The Trustee's investigation also found: (i) four (4) distinct real property ownership records associated with the Debtor which the Trustee needs to investigate further, and (ii) twenty-seven (27) distinct addresses associated with this Debtor, including several P.O. Boxes, which the Trustee finds unusual.

12.     On March 9, 2021, the Trustee filed a Recission of the Report of No Distribution.

13.     On March 12, 2021, the Debtor filed a Notice of Change of Address and the instant Motion to Dismiss the case.

14.     In the Motion to Dismiss, the Debtor states he, as a pro se filer, was unaware of the consequences of filing bankruptcy and is inexperienced. The Debtor further states that he filed in the wrong venue, as he had moved prior to filing.

Case 1-20-44372-jmm    Doc 22    Filed 03/26/21    Entered 03/26/21 10:02:05

15.    On March 15, 2021, the Debtor filed amended Schedules: (1) listing on Schedule A/B the John Delaney lawsuit and the Sullivan & Cromwell lawsuit valued at $0.00, and (2) listing on Schedule F the HC2 judgment in the amount of $67,458.91.

## THE TRUSTEE'S OBJECTION

16.    The instant Motion is an attempt by the Debtor to prevent the Trustee from liquidating assets for the benefit of the estate.  The Trustee does not believe the Debtor is the naïve, uninformed, pro se Debtor he seeks to make himself appear. He is an attorney who has practiced law for at least 25 years, and was an associate at Skadden Arps. Although he may not have practiced bankruptcy, it is not believable that: (1) the Debtor would not understand the consequences of filing bankruptcy, (2) that he didn't understand which venue he should file in, and (3) that he inadvertently failed to disclose pending lawsuits. It is also highly suspect that the Debtor filed the Motion to Dismiss shortly after the Trustee filed the Recission of the Report of No Distribution. The Debtor also does not have only $44,434 in credit card debt as stated on his Motion to Dismiss, but also has a judgment against him for an additional $67,458.91.

17.    It appears that the Debtor attempted to file a bankruptcy proceeding and exclude the pending lawsuits in order to have his debts discharged and still keep the proceeds of the lawsuits. Once the pending lawsuits were discovered by the Trustee, the Debtor sought to dismiss his bankruptcy case.

18.    Further, the Debtor argues that dismissal should be granted because the case was filed in the wrong venue. However, (i) the Debtor chose the venue, (ii) the Debtor states he moved before filing, but the old address would still control venue pursuant to 28 U.S.C. §1408, and (iii) the Trustee sits in both the Southern and Eastern Districts of New York, so the difference in venue is inconsequential.

19.    Accordingly, the Trustee respectfully requests the Court deny the Debtor's Motion to Dismiss the instant Chapter 7 case.

## BASIS FOR RELIEF

20.    One of the overarching goals of the bankruptcy process is to maximize the value of the debtor's estate in order to maximize the return to the creditors.  See Bank of Am. Nat'l Trust & Savings Ass'n v. 203 LaSalle St. P'ship, 526 U.S. 434, 453 (1999) (observing recognized policy underlying the bankruptcy process of "maximizing property available to satisfy creditors" (citation omitted)).  The Debtor has listed creditors to whom he owes money and those creditors are entitled to receive payment on account of their claims.

21.    Motions to Dismiss are governed by section 707 of the Bankruptcy Code. Although this provision does not specifically provide for a debtor's motion to dismiss a voluntarily-filed petition, courts have routinely held that section 707(a) applies to such cases. Smith v. Geltzer, 507 F.3d 64, 72-76 (2d Cir. 2007). As a rule, however, "the debtor has no absolute right to dismissal of a Chapter 7 case." Id. (citations omitted); see In re Bruckman, 413 B.R. 46, 50 (E.D.N.Y. 2009) (Craig, C.J.) ("It is well settled that a debtor does not have the absolute right to dismiss a chapter 7 case." (citations omitted)). "Rather, a debtor seeking dismissal must show 'cause.'" Geltzer, 507 F.3d at 72 (citing 11 U.S.C. §707(a)). Accordingly, where "a debtor moves for dismissal, courts in this Circuit have determined whether cause exists by looking at 'whether dismissal would be in the best interest of all parties in interest.'" Id. (quoting In re Dinova, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997); see Bruckner, 413 B.R. at 50 ("When the debtor seeks dismissal of a chapter 7 case, a court must determine whether dismissal is in the best interest of all parties in interest, including the debtor." (citations omitted)).

Case 1-20-44372-jmm    Doc 22    Filed 03/26/21    Entered 03/26/21 10:02:05

22.    The decision of whether to grant the motion of a chapter 7 debtor seeking dismissal of a chapter 7 petitions is one that is "committed to the sound discretion of the bankruptcy court." In re Smith, 507 F.3d 64, 73 (2d Cir. 2007).  This Court must consider the benefit to the Debtor and it must consider the prejudice to the creditors.  See In re Bruckman, 413 B.R. 46, 50 (E.D.N.Y. 2009; Dinova v. Harris (In re Dinova), 212 B.R. 437, 442 (2d Cir. BAP 1997).

23.    It is unclear from the Debtor's Motion to Dismiss, whether he intends to commence another bankruptcy proceeding in the Southern District, or not re-file at all. With regards to venue, however, dismissal would not be warranted. Pursuant to 28 U.S.C. §1408, venue is proper in the jurisdiction where the Debtor resided for the longer portion of the prior 180 days. The Debtor stated that he moved prior to filing the Petition. However, the prior address in Queens would still control venue. Further, a change of venue would be inconsequential, as the Trustee sits in both the Eastern and Southern Districts of New York.

24.    With regards to the Debtor not re-filing, the Trustee submits that the creditors would be prejudiced as this Debtor is seeking dismissal to avoid administration of assets. "[A] strong possibility that additional assets of the estate may be discovered argues against dismissal and for retention of jurisdiction in order to assure the equitable and full distribution of newly discovered assets and voidable transfers to all creditors." In re Schwartz, 58 B.R. 923, 926 (S.D.N.Y. 1986) (citations omitted).

25.    In addition to the discovered pending lawsuits, the Trustee is also investigating further assets that may be available, including potential avoidance of transfers of real property, or other assets that were not disclosed. Further, the multiple (27) addresses associated with this Debtor is highly unusual, and the Trustee would like to investigate further.

SA-200

Case 1-20-44372-jmm    Doc 22    Filed 03/26/21    Entered 03/26/21 10:02:05

26.    The facts demonstrate that the Debtor attempted to hide his assets and obtain a discharge of his debts. Once the Trustee indicated that he would be investigating the claims of the estate, the Debtor filed the instant Motion. This Motion fails to lay any factual or legal support to grant the Motion.

27.    Accordingly, for the reasons set forth above, the Trustee respectfully requests that the Court deny the Debtor's Motion to dismiss the pending bankruptcy case.  Such relief will not benefit the creditors.

**WHEREFORE,** the Trustee respectfully requests that this Court deny the relief requested in the Motion and grant such other relief as is just and proper.

Dated:    March 26, 2021          **LAMONICA HERBST & MANISCALCO, LLP**
          Wantagh, New York       *Proposed Counsel to Gregory Messer, solely*
                                   *in his capacity as the Chapter 7 Trustee*

                          By:   *s/ Gary F. Herbst*
                                Gary F. Herbst, Esq.
                                Cristina M. Lipan, Esq.
                                3305 Jerusalem Avenue
                                Wantagh, New York 11793
                                (516) 826-6500
                                gfh@lhmlawfirm.com
                                cl@lhmlawfirm.com

SA-201

# EXHIBIT J

SA-202

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

BRIAN D. SPECTOR, ESQ.
DOUGLAS A. GOLDSTEIN, ESQ.
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike, Suite 202
Florham Park, New Jersey 07932-2261
Tel.: (973) 845-6526
Fax: (973) 593-4848
e-mail: dgoldstein@selawfirm.com
Attorneys for Respondent, HC2, Inc. d/b/a Hire
Counsel

| In re: | Case No.: ____1-20-44372-jmm____ |
|---|---|
| ANDREW JOHN DELANEY, | Chapter: _____7_____ |
| Debtor. | Judge: ___Jil Mazer-Marino___ |
| | Hearing Date: April 8, 2021 at 2:00 p.m. |

## OPPOSITION OF HC2, INC. D/B/A HIRE COUNSEL
## TO DEBTOR'S MOTION TO DISMISS CASE

HC2, Inc. d/b/a Hire Counsel ("HC2"), a creditor and interested party, by and through its counsel, Spector & Ehrenworth, P.C., hereby opposes the motion to dismiss (the "Motion to Dismiss") filed by the debtor, Andrew John Delaney ("Delaney"), and respectfully represents as follows:

### BACKGROUND

1. HC2 is a legal staffing company, which provides, among other things, attorneys and other personnel, as well as associated workspace and information technology infrastructure, to satisfy the short term and long term staffing needs of its clients, including law firms, corporations and government agencies. See Certification of Stephanos Zannikos In Opposition to Debtor's Motion to Dismiss Case ("Zannikos Cert."), ¶2.

### The HC2 Federal Lawsuit

2. On December 28, 2016, the debtor, Andrew Delaney ("Delaney"), executed HC2's employment contract (the "Employment Agreement"), which incorporated a Confidentiality and Non-Disclosure Agreement (the "NDA"), as well as HC2's conduct rules (the "Conduct Rules") and employee handbook (the "Employee

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

Handbook"), and an acknowledgment in which he agreed to adhere to the Conduct Rules and Employee Handbook (the "Policies Acknowledgment").  See Zannikos Cert., ¶3.

3. On September 30, 2019, HC2 assigned Delaney to a project (the "Project") with a law firm customer of HC2 (the "Law Firm Customer") for the benefit of a client of the Law Firm Customer (the "Corporate Client"), which was expected to be completed in mid-May 2020.  See Zannikos Cert., ¶4.

4. On March 17, 2020, the Law Firm Customer decided to suspend the Project in view of the COVID-19 pandemic while it considered the possibility of moving to a remote review.  The Law Firm Customer and its Corporate Client decided not to conduct the remainder of the review.  See Zannikos Cert., ¶5.

5. HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2.  Nonetheless, Delaney sent multiple emails on March 17 and 18, 2020 to the Law Firm Customer and the Corporate Client falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.  See Zannikos Cert., ¶6.

6. Delaney engaged counsel to demand $450,000 from the Corporate Client, but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel emailed a letter to the Corporate Client's Chief Executive Officer and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's privileged and confidential information if his demand was not met by April 14, 2020.  See Zannikos Cert., ¶7.

7. The Corporate Client did not capitulate to Delaney's demands or threats. On April 15, 2020, a day after Delaney's deadline passed, Delaney's lawyer signed and filed a state court complaint, which alleges and acknowledges that the John Doe plaintiff, identified therein as Delaney, gained the confidential and privileged knowledge and information disclosed therein during the course of a document review project for the Corporate Client.  See Zannikos Cert., ¶8.

8. On April 22, 2020, HC2 filed a Verified Complaint against the Debtor in the United States District Court for the Southern District of New York (the "SDNY Court") under Civil Action No. 1:20-cv-03178-LJL (the "HC2 Lawsuit").  See Zannikos Cert., ¶9, Exhibit 1.

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

Case 1-20-44372-jmm    Doc 27    Filed 03/26/21    Entered 03/26/21 15:23:05

9.      As discussed in more detail in the Verified Complaint, HC2 sought injunctive relief and asserted claims against Delaney for, among other things, breach of contract and "faithless servant" or breach of duty of loyalty or good faith.  See Zannikos Cert., Exhibit 1, p. 12-13.

10.     On May 13, 2020, Delaney filed his Answer and Counterclaims in the HC2 Lawsuit.  See Zannikos Cert., Exhibit 2.  In his Answer and Counterclaims, Delaney purportedly asserted claims against HC2 for, among other things, fraudulent inducement, fraudulent misrepresentation, whistleblower retaliation, breach of confidential relationship, intentional infliction of emotional distress and defamation per se.  See Zannikos Cert., Exhibit 2.

11.      On June 3, 2020, HC2 filed its motion to dismiss Delaney's counterclaims.  On July 17, 2020, the SDNY Court dismissed, without prejudice, Delaney's Counterclaims.  See Zannikos Cert., ¶11.

12.     On July 31, 2020, Delaney filed his First Amended Answer and Counterclaims, in which he asserted purported claims for, among other things, whistleblower retaliation, breach of confidential relationship, intentional infliction of emotional distress and abuse of process.  See Zannikos Cert., Exhibit 3.

13.     On August 17, 2020, HC2 filed its motion to dismiss Delaney's Amended Counterclaims.  See Zannikos Cert., ¶13.

14.     On Decermber 18, 2020, the SDNY Court dismissed Delaney's Amended Counterclaims.  See Zannikos Cert., ¶14.

**The Delaney v. HC2 State Lawsuit**

15.     On March 16, 2021, Delaney filed a complaint with the Supreme Court of the State of New York, County of New York (the "New York County Court"), against HC2, under Index No. 651740/2021.  See Zannikos Cert., ¶15.

**The Delaney v. Delaney Lawsuit; the Will**

16.     On November 25, 2019, Delaney filed a complaint (the "Delaney v. Delaney Complaint") with the New York County Court against his brother, John Delaney, under Index No. 161166/2019 (the "Delaney v. Delaney Lawsuit"), in which Delaney asserted claims for, among other things, negligence, negligent infliction of emotional distress, elder abuse, defamation, fraud, breach of fiduciary duty, undue influence, money lent, conversion and

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

Case 1-20-44372-jmm    Doc 27    Filed 03/26/21    Entered 03/26/21 15:23:05

replevin.  See Zannikos Cert., Exhibit 4.

17.    According to the Delaney v. Delaney Complaint, Delaney's claims arose from his brother's alleged misconduct and other actions taken before their mother's passing away.  See Zannikos Cert., Exhibit 4.

18.    In the Delaney v. Delaney Complaint, Delaney acknowledged that he is or was a sophisticated attorney and used to work at the prestigious law firm of Skadden, Arps, Slate, Meagher & Flom LLP.  See Zannikos Cert., Exhibit 4, p. 1-2.

19.    In the Delaney v. Delaney Complaint, Delaney seeks entry of judgment for $2,030,289.14 (the "Delaney v. Delaney Claim").

20.    The Delaney v. Delaney Lawsuit has not been dismissed or closed.  See Zannikos Cert., Exhibit 5.

21.    Delaney's deceased mother's will, a copy of which was filed in the Delaney v. Delaney Lawsuit (the "Will"), shows that Delaney's mother bequeathed to him the sum of $1,000.00 (the "Will Claim").  See Zannikos Cert., Exhibit 6.

**The Delaney v. Sullivan & Cromwell LLP Lawsuit**

22.    On December 18, 2019, Delaney filed a complaint with the New York County Court against Sullivan & Cromwell LLP under Index No. 657556/2019 (the "Delaney v. S&C Lawsuit").  On December 23, 2019, Delaney filed an amended complaint, and on December 31, 2019, Delaney filed a second Amended Complaint (the "Delaney v. S&C Second Amended Complaint"), in which Delaney asserted claims agasinst S&C for, among other things, breach of contract, negligence and fraud.  See Zannikos Cert., Exhibit 7.

23.    In the Delaney v. S&C Second Amended Complaint, Delaney seeks entry of judgment for $13,000,000.00 (the "S&C Claim").

24.    The Delaney v. S&C Lawsuit has not been dismissed or closed.  See Zannikos Cert., Exhibit 8.

**The Bankruptcy Disclosures**

25.    On December 23, 2020 (the "Petition Date"), Delaney initiated this bankruptcy case by filing, among other things, a Voluntary Petition, Schedules A through J, inclusive, a Statement of Financial Affairs and a creditor

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

Case 1-20-44372-jmm    Doc 27    Filed 03/26/21    Entered 03/26/21 15:23:05

matrix.  See Doc. 1.

26.    Delaney placed his original signature on his declaration, made under penalties of perjury, that he had read the summary and schedules filed with his declaration, and that they are true and correct.  See Doc. 1, Declaration About an Individual Debtor's Schedules.

27.    Delaney placed his original signature on his declaration, made under penalties of perjury, that he had read the answers to the Statement of Financial Affairs, and that the answers are true and correct.

28.    In Delaney's original bankruptcy schedules, he did not disclose the existence of an asserted claim against HC2, or the Delaney v. Delaney Claim, which he claims is worth $2,030,289.14, or the Will Claim, which on the face of the Will is worth $1,000.00, or the S&C Claim, which he claims is worth $13,000,000.00.  See Doc. 1, Schedule A/B, ¶33 ("[c]laims against third parties ...") and ¶34 ("[o]ther contingent and unliquidated claims of every nature ...").

29.    In Delaney's Statement of Financial Affairs, he did not disclosed the pendency of the HC2 Lawsuit, Delaney v. Delaney Lawsuit or Delaney v. S&C Lawsuit, which were as of the Petition Date and continue to be pending in the SDNY Court and New York County Court, respectively.  See Doc. 1, Statement of Financial Affairs, ¶9 ("[w]ithin 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?").

30.    On February 2, 2021, at Delaney's Section 341 meeting of creditors, he testified under oath that:

a.    Everything in his bankruptcy papers was true and correct (see Zannikos Cert., Exhibit 9, 3:13-20);

b.    There were no errors or omissions in his bankruptcy papers that he should bring to the chapter 7 trustee's attention (see Zannikos Cert., Exhibit 9, 3:21-23);

c.    He does not have a claim against any person or business (see Zannikos Cert., Exhibit 9, 4:23-25);

d.    He was not suing anyone for any reason (see Zannikos Cert., Exhibit 9, 5:1-3);

e.    He did not have any claims upon which he could bring a lawsuit (see Zannikos Cert., Exhibit

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

Case 1-20-44372-jmm    Doc 27    Filed 03/26/21    Entered 03/26/21 15:23:05

9, 5:4-6);

f.      No one died and left him money or property (see Zannikos Cert., Exhibit 9, 5:7-9); and

g.      No one owes him money (see Zannikos Cert., Exhibit 9, 5:10-11).

31.     As the facts set forth above indicate, when Delaney made the foregoing statements under oath, each and every one of these statements was false and he knew them to be false when he made them.

32.     Evidently, because Delaney appeared at the meeting of creditors by telephone and was not visible to the chapter 7 trustee, Delaney took advantage of the opportunity to conceal from the chapter 7 trustee his dishonest demeanor and, through his multiple false statements, thereby misled the chapter 7 trustee, to the detriment of the bankruptcy estate.  See Zannikos Cert., Exhibit 9, 5:22-24.

33.     On February 4, 2021, the chapter 7 trustee filed his Report of No Distribution.  See February 4, 2021 docket text.

34.     On March 8, 2021, the chapter 7 trustee rescinded his Report of No Distribution and indicated that he had discovered a potential asset to be administered.  See Doc. 14.

35.     On March 12, 2021, apparently in response to the chapter 7 trustee's rescission of his Report of No Distribution, Delaney filed his Motion to Dismiss (Doc. 16) (the "Motion to Dismiss").

36.     In the Motion to Dismiss, Delaney claims that he moved from Queens to Manhattan prior to the Petition Date.  At the meeting of creditors, Delaney stated that his then current address was the same as the Queens address that he indicated in his bankruptcy papers.  See Doc.1; Zannikos Cert., Exhibit 9, 3:10-12.

37.     On March 15, 2021, apparently in response to the chapter 7 trustee's rescission  of his Report of No Distribution, Delaney filed an amended schedule A/B in which he disclosed, for the first time, his asserted claims in the Delaney v. Delaney Lawsuit and the Delaney v. S&C Lawsuit.  See Doc. 17, ¶33.  Although Delaney continues to seek judgments for $2,030,289.14 and $13,000,000.00, respectively, in those lawsuits, he disclosed a value of $0.00 in his amended schedule A/B for the corresponding claims.  See Doc. 17, ¶33.  In addition, although Delaney asserts several claims for unliquidated damages (see, e.g., Delaney v. S&C Second Amended Complaint), Delaney did not claim any right to an unliquidated claim in his amended schedule A/B.  See Doc. 17, ¶34.

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

38.    On March 15, 2021, apparently in response to the chapter 7 trustee's rescission of his Report of No Distribution, Delaney filed an amended schedule E/F, in which he disclosed, for the first time, a debt owed to HC2. See Doc. 18.  Delaney filed his amended schedule E/F with an Affidavit Pursuant to E.D.N.Y. LBR 1009-1(a), by which Delaney moves this Court for a 30 day extension of time for HC2 to object to discharge pursuant to Fed. R. Bankr. P. 4004 and to challenge whether certain debts are dischargeable pursuant to Fed. R. Bankr. P. 4007.  See Doc. 18.

39.    HC2 recently retained bankruptcy counsel who entered his appearance in this case and is evaluating HC2's interests.

40.    On March 18, 2021, the Clerk of this Court filed a Notice of Discovery of Assets and set a bar date of June 16, 2021 for creditors to file proofs of claims.  See Doc. 20.  Presumably, had Delaney timely and properly disclosed his assets and claims, the chapter 7 trustee could have begun his investigation into those assets and claims sooner and obviated the need for a late, June 16, 2021 bar date.

## OPPOSITION TO THE MOTION TO DISMISS

41.    Pursuant to 11 U.S.C. § 707(a), this Court may dismiss a case under Chapter 7 of the Bankruptcy Code only after notice and a hearing and only for cause.

42.    In  In re Klein, 39 B.R. 530, 532 (Bankr. E.D.N.Y. 1984), this Court held that:

> [A] voluntary Chapter 7 debtor is entitled to dismissal of his case so long as such dismissal will cause no legal prejudice to interested parties. [Citations omitted.] ...  This precept rests upon the tacit premise that while a debtor may voluntarily choose to place himself in bankruptcy, he does not enjoy the same discretion to withdraw his case once it has been commenced.

43.    In Klein, 39 B.R. at 532-33, this Court found that, for two reasons, creditors would be substantially prejudiced by the grant of an order of dismissal.  First, dismissal would relegate creditors to proceeding anew in enforcement of their claims.  Second, because the debtor had "failed to list several of his business interests in his schedule of assets and such interests if recovered will greatly enhance dividends paid to such creditors, ... [t]he court

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

has no assurance that debtor's assets will be distributed to the creditor body if it relinquishes its jurisdiction in ordering dismissal." Id. at 533. Also, this Court found that dismissal "would implicitly sanction an abuse of the bankruptcy process." Id. at 533.

44. When Delaney filed this bankruptcy case, he had been participating in the HC2 Lawsuit and knew that HC2 asserted claims against him. See, e.g., See Zannikos Cert., Exhibit 3. Indisputably, Delaney deliberately concealed the existence of the HC2 Lawsuit from this Court and the chapter 7 trustee, as well as the Delaney v. Delaney Claim, Delaney v. S&C Claim and Will Claim. Further, Delaney unreasonably delayed providing notice and scheduling HC2 as a creditor in his bankruptcy case. When Delaney finally scheduled HC2 as a creditor (on March 15, 2021), the chapter 7 trustee had concluded the meeting of creditors. See Zannikos Cert., Exhibit 9, 5:22-23. Delaney continues to claim in this bankruptcy case that his claims have zero value, and that he is not involved in any pending lawsuits, despite that, in the respective non-bankruptcy courts, he continues to pursue claims for millions of dollars against defendants that are likely to have significant assets.

45. Delaney's repeated false and misleading statements made under oath, both in his original and amended bankruptcy filings and at the meeting of creditors conducted by the chapter 7 trustee, support a finding of prejudice to creditors and parties in interest and, therefore, require the denial of the Motion to Dismiss.

46. Delaney, as a current or former member of the New York State Bar, Harvard Law School alumnus and former attorney with Skadden Arps, cannot credibly claim ignorance as he attempts to do in his Motion to Dismiss. At all times relevant, Delaney understood: (i) the gravity of his repeated sworn declarations made under penalties of perjury, made both in writing and orally in this proceeding; (ii) the reliance that the chapter 7 trustee and others would place on his sworn statements and testimony; and (iii) the consequences of his false statements.

47. As a court of equity, this Court should not overlook Delaney's misconduct and sanction a clear abuse of the bankruptcy process. As this Court held in Klein, 39 B.R. at 533:

> It should be noted that the debtor offers no explanation as to why he failed to list valuable assets in his schedules other than that he "was never fully advised by his [initial] attorney of the nature of a bankruptcy proceeding." Debtor's Ap. at 1. Such an explanation for failing to list assets is tantamount to no excuse at all. Therefore, the

Page 8 of 10

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

Case 1-20-44372-jmm    Doc 27    Filed 03/26/21    Entered 03/26/21 15:23:05

court reaches the ineluctable conclusion that debtor's motivation in failing to list assets was questionable if not fraudulent....

48. In In re Jong Hee Kang, 467 B.R. 327, 335–36 (Bankr. D.N.J. 2012), the court considered whether to grant the debtor's motion to dismiss her voluntary Chapter 7 case. The court denied the motion and concluded, "[u]nder the balancing test of § 707(a) precedent, Ms. Kang's good faith remains suspect, while prejudice to non-insider creditors via dismissal is palpable. Ms. Kang has thus not established 'cause' for dismissal."

49. As was the case in Jong Hee Kang, 467 B.R. 327, Delaney's good faith is wholly lacking, and the prejudice to creditors upon dismissal of this case would be substantial. Delaney has not demonstrated any willingness to pay his creditors. Instead, Delaney's continued concealment of his assets and claims suggests that he intends to keep the proceeds to himself.

50. Delaney's false and misleading testimony and sworn statements have caused a significant delay in the administration of the bankruptcy estate and, therefore, prejudice to creditors. This Court should not permit Delaney to escape bankruptcy at the moment when he has realized that his hidden assets are coming in full view. Instead, the chapter 7 trustee should be permitted a full opportunity to complete his investigation into the nature and value of Delaney's undisclosed assets, and to administer those assets for the benefit of the bankruptcy estate.

51. *In arguendo,* even if Delaney could justify his misstatements and ongoing concealment of assets, which seems unlikely, the discovery of assets provides further grounds to deny the Motion to Dismiss. See In re Ross, 21 B.R. 5, 5 (Bankr. E.D.N.Y. 1982) (this Court held that "[t]he discovery of assets is not cause to dismiss such a proceeding [citations omitted.] If anything, it is grounds for retaining jurisdiction, i.e., that creditors who perhaps expected to recover nothing on their claims may be assured of an equitable and full distribution of the debtor's newly discovered assets."); see also In re St. Laurent, 17 B.R. 768, 769 (Bankr. D. Me. 1982), cited with approval in Klein, 39 B.R. at 535 (the court held that it would not dismiss "a voluntary case on motion of the bankrupt unless it could be shown that the dismissal would be in the best interest of the bankrupt and the estate and that if the assets were such that a substantial dividend would be paid to creditors if the estate were administered then the case would not be dismissed").

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

SA-211

Case 1-20-44372-jmm    Doc 27    Filed 03/26/21    Entered 03/26/21 15:23:05

52.    In the Motion to Dismiss, Delaney does not offer any assurance that he will try to liquidate his assets and claims for the benefit of his creditors, or that he has any prospect of locating new employment, or that, after the dismissal of this case, he will attempt to pay his creditors.  At most, Delaney alleges in the Motion to Dismiss that "[t]he situation has changed," but he offers no indication that *his* situation has changed, or that he will pay his creditors.

WHEREFORE, HC2, Inc. respectfully requests that this Court deny the Motion to Dismiss, and grant such other and further relief as this Court may deem just and equitable.

SPECTOR & EHRENWORTH, P.C.
Attorneys for Respondent, HC2, Inc.

By: */s/ Douglas A. Goldstein*
     Douglas A. Goldstein

Dated: March 26, 2020
       Florham Park, New Jersey

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.002.wpd

SA-212

# EXHIBIT K

SA-213

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

BRIAN D. SPECTOR, ESQ.
DOUGLAS A. GOLDSTEIN, ESQ.
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike, Suite 202
Florham Park, New Jersey 07932-2261
Tel.: (973) 845-6526
Fax: (973) 593-4848
e-mail: dgoldstein@selawfirm.com
Attorneys for Creditor, HC2, Inc. d/b/a Hire Counsel

| | |
|---|---|
| In re:<br><br>ANDREW JOHN DELANEY,<br><br>Debtor. | Case No.: _____1-20-44372-jmm_____<br><br>Chapter: _____7_____<br><br>Judge: ____Jil Mazer-Marino____<br><br>Hearing Date: April 8, 2021 at 2:00 p.m. |

**CERTIFICATION OF STEPHANOS ZANNIKOS IN
OPPOSITION TO DEBTOR'S MOTION TO DISMISS CASE**

Stephanos Zannikos, of full age, certifies as follows:

1.      I am General Counsel of respondent, HC2, Inc. d/b/a Hire Counsel ("HC2"), in the captioned case. I submit this certification in opposition to the debtor's motion to dismiss case. I am familiar with the facts set forth herein.

2.      HC2 is a legal staffing company, which provides, among other things, attorneys and other personnel, as well as associated workspace and information technology infrastructure, to satisfy the short term and long term staffing needs of its clients, including law firms, corporations and government agencies.

**The HC2 Federal Lawsuit**

3.      On December 28, 2016, the debtor, Andrew Delaney ("Delaney"), executed HC2's employment contract (the "Employment Agreement"), which incorporated a Confidentiality and Non-Disclosure Agreement (the "NDA"), as well as HC2's conduct rules (the "Conduct Rules") and employee handbook (the "Employee Handbook"), and an acknowledgement in which he agreed to adhere to the Conduct Rules and Employee Handbook

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.Cert of Zannikos.003.wpd

(the "Policies Acknowledgment").

4.    On September 30, 2019, HC2 assigned Delaney to a project (the "Project") with a law firm customer of HC2 (the "Law Firm Customer") for the benefit of a client of the Law Firm Customer (the "Corporate Client"), which was expected to be completed in mid-May 2020.

5.    On March 17, 2020, the Law Firm Customer decided to suspend the Project in view of the COVID-19 pandemic while it considered the possibility of moving to a remote review.  The Law Firm Customer and its Corporate Client decided not to conduct the remainder of the review.

6.    HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2.  Nonetheless, Delaney sent multiple emails on March 17 and 18, 2020 to the Law Firm Customer and the Corporate Client falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.

7.    Delaney engaged counsel to demand $450,000 from the Corporate Client, but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel emailed a letter to the Corporate Client's Chief Executive Officer and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's privileged and confidential information if his demand was not met by April 14, 2020.

8.    The Corporate Client did not capitulate to Delaney's demands or threats. On April 15, 2020, a day after Delaney's deadline passed, Delaney's lawyer signed and filed a state court complaint, which alleges and acknowledges that the John Doe plaintiff, identified therein as Delaney, gained the confidential and privileged knowledge and information disclosed therein during the course of a document review project for the Corporate Client.

9.    On April 22, 2020, HC2 filed a Verified Complaint against Delaney (the "Verified Complaint") in the United States District Court for the Southern District of New York (the "SDNY Court") under Civil Action No. 1:20-cv-03178-LJL (the "HC2 Lawsuit").  I have read the Verified Complaint, a  true copy of which is attached hereto as Exhibit 1.  The allegations set forth in the Verified Complaint are true and correct to the best of my

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.Cert of Zannikos.003.wpd

SA-215

Case 1-20-44372-jmm    Doc 27-1    Filed 03/26/21    Entered 03/26/21 15:23:05

knowledge.

10.     On May 13, 2020, Delaney filed his Answer and Counterclaims in the HC2 Lawsuit, a true copy of which is attached hereto as Exhibit 2.  In his Answer and Counterclaims, Delaney purportedly asserted claims against HC2 for, among other things, fraudulent inducement, fraudulent misrepresentation, whistleblower retaliation, breach of confidential relationship, intentional infliction of emotional distress and defamation per se.

11.      On June 3, 2020, HC2 filed its motion to dismiss Delaney's counterclaims.  On July 17, 2020, the SDNY Court dismissed, without prejudice, Delaney's Counterclaims.

12.     On July 31, 2020, Delaney filed his First Amended Answer and Counterclaims, in which he asserted purported claims for, among other things, whistleblower retaliation, breach of confidential relationship, intentional infliction of emotional distress and abuse of process.  A true copy of Delaney's First Amended Answer and Counterclaims is attached hereto as Exhibit 3.

13.     On August 17, 2020, HC2 filed its motion to dismiss Delaney's Amended Counterclaims.

14.     On Decermber 18, 2020, the SDNY Court dismissed Delaney's Amended Counterclaims.

**The Delaney v. HC2 State Lawsuit**

15.     On March 16, 2021, Delaney filed a complaint with the Supreme Court of the State of New York, County of New York (the "New York County Court"), against HC2, under Index No. 651740/2021 (the "Delaney v. HC2 Lawsuit").

**The Delaney v. Delaney Lawsuit; the Will**

16.     On November 25, 2019, Delaney filed a complaint (the "Delaney v. Delaney Complaint") with the Supreme Court of the State of New York, County of New York (the "New York Court"), against his brother, John Delaney, under Index No. 161166/2019 (the "Delaney v. Delaney Lawsuit").  A true copy of the Delaney v. Delaney Complaint is attached hereto as Exhibit 4.

17.     A true copy of the docket report for the Delaney v. Delaney Lawsuit as of March 24, 2021 is attached hereto as Exhibit 5.

18.     A true copy of the will of Delaney's mother, which was filed in the Delaney v. Delaney Lawsuit, is

SA-216

attached hereto as Exhibit 6.

### The Delaney v. Sullivan & Cromwell LLP Lawsuit

19.     On December 18, 2019, Delaney filed a complaint with the New York County Court against Sullivan & Cromwell LLP under Index No. 657556/2019 (the "Delaney v. S&C Lawsuit").  On December 23, 2019, Delaney filed an amended complaint (the "Delaney v. S&C Amended Complaint"), in which Delaney asserted claims agasinst S&C for, among other things, breach of contract, tortious interference in a business relationship, negligence and fraud.  A true copy of the Delaney v. S&C Second Amended Complaint is attached hereto as Exhibit 7.

20.     A true copy of the docket report for the Delaney v. S&C Lawsuit as of March 24, 2021 is attached hereto as Exhibit 8.

### The Bankruptcy Disclosures

21.      A true copy of a transcript of the meeting of creditors conducted pursuant to 11 U.S.C. §341 is attached hereto as Exhibit 9.

22.     I hereby declare under penalties of perjury that I have read the foregoing Certification, and that the allegations contained therein are true and correct to the best of my knowledge.


Executed on the 26th of March, 2021
in New York, New York.


_____
Stephanos Zannikos

K:\H143.0001\PLDG\Oppos. Mtn to Dismiss.Cert of Zannikos.003.wpd

SA-217

# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x

ANDREW DELANEY,

                              Plaintiff,                    Index No.

          -against-                                         SUMMONS

HC2, INC. d/b/a/ HIRE COUNSEL,

                              Defendant
-----------------------------------------------------------------x

To the Persons Named as Defendants Above:
PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of
Plaintiff herein and to serve a copy of your answer on Plaintiff at the address indicated below within 20
days after the service of this Summons (not counting the day of service itself), or within 30 days after
service is complete if the Summons is not delivered to you personally within the State of New York.
YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against
you by default for the relied demanded in the complaint.
          Plaintiff designates New York County as the place of trial.
Dated: New York, New York
          March 16, 2021

                                                  _____
                                                  Andrew Delaney
                                                  P.O. Box 527341
                                                  Flushing, NY 11352
                                                  (917) 720-7076
                                                  jdelaneyandrew@gmail.com

Defendant's Address:
HC2, Inc.
360 Lexington Avenue
Suite 1100
New York, NY 10017

Case: 25-73, 07/15/2025, DktEntry: 38.1, Page 76 of 237
SA-218

SA-219

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
ANDREW DELANEY,

                              Plaintiff,                    Index No.

                   -against-                               COMPLAINT

HC2 INC. d/b/a/ HIRE COUNSEL,                              JURY TRIAL DEMANDED

                              Defendant
------------------------------------------------------------------x

Plaintiff, ANDREW DELANEY, plaintiff in this action *pro se* ("Plaintiff"), asserts claims for whistleblower retaliation pursuant to New York Labor Law ("NYLL") § 740, breach of confidentiality, intentional infliction of emotional distress, malicious prosecution, abuse of process, and defamation against Defendant HC2, Inc. and alleges as follows:

FACTUAL BACKGROUND

*The "three tier structure" of Toyota, Wilmer Hale, and Defendant*

1.      Plaintiff, a native New Yorker, is a 58 year old Thai language document reviewer who works in the gig economy.

2.      From September 30, 2019-January 5, 2020 and from February 17, 2020-March 30, 2020, Plaintiff worked for Defendant on a Thai language document review for Toyota Motor Corporation ("Toyota") and its law firm Wilmer, Cutler, Pickering, Hale and Dorr LLP ("Wilmer Hale") pursuant to their three-way agreement dated September 25, 2019. Wilmer Hale is a "revolving door" law firm with the U.S. government which sells its connections[1] and brags on its website about its "deep bench" of

---

[1] Our lawyers have served in senior government positions in the Department of Justice (DOJ)—the primary litigation arm of the United States—and the US Securities and Exchange Commission (SEC). The team includes: two former Deputy Attorneys General of the United States (the second-highest position in the DOJ); two former Acting Deputy Attorneys General, a former Principal Associate Deputy Attorney General, two counselors to the Attorney General, and three Associate Deputy Attorneys General, as well as other senior officials in the office of the Attorney General and Deputy Attorney General, including a former Chief of Staff to the Attorney General; a former US Solicitor General, a former Deputy Solicitor General, and an Assistant to the Solicitor General; a former Assistant Attorney General in charge of the Civil Division, and a former Deputy Assistant Attorney General in the Civil Division (Appellate Branch); two former Deputy

1

SA-220

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM    INDEX NO. 651740/2021
NYSCEF DOC. NO. 1                                   RECEIVED NYSCEF: 03/16/2021

former government officials.[2]  In fact, coincidentally but maybe not so coincidentally, Wilmer Hale's point man for the Toyota Thai document review, Michael Posada, was given a position as associate counsel in the Biden White House days after he testified against Plaintiff in Florida on December 9, 2020.  This has no doubt not been lost on Toyota's management.

3.      The document review was run out of Japan.  This is not normal for a U.S. document review since all the reviewers were in London, Los Angeles, and New York. The only reason for this would be Toyota control, *i.e.*, it was not an independent review.

*Toyota's corruption and bribery*

4.      Toyota is one of the largest - and also one of the most corrupt - companies in the world. Thailand is called "the Detroit of Asia" and is a key global manufacturing hub for car makers.  Toyota is the largest auto maker in Thailand with an over 30% local market share.  Toyota engages in corrupt practices, bribery, and tax evasion which benefits management at the expense of shareholders and the communities in which it operates where these are a cancer.  Toyota has been found to have been corrupt in Australia and China over the years so that, for Toyota, corruption is its way of doing business.

5.      In Thailand, Toyota has a "government affairs department" ("GO") which is responsible for networking and mapping its relationships with ministers, permanent secretaries, governors in key provinces, and other government officials and politically exposed persons.  Toyota's local staff is forced to highlight and circulate Cabinet resolutions showing movement in any appointments to government

---

Assistant Attorneys General in the Office of Legal Counsel; four former US Attorneys, a former Chief of Staff and Deputy Attorney General for New York, a former Deputy Senior Counsel for Alternative Dispute Resolution, and a former State Attorney General; a former General Counsel to the Federal Bureau of Investigation; 20 former Assistant US Attorneys and other former Justice Department litigators, with experience in the Antitrust, Civil, Criminal, National Security, and Environment and Natural Resources Divisions; a former Director and a former Associate Director of the SEC's Division of Enforcement; a former SEC General Counsel and a former Chief Litigation Counsel with the SEC's Division of Enforcement. The above-noted individuals, among many others who have held senior government positions, are supported by a team of lawyers and public policy professionals with experience that spans more than a dozen federal agencies. https://www.wilmerhale.com/en/solutions/government-and-regulatory-litigation
[2]https://www.wilmerhale.com/en/solutions/securities-enforcement

2

SA-221

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

positions that are important to its business. To Toyota, the key government relationships in Thailand are with the three tax departments – the Customs Department, the Excise Department, and the Revenue Department – which are departments under the Ministry of Finance. Offices of importance to it are the governors of Chachoengsao province and Samut Prakarn Province where its three factories are located. Other important government offices to it are the Ministry of Industry (especially the Thai Industrial Standards Institute or "TISI" which certifies parts which it imports at a lower tariff), the Ministry of Transport (especially the Department of Land Transport which issues red license plates), and the Board of Investment (the "BOI"), an independent agency under the Office of the Prime Minister which issues investment privileges at industrial estates including valuable tax and duty breaks and more recently privileges for manufacturing electric vehicles. Toyota has network maps showing relationships between ministers and its local executives, for example, classmates, former colleagues, relatives, etc. This is how it tracks its lobbying network.

6. Toyota makes charitable contributions to political activities such as political party associated football teams and also has a Toyota Thailand Foundation ("TTF") which has strong links to the National Economic and Social Development Board ("NESDB") which planned the Eastern Seaboard where its plants are and where it ships cars out of Laemchabang Port.

7. Toyota has multiple companies in Thailand and related party entities that sell parts to it. According to Toyota Motor Thailand Co., Ltd.'s ("TMT") website, its Thai business group consists of 10 companies. Toyota Tsuho Thailand Co., Ltd. ("TTTC") is the trading arm of TMT and is a joint venture with locals, who included a former and late director-general of the Revenue Department.

8. Thailand is considered to be a high tax jurisdiction. With revenues according to the Ministry of Commerce website of over 300 billion Baht ($10 billion) per year, central to Toyota's way of doing business in Thailand is reducing taxes including corporate tax, excise tax, and import tariffs. Excise taxes alone in Thailand contribute 100 billion Baht ($3.25 billion) to the Thai treasury. Three of the main ways are by obtaining BOI exemptions, buying parts from related companies, categorizing

3

SA-222

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

cars as locally assembled, categorizing shipments as parts (cars are subjected to an 80% import tax while parts and components enjoy 30% duties), and importing cars using the AFTA (the "ASEAN Free Trade Area") and AEC (the "ASEAN Economic Community"). AFTA started in 1992 and lowered tariffs *on goods* made in the 10 ASEAN countries (Brunei, Cambodia, Indonesia, Laos, Malaysia, Myanmar, the Philippines, Singapore, Thailand, and Vietnam) decreasing over time and which is now a preferential rate of 0%-5%. AEC broadened the scheme beyond goods. Unfortunately, Toyota is a Japanese company and Japan is not an ASEAN country. However, Toyota uses so-called "third country invoicing" so that if a ship left Nagoya, Japan TMT's customs documents show export five days later through Singapore, which *is* an ASEAN country and where Toyota has a company, Toyota Motor Asia Pacific Pte Ltd ("TMAP"), *i.e.* a shipment from Singapore. This reduces the tariff from 80% or more to 10% or less. For goods as expensive as automobiles, this represents a huge savings, but at the expense of the Singapore and Thai governments. It also requires the misuse of customs documents. How goods are classified and the certificates of origin will affect the taxes paid.

9.      Toyota has had customs issues in the past such as with the import of the Hiace from Malaysia and third party invoicing from India and is probably "on the radar screen". In 2015, the Thai government ordered Toyota to pay 11.5 billion Baht ($327 million) in back taxes for the Prius hybrid cars. The issue is whether the Prius is a complete knockdown ("CKD") kit. The Nation Associate Anti-Corruption Network ("NACN") asked the government to investigate whether the Prius was a completely imported car in which case it would be subject to a 187.75% rate. The Customs Department also was reported in the newspapers to have found that "there was no actual production line for the Prius at the Chachoengsao plant." Toyota first tried to appeal in the Customs Department's appeals committee but lost. After losing, in June 2015, it sued the Customs Department and initially the other two tax departments in the Central Tax Court in Thailand. In August 2015, it also shut down production of the Prius in Thailand. In 2016 while that case was still pending, Toyota changed law firms. It won in the lower court. However, the Customs Department appealed and won in the Court of

4

SA-223

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

INDEX NO. 651740/2021

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/16/2021

Appeals. The company was planning to file the final appeal to the Supreme Court in around September 2019. In 2019, the company created a lobbying budget of 700 million Baht (approximately $23 million). It spent millions of dollars on advisors such as S&A. TMT wired 100-200 million Baht ($3.2-6.4 million) to Hong Kong and, even worse, did not pay withholding tax (which it had to pay on service fees by law) but included VAT (which it should not have added on). This would increase the amount of the wire. TMT issued a non-A/C payee check for 25 million Baht (over $800,000) which was cashed at UOB Sathorn Road Branch. No large company would issue a non-crossed check which could be cashed by anyone. Despite these practices, the higher management is still mostly the same. It is "business as usual" at Toyota.

10. Toyota also has other questionable practices. It offers "VIP discounts" to "VIP's" who are defined as government officials according to their rank A, B, and C. Toyota's own former GO employee is believed to have warned about this as a compliance problem to no avail as it continues to run such ads on Facebook and in the newspapers. Some officials buy multiple cars from Toyota and sometimes using other people's names. The company uses former Customs officials to advise it on building its new plant. It gave one official a free car after it was awarded electric vehicle privileges from the BOI. It rents four apartments for tax officials. It lends tax-free test cars to government officials for their use. It tries to avoid customs inspections of its shipping containers. It uses companies like J. instead of the large recognized customs clearance agents like Yusen Logistics and its legal department deals with customs issues. It bought a rice mill. One of the most suspicious aspects is Toyota's use of shophouse-based consultants and "doing things themselves". This is of course due to the opportunity for personal benefit. Most major companies have approved qualified vendor lists. The list goes on and on. The question is whether Toyota shareholders benefit from knowing about the company's practices or from sealing them as they have in Plaintiff's case. The other issue is whether it is right for one of the wealthiest companies in the world to treat Thailand like a "Banana Republic". Instead of looking at their own illegal conduct toward him, Toyota and "the three tier structure" have

5

SA-224

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

sued and attacked Plaintiff with lies and defamation and imposed massive litigation costs him through their multi-jurisdictional and fraudulent litigation.

*Defendant misappropriates Plaintiff's confidential information*

11.     Given Toyota's history of corrupt practices, Plaintiff proceeded on the understanding that his low-level document review work in New York for Defendant would not be shared with anyone in Thailand, not that he would become the scapegoat or "fall guy" to shield Toyota from blame.  However, around November 29, 2019, Plaintiff received an email from an important person in Thailand which made it clear that his identity and involvement in the document review was being shared to outside persons there.  This is because payments to vendors were being frozen and they asked Toyota who was helping the company to create the blacklist.[3]  So Toyota blamed it all on Plaintiff.  From November 9, 2019-December 2, 2019, Plaintiff complained to the unethical Posada that his confidentiality was not being respected by Toyota and the three tier structure.  At his request, Plaintiff gave a copy of the email to Posada on the condition that it would not be given to Toyota but right after receiving it Posada reneged on this telling him "The client comes first" - *i.e.* Toyota comes before you.  Posada's misappropriation of the email and Plaintiff's confidential information to Toyota made a bad situation even worse for Plaintiff.  Posada was extremely hostile to Plaintiff since the time of that double breach of confidentiality.

*Defendant's unlawful termination of Plaintiff during the height of the COVID-19 pandemic*

12.     March 2020 was the height of the COVID-19 pandemic in New York City, one of the worst public health crises in the city's history.  The disease was starting to spread rapidly especially in New York.  On March 7, 2020 – 10 days before Plaintiff was initially sent home and 23 days before he

---

[3]In fact, Plaintiff was a mere coder of documents at an office in New York and had nothing to do with any blacklist, but he got blamed for this anyway, so that Toyota's local relationships would not suffer.

6

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM          INDEX NO. 651740/2021
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 03/16/2021

was finally terminated – New York State Governor Andrew Cuomo declared a state of emergency.  As of March 17, 2020, there were 6,300 coronavirus cases in New York and 13 deaths.

13.     The physical set-up of a document review center is similar to a call center. Plaintiff sat several inches away from the other two reviewers in a small office with no windows. During this period, Defendant did nothing to institute social distancing or survey workers about working remotely.

14.     In early March 2020, the other document review agencies in New York City were having reviewers test positive for COVID-19 and were going remote and closing their offices.[4] But Defendant's HR department simply emailed workers to commute with wipes and to watch President Trump's speech on TV.[5]

15.     After working continuously under these deteriorating conditions since February 18, 2020, on March 17, 2020, at 11:27 AM EST, Plaintiff emailed Defendant and its agents copied to his co-workers and complained to them that workers were coming into the office with flu-like symptoms and asked if they could either work remotely or short of that if they could stay at home with pay while still being on the document review.[6]

16.     At 11:40 AM EST (13 minutes after Plaintiff's email), Posada was the first to respond by emailing two of his colleagues "Subject: FW: Work conditions" (the "Posada email/Hartstein email")). However, Defendant redacted the entire Posada email due to its defamatory content.

17.     But the possible content in the Posada email is suggested by the next email in the

---

[4]Prior to March 17, 2020, Tower Legal Solutions had one person test positive, closed all offices, and went to remote work only. Epiq Systems, Inc. had one employee test positive at its 48th Street office in Manhattan, closed all offices, and went to remote only. KL Discovery, Inc. had one employee test positive and went to all remote. Update Legal, Inc. went to remote. Special Counsel moved all of its over 1,000 reviewers to remote in early March. Defendant was not following the market practice of the agencies at the time of his complaint.
[5]On March 5, 2020, Defendant sent out an email subject "Inform - COVID-19 & Seasonal Flu – Update" stating: "Due to the nature of our business, we will continue to operate all our locations, but continue to take precautionary measures, such as reducing the number of contractors per review room." However, this did not happen and the number of contractors per review room was not reduced.
[6]Plaintiff came into the office wearing a mask, latex gloves, and goggles which he bought on his own. As he suffers from severe eczema, his hands were badly hurt from wearing the gloves at his computer all day.

7

SA-226

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM INDEX NO. 651740/2021

NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 03/16/2021

chain which is at 11:55 AM EST (a mere 28 minutes after Plaintiff's email) in which Brian Hartstein out of Defendant's Los Angeles office (8:55 AM PT) mailed the law firm: "Can we fire him? Just a thought."

18. At 12:17 PM EST (50 minutes after Plaintiff's email), Hartstein (9:17 PT) emailed Joan Davison, Denise Asnes, and Patti Ayala of Defendant: "Please see below…this guy caused this." This was defamatory. Defendant was spreading harmful lies about Plaintiff which it has continued to do up to the present time.

19. At 1:02 PM (95 minutes after Plaintiff's email), Plaintiff received an email that remote work was not an option.

20. A few minutes after that, at 1:10 PM EST (103 minutes after Plaintiff's email), Asnes emailed Plaintiff and the two other Thai reviewers in the New York office: "We are requesting all team members to gather their belongings and depart the facility in an orderly fashion and exit our environment since the project is effectively ending… We will continue to monitor the efforts of Congress in helping to off-set the impact of lost work." The Asnes email made no mention of COVID-19 or any public health and safety concerns and was purely project management and client retention driven.

21. Plaintiff was initially sent home in unlawful retaliation for his whistleblower notification about the office conditions and for criticizing Defendant's HR department. After several days of refusing to allow remote work and leaving Plaintiff in limbo at home, Defendant finally terminated him on March 30, 2020.

*The Florida John Doe complaint*

22. On April 15, 2020, Plaintiff filed a John Doe complaint against Toyota, Toyota Motor North America, Inc., and Akio Toyoda in the Eighteenth Judicial Circuit Court of Florida in Brevard

8

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

County (the "Florida John Doe complaint"). This was voluntarily dismissed nine days later on April 24, 2020. On April 29, 2020, Toyota reopened the case in order to seal public information from the worldwide web and other public sources to ensure that the public would not have access to documents about Toyota's corruption around the world. Toyota's Florida lawyers misappropriated and publicized Plaintiff's confidential information and presented their sealing efforts as protecting shareholders. Actually, quite the opposite, Toyota's actions *hurt* shareholders.

*Defendant's "cooked up" lawsuit in the Southern District*

23.     Toyota and Wilmer Hale, a political law firm, wanted to expose Plaintiff as the John Doe in the Florida case and so ordered Defendant to file a case against him naming him by name and constantly linking this to the Florida case. Since HC2 and its law firm publicized the connection between the New York and Florida cases, the media referred to Plaintiff by name rather than John Doe, as the three tier structure intended to circumvent Florida law protecting John Doe.

24.     On April 22, 2020, Defendant filed a fraudulent complaint in the United States District Court for the Southern District of New York (the "Southern District") naming Plaintiff individually as defendant including a request for a preliminary injunction ("PI"). Knowing that Plaintiff would file a public health and employment case against it, Defendant and its lawyers cooked up a bogus lawsuit accusing him of extortion, blackmail, stealing documents, and being unethical. Defendant and its lawyers knew perfectly well that it was physically impossible for Plaintiff to steal or download documents and that there were no hard copies of anything. The complaint accused Plaintiff of "threatening to and publicly disclosing confidential and privileged information he obtained during his employment with Defendant as a contract attorney" (paragraph 1 and repeated in paragraphs 6, 7, 29, and 43), of "carrying out his scheme to extort a significant payment from the Corporate Client [Toyota]" (paragraph 31), of "[a]s Plaintiff freely admits, …. [d]isclos[ing] in the State Court Complaint, the confidential and attorney-client privileged information, notwithstanding his contractual

9

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

and ethical obligations" (paragraph 39), and of "[c]ontinuing to possess and not return any and all documents in any form he acquired during and as a result of his employment with Defendant" (paragraph 57(i)) without a shred of evidence. Defendant also exposed Plaintiff as the John Doe in the Florida John Doe complaint (paragraph 9).

25. On April 22, 2020, the Southern District *denied* Defendant's request for an *ex parte* temporary restraining order ("TRO"). On May 22, 2020, Defendant filed a motion for a PI. In it, Defendant posted Plaintiff's resume which he had submitted to them confidentially in September 2019 as part of his employment application on the case docket. On May 27, 2020, the Southern District *denied* Defendant's PI request.

26. In order to bring this lawsuit in federal court, Defendant – including its questionable CEO Joan Davison and general counsel Stephanos Zannikos, Esq. who signed false declarations under oath - lied about its principal place of business and about the amount in controversy which was only $67,458.91 and therefore less than $75,000. Defendant is a citizen of New York as shown by every litigation in which it has been a party and in all 26 of its secretary of state filings across the country, including in New York and Illinois. Defendant and its lawyers Kasowitz Benson Torres LLP ("Kasowitz") and Ogletree, Deakins, Nash, Smoak & Stewart, P.C. lied to the federal court for almost one year and committed a complete fraud on that court. They had no comment when asked by the media, Law 360, about it.

27. This is a state court case where there is no diversity of citizenship and which never should have been brought in federal court in the first place.

JURISDICTION AND VENUE

28. This Court has jurisdiction over this action pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 301, 302.

29. This Court has further jurisdiction over this action because the claims and violations in

10

SA-229

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

this action arose under the laws of New York.

30.     Subject matter jurisdiction over a claim for NYLL § 740 is in the state's court of general jurisdiction.

31.     Venue is proper because acts and omissions giving rise to this action occurred in New York.

## PARTIES

32.     Upon information and belief, at all times mentioned herein, Plaintiff resides at 127 West 80th Street, New York, NY 10024.

33.     Upon information and belief, at all times mentioned herein, Defendant is a New York corporation with its principal place of business at 360 Lexington Avenue, Suite 1100, New York, NY 10017.

## CLAIMS

### FIRST CAUSE OF ACTION
(Violation of NYLL § 740)

34.     The allegations of paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

35.     Defendant unlawfully retaliated against Plaintiff after he raised a complaint with it under NYLL § 740. Section 740(2) prohibits employers from retaliating against a whistleblower who discloses or threatens to disclose an employer's practices that present "a substantial and specific danger to the public health or safety."

36.     In early-mid March 2020, the coronavirus was spreading virally through New York City. The other job agencies had reviewers test positive, went remote, and closed their offices (*see footnote 1 supra*). On March 16-17, 2020, Plaintiff observed three workers at Defendant's 360 Lexington Avenue

11

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM          INDEX NO. 651740/2021
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 03/16/2021

office who were coming into the office with clear flu-like symptoms. Defendant's pay policy created an incentive for document reviewers to come to work even if they were sick which was aggravated by the worsening economy. Since there was no management or law firm representative at 360 Lexington Avenue at that time, in an email "Subject: Work conditions" sent to them on March 17, 2020 at 11:27 AM EST, Plaintiff wanted to bring the unsafe and unhealthy office conditions to their urgent attention and to ask for remote work or alternatively to stay at home with pay while still being on the document review. Plaintiff also criticized Defendant's HR Department's lack of measures to seriously address the coronavirus issues in the office. Since the first U.S. case, there had been no changes whatsoever to the physical work environment, including his continuing to work several inches apart from other reviewers.

37.     Minutes after Plaintiff sent the email, Posada emailed two of his colleagues.  However, the Posada email was completely redacted.  A mere 28 minutes after Plaintiff's email, Hartstein of Defendant emailed Nathan Croumer (Wilmer Hale's Discovery Attorney Manager): "Can we fire him? Just a thought." Hartstein later emailed: "Please see below…this guy caused this." 103 minutes after Plaintiff's email, Asnes emailed him and the two other Thai reviewers in the New York office asking them to go home and continued in the days ahead through to March 30, 2020 to email updates to him that "remote work is not an option."  Eventually, Plaintiff was fired on March 30, 2020.

38.     Defendant's subsequent actions were an effective admission that it retaliated against him.  None of its responses evince any concern about addressing the public health and safety issues raised by Plaintiff's complaint.

39.     Defendant illegally retaliated against Plaintiff for making a public health and safety complaint.[7] None of the people involved in suspending him literally within minutes were in New

_____

[7]On March 10, 2020, Paul, Weiss, Rifkind, Wharton & Garrison LLP advised: "Employers should keep in mind that the bedrock legal obligations that they owe their employees at all times remain in force during an infectious disease outbreak: the duty to provide a safe and healthy work environment…. and the duty to protect the privacy of employees." Paul, Weiss further opined: "In addition to taking reasonable measures to minimize the risks at the

12

SA-231

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

York: Davison and Ayala were in Chicago, Asnes was in Philadelphia, Hartstein was in Los Angeles, Posada was in Washington, D.C., and based on Internet sources Croumer was in Dayton. Acting relatively immediately, they had no idea about and did not spend any time inquiring whether Plaintiff's concerns were valid or not or trying to address the issue of sick workers in the New York office. The bringing of a baseless action in the Southern District was further retaliation for his whistleblower complaint. Defendant even posted his resume online on the Southern District docket without his consent in violation of its own stated policy on resume submissions.

40. On March 7, 2020, in Executive Order No. 202, Gov. Cuomo declared a state of emergency in New York.

41. On March 18, 2020, the governor issued Executive Order No. 202.6 providing that "All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer *shall reduce the in-person workforce at any work locations by 50%* no later than March 20 at 8 p.m." (emphasis added) The next day on March 19, 2020, he ordered businesses to decrease their in-office workforce by 75%. Work from home is extremely common in the document review world and in fact 90% of the reviews on which Plaintiff worked from 2006-2019 were remote. From March 18-30, 2020, Defendant refused to allow work from home despite the widespread move to remote in the document review industry which it continued to resist while emailing Plaintiff updates and "the next steps" to him. For example, on March 27, 2020, Ayala emailed Plaintiff "Subject: Next Step – Re: Follow Up – Andrew Delaney – COVID 19" "Unfortunately, remote work for your project – not only in New York but in all other sites as well – is not available at this time." Defendant was ignoring the governor's executive orders mandating remote work as well as other applicable laws,

--------

worksite, an employer should not retaliate against employees who, in good faith and reasonable belief, voice their concerns relating to the coronavirus."
https://www.paulweiss.com/practices/litigation/employment/publications/coronavirus-employment-lawconsiderations-and-practical-guidance-for-employers?id=30833

13

SA-232

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

rules, and regulations. Finally, on March 30, 2020, Defendant terminated him.

42. Defendant violated its own work rules. Defendant's own Handbook states: "Report immediately to your supervisor any indications that the environment is not being maintained in a safe and healthful fashion." Paragraph 113 further states: "Should the Company need to terminate your employment because of reorganization, job elimination, economic downturns, or lack of work, the Company will try to give you as much advance notice as is practical." Plaintiff received no advanced notice and was told to exit the premises immediately. This is further proof of an adverse employment action.

43. As a result of Defendant's retaliatory and other unlawful acts, Plaintiff is entitled to injunctive relief, reinstatement to the same position or to an equivalent position, compensation for lost salary and benefits, and recoupment of reasonable costs, disbursements, and attorney's fees in an amount to be proven at trial of not less than $1,000,000.

## SECOND CAUSE OF ACTION
(Breach of Confidentiality)

44. The allegations of paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

45. For the tort of breach of confidential relationship, a cause of action consists of the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.

46. First, Defendant breached the confidential relationship with Plaintiff when it and its agents misused information about him. The only way these individuals in Thailand could have known about Plaintiff's work on this review was by a disclosure from it. Defendant never had the right to disclose anything about Plaintiff to third parties. Plaintiff did not want his involvement in this controversial review to become known there. By agreeing to have the servers and review based with

14

SA-233

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

the corporation which was the target of the investigation in Japan and giving its agents Plaintiff's personal information, Defendant was responsible for these leaks and disclosures *ab initio*. After Plaintiff complained about this on November 29, 2019-December 2, 2019, no remedial action was taken nor was there any follow-up hoping it would go away.

47. Second, Defendant violated its own policies for resume submissions by posting Plaintiff's resume from its confidential HR files publicly and refusing to take it down.

48. Third, conspiring with Toyota and White House-tied Wilmer Hale, Defendant also purposely "exposed" Plaintiff as the John Doe plaintiff in the Florida John Doe complaint. In paragraph 9 of its complaint Defendant discloses: "The State Court Complaint names the plaintiff as 'John Doe,' but the allegations in that complaint – including allegations quoting Defendant's emails to Plaintiff regarding suspension of the Project -- leave no doubt whatsoever that Delaney is the unnamed plaintiff." This violated the Eleventh Circuit's policy allowing a plaintiff to proceed anonymously if the plaintiff possesses "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings" *and which the Florida court allowed. Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992). Defendant and Toyota did not go through any legal procedure to oppose the John Doe filing but simply made the disclosure based on the confidential records in their possession from Plaintiff. In an employer-employee relationship such as this where there was a background check, the employer has supreme access to the employee's personal information.

49. As a result of its tortious acts, Defendant is liable to pay Plaintiff damages in an amount to be proven at trial of not less than $2,000,000.

THIRD CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

50. The allegations of paragraphs 1 through 27 are re-alleged and incorporated herein

15

SA-234

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

by reference.

51.     There was a systematic and continuous effort to commit outrageous acts against Plaintiff.

52.     On November 29, 2019, it was learned that Defendant's first extreme and outrageous action was to allow the disclosure of Plaintiff's confidential and personal information to opposing lawyers and lobbyists in Thailand without his consent. This was because Defendant only cared about its "Corporate Customer's [Toyota's]" interests *i.e.* its own business advantage at the expense of Plaintiff.

53.     Between March 17-30, 2020, Defendant's second act was to first send home and then two weeks later terminate Plaintiff for making a public health and safety complaint about the conditions at its 360 Lexington Avenue office in the middle of the worst crisis in New York history. The fact that this was a legitimate health/safety complaint was never contradicted. After Plaintiff complained about his termination on March 30, 2020, Defendant, Toyota, and Wilmer Hale worked in concert by filing this case to try to preempt a lawsuit from him with baseless accusations pulled out of their hat. As corroboration that they are working in concert, Defendant's counsel always seems to know everything that is happening with the Florida case, even though they are not representing anyone in that action and are receiving sealed documents. All of the legal actions by these three parties are carefully orchestrated to force Plaintiff to fight litigation in disparate jurisdictions. Address checks have been placed on Plaintiff in Nebraska by investigators.

54.     On April 22, 2020, Defendant's third act was to file a lawsuit in the Southern District against Plaintiff lying about the jurisdiction and to fabricating malicious lies about him to ruin his professional reputation. Defendant falsely accused Plaintiff of "extort[ion]" (paragraph 31 of the complaint), which is a criminal offense since there is no civil extortion under New York law and therefore should never have been alleged in Defendant's complaint in the first place, of blackmail, of stealing and not returning documents, and of being unethical. At the two hearings on April 29, 2020 and

16

SA-235

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

May 26, 2020, Defendant did not present a shred of evidence to support these fabricated allegations.

55. On May 22, 2020, Defendant's fourth act was to publicly post Plaintiff's unsealed resume. Plaintiff submitted this resume to Defendant in September 2019 on the condition that it would be kept confidential and not used without his consent against him as was done here in violation of Defendant's own policies on resume submissions[8]. The posting of Plaintiff's resume was the exact same outrageous conduct as Defendant's disclosing his involvement to lawyers on the other side last year with the similar self-serving ulterior motive to benefit itself at Plaintiff's expense.

56. Defendant's fifth act has been to harass Plaintiff and interfere with his right to peace and quiet. On July 7, 2020, the front desk at Plaintiff's hotel in Nebraska received what they said was "a suspicious phone call" from someone purporting to know him asking if he was there and his room number and then hanging up.

57. As the sixth act, Plaintiff has been placed by Defendant on the industry DNR ("Do Not Reuse") blacklist which would preclude him from future document review work. Since his termination, Plaintiff has not been contacted by any agency about work.

58. Due to the six above extreme and outrageous actions, Plaintiff has suffered severe emotional distress. He was alarmed about threats to his and his related parties' personal safety in Thailand; he was worried about contracting the coronavirus at work due to Defendant's failure to maintain a safe and healthy office and subsequently; he was eventually terminated at the end of March 2020 without cause and forced to temporarily relocate during the height of the coronavirus in New York City; he has been forced to litigate including the same issues in separate jurisdictions through the concerted efforts of Defendant and its two agents; and he has been maliciously lied about and had his professional reputation and future employment prospects irreparably damaged. Plaintiff has suffered

---

[8] "Hire Counsel uses Human Resource personal information for limited purpose that includes complying with employment related laws and regulations as well as for payroll purposes." https://www.hirecounsel.com/wp-content/uploads/2018/12/Hire-Counsel-Global-GDPR-Data-PrivacyPolicy_120618.pdf").

17

SA-236

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

great financial damage and has needed medical care as a direct result of Defendant's extreme and outrageous conduct.

59. In light of the preceding, Plaintiff, as would anyone, expects immediate additional outrageous actions as part of this concerted campaign to cause him emotional distress.

60. As a result of the foregoing tortious acts, Defendant is liable to pay Plaintiff damages in an amount to be proven at trial of not less than $3,000,000.

FOURTH CAUSE OF ACTION
(Malicious Prosecution)

61. The allegations of paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

62. Malicious prosecution in New York is a deliberate attempt by a party to harm another by subjecting them to a baseless civil lawsuit. It costs money, consumes large amounts of time, and clogs an already backlogged court system.

63. On April 22, 2020, in order to preempt a legitimate public health and employment lawsuit from Plaintiff it knew was coming, Defendant manufactured a false lawsuit which it lied about in order to file in federal court, *HC2, Inc. v. Delaney*, 1:20-cv-03178 (SDNY 2020). The purpose of this made-up lawsuit was to preempt Plaintiff's litigation, to defame him asserting "the absolute litigation privilege" to make false statements about him, and to expose him as the John Doe in the Florida action. Specifically, Defendant maliciously and falsely accused Plaintiff of blackmail, extortion (even though there is no civil extortion in New York it still made this allegation), theft of documents, and being unethical. Defendant knew when it brought the lawsuit that none of this was true and there was not a shred of evidence to support it but was hoping as an out of work gig economy worker at the height of the coronavirus pandemic in New York, which they knew he was worried about, that he would simply default. Defendant then repeated these lies in the media.

18

SA-237

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

64.     On April 22, 2020, the Southern District *denied* Defendant's *ex parte* TRO application. On May 27, 2020, after Defendant wasted weeks of Plaintiff's time on expedited discovery, the Southern District *denied* Defendant's PI request.

65.     Worse, Defendant and its lawyers *lied* about its principal place of business and the amount in controversy (which is under $75,000) in order to file its case in federal court. There is no diversity jurisdiction. On April 29, 2020, when asked by the court how much Plaintiff was paid by his client, Defendant's attorney, Ronald R. Rossi, Esq. of Kasowitz lied that it was "in the low six figures" when Plaintiff was paid only over $67,000. This malicious prosecution is a fraud on the court and forced plaintiff to spend almost one year in a case where there was never any subject matter jurisdiction in the first place. The whole case was a construct from day one.

66.     As a result of the Defendant's malicious prosecution of him in the Southern District, Defendant is liable to pay Plaintiff damages including special damages in an amount to be proven at trial of not less than $5,000,000.

FIFTH CAUSE OF ACTION
(Abuse of Process)

67.     The allegations of paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

68.     Defendant regularly issued civil process with the intent to do harm without cause or justification and used the process in a perverted manner to achieve a collateral objective. The abuse of process was also motivated by retaliation.

69.     Ever since he was terminated at the end of March 2020, Defendant, Toyota, and Wilmer Hale have been acting in concert to prevent and preempt Plaintiff from filing legitimate claims against them and to file false claims against him in improper forums.

70.     After Plaintiff went to great care to file anonymously, both Defendant and Toyota

19

SA-238

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM

NYSCEF DOC. NO. 1

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/16/2021

also unethically went out of their way to expose Plaintiff as the John Doe in the Florida case.

71.     Defendant, acting in concert with the corporation's Florida counsel, has continued to falsely propound that Plaintiff sold trade secrets. This issue was picked up by "The National Law Review" in a story citing this case "6 Steps to Protect Your Trade Secrets During Covid-19 Layoffs."

72.     On July 7, 2020, Defendant had persons call and make inquiries about him at his address in Nebraska and on July 8, 2020 sent a letter to Plaintiff's counsel referring to its "research" about him and attempting to fish for information as to his whereabouts.

73.     As a result of its intentional tortious acts, Defendant is liable to Plaintiff in an amount to be proven at trial of not less than $1,000,000.

SIXTH CAUSE OF ACTION
(Defamation Per Se)

74.     The allegations of paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

75.     Defendant defamed Plaintiff repeatedly by making false statements about him which was defamation *per se* (business or trade libel).   It has accused him of blackmail, extortion (a crime in New York), stealing documents, and being unethical. It knew that it was not possible for him to steal documents from their office but accused him of this anyway.  It has never retracted its false statements even after it knew they were not true.  As for "extortion", in an opinion on May 27, 2020, the Southern District stated that Plaintiff's demand letter on Toyota "was a routine demand letter and it's not extortion."

76.     Defendant and its employee Hartstein also defamed Plaintiff when they sent an email to Wilmer Hale: "Please see below…this guy caused this."  This statement falsely accused Plaintiff of

20

SA-239

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

being responsible for the public health and safety problems in Defendant's New York office when in fact he was a victim of them.

77.     As a result of Defendant's defamation, Defendant is liable to Plaintiff in an amount to be proven at trial of not less than $3,000,000.

21

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM          INDEX NO. 651740/2021
NYSCEF DOC. NO. 1                                         RECEIVED NYSCEF: 03/16/2021

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

(a) That the Court enter a judgment against Defendant in an amount equal to $15,000,000 and the costs of this action, with interest;

(b) That Plaintiff be awarded all costs incurred in bringing this action, including attorney's fees;

(c) That Plaintiff be awarded all punitive damages and consequential damages;

(d) That Plaintiff be awarded pre-judgment interest;

(e) That Plaintiff be granted any and all preliminary and injunctive relief the Court deems appropriate; and

(f) That Plaintiff be granted any and all other relief the Court deems appropriate.

_____

Andrew Delaney

STATE OF FLORIDA        )
                        ss:
COUNTY OF ORANGE        )

Sworn to before me on the

10 th day of March 2021.

RAFAEL REYES
Notary Public - State of Florida
Commission # GG 908050
My Comm. Expires Aug 27, 2023

FILED: NEW YORK COUNTY CLERK 03/16/2021 04:19 PM
NYSCEF DOC. NO. 1

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/16/2021

## VERIFICATION

STATE OF FLORIDA )

                      ss:

COUNTY OF ORANGE )

    ANDREW DELANEY, being duly sworn, deposes and says: I am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____
Plaintiff

Sworn to before me on the

16 th day of March 2021.

RAFAEL REYES
Notary Public - State of Florida
Commission # GG 908050
My Comm. Expires Aug 27, 2023

SA-242

# EXHIBIT M

SA-243

FILED: NEW YORK COUNTY CLERK 05/28/2021 04:49 PM

NYSCEF DOC. NO. 49

INDEX NO. 651740/2021

RECEIVED NYSCEF: 05/27/2021

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:   **HON. ALEXANDER M. TISCH**

*Justice*

-----------------------------------------------------------------X

ANDREW DELANEY

Plaintiff,

- v -

HC2 INC. D/B/A/ HIRE COUNSEL,

Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| PART | IAS MOTION 18EFM |
| INDEX NO. | 651740/2021 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, 25, 26, 28

were read on this motion to/for                                              SEAL                                              .

Upon the foregoing documents, defendant moves to seal paragraphs four through eleven (4-11) of plaintiff's complaint.

"Under New York law, there is a broad presumption that the public is entitled to access to judicial proceedings and court records" (*Mosallem v.Berenson,* 76 AD3d 345, 348 [1st Dept 2010; *see Danco Labs. v Chemical Works of Gedeon Richter*, 274 AD2d 1, 7-8 [1st Dept 2000]). Courts may, under limited circumstances, restrict such rights and direct that certain records be sealed only upon "upon a written finding of good cause, which shall specify the grounds thereof" (22 NYCRR 216.1[a]). "In determining whether good cause has been shown, the court shall consider the interests of the public as well as of the parties" (*id.*) and "make an independent determination of whether to seal court records in whole or in part for 'good cause'" (*Mancheski v Gabelli Group Capital Partners,* 39 AD3d 499, 502 [2d Dept 2007]).

As "there is a presumption of openness embodied in the rule [Section 216.1]," records should not be sealed "where good cause has not been demonstrated" (*Coopersmith v Gold,* 156 Misc 2d 594, 605 [Sup Ct, Westchester County 1992]). "'Confidentiality is clearly the exception,

651740/2021  DELANEY, ANDREW vs. HC2 INC. D/B/A/ HIRE COUNSEL
Motion No.  001

Page 1 of 4

1 of 4

FILED: NEW YORK COUNTY CLERK 05/28/2021 04:49 PM

NYSCEF DOC. NO. 49

INDEX NO. 651740/2021

RECEIVED NYSCEF: 05/27/2021

not the rule,' and the party seeking to seal court records has the burden to demonstrate compelling circumstances to justify restricting public access" (*Mosallem*, 76 AD3d at 349, quoting *Matter of Hofmann*, 284 AD2d 92, 93-94 [1st Dept 2001]; *see Danco Labs.*, 274 AD2d at 8; *Mancheski*, 39 AD3d at 502). The movant should submit proof by way of "an affidavit from a person with knowledge explaining why the file or certain documents should be sealed" (*B2 Payment Sols., Inc. v UL LLC*, 2018 NY Slip Op 32043[U], 2018 WL 3995970 [Sup Ct, NY County 2018], quoting *Grande Prairie Energy LLC v Alstom Power, Inc.*, 5 Misc 3d 1002(A), 2004 NY Slip Op 51156[U], *2 [Sup Ct, NY County 2004]).

The Court finds that defendant adequately demonstrated that most, but not <u>all</u> of the allegations in subject paragraphs of the complaint contain confidential, privileged and/or non-public information or were otherwise only known to plaintiff through his contract work with Wilmer Hale and its client, Toyota (*see generally* NYSCEF Doc. Nos. 10, 21, 24).

While it is true that some public information appears in the subject paragraphs, it is also true that they are so intertwined with other information that appears to be privileged or otherwise confidential and nonpublic. This is certainly the case with paragraphs 5-7 and 9-10. Accordingly, those paragraphs should be sealed. As to paragraphs 4 and 8, while a bulk of the allegations appear to be public, the Court finds that they should also be sealed, as they bear no legitimate relevance to the claims asserted in this action. There is no legitimate need for the public to access the information in order to validly assess the sum and substance of plaintiff's claims. The Court finds plaintiff's arguments in opposition unavailing in this regard.

Although, the same cannot be said as to paragraph 11 — most of the allegations therein may be relevant to the breach of confidentiality claim, wherein plaintiff alleges that defendant disclosed his name and email address to individuals in Thailand, and, relatedly, the intentional

651740/2021   DELANEY, ANDREW vs. HC2 INC. D/B/A/ HIRE COUNSEL
Motion No.  001

Page 2 of 4

2 of 4

SA-245

FILED: NEW YORK COUNTY CLERK 05/28/2021 04:49 PM          INDEX NO. 651740/2021
NYSCEF DOC. NO. 49                                        RECEIVED NYSCEF: 05/27/2021

infliction of emotional distress claim. Most of the allegations in that paragraph provide a broad and general context for plaintiff's work situation, which are relevant to his other claims. However, there is one sentence that should be redacted, as it appears to be confidential, privileged, or otherwise not public — namely, the sentence beginning with "This is . . ." and ends in footnote number 3. The entire sentence and footnote shall be redacted.

Accordingly, it is hereby ORDERED that the motion is granted in part to the extent that the Court finds good cause exists to redact paragraphs 4-10 and partially redacting paragraph 11 of plaintiff's complaint; and it is further

ORDERED that plaintiff file a complaint within twenty (20) days bearing the redactions as set forth by this Court, to wit, redactions of paragraphs 4-10 in their entirety, and the one sentence in paragraph 11 and related footnote number 3; and it is further

ORDERED that the Clerk of the Court is directed, upon service on him (60 Centre Street, Room 141B) of a copy of this order with notice of entry, to seal the original complaint, NYSCEF Doc. No. 1 and to separate this document and to keep them separate from the balance of the file in this action; and it is further

ORDERED that thereafter, or until further order of the court, the Clerk of the Court shall deny access to the said sealed documents to anyone (other than the staff of the Clerk or the court) except for counsel of record for any party to this case and any party; and it is further

ORDERED that service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh).

This constitutes the decision and order of the Court.

651740/2021   DELANEY, ANDREW vs. HC2 INC. D/B/A/ HIRE COUNSEL          Page 3 of 4
Motion No.  001

SA-246

FILED: NEW YORK COUNTY CLERK 05/28/2021 04:49 PM

NYSCEF DOC. NO. 49

INDEX NO. 651740/2021

RECEIVED NYSCEF: 05/27/2021

_5/27/2021_
DATE

ALEXANDER M. TISCH, J.S.C.

CHECK ONE:

| | CASE DISPOSED | | X | NON-FINAL DISPOSITION |
| | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |

APPLICATION:      SETTLE ORDER      SUBMIT ORDER

CHECK IF APPROPRIATE:      INCLUDES TRANSFER/REASSIGN      FIDUCIARY APPOINTMENT      REFERENCE

651740/2021   DELANEY, ANDREW vs. HC2 INC. D/B/A/ HIRE COUNSEL
Motion No.  001

Page 4 of 4

SA-247

# EXHIBIT N

SA-248

FILED: NEW YORK COUNTY CLERK 09/15/2021 01:03 PM  INDEX NO. 651740/2021
NYSCEF DOC. NO. 54                                      RECEIVED NYSCEF: 09/14/2021

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | |
|---|---|---|---|
| PRESENT: | HON. ALEXANDER TISCH | PART | 18 |
| | *Justice* | | |

-----------------------------------------------------------------X

ANDREW DELANEY

               Plaintiff,

       - v -

HC2 INC. D/B/A/ HIRE COUNSEL,

              Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 651740/2021 |
| MOTION DATE | 06/11/2021 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 39, 40, 41, 42, 43, 44, 45, 46, 47

were read on this motion to/for           DISMISS       .

     Upon the foregoing documents, it is ORDERED that the motion is granted without

opposition; and it is further

     ORDERED that this action is dismissed without prejudice.

| | |
|---|---|
| 9/13/2021 | |
| DATE | ALEXANDER TISCH, J.S.C. |

| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

651740/2021  DELANEY, ANDREW vs. HC2 INC. D/B/A/ HIRE COUNSEL
Motion No.  003

Page 1 of 1

SA-249

# EXHIBIT O

SA-250

```
--------------------------------------------------------x
In re:                                                      Case No.:    __1-20-44372-jmm ___

        ANDREW JOHN DELANEY,                                Chapter:              7

                Debtor.
--------------------------------------------------------x
```

## ORDER WITHDRAWING CLAIM 2 OF HC2, INC. D/B/A HIRE COUNSEL

Upon the motion dated July 19, 2021 (the "Motion") **[ECF No. 76]** of HC2, Inc. d/b/a Hire Counsel ("HC2"), a party in interest of the bankruptcy estate of Andrew John Delaney (the "Debtor"), seeking the entry of an Order withdrawing Claim 2 of HC2 and for such other, further and different relief as this Court may deem just and proper; and upon the Certificate of Service of the Motion; and upon the Debtor's consent to the Motion [ECF No. 78]; and a hearing having been held on the Motion on July 27, 2021; and after due deliberation and good and sufficient cause appearing therefor, it is

ORDERED, that the Motion is granted as set forth below:

1. Claim 2 of HC2 is hereby withdrawn, with prejudice to HC2's right to file another proof of claim in this bankruptcy case.

2. Discovery concerning Claim 2 and concerning the objection filed by the Debtor against Claim 2 in this case is hereby terminated.

3. The hearing scheduled for September 28, 2021 at 11:00 a.m. concerning the objection filed by the Debtor against Claim 2 in this case is hereby cancelled.

4. The entry of this Order does not limit or affect the jurisdiction of this Court over HC2 or over any adversary proceeding currently pending before this Court that involves HC2.



**Dated: Brooklyn, New York**
**August 1, 2021**

_____
**Jil Mazer-Marino**
**United States Bankruptcy Judge**

SA-251

# EXHIBIT P

SA-252

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

BRIAN D. SPECTOR, ESQ.
DOUGLAS A. GOLDSTEIN, ESQ.
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike, Suite 202
Florham Park, New Jersey 07932-2261
Tel.: (973) 845-6526
Fax: (973) 593-4848
e-mail: dgoldstein@selawfirm.com
Attorneys for HC2, Inc. d/b/a Hire Counsel

| In re: | Case No.: | 1-20-44372-jmm |
| | Chapter: | 7 |
| ANDREW JOHN DELANEY, | Judge: | Jil Mazer-Marino |
| Debtor. | Hearing Date: | Dec. 14, 2021 at 10:00 a.m. |

**JOINDER OF HC2, INC. TO THE CHAPTER 7
TRUSTEE'S OBJECTION, AND HC2, INC.'S OBJECTION, TO THE
DEBTOR'S MOTION TO VOLUNTARILY DISMISS THE CHAPTER 7 CASE**

HC2, Inc. d/b/a Hire Counsel ("HC2"), an interested party, by and through its counsel,

Spector & Ehrenworth, P.C., hereby joins the objection of the Chapter 7 Trustee (the "Trustee")

(Doc. 123) to the motion of the debtor, Andrew John Delaney, to voluntarily dismiss the chapter 7

case (Doc. 121) (the "Objection," the "Debtor" and the "Motion," respectively), and further objects

to the Motion, and respectfully states as follows:

1.      HC2, as counter-party to a settlement with the Trustee (the "Settlement"), which this

Court approved by Order, Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), Approving

the Stipulation by and Between the Chapter 7 Trustee and HC2, Inc., Resolving All Claims (Doc.

116) (the "Settlement Order"), has a significant interest in the disposition of the Motion and,

therefore, is an interested party.

SA-253

Case 1-20-44372-jmm    Doc 125    Filed 12/06/21    Entered 12/06/21 16:11:11

2.    In particular, under the Settlement, HC2 paid to the Trustee the sum of $25,000.  In exchange, the Trustee, on behalf of the bankruptcy estate, released HC2 from certain claims and executed and delivered to HC2 stipulations of dismissal or withdrawal, with prejudice. Subsequently, HC2, in reliance upon the entry of the Settlement Order, moved for substitution of the Trustee for the Debtor, to permit the submission of the foregoing stipulations in multiple courts.  In the process of taking the foregoing steps, HC2 has incurred significant legal fees and expenses.

3.    In paragraph 9 of the Motion, the Debtor alleges that "[t]here is no allegation of bad faith or fraud on the Debtor's part...."  In response, the Trustee argues that the Debtor's conduct has exhibited, or is indicative of, bad faith and fraud.  See Objection, paragraphs 30, 33 and 36.

4.    In further support of the Trustee's argument that the Debtor's conduct in this bankruptcy case has exhibited, or is indicative of, bad faith and fraud, and in the interest of brevity, HC2 incorporates, by reference:

    a.    Paragraphs 25-37, inclusive, of the Opposition of HC2, Inc. d/b/a Hire Counsel To Debtor's Motion to Dismiss Case (Doc. 27) (the "First HC2 Opposition");

    b.    The respective portions of and exhibits to the Certification of Stephanos Zannikos In Opposition to Debtor's Motion to Dismiss Case, which HC2 filed in opposition to the Debtor's first motion to dismiss this case (Doc. 27-1, et seq.); and

    c.    The respective documents filed with this Court by the Debtor to which the First HC2 Opposition makes reference.

5.    In the Motion, the Debtor does not seek the vacatur of the Settlement Order.  In

K:\H143.0001\PLDG\Joinder-Trustee's Objection to Dismissal.003.wpd

SA-254

addition, the Debtor does not contend, nor can he credibly contend, that he should receive the fruits of the Trustee's efforts that led to the Settlement.

6.    *In arguendo*, even if grounds exist for the dismissal of this bankruptcy case, which HC2 strongly disputes, the Court should order that the Settlement Order is *not* vacated, pursuant to 11 U.S.C. § 349(b), to minimize the needless confusion, expense and prejudice that HC2 and the Trustee would suffer, having pursued and relied on the entry of the Settlement Order.

WHEREFORE, HC2, Inc. respectfully requests that this Court deny the Motion in its entirety, and grant such other and further relief as this Court may deem just and equitable.

<div style="margin-left:45%">

SPECTOR & EHRENWORTH, P.C.
Attorneys for HC2, Inc. d/b/a Hire Counsel

By:   /s/ Douglas A. Goldstein    
      Douglas A. Goldstein

</div>

Dated: December 6, 2021

SA-255

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

BRIAN D. SPECTOR, ESQ.
DOUGLAS A. GOLDSTEIN, ESQ.
SPECTOR & EHRENWORTH, P.C.
30 Columbia Turnpike, Suite 202
Florham Park, New Jersey 07932-2261
Tel.: (973) 845-6526
Fax: (973) 593-4848
e-mail: dgoldstein@selawfirm.com
Attorneys for HC2, Inc. d/b/a Hire Counsel

| In re: | Case No.: ___1-20-44372-jmm___ |
|---|---|
| ANDREW JOHN DELANEY, | Chapter: _____7_____ |
| Debtor. | |

**CERTIFICATE OF SERVICE**

DOUGLAS A. GOLDSTEIN, of full age, hereby certifies as follows:

1.    I am an attorney-at-law of the State of New York and am a shareholder of the law firm of Spector

& Ehrenworth, P.C., 30 Columbia Turnpike, Suite 202, Florham Park, New Jersey 07932.

2.    On this day, I caused the following paper to be served as follows:

DOCUMENT:                          Joinder of HC2, Inc. to the Chapter 7 Trustee's Objection, and HC2,
                                   Inc.'s Objection, to the Debtor's Motion to Voluntarily Dismiss the
                                   Chapter 7 Case.

COPIES SERVED UPON:                Gregory Messer, Esq.
(Method of Service)                Law Offices of Gregory Messer, PLLC
                                   26 Court Street, Suite 2400
                                   Brooklyn, New York 11242
                                   *Chapter 7 Trustee*
                                   (ECF & First-Class Mail)

                                   Cristina Lipan, Esq. and Gary F. Herbst, Esq
                                   Lamonica Herbst & Maniscalco, LLP
                                   3305 Jerusalem Avenue, Suite 201

K:\H143.0001\PLDG\Cert of Service (Joinder-Trustee's Objection to Dismissal).001.wpd

SA-256

Wantagh, New York 11793
*Attorneys for the Chapter 7 Trustee*
(ECF & First-Class Mail)

Andrew John Delaney
330-340 Baychester Ave #1009
Bronx, New York 10475
*Debtor*
(FedEx Next Day Delivery No. 7754 0342 3433)

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014
(ECF & First-Class Mail)


I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.


_____*/s/ Douglas A. Goldstein*_____
Douglas A. Goldstein

Dated: December 6, 2021
Florham Park, New Jersey

SA-257

# EXHIBIT Q

SA-258

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW DELANEY,

           Plaintiff,                          Case No.

             v.                           **NOTICE OF REMOVAL**

HC2, INC.,
STEPHANOS ZANNIKOS,
MICHAEL JOHN ESKER NACCHIO,
and
TOYOTA MOTOR NORTH AMERICA, INC.
          Defendants.
-------------------------------------------------------------X

Defendant Toyota Motor North America, Inc. ("TMNA") hereby gives notice of its removal to this Court, pursuant to 28 U.S.C. § 1441, et seq., of this action, pending in the Supreme Court of New York, County of New York. In support of removal, Toyota state as follows:

1. Plaintiff Andrew Delaney ("Plaintiff") commenced a civil action against defendants entitled *Andrew Delaney v. HC2, Inc., Stephanos Zannikos, Michael John Esker Nacchio, and Toyota Motor North America, Inc.,* Index No. 155158/2024 in the Supreme Court of New York, New York County on June 14, 2024, by filing a summons and a complaint, copies of which are annexed hereto as Exhibit A.

2. Plaintiff filed a corrected complaint on June 14, 2024 (the "Corrected Complaint"), a copy of which is annexed hereto as Exhibit B.

3. The Corrected Complaint was purportedly served upon TMNA on June 24, 2024. A copy of the Affirmation of Service is annexed hereto as Exhibit C.

SA-259

4.      This request for removal is being filed within (30) days after receipt of the Corrected Complaint by TMNA.

5.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one that may be removed to this Court by TMNA pursuant to the provisions of 28 U.S.C. § 1441, because it is a civil action arising under the Constitution, laws or treaties of the United States.

6.      A copy of the filing of this Notice of Removal will be filed promptly with the clerk of the Supreme Court of New York, New York County, and will be served promptly on Plaintiff and the other defendants.  *See* 28 U.S.C. § 1446(d).

7.      No prior application for the same or similar relief has been made to this or any other court.

### A.  The Complaint Involves Federal Questions

8.      Plaintiff has asserted claims under 42 U.S.C. § 12101 et seq., also known as the Americans with Disabilities Act, and 42 U.S.C. § 2000e et seq. also known as Title VII of the Civil Rights Act of 1964 ("Title VII").

9.      The Americans with Disabilities Act and Title VII are laws of the United States.

### B.  All Defendants Consent to Removal

10.     Defendants HC2, Inc., Stephanos Zannikos and Michael John Esker Nacchio each consent to the removal, as set forth in the consent executed on their behalf by their counsel, which is annexed hereto as Exhibit D.

SA-260

WHEREFORE, TMNA respectfully requests that this above-captioned action be removed from the Supreme Court of the State of New York, County of New York, to this Court.

Dated:  New York, New York
       July 10, 2024

                               Respectfully submitted,

                               SCHOEMAN  UPDIKE  &  KAUFMAN LLP

                               By: _____
                               Beth L. Kaufman
                               551 Fifth Avenue
                               New York, NY 10176
                               Tel: (212) 661-5030

                               E-mail:  bkaufman@schoeman.com

                               *Attorneys for Defendant Toyota Motor North America, Inc.*

3

SA-261

# EXHIBIT A

SA-262

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x
ANDREW DELANEY,

               *Plaintiff*,                     Index No.

          -against-                    SUMMONS

HC2, INC.,
STEPHANOS ZANNIKOS,
MICHAEL JOHN ESKER NACCHIO,
and
TOYOTA MOTOR NORTH AMERICA, INC.,

               *Defendants*.
----------------------------------------------------------------x

To the above-named defendants:

       YOU ARE HEREBY SUMMONED to answer the Complaint and to serve a copy of your answer, or, if the Complaint is not filed with this Summons, to serve a Notice of Appearance on the plaintiff's attorney within 20 days after service of this Summons, exclusive of the day of service, or within 30 days after service is complete if this Summons is not personally served on you within the State of New York.

       YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

DATED:     New York, New York        /s/Andrew Delaney
            June 4, 2024              Andrew Delaney
                                     *Plaintiff*
                                     Sen.Gil Puyat Avenue
                                     Makati Central Post Office 1057
                                     Brgy. San Antonio
                                     Makati 1250
                                     Republic of the Philippines
                                     63-94-2677-8826
                                     srview1@gmail.com

To:

Defendants' addresses:

HC2, Inc.
360 Lexington Avenue Ste. 1100
New York, New York 10017

1

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM        INDEX NO. 155158/2024
NYSCEF DOC. NO. 1                                         RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 3 of 190

Stephanos Zannikos
360 Lexington Avenue Ste. 1100
New York, New York 10017

Michael John Esker Nacchio
Mondelez International, Inc.
100 Deforest Avenue
East Hanover, New Jersey 07936-2813

Toyota Motor North America, Inc.
CT Corporation System
28 Liberty Street
New York, New York 10005


Venue:  Plaintiff designates New York County as the place of trial.  The basis of this designation
is defendant HC2's residence in New York County.

SA-264

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 4 of 190

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
ANDREW DELANEY,

                *Plaintiff*,

         -against-

HC2, INC.,
STEPHANOS ZANNIKOS,
MICHAEL JOHN ESKER NACCHIO,
and
TOYOTA MOTOR NORTH AMERICA, INC.,

              *Defendants*.
-----------------------------------------------------------------x

Index No.

COMPLAINT

JURY TRIAL DEMANDED

Complaining of the defendants plaintiff Andrew Delaney （Delaney） alleges as follows:

PRELIMINARY STATEMENT

This is an action brought pursuant to Judiciary Law §487 and other laws against the defendants based upon the deceit and/or consent to deceit of the defendants with the intent of the defendants to deceive the courts resulting in the plaintiff incurring monetary damages.

PARTIES

1. The plaintiff Delaney resides in the Republic of the Philippines and has his address at Sen. Gil Puyat Avenue, Makati Central No. 1057, Brgy. San Antonio, Makati City 1250, the Philippines. Delaney is HC2, Inc.'s （HC2） and Toyota Motor North America, Inc.'s （Toyota） former employee.

2. The defendant HC2 is a District of Columbia corporation with its principal place of business at 360 Lexington Avenue Ste. 1100, New York, New York 10017. HC2 is Toyota's agent.

1

SA-265

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 5 of 190

3.     Upon information and belief, the defendant Stephanos Zannikos ("Zannikos") is an attorney duly licensed to practice law in the State of New York, and maintains an office for the practice of law at 360 Lexington Avenue Ste. 1100, New York, New York 10017.  Zannikos is HC2's general counsel.

4.     Upon information and belief, the defendant Michael John Esker Nacchio, Esq. ("Nacchio") is an attorney duly licensed to practice law in the State of New York, and maintains an office for the practice of law at Mondelez International, Inc., 100 Deforest Avenue, East Hanover, New Jersey 07936-2813.  Nacchio was HC2's outside counsel.

5.     The defendant Toyota is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.  Toyota is registered with the New York Secretary of State.  Its registered agent is CT Corporation System, 28 Liberty Street, New York, New York 10005.

6.     Douglas A. Goldstein, Esq. ("Goldstein"), Spector & Ehrenworth, P.C., Kasowitz Benson Torres LLP ("Kasowitz"), Ronald R. Rossi, Esq., Gregory M. Messer, Esq. ("Messer"), Gary F. Herbst, Esq. ("Herbst"), and Lamonica Herbst & Maniscalco LLP ("Lamonica") are unnamed co-conspirators in this action.

<div align="center">JURISDICTION AND VENUE</div>

7.     This Court has jurisdiction over the defendants pursuant to N.Y. C.P.L.R. §§ 301 and 302.

8.     N.Y. C.P.L.R. § 302(a)(2) further authorizes the exercise of personal jurisdiction over Toyota which committed tortious acts within New York either in person or by an agent.

9.     Venue is proper in New York County pursuant to N.Y. C.P.L.R. § 503 because HC2 and Zannikos maintain offices at 360 Lexington Avenue Ste. 1100, New York, New York

<div align="center">2</div>

SA-266

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1
INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 6 of 190

10017, in New York County, and Toyota does business in New York County, and because a portion of the events giving rise to this action occurred in New York County.

FACTS

10. On December 23, 2020, Delaney filed for chapter 7 in the United States Bankruptcy Court for the Eastern District of New York. *n e ndre n Delane*, Case No. 20-44372 Bankr. E.D.N.Y. 2020 .

11. Delaney has standing to bring this lawsuit in his own capacity because it is post-petition and he is only claiming damages for the defendants' acts which accrued after January 1, 2021.[1]

12. After Delaney filed for bankruptcy, the defendants 1 committed tortious acts against Delaney, 2 lied to the chapter 7 trustee Messer and his lawyers Lamonica and Herbst about Delaney, 3 falsely and continuously accused Delaney of extortion a crime in New York State, where there is no civil extortion after a federal district court had already ruled it is not an extortion *see* footnote 1 below , 4 filed a fraudulent proof of claim for 1,180,152.67 Exhibit A , 5 breached the stipulation and agreement between HC2 and Delaney and the August 1, 2021 bankruptcy court order by continuing to appear in the case and oppose Delaney

---

[1] On April 20, 2020, the defendants filed a fraudulent lawsuit against Delaney in the United States District Court for the Southern District of New York the Southern District seeking a temporary restraining order TRO and preliminary injunction PI based on two baseless claims for breach of contract and faithless service doctrine. *n Delane*, 20-cv-3178 S.D.N.Y. April 20, 2020 Liman, J. . The defendants brought the case based on *risdi ti nal fra d*. There was no claim for extortion , which is a crime in New York where there is no civil extortion.
On April 20, 2020, Judge Liman *denied* HC2's TRO application. On May 27, 2020, Judge Liman *f rt er denied* HC2's PI motion ruling that it had no chance of success on the merits and It Delaney's lawyer's letter to Toyota is a routine demand letter and it s not extortion.
*ee* Frank G. Runyeon, WilmerHale, Toyota Agency Posted Sealed Info, Loses Gag Bid, Law360, May 27, 2020. https://www.law360.com/articles/1277147/print section commercialcontracts
But that did not stop the defendants *fr l in a t t e ntents f t e ta letter* and *i n rin d e i an and fr ntin in* to lie about Delaney and to accuse him in his bankruptcy case of extortion in the relevant period 2021-2024.

SA-267

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
INDEX NO. 155158/2024
NYSCEF DOC. NO. 1
Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 7 of 190
RECEIVED NYSCEF: 06/06/2024

after HC2 had been ordered withdrawn from the case with prejudice, 6  violated N.Y. Jud. Law 487 through their deceit and collusion, and 7  violated the new N.Y. Labor Law  740 which amendments took effect on January 26, 2022.

13.     On January 5, 2021, Delaney publicly accused the defendants of jurisdictional fraud in an article which appeared in Law360  Ex-WilmerHale Temp Says Agency  Cooked' Case Jurisdiction.  [2]

14.     On February 18, 2021, Delaney accused the defendants of procuring perjury and instructing witnesses to lie under oath for Toyota.[3]

15.     On March 12, 2021, Delaney filed a motion to voluntarily dismiss his chapter 7 case.  The trustee initially verbally agreed with Delaney to the dismissal  until the defendants got to him with their lies, corruption, and deceit.

16.     The defendants did not want for Delaney to dismiss the chapter 7 case *at all  sts*. Right after Delaney filed the motion to dismiss, the defendants began aggressively contacting the trustee and his lawyers, lying to them and to the bankruptcy court about Delaney, and attempting to destroy Delaney personally and professionally.  The defendants lied to Messer and his lawyers about Delaney's assets to make them think there was a  pot of gold , including that he  owned four pieces of real estate  and had  four undisclosed financial accounts .

17.     On March 16, 2021, four days after Delaney's motion to dismiss was filed, the defendants employed an unethical lawyer, Goldstein, to file a notice of appearance and to make

_____

[2] Frank G. Runyeon,  Ex-WilmerHale Temp Says Agency  Cooked' Case Jurisdiction,  Law360, Jan. 5, 2021. https://www.law360.com/articles/1341932/ex-wilmerhale-temp-says-agency-cooked-case-jurisdiction

[3] Frank G. Runyeon,   Ex-WilmerHale Temp Says White House Atty Lied For Toyota,  Law360, Feb. 18, 2021. https://www.law360.com/articles/1349517/ex-wilmerhale-temp-says-white-house-atty-lied-for-toyota

SA-268

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1
INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

false and utterly fraudulent filings in Delaney's bankruptcy case. As shown by HC2's redacted billing records, Goldstein's dishonest acts were all coordinated by the defendants.

18.    From March 16-18, 2021, and at other times through the present, the defendants sent false information to the trustee and his lawyers about Delaney and even drafted and reviewed the trustee's and his lawyers' documents in Delaney's bankruptcy case. This was illegal, since the trustee is supposed to be independent and also owes a duty to the debtor.[4]

19.    On March 18, 2021, in a 424B5 filing, Toyota disclosed that the company had reported anti-bribery violations related to a Thai subsidiary to the United States Securities and Exchange Commission and the United States Department of Justice  the   DOJ   .[5]

20.    On March 25, 2021, in a state court case, Nacchio wrote in a sworn affirmation:  Finally, the lawyer who was assisting Delaney in carrying out his scheme to extort a significant payment from the Corporate Client, is the same lawyer who signed and caused to be filed the State Court Complaint.  *Delane        n  d  a  ire      nsel*, Case No. 651740/2021  Sup Ct, New York County, 2021   Tisch, J.   Tisch Doc. No. 9  The defendants were  *ntin in  t a    se Delane  f e t rti n e en after   d e i  an  ad r led  t er  ise* in an open hearing 10 months before on May 27, 2020. Tisch Document   9 at 3.

21.    On March 26, 2021, the defendants had Goldstein file fraudulent objections to Delaney's motion to dismiss the bankruptcy case. Mazer-Marino ECF No. 27. But worse, the defendants falsely informed Messer and his lawyers that Delaney owned four pieces of undisclosed real estate and also had a judgment against him  from Judge Liman  for extortion.

---

[4]  The Role of the Bankruptcy Trustee in Bankruptcy Legal Proceedings,   Justicia   The bankruptcy trustee is re uired to treat a debtor fairly and honestly but does not represent or advocate for them.  .
https://www.justia.com/bankruptcy/bankruptcy-procedures/the-role-of-the-bankruptcy-trustee/

[5]  Toyota says it reported Thai bribery probe to U.S. SEC and DoJ,   Reuters, Mar. 19, 2021.
https://uk.news.yahoo.com/finance/news/toyota-says-reported-thai-bribery-002800432.html

SA-269

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

The now-public billing records show that Messer, Lamonica, and Herbst were given this false information by the defendants. *ee* Exhibit B hereto Mazer-Marino ECF No. 61-5 . As a result of the defendants' lies about Delaney, on the same day, March 26, 2021, Messer wrote in opposition to Delaney's motion to dismiss the bankruptcy case:  The Trustee's investigation also found: i four 4 distinct real property ownership records associated with the Debtor . *e De t r als d es n t a e nl in redit ard de t as stated n is M ti n t Dis iss t als as a d ent a ainst i f r an additi nal* [6]. Mazer-Marino ECF No. 22 at 4  emphasis added  HC2's billing records show that it was the defendants who communicated this false and defamatory information to Messer and his lawyers.

22.  On March 26, 2021, based on the defendants' lies and deceit, the trustee wrote:

*n inf r ati n and elief t e De t r is a ealin a d ent entered a ainst i f r e t rtin is ri r e l er.* Mazer-Marino ECF No. 22 at 3  emphasis added  *at as e a tl t e site f d e i an s r lin* . Chapter 7 was enacted by Congress to *el de t rs* such as Delaney. But the defendants and their crooked lawyers were abusing it to cause damages to Delaney through their lies and deceit.

23.  On March 26, 2021, Zannikos filed the  Certification Of Stephanos Zannikos In Support Of HC2, Inc. d/b/a Hire Counsel's Motion For Extension Of Time For HC2, Inc., d/b/a Hire Counsel To Object To Discharge Pursuant To Fed. R. Bankr. P. 4004 B  And To Challenge Whether Certain Debts Are Dischargeable Pursuant To Fed. R. Bankr. P. 4007 C   in which he again[7] *re eatedl er red i self*:

Stephanos Zannikos, of full age, certifies as follows:

---

[6] This was an effective admission that HC2's  1,180,152.67 proof of claim was false.

[7] In addition to the Southern District jurisdictional fraud, which was in a false verified complaint attested to by Zannikos under penalty of perjury.

SA-270

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 10 of 190

5. On March 17, 2020, the Law Firm Customer  Wilmer Hale  decided to suspend the Project in view of the COVID-19 pandemic while it considered the possibility of moving to a remote review.  The Law Firm Customer  Wilmer Hale  and its Corporate Client  Toyota  decided not to conduct the remainder of the review.

6.  *ne er ter inated t e   l  ent  ree ent r t  an  t era ti n t ter inate Delane  s e  l  ent  .*[8]  Nonetheless, Delaney sent multiple emails on March 17 and 18, 2020 to the Law Firm Customer  Wilmer Hale  and the Corporate Client  Toyota  falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.

7. *Delane en a ed  nsel t de and    fr  t e  r rate  lient   ta   t is att rne  eased re resentin  i  a fe  da s after  a in t is de  and and Delane i  ediatel en a ed ne  nsel  n  ril    Delane s ne   nsel e ailed a letter t t e  r rate  lient s    ta  ief  e ti e ffi er  i   da and   ard f Dire t rs reiteratin  is de and f r a  a  ent and t reatenin liti ati n and dis l s re f t e  r rate  lient s    ta  ri ile ed and  nfidential inf r ati n if is de  and  as n t  et  ril*

8. The Corporate Client  Toyota  did not capitulate to Delaney's demands or threats.  On April 15, 2020, a day after Delaney's deadline passed, Delaney's lawyer signed and filed a state court complaint, which alleges and acknowledges that the John Doe plaintiff, identified therein as Delaney, gained the confidential and privileged knowledge and information disclosed therein during the course of a document review project for the Corporate Client  Toyota   .

22. I hereby declare under penalties of perjury that I have read the foregoing Certification, and that the allegations contained therein are true and correct to the best of my knowledge.

Mazer-Marino ECF No. 27-1  emphasis added  Delaney's *a t al* letter to Toyota is attached

hereto as Exhibit C.  Judge Liman had already ruled:  It is a routine demand letter and it's not an

extortion.   However, the defendants continued to lie about the contents of the demand letter

 including falsely adding a demand for money of  450,000, which specific demand for money is

a re uirement for extortion  to make Delaney appear like a criminal while themselves ignoring

the ruling of a federal judge and, worse, then telling the trustee and his lawyers that Judge Liman

---

[8]  *ee* Zannikos' e-mail dated March 30, 2020 where he clearly admits a year earlier to having  terminated  Delaney. Exhibit D hereto.

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM          INDEX NO. 155158/2024
NYSCEF DOC. NO. 1                                         RECEIVED NYSCEF: 06/06/2024

had issued a judgment against Delaney for extortion.  This is clear and une uivocal deceit and fraud on the court.

24.     On April 6, 2021, HC2 filed an utterly fraudulent proof of claim for 1,180,152.67 so that they could interfere in Delaney's bankruptcy case and harass him.   *ee* Exhibit A hereto.  Goldstein explained to the bankruptcy court that this was for supposed attorneys fees and costs from the Southern District case.  HC2 submitted bills in support of the claim, which was mostly  1 million for HC2's former counsel Kasowitz, which had *l  st* the TRO and PI.   *ee* Exhibit B hereto  Mazer-Marino ECF No. 61-5 .  ECF No. 61-5 clearly shows that the whole basis for the  1,180,152.67 proof of claim was HC2's legal costs  mostly Kasowitz's for the TRO and PI both of which applications it *l  st*.  Of course, Judge Liman did *n  t* ever order Delaney to pay legal fees for HC2's failed applications.  There was no possible legal theory under which the winner  Delaney  could have been ordered to pay the loser's  HC2's  attorneys fees and costs per ECF No. 61-5  Exhibit B hereto .  It was a total and complete lie to the bankruptcy court.     *e er t e defendants   anted t  file t  is fra d lent  lai  in  rder t  inflate Delane  s l   de t  nl                 t   e   er        illi  n*.[9]  HC2 falsely claimed to the bankruptcy court that it was Delaney's  creditor  when it knew that it was not.  Its filing of this false proof of claim was a criminal act and the defendants were part of a criminal conspiracy in this regard.

25.     On April 8, 2021, the defendants had Goldstein appear at the hearing on Delaney's motion to dismiss which was denied due to their dishonesty.  At the hearing, Delaney

---

[9] On information and belief, Messer, Lamonica, and Herbst were working in concert with the defendants to present this false proof of claim   *i   is a  ri  e*.  Messer, Lamonica, and Herbst went along with this fraud and falsely claimed that it was the trustee who  settled  the HC2 proof of claim on September 1, 2021 after it had already been withdrawn a month earlier which had nothing to do with him.

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

said:  But now they've put in their proof of claim that I owe them  1.2 million.  For what   For attorneys fees that they spent on a case they brought against that the judge tossed     The trustee then stated based on the defendants' lies:  The Trustee has found property under Andrew Delaney in Westchester County.   After lying about Delaney's four bank accounts, fake creditor HC2's Goldstein said:  MR. GOLDSTEIN: Yes. Thank you, Your Honor. And I would just add to the Trustee s presentation that an additional grounds for denial of the motion is lack of bad faith.  It s not just the existence of these assets  it s the fact that the Debtor has failed to disclose them.   Regarding the jurisdictional fraud in the Southern District, Goldstsein said:  You know, lack of subject matter jurisdiction in that other lawsuit is really irrelevant for today.   He tried to sweep the defendants' jurisdictional fraud under the rug.

26.     On May 20, 2021, the defendants filed an ex parte motion to issue subpoenas duces tecum to four financial institutions where they falsely claimed Delaney had accounts.  Mazer-Marino ECF No. 51  In its motion, HC2 lied that:  The Debtor did not disclose in his bankruptcy schedules or Statement of Financial Affairs the existence of any assets, liabilities, closed accounts, depositories for securities or other relationships with any of the Financial Institutions.   But Delaney did not have accounts with those  Financial Institutions  so that this was another lie.

27.     On May 26, 2021, it was reported that Toyota was under grand jury investigation in Texas by the DOJ[10] for violating the Foreign Corrupt Practices Act of 1977, 15 U.S.C. ch. 2B  78a et se .[11]

_____

[10] At the same time, Wilmer Hale hired the DOJ FCPA chief investigating Toyota, Christopher Cestaro, to be a partner in its firm which was representing Toyota.   ee David Thomas,  WilmerHale taps Justice Department s FCPA chief for white collar group,  Reuters, May 1, 2021. https://www.reuters.com/legal/government/wilmerhale-taps-justice-departments-fcpa-chief-white-collar-group-2021-05-28/

[11] Frank G. Runyeon,  DOJ Takes Toyota Thai Bribery Probe To Texas Grand Jury,  Law360, May 26, 2021.

SA-273

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 13 of 190

28.     On June 4, 2021, the defendants had HC2 file a fraudulent adversary case, which it withdrew shortly thereafter with prejudice knowing that it was a blatant fraud on the court.

 Mazer-Marino ECF No. 54  In HC2's Complaint Objecting to Discharge of the Debtor  Mazer-Marino ECF No. 1  in the adversary case  Adversary Case No. 1-21-01047 , Goldstein lied repeatedly about Delaney:

> 7. Delaney is an individual whose street address is currently 330-340 Baychester Ave. Bronx, New York 10475[12]   .
>
> 12. HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2.[13]  Nonetheless, Delaney sent multiple e-mails on March 17 and 18, 2020 to the Law Firm Customer  Wilmer Hale  and the Corporate Client  Toyota  falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19.
>
> 13. Delaney engaged counsel to demand  450,000 from the Corporate Client  Toyota , but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel e-mailed a letter to the Corporate Client's  Toyota  Chief Executive Officer  Akio Toyoda  and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's  Toyota  privileged and confidential information if his demand was not met by April 14, 2020   .
>
> 97. On March 18, 2021, the Clerk of this Court filed a Notice of Discovery of Assets and set a bar date of June 16, 2021 for creditors to file proofs of claims.  See Doc. 20.
>
> 98. On April 6, 2021, HC2 filed a proof of claim for  1,180,152.67  the  HC2 Proof of Claim  .  See Claim Register, Claim 2  .
>
> 115. On the Petition Date, Delaney had one or more accounts for securities, cash or other valuables with one or more of the Financial Institutions that held securities, cash or other valuables.

---

https://www.law360.com/articles/1388032/doj-takes-toyota-thai-bribery-probe-to-texas-grand-jury

[12] According to www.vocabulary.com,  street address  is defined as  the address where a person or organization can be found.   Delaney resides and is domiciled in the Philippines.  The address here is for a Staples Store in the Bronx where Delaney never resided.

[13] This is another lie.  Zannikos admitted to terminating Delaney in his March 30, 2020 e-mail.   ee Exhibit D hereto.

1

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 14 of 190

116. Delaney was re uired to disclose in his bankruptcy schedules or his Statement of Financial Affairs, and at the Meeting of Creditors, the existence of one or more accounts for securities, cash or other valuables with one or more of the Financial Institutions.

117. Delaney did not disclose in his original or amended bankruptcy schedules or Statement of Financial Affairs, or at the Meeting of Creditors, the existence of any assets, liabilities, open or closed accounts, depositories for securities or other relationships with any of the Financial Institutions   .

WHEREFORE, HC2 respectfully re uests that this Court enter a judgment against Delaney: A. For denial of a discharge pursuant to Code Sections 727 a  2  and/or  a  4 and Bankruptcy Rule 4004   .

All of the defendants' above- uoted statements above were lies and a fraud on the court.  Worse, the defendants lied about the orders from a federal judge, Judge Liman, and continued to lie about the contents of the Toyota demand letter so as to be able to falsely accuse Delaney, a lawyer, of extortion.  The attorney defendants unethically and deceitfully lied about authority to the courts.  The defendants just *ade   t e  ntents  f  d e i  an s rder t  e t e*

*site  f   at it   as*, i.e. that he entered a judgment against Delaney for extortion, as well as the contents of the Toyota demand letter, falsely claiming that Delaney demanded    450,000 and  threatening litigation and disclosure of the Corporate Client's  Toyota  privileged and confidential information.    The problem is that no such contents are contained in what Judge Liman called  a routine demand letter .  The defendants just lied over and over again in order to win.

29.     On June 16, 2021, after lying in order to get the court to issue the subpoenas in the first place, HC2 served subpoenas duces tecum on Bank of America, E-Trade, Charles Schwab, and Wells Fargo.  Mazer-Marino ECF Nos. 57-60.   But none of the defendants was Delaney's creditor.  Moreover, Delaney did not have accounts at any of these banks, except for Wells Fargo, which was an *att rne       a    nt* and not his  asset  as the defendants falsely

11

SA-275

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

and fraudulently represented to the trustee and the bankruptcy court to discredit Delaney and prevent him from dismissing his bankruptcy case.

30. On June 16, 2021, in an affidavit in opposition to Delaney's motion to expunge HC2's false 1,180,152.67 proof of claim Docket No. 61-2 , Zannikos again lied to the court:

> 14. Subse uently, Delaney engaged counsel to demand 450,000 directly from the Corporate Client Toyota . ee Ex. E *see als n ndre Delane* , 20-cv-03178-LJL, Dkt. No. 1, annexed to Amended Proof of Claim, Ex. 2 S.D.N.Y Compl. . The letter, though dated April 7, 2020, was emailed directly to the Corporate Client Toyota on April 13, 2020. In it, Delaney's lawyer threatened to commence legal action and publicly disclose such confidential and privileged information about the Corporate Client Toyota that Delaney had obtained during the Project if Delaney's demand was not met by the next day. S.D.N.Y Compl. 6 . The Corporate Client Toyota did not pay Delaney's 450,000 demand. Id. 7 . Instead, on April 14, 2020 the Law Firm Customer Wilmer Hale sent an email to Delaney's counsel warning him not to contact the Corporate Client Toyota again and objecting to Delaney's threat to disclose the Corporate Client's Toyota privileged and confidential information. Id. .

> 24. Delaney's objection to HC2's proof of claim should be overruled.

Mazer-Marino ECF No. 61-2 . Zannikos once again lied about the contents of the Toyota demand letter and ignored Judge Liman's May 27, 2020 ruling this time in support of HC2's fraudulent proof of claim.

31. On June 16, 2021, in support of their fraudulent proof of claim, the defendants produced billing records which showed the defendants providing false information to the trustee and drafting his filings in the bankruptcy case:

> 03/16/21 DAG ... e-mail message to G. Messer with introduction, discuss undisclosed information

> 03/ 17 /21 ALL Continued preparation of the Opposition to Debtor's Motion to Dismiss my t/c/w G. Messer telephone conference with G. Messer re: introduction, pending lawsuits, status of bankruptcy case, next steps

> 03/18/2 DAG . receive and review G. Messer s opposition to motion to dismiss, motion for extension of time to object to discharge e-mail message to trustee s attorneys re: error in their affidavit of service.

12

SA-276

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1
INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Mazer-Marino ECF No.61.

32.     On June 24, 2021, in connection with the HC2's bogus adversary case, Delaney filed discovery re uests to HC2 and deposition notices for Joan Davison   Davison  , Zannikos, and Brian Hartstein   Hartstein   including regarding the jurisdictional fraud in the Southern District.

33.     But the defendants' three witnesses refused to appear for depositions because they knew that they had lied to the courts.

34.     On July 12, 2021, a panicked Goldstein filed the *e  er en*   Letter Re uesting Conference Pursuant to E.D.N.Y. LBR 7007-1 Filed by Douglas A Goldstein on behalf of HC2, Inc.  seeking an urgent hearing to  uash the depositions of Davison, Zannikos, and Hartstein and/or to limit the  uestion so that Delaney could not ask about the Southern District jurisdictional fraud.  Mazer-Marino ECF No. 72.

35.     On July 13, 2021, Delaney opposed the Goldstein letter.  Mazer-Marino ECF No.73.

36.     On July 15, 2021, Judge Mazer-Marino denied Goldstein's attempt to stop or limit the depositions and ordered the three HC2 witnesses to appear for the depositions noticed by Delaney.

37.     On July 19, 2021, four days later, HC2 suddenly filed a motion to withdraw its proof of claim.   *ee* Exhibit E hereto  Mazer-Marino ECF Nos. 75-76 . In its motion, HC2 wrote:  1. By its Motion to Withdraw, HC2 seeks the withdrawal of its proof of claim, filed as Claim 2   . 9. After the June 24, 2021 hearing, Delaney propounded written discovery re uests on HC2 and re uested the depositions of certain HC2 personnel   . 11. After the July 15, 2021 conference, HC2 determined that it no longer wishes to prosecute Claim 2 or the Cross-Motion,

1

or defend against the Objection, or otherwise seek allowance of a pre-petition claim against Delaney or the bankruptcy estate   . 22         *d es n t intend t   se t e  it dra al f  lai  f r an i   r  er  r ta ti al   r  se s   as f r e a   le t e   rs it f  lai   in an t er  f r   and   d es n t see t e s a e t is   rt s  risdi ti n  er it  s a res lt   s  re est f r t e  it dra al f  lai  d es n t in l e an   e ati sness  n   s art  fn   n se eral filin s  ade  it  t is   rt Delane   as ar ed t at   is n t a  redit r  f t is   rt rants t e M ti n   it dra  Delane n l n er  ill need t  ar  e t at   is n t a  redit r*  Mazer-Marino ECF No. 76.

38.     In reliance on HC2's stipulations and representations to the bankruptcy court, Delaney entered a   Letter of Consent and No Objection to Motions Documents Nos. 76 and 77. Mazer-Marino ECF No. 78.  However, after they got what they wanted, it soon became clear that the defendants had lied to the court about their   intentions   when HC2 and Goldstein continued to appear and to oppose Delaney in the bankruptcy case.

39.     On August 1, 2021, Judge Mazer-Marino ordered   1. Claim 2 of HC2 is hereby withdrawn, with prejudice to HC2s right to file another proof of claim in this bankruptcy case. 2. Discovery concerning Claim 2 and concerning the objection filed by the Debtor against Claim 2 in this case is hereby terminated.   Mazer-Marino ECF No. 83.

40.     On August 2, 2021, the defendants withdrew the HC2 proof of claim and corrected the claims register for Delaney's case:  Description:  2-1  Per Order Dated 8/1/2021, Claim 2 of HC2 is hereby withdrawn, with prejudice to HC2s right to file another proof of claim in this bankruptcy case.

41.     On November 24, 2021, Delaney filed a motion to voluntarily dismiss the bankruptcy case.  Mazer-Marino ECF No. 121.

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 18 of 190

42.    On December 6, 2021, despite withdrawing from the case with prejudice, the defendants continued to have HC2 file the  Objection and Joinder Filed by Douglas A Goldstein on behalf of HC2, Inc.  RE: related document s 121 Motion to Dismiss Case filed by Debtor Andrew John Delaney.   Mazer-Marino ECF No. 125.

43.    On December 14, 2021, Goldstein appeared at the hearing and successfully opposed Delaney's motion.  He told Judge Mazer-Marino:  MR. GOLDSTEIN: Thank you, Your Honor.  This is Douglas Goldstein.  HC2 does not change its position on the motion either.  Thank you.   Delaney said to the court:  So my -- in addition to which, Mr. Herbst repeated the false statement from hired counsel  sic  for HC2 that I had appealed to the Second Circuit a judgment for extorting my final -- my former employer which was HC2.  Now that was a flat out falsehood.  I had appealed the denial of my counterclaims, which were just settled by the Court s order 23 in September.

44.    On January 26, 2022, the amendments to N.Y. Labor Law  740 took effect.  These have been ruled to be not retroactive, so that the claims in this action are by definition post-petition.

45.    Starting in March 2022 to the present, Delaney engaged in the protected activity of complaining to the government about HC2's failing to furnish him with a copy of the Summary Plan Description in violation of the Employee Retirement Income Security Act of 1974  ERISA   and the labor laws and ignored his letters to the company about when he would receive a payment of  2,000 or other amount to which the Social Security Administration informed him he was entitled.

46.    On July 21, 2022, in retaliation for the plaintiff's complaints, the defendants had Goldstein appear again, despite HC2's exiting the bankruptcy case with prejudice, to attend and

1

SA-279

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

speak at the bankruptcy hearing in order to successfully oppose Delaney's voluntary dismissal of the bankruptcy case.

47.    On April 12, 2023, also in retaliation, in a Florida defamation case brought by Delaney's former lawyer Christopher T. Beres, Es . in which Zannikos is one of the defendants, Toyota's law firm Wilmer, Cutler, Pickering, Hale and Dorr LLP   Wilmer Hale  , which is acting in concert with the defendants pursuant to a three-way joint litigation agreement, continued to accuse Delaney of extortion:  The statement asserted in Paragraph 24 of the Complaint - that  plaintiff's John Doe client . . .  is appealing a judgment entered against him for extorting his prior employer''- does not reference Plaintiff.  Compl.   24 . It concerns Delaney, and describes an action Delaney was taking - appealing a judgment. The average person reading this statement would not conclude that it implicated Plaintiff.     *eres        ta M  t  r*

 *r   rati  n et al*, Case No. 502023CA001936        MB  Fla. 15th Cir. Ct. March 3, 2023

Doc.  25. Thus, three years after Judge Liman's decision, the defendants' unnamed co-conspirator Toyota law firm Wilmer Hale is still claiming that Delaney was appealing a judgment entered against him by Judge Liman for extortion.

48.    On May 3, 2023, in the same case, in further retaliation, the defendants' former law firm Kasowitz, also an unnamed co-conspirator in this case, continued to accuse Delaney of extortion:  Plaintiff places much emphasis in his Complaint on the use of the term  extort' as the core of his falsity assertions with respect to the alleged defamatory statements.  How the term  extort' is used could easily be a matter of opinion   .  Scott Doc.  48.

## FIRST CLAIM FOR RELIEF
Violations of N.Y. Jud. Law   487

49.    Delaney realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

1

SA-280

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1
INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

50.     N.Y. Jud. Law   487 provides, in pertinent part, as follows:   An attorney or counselor who   . i s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party     i s guilty of a misdemeanor, and in addition to punishment prescribed thereby by the penal law, he forfeits to the injured party treble damages, to be recovered in a civil action.

51.     As set forth above, the defendants engaged in an intentional pattern of collusion, wrongdoing, and deceit with the intent to deceive both Delaney and multiple New York state and federal courts, including the New York County Supreme Court, the United States Bankruptcy Court for the Eastern District of New York, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Second Circuit.

52.     This claim is against Zannikos and Nacchio and their employers for their egregious, recurring, concerted, and systematic fraud and deceit and collusion aimed at misleading Messer, Lamonica, and Herbst[14] and the New York federal and state courts.

53.     Zannikos and Nacchio repeatedly lied, mis uoted the law, authority, and judgments, and committed perjury in the courts.

54.     Specifically, from 2021-2024, Zannikos and Nacchio ignored Judge Liman's clear order read out in open court on May 27, 2020 that the there was no extortion, lied about the contents of Delaney's April 7, 2020 demand letter to Akio Toyoda, chairman of Toyota Motor Corporation, filed  a false and fraudulent proof of claim in Delaney's chapter 7 case, lied to Delaney's chapter 7 trustee and the trustee's lawyers that Judge Liman had issued a judgment against Delaney for extortion, and instructed Goldstein to continue to appear at hearings in

---

[14] Messer, Lamonica, and Herbst have never denied Delaney's claim that the defendants' statements and information to them were lies.

1

SA-281

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 21 of 190

Delaney's bankruptcy case even after HC2 had been ordered to withdraw from the case with prejudice on August 1, 2021.

55.     There is no civil extortion under New York law.  *t rti n is a ri e in e r*. Thus, Zannikos and Nacchio also lied about the laws of New York State to multiple courts and to the trustee, a representative of the DOJ.  Also, to accuse a lawyer of extortion would cause him irreparable damage, as Zannikos and Nacchio well knew when they did so repeatedly.

56.     The attorney defendants conspired with each other and with HC2, Toyota, and several non-parties in the commission of those frauds.  In the process, they violated not only common law anti-fraud prohibitions but also Judiciary Law  487  which provides statutory damages to redress fraud or collusion by attorneys  and knowingly and fraudulently presented a false claim for proof against the estate of a debtor in violation of 18 U.S.C.  152 4 .

57.     As a result of these violations of Judiciary Law  487, Delaney has been damaged in his business and property.

58.     Zannikos and Nacchio engaged in this conduct and made these statements in their capacities as attorneys for HC2 and as the agents of Toyota.   HC2 and Toyota are liable for Zannikos' and Nacchio's violations of Judiciary Law  487 under the law of agency, and the doctrine of respondeat superior.

59.     By reason of the foregoing defendants violated Judiciary Law  487.

60.     The plaintiff is entitled to an award of treble damages of the counsel fees he incurred.

SECOND CLAIM FOR RELIEF
Civil Conspiracy to Violate N.Y. Jud. Law  487

61.     Delaney realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

1

SA-282

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

62.     As set forth herein, the defendants conspired with each other and with other non-parties to violate Judiciary Law 487 by engaging in an intentional pattern of collusion, perjury, and wrongdoing with the intent to deceive Judge Liman, Judge Mazer-Marino, Judge Alexander M. Tisch, Judge Richard G. Latin, Judge Reid P. Scott II Florida , the New York Appellate Division First Judicial Department, the New York Court of Appeals, and the Judges of the United States Court of Appeals for the Second Circuit..

63.     As a result of the defendants' conspiracy to violate Judiciary Law 487, Delaney has been damaged in his business and property.

64.     HC2 and Toyota are liable for Zannikos' and Nacchio's roles in this conspiracy under the law of agency, and the doctrine of respondeat superior.

### THIRD CLAIM FOR RELIEF
Negligent Infliction of Emotional Distress

65.     Delaney realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

66.     Under the New York Bar Civility Standards, Zannikos and Nacchio owed Delaney a duty of care  to not mislead  I   and also had ethical duties to Delaney as a self-represented party pursuant to DR 7-104 A 2 .  *ee als*  DR 1-102 A 4   forbidding  conduct involving dishonesty, fraud, deceit, or misrepresentation   DR 7-102 A 5   forbidding a lawyer from  k nowingly mak ing  a false statement of law or fact  in representing a client .

67.     The defendants repeatedly lied to the courts and falsely accused Delaney of extortion, even after a federal judge determined otherwise, and fraudulently interfered in his bankruptcy case, filed a false and fraudulent proof of claim, and prevented Delaney from voluntarily dismissing his bankruptcy case even after they had withdrawn from the case with prejudice.

1

SA-283

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM

NYSCEF DOC. NO. 1

INDEX NO. 155158/2024

RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 23 of 190

68.     Zannikos and Nacchio flagrantly breached their duty to Delaney especially as a self-represented party.

69.     The defendants' breach of their professional duties was at least negligent and was the direct cause of Delaney's injuries.

70.     The defendants' conduct caused Delaney severe emotional distress and mental trauma.

71.     From 2021-2024, Delaney has suffered severe emotional distress and disability.

72.     As a direct and proximate result of the defendants' conduct, the plaintiff suffered humiliation, severe emotional distress, and mental and physical pain and anguish, amounting to damages to be proved at trial.

73.     The plaintiff is entitled to an award of damages including counseling, lost wages, loss of enjoyment of life activities, embarrassment, and loss of reputation.

74.     HC2 and Toyota are liable to the plaintiff under the doctrine of respondeat superior.

<div align="center">

FOURTH CLAIM FOR RELIEF
Breach of Contract and Stipulation
</div>

75.     Delaney realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

76.     After Judge Mazer-Marino's denial of HC2's emergency motion to uash or limit Delaney's depositions of HC2's management, the defendants had Goldstein e-mail Delaney to reach an agreement with him not oppose their motion to withdraw their proof of claim in exchange for their exiting the case with prejudice.  Delaney agreed and issued a letter to the court of consent and no objection to HC2's withdrawal with prejudice.

<div align="center">2</div>

SA-284

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1
Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 24 of 190

INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

77.     But after the hearing at which Delaney appeared and consented at which Judge Mazer-Marino signed the order, and after falsely representing to the bankruptcy court and to Delaney that it had no ulterior motive, on December 6, 2021 and December 14, 2021, Goldstein continued to appear in the case and successfully opposed Delaney's voluntary dismissal of the bankruptcy case.  Delaney had a right to voluntarily dismiss the case pursuant to 11 U.S.C. 707 a .[15]

78.     On July 21, 2022, in specific retaliation for Delaney's complaint to the government about HC2's violations of ERISA and other laws, Goldstein appeared at a hearing and opposed Delaney's motions.

79.     The defendants violated the settlement agreement between the parties and also the August 1, 2021 order for it to exit the bankruptcy case with prejudice.  The defendants also lied repeatedly in HC2's motion in support of the withdrawal of their proof of claim with prejudice.

80.     The defendants were working in concert and are liable to the plaintiff for damages.

### FIFTH CLAIM FOR RELIEF
Violation of N.Y. Labor Law    740

81.     Delaney realleges and incorporates herein by reference each and every foregoing paragraph of this complaint as if fully set forth herein.

82.     On January 26, 2022, the amended N.Y. Labor Law    740 took effect and included   former employees   in the definition of employees.[16]

---

[15] See Shane P. Walsh   *an a   ns  er De t r  l ntaril Dis iss   n  a ter   ase* , 8 St. John's Bankr. Research Libr. No. 26  2016  at 1    A chapter 7 consumer debtor has the right to voluntarily dismiss his own chapter 7 case, however, that right is not absolute.  .
https://scholarship.law.stjohns.edu/cgi/viewcontent.cgi article 1152  context bankruptcy research library

[16] Brian S. Cousin,  *a e  an in   ansi n f e  r   istle l  er Pr te ti n  ill r   an  e   ead   en  is  istle l  s* , N.Y.L.J., Feb. 4, 2022.

21

SA-285

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1
INDEX NO. 155158/2024
RECEIVED NYSCEF: 06/06/2024

Case 1:24-cv-05211-JMF   Document 1-1   Filed 07/10/24   Page 25 of 190

83.     Delaney is bringing this claim against the defendants HC2 and Toyota as their *f r er e l ee* for their retaliatory actions against him after January 26, 2022.

84.     Delaney is a former employee of HC2 and Toyota and is therefore a member of a protected class under N.Y. Labor Law 740.

85.     The new law clearly includes former employees and natural persons employed as independent contractors. 740 1 a

86.     Starting in March 2022, Delaney engaged in the protected activity of complaining to the government about HC2's violation of the law regarding its pension and stock ownership plans by failing to furnish him with a copy of the Summary Plan Description in violation of the Employee Retirement Income Security Act of 1974 ERISA and the labor laws.

87.     The plaintiff is a former employee who reasonably believed that HC2's and Toyota's failure to comply with the laws, rules, and/or regulations of ERISA presented a substantial and specific danger to the public health and safety.

88.     The defendants' violations of the law are a danger to the public health and safety for older Americans[17] such as Delaney, who depend on employer plans and need to know their rights and contents.

89.     HC2 and Toyota retaliated against Delaney by repeatedly refusing to send him a copy of the Summary Plan Description.

---

https://www.foxrothschild.com/publications/game-changing-expansion-of-new-york-whistleblower-protection-will-your-company-be-ready-when-this-whistle-blows

[17] The Cambridge Dictionary defines senior as an older person, usually over the age of 60 or 65, esp. one who is no longer employed.

22

SA-286

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM
NYSCEF DOC. NO. 1

INDEX NO. 155158/2024

RECEIVED NYSCEF: 06/06/2024

90. On July 21, 2022, HC2 and Toyota further retaliated against Delaney for engaging in a protected activity by having Goldstein interfere in and appear at a hearing to successfully oppose Delaney's voluntary dismissal of his bankruptcy case.

91. On April 12, 2023, HC2 and Toyota further retaliated against Delaney by having or conspiring with Wilmer Hale to continue to falsely accuse Delaney of extortion.

92. On May 3, 2023, HC2 and Toyota further retaliated against Delaney by having or conspiring with Kasowitz to falsely accuse Delaney of extortion and to write: How the term extort' is used could easily be a matter of opinion.

93. The defendants' acts of trying to prevent Delaney from voluntarily dismissing his bankruptcy case and their false and repeated accusations against him of extortion and having a judgment against him for extortion were actions that would adversely impact a former employee's current or future employment, especially as a lawyer. 740 1 e .

94. At the instructions of the government, the plaintiff notified his employers of their violations but they refused to respond or comply.

95. The plaintiff provided HC2 and Toyota a reasonable opportunity to correct the practice.

96. HC2's and Toyota's acts referenced in paragraphs 89-92 above, false accusations against him of extortion and appealing a judgment against him for extortion, and refusal to comply with his rights under ERISA and the labor laws were adverse employment actions and also actions that impacted a former employee's current or future employment.

97. Since HC2's and Toyota's retaliatory acts commenced on July 21, 2022, the plaintiff has been unemployed and unable to find work.

2

SA-287

FILED: NEW YORK COUNTY CLERK 06/04/2024 02:24 PM          INDEX NO. 155158/2024
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 06/06/2024

98.     The defendants are liable to injunctive relief, compensation for lost wages and benefits, money damages in the form of front pay in lieu of reinstatement, civil penalties not to exceed 10,000, and since the employers' actions were willful, malicious, or wanton, uncapped punitive damages, and reasonable costs and attorneys' fees associated with bringing this action.

<div align="center">PRAYER FOR RELIEF</div>

WHEREFORE, the plaintiff demands a judgment against the defendants in an amount to be proven at trial, costs and disbursements, together with any other relief the Court finds to be just and proper.

<div align="center">JURY DEMAND</div>

The plaintiff demands a trial by jury of all issues triable by jury in this action

Dated: June 4, 2024

/s/Andrew Delaney
Andrew Delaney
*Plaintiff*
Sen.Gil Puyat Avenue
Makati Central Post Office 1057
Brgy. San Antonio
Makati 1250
Republic of the Philippines
63-94-2677-8826
srview1@gmail.com

2

SA-288

# EXHIBIT R

SA-289

IH-32                                                                                          Rev: 2014-1

# United States District Court
for the
# Southern District of New York
## Related Case Statement

### Full Caption of Later Filed Case:

ANDREW DELANEY,

|  |  |
|---|---|
| Plaintiff | Case Number |
| vs. |  |
| HC2, INC., STEPHANOS ZANNIKOS, MICHAEL JOHN ESKER NACCHIO, and TOYOTA MOTOR NORTH AMERICA, INC., |  |
| Defendant |  |

### Full Caption of Earlier Filed Case:

(including in bankruptcy appeals the relevant adversary proceeding)

HC2, INC.,

|  |  |
|---|---|
| Plaintiff | Case Number |
| vs. | 20-cv-3178 (LJL) |
| ANDREW DELANEY, |  |
| Defendant |  |

Page 1

SA-290

IH-32                                                                                          Rev: 2014-1

Status of Earlier Filed Case:

☐ Closed     (If so, set forth the procedure which resulted in closure, e.g., voluntary dismissal, settlement, court decision.  Also, state whether there is an appeal pending.)

☐ Open     (If so, set forth procedural status and summarize any court rulings.)

This matter was stayed on February 22, 2021 in light of defendant Andrew Delaney filing for bankruptcy during the proceeding (D.E. 126). Prior to the stay, Delaney filed nine counterclaims (D.E.26), all of which were dismissed by the Court (D.E.76). Delaney subsequently filed five amended counterclaims (D.E.74), which were also dismissed by the Court (D.E.99). Plaintiff  sought a TRO and a preliminary injunction (D.E.43), both of which were denied (see D.E.65). After the stay, the Court substituted the Chapter 7 Trustee, Gregory Messer, in place of Delaney (D.E.134). Delaney's bankruptcy case in 1-20-44372-jmm continues and the automatic stay remains in effect. According to the June 21, 2024 joint status report (D.E.182), the Trustee anticipates the bankruptcy case will remain open at least another six months, pending administration of the bankruptcy case and resolution of various appeals filed by the Debtor Delaney.

Explain in detail the reasons for your position that the newly filed case is related to the earlier filed case.

The newly filed case is substantially the same as one that was just voluntarily dismissed by the same plaintiff and determined by the court to be related to the earlier filed case. After his dismissal of the earlier related case, plaintiff returned to state court, filed state claims and them amended his complaint to add back the same federal claims that prompted removal the first time. As noted in our prior related case statement, these cases involve the same parties and involve substantially similar events. Defendant in the earlier case, Delaney, now brings suit against plaintiff in the earlier case, HC2, along with its general and outside counsel from the earlier litigation and Toyota North America, Inc. ("TMNA"). There is also substantial factual overlap. Both cases relate to Delaney's former employment with HC2, a legal staffing company, as a document reviewer, and the same project he was assigned to for HC2's client, the parent company of TMNA. The project ended in March 2020, because of the COVID crisis. Delaney was thus suspended from the project and ceased being paid. He subsequently brought suit in Florida alleging retaliation for complaints he made while still on the review project.

HC2 then brought the earlier filed case against Delaney with an order to show cause. HC2 alleged Delaney breached the confidentiality provisions in his employment contract and his ethical obligations under the New York bar by filing the Florida lawsuit disclosing confidential information of TMNA's parent that he obtained during the project. Despite the bankruptcy trustee now being the operative defendant, Delaney filed a motion to vacate certain documents last month without required permission (D.E. 184). The newly filed case allegedly relates to damages that Delaney has suffered post-petition, but all claims stem from his employment with HC2 and assignment to the review project. Delaney's federal claims, for violation of the Americans with Disabilities Act and Title VII, are premised on his status as an alleged former employee of both HC2 and TMNA. The bankruptcy Trustee is an un-named co-conspirator in Delaney's complaint. Further, some of Delaney's other claims in the newly filed action are based on alleged acts by defendants or other un-named co-conspirators in Delaney's bankruptcy. Finally, Delaney has a New York State labor law claim based on being a former employee that is premised on an alleged ERISA violation. Accordingly, there is also a risk of conflicting orders.

Signature: _[signature]_____  Date: August 20, 2024 _____

Firm:     Schoeman Updike & Kaufman LLP _____

Page 2

SA-291

# EXHIBIT S

SA-292

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANDREW DELANEY,

        Plaintiff,

            v.

HC2, INC., STEPHANOS ZANNIKOS, MICHAEL
JOHN ESKER NACCHIO, and TOYOTA MOTOR
NORTH AMERICA, INC.

        Defendants.

-----------------------------------------------------------------X

Case No. 1:24-cv-05211

**CONSENT TO RELATED
CASE STATEMENT**

    Defendants HC2, Inc., Stephanos Zannikos, and Michael John Esker Nacchio ("HC2 Defendants") by and through their undersigned counsel, hereby provide notice that they consent to and join Defendant Toyota Motor North America, Inc.'s Related Case Statement (ECF No. 3). The HC2 Defendants respectfully submit that the Court should assign Judge Lewis J. Liman to this matter, who presided over the earlier filed action (20-cv-03178 (LJL)), as Judge Liman is familiar with the dense procedural history of these related matters, as well as the litigants involved, particularly Delaney, and their behavior throughout.

    July 12, 2024

                    Respectfully submitted,

                    **OGLETREE DEAKINS**

                By: /s/*Thomas L. Bellifemine, Esq.*
                   Thomas L. Bellifemine, Esq.
                   10 Madison Avenue, Suite 400
                   Morristown, NJ 07960
                   Telephone: 973-385-1806
                   *Attorneys for Defendants HC2, Inc., Stephanos*
                   *Zannikos, and Michael John Esker Nacchio*

63133630.v1-OGLETREE

SA-293

# EXHIBIT T

SA-294

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ANDREW DELANEY,                                          :
                                                        :
                    Plaintiff,                          :
                                                        :     Case No.: 1:24-cv-05211
          -against-                                     :
                                                        :
HC2, INC., STEPHANOS ZANNIKOS,                          :
MICHAEL JOHN ESKER NACCHIO, and                         :
TOYOTA MOTOR NORTH AMERICA, INC.,                       :
                                                        :
                    Defendants.                         :
------------------------------------------------------------ x

**TO:**   Andrew Delaney
          Sen.Gil Puyat Avenue
          Makati Central Post Office 1057
          Brgy. San Antonio
          Makati 1250
          Republic of the Philippines
          srview1@gmail.com

**PLEASE TAKE NOTICE** that on August 17, 2024, or as soon thereafter scheduled by

the Court, Defenants HC2, Inc., Stephanos Zannikos, and Michael John Esker Nacchio

(collectively "HC2 Defendants"), will move this court at the United States Courthouse, Southern

District of New York, located at 500 Peart Street, New York, NY 10007-1312, for the entry of an

Order granting HC2 Defendants' Motion to Dismiss Plaintiff's Amended Complaint, with

prejudice.

**PLEASE TAKE FURTHER NOTICE** that, in support of Defendants' motion,

Defendants shall rely upon the accompanying Memorandum of Law, Declaration of Stephanos

Zannikos, and corresponding exhibits.

                                        Respectfully submitted,

Dated:  July 17, 2024                   */s/Thomas L. Bellifemine, Esq.*
                                        Thomas L. Bellifemine, Esq.
                                        **OGLETREE, DEAKINS, NASH,**

SA-295

# EXHIBIT U

SA-296

United States District Court for the
Southern District of New York
-----------------------------------------------x
Andrew Delaney,
*Plaintiff*,
v.
HC2, Inc.,
Stephanos Zannikos,                    Index No. 1:24-cv-05211
Michael John Esker Nacchio,
and
Toyota Motor North America, Inc.,
*Defendants*.
-----------------------------------------------x

<u>Plaintiff's Notice of Voluntary Dismissal of Complaint</u>

Plaintiff, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, hereby dismisses all causes of action in the complaint against HC2, Inc., Stephanos Zannikos, Michael John Esker Nacchio, and Toyota Motor North America, Inc. without prejudice. The defendants have filed neither an answer to the complaint nor a motion for summary judgment.

Respectfully, dismissal under Rule 41(a)(1) is therefore appropriate.

Dated: July 16, 2024                    /s/Andrew Delaney
                                        Andrew Delaney
                                        *Plaintiff*
                                        Sen.Gil Puyat Avenue
                                        Makati Central Post Office 1057
                                        Brgy. San Antonio
                                        Makati 1250
                                        Republic of the Philippines
                                        63-94-2677-8826
                                        srview1@gmail.com

cc:     All counsel of record

SA-297

# EXHIBIT V

SA-298

| | | |
|---|---|---|
| **Summons** | CIVIL DOCKET NO. | **Trial Court of Massachusetts** <br> **The Superior Court** |

| | | |
|---|---|---|
| CASE NAME: <br><br> *Andrew Delancy* <br> Plaintiff(s) <br> VS. <br><br> *HC2, Inc.* <br> Defendant(s) | | John E. Powers III    Acting <br> Clerk of Courts <br> Suffolk          County |
| | | COURT NAME & ADDRESS: <br> Suffolk Superior Civil Court <br> Three Pemberton Square <br> Boston, MA. 02108 |

THIS SUMMONS IS DIRECTED TO *HC2 Inc.* _____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the _____ Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, _____ Court

                          (address), by mail, in person, or electronically through

    the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

    b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

A true copy Attest:

*Joseph P. Coppy*

7-12-25

Deputy Sheriff Suffolk County

SA-299

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Michael D. Ricciuti_____ , Chief Justice on _____ , 20____ . (Seal)

Acting Clerk

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____      Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

rev. 1/2023

SA-300

6/11/24, 9:35 PM                          MA Corporations Search Entity Summary

# Secretary of the Commonwealth of Massachusetts
William Francis Galvin

## Business Entity Summary

**ID Number: 000941087**     [Request certificate]   [New search]

**Summary for:  HC2, INC.**

| | |
|---|---|
| **The exact name of the Foreign Corporation:**  HC2, INC. | |
| **The name used to transact business in Massachusetts:**   HIRECOUNSEL | |
| **Entity type:**  Foreign Corporation | |
| **Identification Number:** 000941087 | **Old ID Number:** |
| **Date of Registration in Massachusetts:** 01-04-2007 | **Date of Reinstatement:** |
| | **Last date certain:** |
| **Organized under the laws of: State:** DC **Country:** USA **on:** 05-13-2003 | |
| **Current Fiscal Month/Day:** 12/31 | |

**The location of the Principal Office:**

Address:  141 W. JACKSON BOULEVARD, SUITE 600A

City or town, State, Zip code, Country:      CHICAGO,  IL  60604  USA

**The location of the Massachusetts office, if any:**

Address:  470 ATLANTIC AVE., 4TH FLOOR

City or town, State, Zip code, Country:      BOSTON,  MA  02210  USA

**The name and address of the Registered Agent:**

Name:    CORPORATION SERVICE COMPANY

Address: 84 STATE ST.

City or town, State, Zip code, Country:      BOSTON,  MA  02109  USA

**The Officers and Directors of the Corporation:**

| | | |
|---|---|---|
| PRESIDENT | JOAN DAVISON | 141 W. JACKSON BOULEVARD, SUITE 600A CHICAGO, IL 60604 USA |
| TREASURER | CHARLES NELSON | 141 W. JACKSON BOULEVARD, SUITE 600A CHICAGO, IL 60604 USA |
| SECRETARY | CHARLES NELSON | 141 W. JACKSON BOULEVARD, SUITE 600A CHICAGO, IL 60604 USA |

SA-301

1-Jun-2024 15:58   From Andy Delaney. Phone #6232572210          FaxZero.com          p. (

6/11/24, 9:35 PM                          MA Corporations Search Entity Summary

| DIRECTOR | CHARLES NELSON | 141 W. JACKSON BOULEVARD, SUITE 600A CHICAGO, IL 60604 USA |
|---|---|---|

**Business entity stock is publicly traded:**

**The total number of shares and the par value, if any, of each class of stock which this business entity is authorized to issue:**

| CNP | $0 | 200 | $0 |
|---|---|---|---|

| Consent | Confidential Data | Merger Allowed | Manufacturing |
|---|---|---|---|

**View filings for this business entity:**

ALL FILINGS
Amended Foreign Corporations Certificate
Annual Report
Annual Report - Professional
Application for Reinstatement
Articles of Correction

**View filings**

**Comments or notes associated with this business entity:**

**New search**

SA-302

1-Jun-2024  15:57    From Andy Delaney. Phone #6232572210         FaxZero.com                    p.5
e Filed 5/24/2024 4:24 AM
erior Court - Suffolk
ket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality†

AA1 Contract Action involving Commonwealth,
     Municipality, MBTA, etc.                    (A)
AB1 Tortious Action involving Commonwealth,
     Municipality, MBTA, etc.                    (A)
AC1 Real Property Action involving
     Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
     Municipality, MBTA, etc.                    (A)
AE1 Administrative Action involving
     Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials            (F)
A02 Goods Sold and Delivered                  (F)
A03 Commercial Paper                          (F)
A04 Employment Contract                       (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1  (F)
A06 Insurance Contract                        (F)
A08 Sale or Lease of Real Estate              (F)
A12 Construction Dispute                      (A)
A14 Interpleader                              (F)
BA1 Governance, Conduct, Internal
     Affairs of Entities                      (A)
BA3 Liability of Shareholders, Directors,
     Officers, Partners, etc.                 (A)
BB1 Shareholder Derivative                    (A)
BB2 Securities Transactions                   (A)
BC1 Mergers, Consolidations, Sales of
     Assets, Issuance of Debt, Equity, etc.   (A)
BD1 Intellectual Property                     (A)
BD2 Proprietary Information or Trade
     Secrets                                  (A)
BG1 Financial Institutions/Funds              (A)
BH1 Violation of Antitrust or Trade
     Regulation Laws                          (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an
explanation of the tracking deadlines for each track
designation: F, A, and X. On this page, the track
designation for each case type is noted in
parentheses.

† Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

‡ Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract          (A)
D02 Reach and Apply                             (F)
D03 Injunction                                  (F)
D04 Reform/ Cancel Instrument                   (F)
D05 Equitable Replevin                          (F)
D06 Contribution or Indemnification             (F)
D07 Imposition of a Trust                       (A)
D08 Minority Shareholder's Suit                 (A)
D09 Interference in Contractual Relationship    (F)
D10 Accounting                                  (A)
D11 Enforcement of Restrictive Covenant         (F)
D12 Dissolution of a Partnership                (F)
D13 Declaratory Judgment, G.L. c. 231A          (A)
D14 Dissolution of a Corporation                (F)
D99 Other Equity Action                         (F)

### PA Civil Actions Involving Incarcerated Party ‡

PA1 Contract Action involving an
     Incarcerated Party                          (A)
PB1 Tortious Action involving an
     Incarcerated Party                          (A)
PC1 Real Property Action involving an
     Incarcerated Party                          (F)
PD1 Equity Action involving an
     Incarcerated Party                          (F)
PE1 Administrative Action involving an
     Incarcerated Party                          (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
     Injury/Property Damage                      (F)
B04 Other Negligence - Personal
     Injury/Property Damage                      (F)
B05 Products Liability                           (A)
B06 Malpractice - Medical                        (A)
B07 Malpractice - Other                          (A)
B08 Wrongful Death - Non-medical                 (A)
B15 Defamation                                   (A)
B19 Asbestos                                     (A)
B20 Personal Injury - Slip & Fall                (F)
B21 Environmental                                (F)
B22 Employment Discrimination                    (F)
BE1 Fraud, Business Torts, etc.                  (A)
B99 Other Tortious Action                        (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential                (X)
S02 Summary Process - Commercial/
     Non-residential                             (F)

### RP Real Property

C01 Land Taking                              (F)
C02 Zoning Appeal, G.L. c. 40A               (F)
C03 Dispute Concerning Title                 (F)
C04 Foreclosure of a Mortgage                (X)
C05 Condominium Lien & Charges               (X)
C99 Other Real Property Action               (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding             (X)
E97 Prisoner Habeas Corpus                   (X)
E22 Lottery Assignment, G.L. c. 10, § 28     (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A  (X)
E21 Protection from Harassment, G.L. c. 258E (X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
    G.L. c. 30A                              (X)
E03 Certiorari Action, G.L. c. 249, § 4      (X)
E05 Confirmation of Arbitration Awards       (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9      (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8      (X)
E08 Appointment of a Receiver                (X)
E09 Construction Surety Bond, G.L. c. 149,
    §§ 29, 29A                               (A)
E10 Summary Process Appeal                   (X)
E11 Worker's Compensation                    (X)
E16 Auto Surcharge Appeal                    (X)
E17 Civil Rights Act, G.L. c.12, § 11H       (A)
E24 Appeal from District Court
    Commitment, G.L. c.123, § 9(b)           (X)
E94 Forfeiture, G.L. c. 265, § 56            (X)
E95 Forfeiture, G.L. c. 94C, § 47            (F)
E99 Other Administrative Action              (X)
Z01 Medical Malpractice - Tribunal only,
    G.L. c. 231, § 60B                       (F)
Z02 Appeal Bond Denial                       (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12       (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)       (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|----------|--------------------------|-------|------------------------------|
| B03      | Motor Vehicle Negligence-Personal Injury | F | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF —** On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT —** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
ACCURATELY, THE CASE MAY BE DISMISSED.**

SA-303

1-Jun-2024 15:56   From Andy Delaney. Phone #6232572210          FaxZero.com          p.4

e Filed 5/24/2024 4:24 AM
erior Court - Suffolk

| Signature of Attorney/Self-Represented Plaintiff: X _____ | Date: May 24, 2024 |

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

| |

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X _____ | Date: _____ |

SC0001: 02/24                    www.mass.gov/courts                    Date/Time Printed:05-24-2024 02:36:50

SA-304

ML

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                              SUPERIOR COURT
                                                         C.A. NO.

ANDREW DELANEY,
              Plaintiff,

v.

HC2, INC.
and
WILMER, CUTLER, PICKERING, HALE AND DORR LLP,
              Defendants.

COMPLAINT AND JURY CLAIM

The complaint of the plaintiff alleges and shows:

PARTIES

1. The plaintiff, Andrew Delaney ("Delaney"), is a United States citizen residing and domiciled in the Republic of the Philippines. The plaintiff is a graduate of Amherst College ("Amherst") and Harvard Law School ("Harvard"), and is a member of the Massachusetts Beta of Phi Beta Kappa. The plaintiff is a lawyer.

2. The defendant HC2, Inc. d/b/a. Hire Counsel ("HC2") is a District of Columbia corporation with its principal place of business in New York. HC2 is registered with the secretary of state of the Commonwealth of Massachusetts. The location of HC2's Massachusetts office is 470 Atlantic Avenue, 4th Floor, Boston, Massachusetts 02210. HC2's registered agent is Corporation Service Company, 84 State Street, Boston, Massachusetts 02109. HC2 is the agent of Wilmer Hale.

1

iperior Court - Suffolk
ocket Number

3. The defendant Wilmer, Cutler, Pickering, Hale and Dorr LLP ("Wilmer Hale") is a

Delaware corporation with its principal place of business at 60 State Street, Boston,

Massachusetts 02109. Wilmer Hale is headquartered in Boston.

<div align="center">JURISDICTION</div>

4. All claims asserted under this complaint are within the subject matter of the Superior

Court pursuant to the provisions of Mass. Gen. Laws ("G.L.") ch. 212 § 3.

5. This Court has personal jurisdiction over the defendants on the grounds that they

conduct business within the Commonwealth of Massachusetts.

6. At all relevant times, the acts and omissions complained of occurred within the

Commonwealth of Massachusetts.

7. Venue is proper in Suffolk County pursuant to G.L. c. 223 § 1 because a substantial

part of the events or omissions giving rise to the defamatory statements occurred in Boston,

Massachusetts and in this District. Wilmer Hale's representative, partner Michael R. Heyison, is

based in and resides in Boston. Charlotte Mostertz, a senior associate in Wilmer Hale's Boston

office, participated in the tortious acts against the plaintiff.

<div align="center">FACTS</div>

8. On December 23, 2020, the plaintiff filed for bankruptcy due to incorrect legal advice

from Upsolve, Inc. This lawsuit is post-petition.

9. Starting in March 2021 and continuing, the defendants made a series of false and

defamatory statements about the plaintiff.

<div align="center">Background Statements in 2021</div>

<div align="center">2</div>

10. On March 21, 2021, in *Delaney v. HC2, Inc.*, Index No. 651740/2021 (Sup Ct, NY County 2021), Jay Holtmeier, a partner at Wilmer Hale, who was not a party to the case and whose statements were not privileged, wrote about the plaintiff: "The public disclosure of the information contained in paragraphs 4-11 will cause significant and concrete harm to Toyota through the disclosure of its privileged and confidential information, which, among other things, could draw interest of litigation adversaries, and potentially subject Toyota to claims of privilege waiver. These paragraphs also disparage Toyota through incorrect and misleading assertions that Mr. Delaney made using the partial and incomplete information to which he had confidential access on the Matter. Those statements put Toyota in a false light and could subject it to embarrassment if people assume the truth of Mr. Delaney's assertions based on his work as a lawyer."

11. On March 25, 2021, Stephanos Zannikos, an employee of HC2, wrote: "I believe that Delaney obtained the information set forth in paragraphs four through eleven of the Complaint by virtue of his work on the Project for Toyota."

12. Starting in March 2021, the defendants, working in concert, started aggressively contacting and sending false information to the plaintiff's chapter 7 trustee to defame and disparage the plaintiff.

13. Right after Zannikos' March 25, 2021 statement quoted above, the trustee wrote the following based on false and defamatory communications from the defendants: "The Debtor also does not have only $44,434 in credit card debt as stated on his Motion to Dismiss, but also has a judgment against him for an additional $67,458.91."

14. On March 26, 2021, again based on false information from the defendants, the trustee wrote: "Upon information and belief, the Debtor is appealing a judgment entered against him for

3

uperior-Court - Suffolk
ocket Number

extorting his prior employer. Neither the judgment nor the appeal were initially listed on the Debtor's Schedules or SOFA."

15. On May 20, 2021, HC2 wrote: "The Debtor did not disclose in his bankruptcy schedules or Statement of Financial Affairs the existence of any assets, liabilities, closed accounts, depositories for securities or other relationships with any of the Financial Institutions."

### Statement 1

16. On June 4, 2021, HC2 wrote: "Delaney is an individual whose street address is currently 330-340 Baychester Ave. Bronx, New York 10475."

17. Statement 1 is false and defamatory. The plaintiff has resided and been domiciled in the Republic of the Philippines for almost 40 years.

### Statement 2

18. On June 4, 2021, HC2 wrote: "HC2 never terminated the Employment Agreement or took any other action to terminate Delaney's employment by HC2. Nonetheless, Delaney sent multiple e-mails on March 17 and 18, 2020 to the Law Firm Customer [Wilmer Hale] and the Corporate Client [Toyota Motor Corporation and Toyota Motor North America, Inc. ("Toyota")] falsely claiming that he had been wrongfully terminated for expressing concerns about COVID-19."

19. Statement 2 is false and defamatory. HC2 terminated the plaintiff. See Exhibit A hereto.

### Statement 3

4

20. On June 4, 2021, HC2 wrote: "Delaney engaged counsel to demand $450,000 from the Corporate Client, but his attorney ceased representing him a few days after making this demand and Delaney immediately engaged new counsel. On April 13, 2020, Delaney's new counsel e-mailed a letter to the Corporate Client's [Toyota's] Chief Executive Officer and Board of Directors, reiterating his demand for a payment and threatening litigation and disclosure of the Corporate Client's privileged and confidential information if his demand was not met by April 14, 2020."

21. Statement 3 is false and defamatory. The plaintiff never took any of the actions imputed to him by the defendants. The contents of the "letter" were completely fabricated by HC2 in order to be able to publicly accuse him of extortion. Nor does the letter contain a "demand" for "$450,000". See Exhibit B hereto. HC2 lied about the contents of the plaintiff's letter to Toyota because extortion, which is a crime in New York, requires that there be a demand for money. So, the defendants lied repeatedly that the plaintiff's letter "demanded" "$450,000" to falsely accuse the plaintiff of extortion. To publicly accuse a lawyer of extortion would destroy his reputation and make judges, other lawyers, and clients distrust and have contempt for him.

### Statement 4

22. On June 4, 2021, HC2 wrote: "On March 18, 2021, the Clerk of this Court filed a Notice of Discovery of Assets and set a bar date of June 16, 2021 for creditors to file proofs of claims. See Doc. 20. 98. On April 6, 2021, HC2 filed a proof of claim for $1,180,152.67 (the 'HC2 Proof of Claim'). See Claim Register, Claim 2."

5

iperior Court - Suffolk
icket Number

23. Statement 4 is false and defamatory. It is intended to falsely assert that HC2 had obtained a judgment against the plaintiff for $1,180,152.67 for its extortion case. In fact, on May 27, 2020, the judge in that case, the Hon. Lewis J. Liman, *denied* both HC2's temporary restraining order and preliminary injunctions applications finding that the Toyota letter "is a routine demand letter and not an extortion" and that its case had no chance of success on the merits.[1] Of course, Judge Liman would not and did not award over $1 million in legal fees to HC2 for actions that *it lost*. But even after Judge Liman ruled that there was no extortion and that HC2 had misrepresented the contents of the Toyota letter, the defendants *continued to lie* about the plaintiff for years and years later. They have never retracted their lies about the plaintiff.

Statement 5

24. On June 4, 2021, HC2 wrote: "115. On the Petition Date, Delaney had one or more accounts for securities, cash or other valuables with one or more of the Financial Institutions that held securities, cash or other valuables. 116. Delaney was required to disclose in his bankruptcy schedules or his Statement of Financial Affairs, and at the Meeting of Creditors, the existence of one or more accounts for securities, cash or other valuables with one or more of the Financial Institutions. 117. Delaney did not disclose in his original or amended bankruptcy schedules or

---

[1] See Frank G. Runyeon, "WilmerHale, Toyota Agency Posted Sealed Info, Loses Gag Bid," Law360, May 27, 2020. ("U.S. District Judge Lewis J. Liman lifted the temporary order barring attorney Andrew Delaney from sharing protected information he learned about a WilmerHale project for Toyota as he ruled evidence put forward by staffing agency HC2 Inc., known as Hire Counsel, was 'weak' and did not support the notion that Delaney had extorted anyone with a threat to disclose confidential information…. The judge also discarded the idea that a letter sent by Delaney's attorney to the CEO of Toyota was tantamount to blackmail, as HC2 had claimed. 'It is a routine demand letter and it's not extortion,' the judge ruled.")
https://www.law360.com/articles/1277147/wilmerhale-toyota-agency-posted-sealed-info-loses-gag-bid

6

Statement of Financial Affairs, or at the Meeting of Creditors, the existence of any assets, liabilities, open or closed accounts, depositories for securities or other relationships with any of the Financial Institutions. WHEREFORE, HC2 respectfully requests that this Court enter a judgment against Delaney: A. For denial of a discharge pursuant to Code Sections 727(a)(2) and/or (a)(4) and Bankruptcy Rule 4004."

25. Statement 5 is false and defamatory. HC2 never produced any proof of the existence of such "accounts for securities, cash or other valuables with one or more of the Financial Institutions that held securities, cash or other valuables." HC2 lied about the plaintiff in order to disparage and cause damages to him.

Statement 6

26. On June 16, 2021, HC2 wrote: "Subsequently, Delaney engaged counsel to demand $450,000 directly from the Corporate Client [Toyota]. (See Ex. E; *see also HC2 Inc. v. Andrew Delaney*, 20-cv-03178-LJL, Dkt. No. 1, annexed to Amended Proof of Claim, Ex. 2 ('S.D.N.Y Compl.'). The letter, though dated April 7, 2020, was emailed directly to the Corporate Client on April 13, 2020. In it, Delaney's lawyer threatened to commence legal action and publicly disclose such confidential and privileged information about the Corporate Client that Delaney had obtained during the Project if Delaney's demand was not met by the next day. (S.D.N.Y Compl. ¶ 6). The Corporate Client did not pay Delaney's $450,000 demand. (Id. ¶ 7). Instead, on April 14, 2020 the Law Firm Customer [Wilmer Hale] sent an email to Delaney's counsel warning him not to contact the Corporate Client again and objecting to Delaney's threat to disclose the Corporate Client's privileged and confidential information. (Id.)."

27. Statement 6 is false and defamatory. See the actual Toyota letter at Exhibit B hereto.

7

perior Court - Suffolk
cket Number

### Statement 7

28. On June 16, 2021, HC2 publicly disclosed its redacted billing records showing its communicating false and defamatory information about the plaintiff to the trustee: "03/16/21 DAG [Douglas A. Goldstein, HC2'a lawyer] ... e-mail message to G. Messer [the trustee] with introduction, discuss undisclosed information.... my t/c/w G. Messer... telephone conference with G. Messer re: introduction, pending lawsuits, status of bankruptcy case, next steps.... 03/18/21 DAG.... t/c/w G. Messer re: need to seal complaint; e-mail message from G. Messer with attached Lexis report and transcript of meeting of creditors.... receive and review G. Messer's opposition to motion to dismiss, motion for extension of time to object to discharge; ... redraft motion and opposition papers, certifications; preparation of proposed form of order; revise and redraft certificate of service; e-mail message to trustee's attorneys re: error in their affidavit of service;... 05/21/21 DAG E-mail message from C. Lipan [trustee's lawyer] requesting pleadings.... 05/21/21 DAG... receive and review message from G. Herbst [trustee's lawyer]; leave a message for, G. Herbst; e-mail message from C. Lipan."

29. Statement 7 is false and defamatory.

### Statement 8

30. On July 19, 2021, HC2 wrote a settlement proposal to the plaintiff.

31. On August 1, 2021, the court approved the settlement and ordered HC2 to exit the plaintiff's bankruptcy case with prejudice.

32. But on December 14, 2021, despite not being a party, HC2 (Goldstein) stated: "THE COURT: Thank you so much. Mr. Goldstein. MR. GOLDSTEIN: Thank you, Your Honor. This

iperior Court - Suffolk
icket Number

is Douglas Goldstein. HC2 does not change its position on the motion either [opposing the plaintiff's motion to voluntarily dismiss the bankruptcy case]. Thank you."

33. Statement 8 is false and defamatory. HC2 had already withdrawn from the bankruptcy case with prejudice. But it continued to lie about and defame him.

Statement 9

34. On April 12, 2023, Wilmer Hale wrote: "Specifically, the Court concluded that the news article's reference to 'extortion' and 'trade secrets' came directly from the HC2 Complaint and that repeating such terms did not render them false or defamatory."

35. Statement 9 is false and defamatory.

Statement 10

36. On April 12, 2023, in a lawsuit not involving the plaintiff, Wilmer Hale further wrote: "The statement asserted in Paragraph 24 of the Complaint - that 'plaintiff's John Doe client. . . 'is appealing a judgment entered against him for extorting his prior employer' - does not reference Plaintiff. (Compl. ¶ 24). It concerns Delaney, and describes an action Delaney was taking - appealing a judgment. The average person reading this statement would not conclude that it implicated Plaintiff."

37. Statement 10 is false and defamatory. Wilmer Hale falsely asserts that Delaney "is appealing a judgment entered against him for extorting his prior employer." In truth, Judge Liman ruled against Wilmer Hale's agent HC2. *The plaintiff is appealing the dismissal of his counterclaims, not a judgment against him for extortion.* However, even as recently as 2023, the

9

iperior-Court - Suffolk
ocket Number

.

defendants are continuing to perpetuate the lie that the plaintiff is appealing a judgment against him for extortion. It is an issue of pure fact.

Statement 11

38. On April 12, 2023, in the publication *Tax Notes*, to which Wilmer Hale is a contributor, HC2 is quoted as saying: "Likewise, there is no dispute that HC2 alleged in its lawsuit that Doe No. 2 and his lawyer, Doe No. 1, engaged in a scheme to extort a significant payment from HC2, and that Doe No. 2 threatened to disclose privileged and confidential information if payment was not received."

39. Statement 11 is false and defamatory. See the news about Judge Liman's May 27, 2020 order (footnote 1 supra) and also Exhibit B hereto.

Statement 12

40. On December 22, 2023, *Tax Notes* quoted HC2: "According to HC2, Doe No. 2 [Delaney] engaged an attorney who made the $450,000 demand on Toyota, and when that attorney ceased representing him a few days later, Doe No. 2 hired new counsel (Doe No. 1), to write a letter about his employment situation. Id. at ¶¶6-8, 29; Compl. ¶23, Ex. B. The complaint claimed Doe No. 2's new attorney emailed a letter to Toyota's CEO and Board of Directors, reiterating the demand for a payment and threatening litigation and disclosure of Toyota's privileged and confidential information. See Papadelias Decl., Ex. B ¶¶6, 29; Compl. ¶23, Ex. B. HC2 alleged that when the $450,000 payment was not made, Doe No. 2 followed through on his threat by filing a 'John Doe' lawsuit in Florida alleging that HC2 had engaged in unlawful business practices and retaliatory termination in connection with the project. See Papadelias

10

Decl., Ex. B ¶¶7-8, 29; *see also John Doe v. Toyota Motor Corp., et al.*, No. 05-2020-CA-024821 (Fla. 18th Cir. Ct. April 15, 2020). HC2 claimed that 'the lawyer who was assisting Delaney in carrying out his scheme to extort a significant payment from the Corporate Client, is the same lawyer who signed and caused to be filed the State Court Complaint.' See Papadelias Decl., Ex. B ¶29."

41. Statement 12 is false and defamatory.

42. The above 12 statements directly and intentionally concern and refer to the plaintiff.

43. The plaintiff has never done any of the actions imputed to him in the defendants' statements about him.

44. As a direct and proximate result of the defendants' false and defamatory statements about the plaintiff, the plaintiff has suffered and continues to suffer substantial harm, including but not limited to damage to his reputation, customer contacts, and goodwill in Massachusetts and elsewhere. The plaintiff's practice and business are dependent on referrals especially from Amherst's and Harvard's alumni networks in Massachusetts and references from those schools' faculty, administration, and staff.

Count I
Defamation

45. The plaintiff realleges and incorporates herein by reference each of the prior paragraphs.

46. The defendants published false and defamatory statements in writing of and concerning the plaintiff to third parties.

47. The defendants' statements slanderously depict plaintiff and impute misconduct to him.

11

**SA-315**

48. Such conduct is in direct violation of law and outside First Amendment protection. The libel about plaintiff spread like a disease including on social media.

49. The defendants published the statement with at least negligence. They knew or should have known that the statements they made about the plaintiff were not true but made them recklessly or willfully in order to damage him and his professional reputation.

50. The defendants published statements that have materially adversely affected the plaintiff's standing and reputation in the business community and the community at large.

51. The plaintiff has suffered and will continue to suffer actual harm because of the defendants' actions.

52. As a direct result of the defendants' false and defamatory communications about the plaintiff to third parties, the plaintiff has suffered, inter alia, economic damages, in an amount to be determined at trial, including lost income and career opportunities, damage to his reputation among the community at large, as well as damage to his reputation in the professional community in which he works, and emotional distress for which the defendants are liable.

53. These damages were proximately caused by the defendants' conduct.

<div align="center">

Count II
Defamation Per Se

</div>

54. The plaintiff realleges and incorporates herein by reference each of the prior paragraphs.

55. Under state common law, any libel is actionable per se. *Sharratt v. Housing Innovations, Inc.*, 365 Mass. 141 (Mass. 1974).

56. The defendants' statements "could damage the plaintiff's reputation in the community" - which is part of the consideration of whether the statement is defamatory. *Albright v. Morton*, 321 F. Supp. 2d 130 (D.Mass. 2004); *Stone v. Essex County Newspapers,*

<div align="center">12</div>

ıperior-Court - Suffolk
ıcket Number

*Inc.*, 367 Mass. 849 (Mass. 1975). Libel per se in this context encompasses the defendants' statements that charge the plaintiff with a crime or that may prejudice the plaintiff's profession or business. *Morton*, 321 F. Supp. at note 3.

57. The statements are defamatory per se, in that the statements falsely accuse the plaintiff of having committed a crime or crimes, including extortion.

58. The defendants compounded their wrongdoing by continuing to publish and promote their defamatory statements, and by failing and/or refusing to retract or update the statements even after they were notified that the substance of their statements was false, unsupported by documentary evidence, and defamatory.

59. In so doing, the defendants' false and defamatory statements subjected the plaintiff to ridicule and scorn, sabotaging his reputation. The consequences of the false allegations in the headline of the statements and the statements themselves have been harmful to the plaintiff and his work.

60. As a result, the defendants are liable in damages to the plaintiff.

Count III
Civil Conspiracy

61. The plaintiff realleges and incorporates herein by reference each of the prior paragraphs.

62. Massachusetts recognizes a cause of action for civil conspiracy based on "concerted activity". *See McLaughlin v. J-PAC, LLC*, No. 10-2594-BLS1, 2011 WL 1758945, at *2 (Mass. Super. Apr. 14, 2011).

63. The defendants conspired to defame the plaintiff with false and defamatory statements that he committed extortion, that he was found guilty of extortion, and that he had a judgment against him that he was appealing for extorting them for $67,458.91.

13

ıperior-Court - Suffolk
ıcket Number

64. As a direct result of the defendants' conspiracy to spread false and defamatory statements that he committed extortion and had a judgment against him for extortion, the plaintiff has suffered, inter alia, economic damages, including monetary losses resulting from the loss of existing and anticipated contracts, damage to his reputation among the community at large, as well as damage to his reputation in the professional community in which he works, personal humiliation, and mental pain for which the defendants are liable.

65. These damages were proximately caused by the defendants' conduct.

66. Because the harm resulting from the defendants' conspiracy to defame the plaintiff is continuing in nature, the damages sought herein will not provide the plaintiff with a complete remedy. For this reason, the plaintiff further seeks injunctive relief against the defendants.

<center>Count IV
Intentional Interference with Advantageous Relations</center>

67. The plaintiff realleges and incorporates herein by reference each of the prior paragraphs.

68. Massachusetts law protects a plaintiff's present and future economic interests from wrongful interference. *See Blackstone v. Cashman*, 448 Mass. 255, 259, 860 N.E.2d 7, 12 (2007); *see also* Restatement (Second) of Torts §§ 766–766B.

69. The plaintiff (1) had an advantageous relationship with a third party; (2) the defendants knowingly induced a breaking of the relationship; (3) the defendants' interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendants' actions. The plaintiff had advantageous economic and contractual relationships with many businesses and entities of which the defendants had knowledge.

<center>14</center>

70. The defendants have maliciously interfered with the plaintiff's present and future economic interests by breaching their duties of confidentiality and by spreading false and defamatory information concerning the plaintiff that disparaged his professional reputation.

71. The plaintiff has suffered the loss of existing and prospective contractual relationships.

72. As a direct and proximate result of the defendants' unlawful actions, the plaintiff has suffered damages, including tremendous financial costs, reputational harm, loss of existing contractual relations and prospective economic opportunities and advantage, mental anguish, physical pain and suffering, embarrassment, and severe emotional distress.

Count V
Invasion of Privacy (G.L. c. 214, § 1B)

73. The plaintiff realleges and incorporates herein by reference each of the prior paragraphs.

74. Massachusetts G.L. c. 214 §1B guarantees the plaintiff the right to be free from unreasonable, substantial, or serious interference with his privacy.

75. The plaintiff's rights to privacy include a right to be left alone and a right to be free from the public disclosure of private facts and information without his consent.

76. "To sustain a claim for invasion of privacy under G.L. c. 214, § 1B, the invasion must be both unreasonable and substantial or serious." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 69 (1st Cir. 2020) (interpreting Massachusetts state law) (internal citations and quotation marks omitted).

77. The defendants' disclosure of the plaintiff's information to the trustee and other third parties was both unreasonable and substantial or serious.

15

78. The public dissemination of the plaintiff's private information served no legitimate business interest.

79. In the context of the surrounding facts and circumstances, the defendants' bankruptcy disclosures about the plaintiff received excessive attention both within and outside Amherst and Harvard.

80. The defendants' public announcement of the plaintiff's employment information constituted an unreasonable and substantial invasion of the plaintiff's privacy, which has subjected him to unnecessary attention and stigma.

81. The defendants' releasing and publishing of the plaintiff's highly personal information amounted to an unreasonable, substantial, and serious interference with and invasion of the plaintiff's privacy in violation of G.L. c. 214 §1B and of his common law rights to privacy.

82. As a result of the defendants' invasion of the plaintiff's privacy, the plaintiff was humiliated, felt invaded and ashamed, and suffered a violation of his privacy, dignity, and personal integrity. As a result of the defendants' invasion of the plaintiff's privacy, the plaintiff has suffered harm, injury, and damages.

WHEREFORE, the plaintiff respectfully requests that the Court order the following relief:

1. On the first and second causes of action for defamation and defamation per se, monetary damages sufficient to restore the plaintiff to his position prior to the defendants' defamation;

2. On the first and second causes of action for defamation and defamation per se, direct, consequential, incidental, and special damages to which the plaintiff may be entitled by reason of

16

ιperior Court - Suffolk
ιcket Number

the unlawful and tortious conduct of the defendants, including treble damages under G.L. ch. 93A;

3. On the first and second causes of action for defamation and defamation per se, temporary and permanent injunctive relief preventing the defendants from further publishing false statements about the plaintiff;

4. On the third cause of action for civil conspiracy, damages in an amount to be determined at trial, including economic losses, lost career opportunities, reputational harm, emotional distress and punitive damages, costs and attorneys' fees;

5. On the fourth cause of action for intentional interference with advantageous relations, damages including economic losses, lost career opportunities, reputational harm, emotional distress and punitive damages, costs and attorneys' fees;

6. On the fifth cause of action for violation of privacy, damages including economic losses, lost career opportunities, reputational harm, emotional distress and punitive damages, costs and attorneys' fees; and

7. Such other relief as the Court may deem just and appropriate, including the plaintiff's costs and attorneys' fees in prosecuting this matter.

## JURY CLAIM

The plaintiff respectfully demands a jury trial on all issues so triable.

Dated: May 24, 2024                    Respectfully submitted,

                                       PLAINTIFF,

                                       By,

17

SA-321

/s/Andrew Delaney
Andrew Delaney
Sen.Gil Puyat Avenue
Makati Central Post Office 1057
Brgy. San Antonio
Makati 1250
Republic of the Philippines
63-94-2677-8826
centric23-app@yahoo.com

SA-322

Commonwealth of Massachusetts
County of Suffolk
The Superior Court – Business Litigation Session

CIVIL DOCKET#: **2484CV01386-BLS2**

Case:  Delaney v. HC2, Inc. et al.

## NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

The court has previously allowed a Motion to Transfer this case to the Business Litigation Session in Suffolk County.  After review of that Motion and the relevant pleadings, this case has been accepted into the Suffolk Business Litigation Session and will be assigned to **BLS2**.  In the future, as shown above, all parties must include the initials "**BLS2**" at the end of the docket number on all filings.

Counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Discovery Project (counsel are directed to www.mass.gov/superior-court-business-litigation-session for more information on the Project).  Counsel may indicate their respective client's participation by completing, filing and serving the attached form.

Dated: July 30, 2024

/s/ Kenneth W. Salinger

Kenneth W. Salinger
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

SA-323

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court – Business Litigation Session**


CIVIL DOCKET#: _____


Case: _____


As you may know, the Business Litigation Session began implementing a Discovery Project in January, 2010. This project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the project with the Court at the initial case management conference. For a detailed copy of the BLS Discovery Project, counsel are directed to the Trial Court home page at: www.mass.gov/superior-court-business-litigation-session)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.


___ (Check) **Yes**,_____ is willing to participate in the Discovery Project.
              (Party's Name)

Case Name _____

Docket Number CIVIL DOCKET#: _____


Counsel For_____        Date_____

Firm Name and Address:

_____

_____

_____

Please complete this form and return it to:

| Assistant Clerk - BLS1 | **OR** | Assistant Clerk - BLS2 |
|---|---|---|
| BLS1, Room 1015 | | BLS2, Room 1017 |
| 3 Pemberton Square | | 3 Pemberton Square |
| Boston, MA 02108 | | Boston, MA 02108 |

- 2 -

SA-324

Date Filed 8/12/2024 12:00 AM
Superior Court - Suffolk
Docket Number 2484CV01386

| **NOTICE OF VOLUNTARY DISMISSAL** | Docket No.:<br>C.A. NO. 2484CV01386 | Massachusetts Superior Court |
|---|---|---|
| | Division:<br>Suffolk Cy. Civil ▾ | |

| Plaintiff's Name, Address, Zip Code and Phone | Defendant's Name, Address, Zip Code and Phone |
|---|---|
| Andrew Delaney, Sen.Gil Puyat Avenue, Makati City No. 1057, Makati 1250 Philippines srview1@gmail.com, 63-94-2677-8826 | HC2, Inc., 470 Atlantic Ave. 4th Fl, Boston, MA (617) 419-1992; Wilmer, Cutler et al. 60 State St., Boston, MA 02109, (617) 526-6000 |

## NOTICE OF VOLUNTARY DISMISSAL
### (Mass. R. Civ. P. 41(a)(1)(i))

Pursuant to the provisions of Rule 41(a)(1)(i) , _____ Andrew Delaney _____ ,

plantiff herein, voluntarily dismisses with out predjudice the above-entitled action as to ___ HC2, Inc. and Wilmer, ___

Cutler, Pickering, Hale and Dorr LLP, _____ , defendant herein.
(specify defendant)

Signature: _____

Name: __Andrew Delaney_____

Attorney for: _Pro se_____

Address: _Makati Central #1057, Makati 1250, Philippines_

Date: __August 11, 2024__

Telephone: _63-94-2677-8826_____

SA-325

Date Filed 8/12/2024 12:00 AM
Superior Court - Suffolk
Docket Number 2484CV01386

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing document to be

served via U.S. mail, first class, postage prepaid, and email to the defendants at their addresses

set forth below.

Diane Saunders, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place
201 Washington Street, Suite 3500
Boston, MA 02108
diane.saunders@ogletree.com

Richard M. Zielinski, Esq.
Richard J. Rosensweig, Esq.
Nathaniel R.B. Koslof, Esq.
Goulston and Storrs P.C.
One Post Office Square
Boston, Massachusetts 02109
rzielinski@goulstonstorrs.com
rrosensweig@goulstonstorrs.com
nkoslof@goulstonstorrs.com

on August 11, 2024.

/s/Andrew Delaney
Andrew Delaney

1

SA-326

# EXHIBIT W

SA-327

# THE

# REVISED STATUTES

### OF THE

# STATE OF NEW-YORK,

PASSED DURING THE YEARS ONE THOUSAND EIGHT HUNDRED AND TWENTY-SEVEN,
AND ONE THOUSAND EIGHT HUNDRED AND TWENTY-EIGHT:

TO WHICH ARE ADDED,

CERTAIN FORMER ACTS WHICH HAVE NOT BEEN REVISED.

PRINTED AND PUBLISHED UNDER THE DIRECTION OF THE REVISERS,
APPOINTED FOR THAT PURPOSE.

### IN THREE VOLUMES.



## VOLUME II.

CONTAINING THE FIFTH, SIXTH, SEVENTH AND EIGHTH CHAPTERS OF THE SECOND PART
OF THE REVISED STATUTES, AND THE WHOLE OF THE THIRD AND FOURTH PARTS.

### ALBANY:

PRINTED BY PACKARD AND VAN BENTHUYSEN.

1829.

SA-328

194765



*Northern District of New-York, to wit :*

**L. S.**

*Be it remembered,* That on the thirty-first day of December, in the fifty-third year of the Independence of the United States of America, A. D. 1828, AZARIAH C. FLAGG, Secretary of State of the State of New-York, &c. of the said District, hath deposited in this Office the title of a Book, the right whereof he claims as proprietor, in trust for the benefit of the People of the State of New-York, &c. in the words following, to wit:

"The Revised Statutes of the State of New-York, passed during the years one thousand eight hundred and twenty-seven, and one thousand eight hundred and twenty-eight: to which are added, certain former acts which have not been revised. Printed and published under the direction of the Revisers, appointed for that purpose. In three volumes."

In conformity to the act of the Congress of the United States, entitled "An act for the encouragement of learning, by securing the copies of maps, charts, and books, to the authors and proprietors of such copies, during the times therein mentioned;" and also to the act entitled, "An act supplementary to an act, entitled 'An act for the encouragement of learning, by securing the copies of maps, charts, and books, to the authors and proprietors of such copies, during the times therein mentioned,' and extending the benefits thereof to the arts of designing, engraving and etching historical and other prints."

R. R. LANSING,
*Clerk of the Dist. Court of the United States*
*for the Northern Dist. of New-York.*

SA-329

# ADVERTISEMENT.

DURING the session of the Legislature which ended on the 5th of May, 1829, several acts of a permanent nature and of general interest, were passed, some of them supplementary to former laws, others introducing new principles, and others altering, either in express terms or by necessary implication, provisions of the Revised Statutes. In two instances where an opportunity was afforded, that part of the text of the Revised Statutes contained in this volume which was printed after the passage of these laws, has been amended in conformity to them, pursuant to the authority conferred on the Revisers. The alterations not thus introduced into the body of the work, and all other public laws of general interest, passed by the last legislature, will be found in the third volume; and they will also be noticed, under their appropriate heads, in the General Index at the end of this volume.

To afford the public the earliest opportunity of becoming acquainted with the provisions of the Revised Statutes, the first and second volumes will be issued, without waiting for the publication of the third. It has therefore been thought advisable, to insert in an Appendix to this volume, the "Act concerning the Revised Statutes," and so much of the general Repealing Act as relates to the construction of those statutes, instead of reserving them for the third volume, as proposed in the Preface.

Although no pains have been spared to secure perfect accuracy in the publication of the text, several errors of the press have been detected since the printing was completed. Such of them as appear to be important, are enumerated in a note at the end of this volume.

June 1, 1829.

SA-330

Pursuant to the "Act concerning the Revised Statutes," passed on the 10th of December, 1828, We, the undersigned, two of the Revisers of the Statutes of the state of New-York, do hereby certify, that the text of the Revised Statutes contained in this volume, has been examined and compared by us with the original acts passed by the Legislature, and with the acts amending such originals; and that this volume was printed by the printers employed by us for that purpose, under the authority conferred by law.

                                   B. F. BUTLER,
                                   JOHN C. SPENCER.

June 5, 1829.

SA-331

# CONTENTS.

|  |  |  | page. |
|---|---|---|---|
| Revised Statutes, Part II. Chapter 5 | | | 1 |
| " | " | " Chapter 6 | 56 |
| " | " | " Chapter 7 | 133 |
| " | " | " Chapter 8 | 138 |
| " | " | Part III | 163 |
| " | " | Part IV | 655 |
| Appendix | | | |

## ANALYSIS

## Of the several Chapters included in this Volume.

The SECOND PART of the Revised Statutes is entitled "An Act concerning the Acquisition, the Enjoyment and the Transmission of Property, real and personal, the Domestic Relations, and other Matters connected with Private Rights;" and consists of EIGHT CHAPTERS.*

CHAP. V. OF TITLE TO PROPERTY, REAL AND PERSONAL, TRANSMITTED OR ACQUIRED BY SPECIAL PROVISIONS OF LAW: Containing two Titles.

Title 1. Of the assignment of the estates of non-resident, absconding, insolvent or imprisoned debtors: Containing eight Articles.

Art. 1. Of attachments against absconding, concealed and non-resident debtors, p. 1.

Art. 2. Of attachments against debtors confined for crimes, 14.

Art. 3. Of voluntary assignments, made pursuant to the application of an insolvent and his creditors, 15.

Art. 4. Of proceedings by creditors, to compel assignments by debtors imprisoned on execution in civil causes, 24.

Art. 5. Of voluntary assignments by an insolvent, for the purpose of exonerating his person from imprisonment, 28.

Art. 6. Of voluntary assignments by a debtor imprisoned on execution in civil causes, 31.

Art. 7. General provisions applicable to proceedings under the several preceding Articles, or some of them, 34.

Art. 8. Of the powers, duties and obligations of trustees and assignees under this Title, 39.

Title 2. Of the custody and disposition of the estates of idiots, lunatics, persons of unsound mind, and drunkards, 51.

CHAP. VI. OF WILLS AND TESTAMENTS; OF THE DISTRIBUTION OF THE ESTATES OF INTESTATES; AND OF THE RIGHTS, POWERS AND DUTIES OF EXECUTORS AND ADMINISTRATORS: Containing six Titles.

Title 1. Of wills and testaments of real and personal property, and the proof of them: Containing three Articles.

Art. 1. Of wills of real property, and the proof of them, 56.

Art. 2. Of wills of personal property, and the probate of them, 59.

Art. 3. General provisions applicable to wills of real and personal property, 63.

Title 2. Of granting letters testamentary and of administration: containing three Articles.

Art. 1. Of granting letters testamentary, 68.

Art. 2. Of granting letters of administration with the will annexed, and in cases of intestacy, 73.

Art. 3. General provisions relating to letters testamentary and of administration; miscellaneous provisions respecting the duties of surrogates, and the recording of wills and letters, 78.

Title 3. Of the duties of executors and administrators, in taking and returning inventories, in the payment of debts and legacies, in accounting and making distribution to next of kin: Containing three Articles.

Art. 1. Of their duties in taking and returning inventories, 81.

* The first, second, third and fourth Chapters of Part II. are included in Vol. 1.

VI                          ANALYSIS.

Art. 2. Of the duties of executors and administrators, in the payment of debts and legacies, 86.

Art. 3. Of the duties of executors and administrators, in rendering an account, and in making distribution to the next of kin, 91.

Title 4. Of the powers and duties of executors and administrators, in relation to the sale and disposition of the real estate of their testator or intestate, 99.

Title 5. Of the rights and liabilities of executors and administrators, 113.

Title 6. Of public administrators: Containing two Articles.

Art. 1. Of the public administrator in the city of New-York, 117.

Art. 2. Of public administrators in the several counties of this state, other than the county of New-York, 128.

CHAP. VII. OF FRAUDULENT CONVEYANCES AND CONTRACTS RELATIVE TO REAL AND PERSONAL PROPERTY: Containing three Titles.

Title 1. Of fraudulent conveyances and contracts relative to lands, 133.

Title 2. Of fraudulent conveyances and contracts relative to goods, chattels and things in action, 135.

Title 3. General provisions, 136.

CHAP. VIII. OF THE DOMESTIC RELATIONS: Containing four Titles.

Title 1. Of husband and wife: Containing five Articles.

Art. 1. Of marriage, and of the solemnization and proof thereof, 138.

Art. 2. Of divorces, on the ground of the nullity of the marriage contract, 141.

Art. 3. Of divorces dissolving the marriage contract, 144.

Art. 4. Of separations, or limited divorces, 146.

Art. 5. General provisions applicable to the two last Articles. 147.

Title 2. Of parents and children, 148.

Title 3. Of guardians and wards, 150.

Title 4. Of masters, apprentices and servants: Containing three Articles.

Art. 1. Of apprentices and servants bound by indentures, 154.

Art. 2. Of persons held in service, 156.

Art. 3. General provisions, 156.

The THIRD PART of the Revised Statutes is entitled "An Act concerning Courts and Ministers of Justice, and proceedings in Civil Cases;" and consists of TEN CHAPTERS.

CHAP. I. OF THE COURTS OF GENERAL OR LIMITED JURISDICTION: Containing six Titles.

Title 1. Of the court for the trial of impeachments and the correction of errors: Containing three Articles.

Art. 1. Of the constitution of the court and its officers, 164.

Art. 2. Of impeachments, and the mode of conducting them, 165.

Art. 3. Of its powers as a court for the correction of errors, 166.

Title 2. Of the court of chancery: Containing seven Articles.

Art. 1. Of the constitution of the court; and of its officers, and their duties, 167.

Art. 2. Of the general powers, duties and jurisdiction of the court, 173.

Art. 3. Of the terms of the court, and the mode of proceeding therein, 175.

Art. 4. Of proceedings against absent, concealed and non-resident defendants, 185.

Art. 5. Of the granting of injunctions to stay proceedings at law, 188.

Art. 6. Of the powers and proceedings of the court, upon bills for the foreclosure or satisfaction of mortgages, 191.

Art. 7. Of proceedings in relation to the conveyance of lands by infants, and the sale and disposition of their estates, 193.

Title 3. Of the supreme court, 196.

Title 4. Of the circuit courts, sittings and courts of oyer and terminer, 200.

Title 5. Of the courts of common pleas and general sessions of the peace, in the several counties of this state, 207.

Title 6. Of mayors' courts in cities, 217.

CHAP. II. OF COURTS OF PECULIAR AND SPECIAL JURISDICTION: Containing four Titles.

Title 1. Of surrogates' courts, 220.

Title 2. Of the courts of special sessions of the peace, 223.

Title 3. Of special justices' courts in the several cities of this state, 224.

Title 4. Of courts held by justices of the peace: Containing thirteen Articles.

Art. 1. Of the jurisdiction of justices' courts, 225.

Art. 2. Of the commencement of suits, and the service and return of process, 227.

Art. 3. Of the appearance of parties, 232.

Art. 4. Of pleadings and of set-offs, 233.

Art. 5. Of adjournments, 238.

Art. 6. Of compelling the attendance of witnesses, 240.

Art. 7. Of the trial of issues of fact, and the incidents thereto, 242.

Art. 8. Of judgments, and filing transcripts thereof, 245.

Art. 9. Of executions, of sales thereon; and of imprisonment, 248.

Art. 10. Of the removal of causes to the court of common pleas by certiorari, 255.

Art. 11. Of appeals to the courts of common pleas, 257.

Art. 12. Of the fees of officers, and of witnesses and jurors, for services under this Title, 264.

## ANALYSIS. VII

Art. 13. General provisions concerning justices courts, and proceedings therein, 266.

CHAP. III. GENERAL PROVISIONS CONCERNING COURTS OF JUSTICE, AND THE POWERS AND DUTIES OF CERTAIN JUDICIAL OFFICERS: Containing two Titles.

Title 1. General provisions concerning the courts of justice specified in the two preceding Chapters, 274.

Title 2. General provisions concerning courts of record, and the powers and duties of certain judicial officers: Containing four Articles.

Art. 1. Provisions concerning courts of record, their process and proceedings, 276.

Art. 2. Of the powers and duties of certain judicial officers, 279.

Art. 3. Of the officers of courts of record, their duties, privileges and liabilities, 286.

Art. 4. Miscellaneous provisions concerning courts of record, 290.

CHAP. IV. OF ACTIONS, AND THE TIMES OF COMMENCING THEM: Containing two Titles.

Title 1. Of actions, and their general divisions, 291.

Title 2. Of the time of commencing actions: Containing six Articles.

Art. 1. Of the time of commencing actions relating to real property, 292.

Art. 2. Of the time of commencing actions for the recovery of any debt or demand, or for damages only, 295.

Art. 3. Of the time of commencing actions for penalties and forfeitures, 297.

Art. 4. General provisions concerning the commencement of suits, and the persons and cases excepted from the operation of the preceding Articles of this Title, 298.

Art. 5. Of the presumption of payment arising from the lapse of time, 300.

Art. 6. Of the time of commencing suits in courts of equity, 301.

CHAP. V. OF SUITS RELATING TO REAL PROPERTY: Containing eight Titles.

Title 1. Of the action of ejectment, 302.

Title 2. Proceedings to compel the determination of claims to real property, in certain cases, 312.

Title 3. Of the partition of lands owned by several persons, 315.

Title 4. Of the writ of nuisance, 332.

Title 5. Of waste, 333.

Title 6. Of trespass on lands, 338.

Title 7. General provisions concerning actions relating to real property, 339.

Title 8. Proceedings to discover the death of persons upon whose lives any particular estate may depend, 342.

CHAP. VI. OF PROCEEDINGS IN PERSONAL ACTIONS, BROUGHT FOR THE RECOVERY OF ANY DEBT, OR FOR DAMAGES ONLY: Containing six Titles.

Title 1. Of the commencement of suits, and the proceeding therein, until the forming of an issue of fact, 347.

Title 2. Of pleadings and set-offs, 351.

Title 3. Of the assessment of damages upon default, 356.

Title 4. Of judgments: Containing two Articles.

Art. 1. General provisions concerning judgments, 358.

Art. 2. Of docketing judgments, their priority, and the mode of cancelling and discharging them, 360.

Title 5. Of executions, and the duties of officers thereon: Containing four Articles.

Art. 1. General provisions, 363.

Art. 2. Of executions against property, 365.

Art. 3. Of remedies for failure of title to real estate sold by execution, and to enforce contribution between several owners of lands subject to the same judgment, 375.

Art. 4. Executions against the person, 376.

Title 6. Provisions concerning certain proceedings in the progress of an action at law: Containing four Articles.

Art. 1. Of proceedings against joint debtors, 377.

Art. 2. Of proceedings on bonds for the performance of covenants, 378.

Art. 3. Of bail, and proceedings to charge and exonerate them, 379.

Art. 4. Of consolidating and referring causes, 383.

CHAP. VII. MISCELLANEOUS PROVISIONS OF A GENERAL NATURE, APPLICABLE TO PROCEEDINGS IN CIVIL CAUSES: Containing six Titles.

Title 1. Of the abatement of suits by death, marriage, or otherwise, and of their revival, 386.

Title 2. Of the removal of causes before trial or judgment, from inferior courts, 388.

Title 3. Of evidence: Containing nine Articles.

Art. 1. Of taking, conditionally, the testimony of witnesses within this state, 391.

Art. 2. Of taking the testimony of witnesses out of this state, 393.

Art. 3. Of affidavits taken, and other judicial proceedings had, in other states and foreign countries, 396.

Art. 4. Of depositions taken in this state, to be used in courts of other states and countries, 397.

Art. 5. Of proceedings to perpetuate testimony, 398.

Art. 6. Of witnesses, their privileges, and compelling their attendance, 400.

Art. 7. Of documentary evidence, and the preservation thereof, 403.

Art. 8. Of the examination of witnesses, of

VIII                    ANALYSIS.

certain rules of evidence, and of evidence in certain cases, 405.

Art. 9. Of the administration of oaths and affirmations, 407.

Title 4. Of the trial of issues of fact: Containing *four Articles*.

Art. 1. General provisions concerning trials, and the proceedings preparatory thereto, 408.

Art. 2. Of the return and summoning of jurors, 410.

Art. 3. Of special juries, 418.

Art. 4. Of trial and its incidents, 419.

Title 5. Of amending pleadings and proceedings, 424.

Title 6. Of the powers and duties of sheriffs, coroners and other officers, in the arrest and imprisonment of persons in civil actions; in the return and execution of process; and in certain other cases: Containing *nine Articles*.

Art. 1. Of the arrest of persons on civil process, 425.

Art. 2. Of the imprisonment of persons arrested on civil process, 427.

Art. 3. Of the liberties of jails, and admitting prisoners thereto, 431.

Art. 4. Of escapes, and the liabilities of sheriffs therefor, 437.

Art. 5. Proceedings on the election or appointment of a new sheriff, 438.

Art. 6. Of the duties of sheriffs, in the execution and return of process, 439.

Art. 7. Proceedings in case of resistance to the execution of process, 441.

Art. 8. Provisions concerning the duties of coroners in executing civil process, in cases where sheriffs are parties, 441.

Art. 9. Provisions concerning persons committed under the authority of courts of the United States to jails within this state, 443.

CHAP. VIII. OF PROCEEDINGS IN SPECIAL CASES: Containing seventeen Titles.

Title 1. Of the bringing and maintaining of suits by poor persons, 444.

Title 2. Proceedings by and against infants, 445.

Title 3. Of suits by and against executors and administrators; and against heirs, devisees and legatees: Containing *two Articles*.

Art. 1. Of suits by and against executors and administrators, 447.

Art. 2. Of suits by and against legatees; and against next of kin, heirs and devisees; and between heirs and devisees, 450.

Title 4. Of proceedings by and against corporations, and public bodies having certain corporate powers, and by and against officers representing them: Containing *four Articles*.

Art. 1. Of proceedings by and against corporations, in courts of law, 457.

Art. 2. Of proceedings against corporations, in equity, 461.

Art. 3. Of the voluntary dissolution of corporations, 466.

Art. 4. Of proceedings by and against public bodies having certain corporate powers, and by and against the officers representing them, 473.

Title 5. Of suits against sheriffs, surrogates and other officers, on their official bonds, 476.

Title 6. Of actions for penalties and forfeitures; and provisions for the collection and remission of forfeited recognizances and fines imposed by courts: Containing *two Articles*.

Art. 1. Of actions for penalties and forfeitures, 480.

Art. 2. Provisions respecting the collection and remission of fines imposed by courts, and of forfeited recognizances, 483.

Title 7. Of proceedings for the admeasurement of dower, 488.

Title 8. Of proceedings for the collection of demands against ships and vessels, 492.

Title 9. Of proceedings for the recovery of rent, and of demised premises: Containing *two Articles*.

Art. 1. Of distress for rent, 500.

Art. 2. Of the recovery of possession of demised premises, for non-payment of rent, by ejectment, 505.

Title 10. Summary proceedings to recover the possession of land in certain cases: Containing *two Articles*.

Art. 1. Of forcible entries and detainers, 507.

Art. 2. Summary proceedings to recover the possession of land in other cases, 511.

Title 11. Of distraining cattle and other chattels doing damage, and of distraining in other cases, 517.

Title 12. Of the action of replevin, 521.

Title 13. Of proceedings as for contempts, to enforce civil remedies, and to protect the rights of parties in civil actions, 534.

Title 14. Of arbitrations, 540.

Title 15. Of the foreclosure of mortgages by advertisement, 545.

Title 16. Of proceedings for the draining of swamps, marshes and other low lands, 548.

Title 17. General miscellaneous provisions, concerning suits and proceedings in civil cases, 550.

CHAP. IX. OF THE WRIT OF HABEAS CORPUS; OF WRITS OF ERROR, APPEALS, INFORMATIONS, AND PROCEEDINGS COMMENCED BY ANY SPECIAL WRIT: Containing three Titles.

Title 1. Of the writs of habeas corpus and certiorari in certain cases: Containing *three Articles*.

Art. 1. Of the writ of habeas corpus, to bring up a person to testify, or to answer in certain cases, 559.

Case: 25-73, 07/15/2025, DktEntry: 38.1, Page 193 of 237

SA-335

Art. 2. Of the writs of habeas corpus and certiorari, when issued to inquire into the cause of detention, 562.

Art. 3. General provisions, 573.

Title 2. Of proceedings by scire facias, by information in certain cases, mandamus, prohibition, and ad quod damnum: Containing four Articles.

Art. 1. Of scire facias, 576.

Art. 2. Of informations in the nature of a quo warranto, and in certain other cases, 581.

Art. 3. Of writs of mandamus and prohibition, 586.

Art. 4. Of the writ of ad quod damnum, 588.

Title 3. Of writs of error, and appeals: Containing three Articles.

Art. 1. Of writs of error, 590.

Art. 2. Of writs of certiorari and of error, in special cases, 602.

Art. 3. Of appeals from the court of chancery, and surrogates' courts; and from circuit judges and courts of common pleas, in certain cases, 604.

CHAP. X. Of costs, and the fees of officers: Containing five Titles.

Title 1. Of the cases in which costs may be recovered, and in which double costs may be allowed, 612.

Title 2. Of security for the payment of costs, 619.

Title 3. Of the fees of certain officers, 621.

Title 4. General provisions concerning the fees of officers and persons, to whom any allowance is made for services, 650.

Title 5. Of the taxation of costs, 652.

The FOURTH PART of the Revised Statutes is entitled "An Act concerning Crimes and Punishments; Proceedings in Criminal Cases, and Prison Discipline;" and consists of THREE CHAPTERS.

CHAP. I. Of crimes, and their punishment: Containing seven Titles.

Title 1. Of crimes punishable with death, 656.

Title 2. Of offences against the person, punishable by imprisonment in a state prison: Containing two Articles.

Art. 1. Of manslaughter, 660.

Art. 2. Of rape, maiming, kidnapping and other offences against the person not herein before enumerated, 663.

Title 3. Of offences against property, punishable by imprisonment in a state prison: Containing five Articles.

Art. 1. Of arson, 666.

Art. 2. Of burglary, 668.

Art. 3. Of forgery, 669.

Art. 4. Of false personating another, and of cheats, 676.

Art. 5. Of robbery, embezzlement and larceny, 677.

Title 4. Of offences affecting the administration of justice: Containing three Articles.

Art. 1. Of perjury, and subornation of perjury, 681.

Art. 2. Of bribery, and of corrupting jurors and others, 682.

Art. 3. Of escapes from prisons and assisting therein, 688.

Title 5. Of offences against the public peace and public morals, and other miscellaneous offences, punishable by imprisonment in a state prison: Containing three Articles.

Art. 1. Of duelling and challenges to fight, 686.

Art. 2. Of unlawful marriages and of incest, 687.

Art. 3. Of offences against public decency; of malicious mischief, and of other crimes not before enumerated, 688.

Title 6. Of offences punishable by imprisonment in a county jail, and by fines, 689.

Title 7. General provisions concerning crimes and their punishment, 697.

CHAP. II. Of proceedings in criminal cases: Containing eight Titles.

Title 1. Of proceedings to prevent the commission of crimes, 703.

Title 2. Of the arrest and examination of offenders, their commitment for trial, and letting them to bail, 706.

Title 3. Of trials for offences, before courts of special sessions of the peace: Containing four Articles.

Art. 1. Of trials before courts of special sessions, held in any county of this state, except the city and county of New-York, 711.

Art. 2. Of trials before courts of special sessions in the city and county of New-York, 714.

Art. 3. General provisions concerning courts of special sessions, 715.

Art. 4. Of writs of certiorari to courts of special sessions, 717.

Title 4. Of indictments, and proceedings before trial: Containing three Articles.

Art. 1. Of the return and summoning of grand juries, their powers and duties, 720.

Art. 2. Of indictments and proceedings thereon, 725.

Art. 3. Of the removal of indictments, before trial or judgment, 731.

Title 5. Of trials for offences; bills of exception and other proceedings incident to trial, 733.

Title 6. Of judgments, the mode of enforcing them, and of writs of error thereon: Containing two Articles.

Art. 1. Of judgments; the evidence thereof, and the mode of enforcing them, 737.

Art. 2. Of writs of error on judgments; and certioraris in criminal cases, 739.

Title 7. Special proceedings in criminal cases, and miscellaneous provisions respecting cri-

SA-336

**X** ANALYSIS.

minal proceedings: Containing *three Arti-cles.*

Art. 1. Of coroners' inquests, 742.

Art. 2. Of the outlawry of persons convicted of treason, 743.

Art. 8. Miscellaneous provisions respecting criminal proceedings, 745.

Title 8. Of the fees of officers and ministers of justice in criminal cases, 749.

CHAP. III. OF JAILS, PENITENTIARIES AND PRISONS, AND THE GOVERNMENT AND DIS-CIPLINE THEREOF: Containing three Titles.

Title 1. Of county prisons: Containing *two Articles.*

Art. 1. Designation of the several county pri-sons, and provisions concerning their ma-nagement, 754.

Art. 2. Of the inspection of county prisons, and the discharge and delivery of prison-ers confined therein, 757.

Title 2. Of the state prisons: Containing *four Articles.*

Art. 1. Of the custody and government of the state prisons; the officers connected there-with, and their general powers, duties and compensation, 759.

Art. 2. Regulations concerning the treatment and conduct of prisoners, and the disci-pline of the prison, 767.

Art. 8. Miscellaneous provisions, 768.

Art. 4. Special provisions applicable to the state prison at Auburn, 771.

Title 8. General provisions applicable to all the prisons treated of in this Chapter, 778.

286     REVISED STATUTES OF   [PART III.

**TITLE 2.**

*When sheriffs to hold courts.*

§ 58. No sheriff shall be authorised to hold any court for any purpose whatever, except to execute writs of inquiry, and such special writs as may be directed to him, pursuant to any statute, and in the cases provided by law to inquire into any claim to property, seized or levied upon by him.

*Taking bonds, &c.*

§ 59. No sheriff or other officer, shall take any bond, obligation or security, by colour of his office, in any other case or manner than such as are provided by law; and any such bond, obligation or security, taken otherwise than as herein directed, shall be void.

*Assigning bonds, &c. upon vacancy in office.*

§ 60. Whenever any sheriff is required by law to assign any bond taken by him in the progress of any cause or proceeding, to any party, and the office of such sheriff shall be vacant, his under sheriff, or the person acting in the place of such sheriff, is authorised, and may be compelled to execute such assignment, in the name of the sheriff to whom such bond was given; which assignment shall be as valid and effectual as if executed by such sheriff.

*Indexes to books of deeds, &c.*

§ 61. It shall be the duty of the clerk of each county in this state, and of the register of the city and county of New-York, to attach to every book kept in his office, in which deeds or mortgages shall be recorded, or collectors' bonds entered, an index to the matters contained in such books, arranged in alphabetical order, under the names of the several parties to such matters, with references to the pages where the same may be found; which, together with such books, shall at all proper times be open for the inspection of any person paying therefor the fees allowed by law.

*Deputies of register in chancery, &c.*

§ 62. Each register and assistant-register of the court of chancery, shall appoint some proper person to be the deputy of such register or assistant-register, by writing under his hand and seal, to be filed in his office. Every person so appointed deputy, shall take and subscribe the constitutional oath of office.

*Their powers.*

§ 63. Any such deputy may attend in the place of his principal, the courts to be held by any vice-chancellor; and whenever the office of register or assistant-register shall become vacant, the deputy of such officer, so appointed, may perform all the duties appertaining to such office during such vacancy.

### ARTICLE THIRD.

### *Of the Officers of Courts of Record, their Duties, Privileges and Liabilities.*

SEC. 64. Attornies, &c. to be regulated by their respective courts.
65. Persons not to be admitted attornies, &c. unless approved.
66. Attornies, &c. to take oath of office.
67. Notice to be given to party on death of his attorney, &c.
68. Penalty on counsellors, &c. for deceit or collusion.
69. Penalty for wilful delay, and for extortion.
70. Penalty for allowing name to be used in process, &c.
71. Attornies, &c. not to buy rights in action, to prosecute.

SA-338

Sec. 72. Not to lend money, &c. to procure suits.    ART. 3.
73. Penalty for violating two last sections.
74. Qualifications of three last sections.
75. Notice of violations may be given in defence of suits.
76. Plaintiff, &c. may be examined on trial.
77. Order for plaintiff to attend trial, may be obtained.
78. Contents of affidavit to obtain order.
79. When order to be served; duty of plaintiff; fees to him.
80. Proceedings on plaintiff's failure to attend trial.
81. In certain cases, plaintiff to be non-suited.
82. Testimony of attorney, &c. not to be evidence criminally.
83 & 84. Sheriff to summon constables, &c. to attend court.
85. Penalty on constable, &c. for not attending.
86. Officers of courts liable to arrest, except in certain cases.

**§ 64.** All attornies, solicitors and counsellors, shall be regulated by the rules and orders of the court in which they shall respectively practise.[16]

*Regulation of attornies, &c.*

**§ 65.** No person shall be admitted a counsellor, attorney or solicitor in any court, unless he be approved by such court for his good character and learning.[17]

*Attornies, &c. to be approved.*

**§ 66.** Every person so admitted, shall, upon such admission, take and subscribe the oath of office in open court, and subscribe the same in a roll or book, to be kept in each court for that purpose.[17]

*To take oath of office.*

**§ 67.** When any attorney or solicitor, shall die, be removed or suspended, or cease to act as such, the person for whom he was acting, shall be notified to appoint another attorney or solicitor in such manner as the court shall direct, at least thirty days before any proceeding shall be had against such person.[17]

*Proceedings on death of attorney, &c.*

**§ 68.** Any counsellor, attorney or solicitor, who shall be guilty of any deceit or collusion, or shall consent to any deceit or collusion, with intent to deceive the court or any party, shall be deemed guilty of a misdemeanor, and on conviction shall be punished by fine or imprisonment, or both, at the discretion of the court. He shall also forfeit to the party injured by his deceit or collusion, treble damages, to be recovered in a civil action.[17]

*Penalty for deceit, &c.*

**§ 69.** If any counsellor, attorney or solicitor, shall wilfully delay his client's suit, with a view to his own gain, or shall wilfully receive any money or allowance, for or on account of any money which he has not laid out, or become answerable for, he shall forfeit to the party injured, treble damages.[17]

*Ib. for delay and extortion.*

**§ 70.** If any attorney or solicitor shall knowingly permit any person, not being his general law partner or a clerk in his office, to sue out any process, or to prosecute or defend any action in his name, such attorney and solicitor, and every person who shall so use the name of any attorney or solicitor, shall severally forfeit to the party against whom such process shall have been sued out, or such action prosecuted or defended, the sum of fifty dollars.[17]

*Ib. for lending his name, &c.*

(16) Laws of 1828, p. 215, § 19.   (17) 1 R. L. p. 416, § 4.

SA-339

**288** REVISED STATUTES OF [PART III.

TITLE 2.

Not to buy rights in action to sue.

§ 71. No attorney, counsellor or solicitor, shall, directly or indirectly, buy, or be in any manner interested in buying, any bond, bill, promissory note, bill of exchange, book-debt or other thing in action, with the intent and for the purpose of bringing any suit thereon.[18]

Not to lend money, &c. to procure suits.

§ 72. No attorney, counsellor or solicitor, by himself, or by or in the name of any other person, either before or after suit brought, shall lend or advance, or agree to lend or advance, or procure to be lent or advanced, any money, or any bond, bill of exchange, draft or other thing in action, to any person, as an inducement to the placing, or in consideration of having placed, in the hands of such attorney, counsellor or solicitor, or in the hands of any other person, any debt, demand or thing in action, for collection.[18]

Penalty.

§ 73. Every attorney, counsellor or solicitor, who shall violate either of the two last preceding sections, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be punished by fine or imprisonment, or both; and he shall also be removed from office in the several courts in which he is licensed.[18]

Three last sections qualified.

§ 74. Nothing contained in either of the three last preceding sections, shall be construed to prohibit the receiving in payment, by any attorney, counsellor or solicitor, any bond, bill, promissory note, bill of exchange, book-debt, or other thing in action, for any estate, real or personal, or for services actually rendered, or for a debt antecedently contracted; or from buying or receiving any bill of exchange, draft, or other thing in action, for the purpose of remittance, and without any intent to violate either of the said three last sections.[18]

Notice of defence.

§ 75. The defendant in any suit to be brought in any action of debt, covenant or assumpsit, may give notice with his plea, in addition to any other matter of defence, that on the trial of the cause, he will insist and prove, that the demand on which such action is founded, has been bought and sold, or received, for prosecution, contrary to law, without setting forth any other particulars.[19]

Plaintiff, &c. witnesses.

§ 76. On the trial of the cause in which such notice shall have been given, if the defendant shall require it, the plaintiff, and his attorney and counsel, and any other person who may be interested in the recovery in such cause, shall be examined on oath touching the matters set forth in such notice.[19]

Order for his attendance at trial.

§ 77. The defendant who shall have given such notice, may apply either to a judge of the court in which such cause shall be pending, or to some officer authorised to exercise the powers of a justice of the supreme court at chambers, for an order that the plaintiff attend on the trial of the said cause to be examined as aforesaid.[19]

Affidavit for order.

§ 78. Such order shall be granted upon an affidavit of the defendant, stating that he believes he has a defence under the provisions of

(18) Laws of 1818, p. 278, § 1. (19) Ib. § 2.

this Article ; that he believes he can establish such defence by the ART. 3.
testimony of the plaintiff, and that such plaintiff resides within this
state.[20]

§ 79. Such order shall be served on the plaintiff or his attorney, Service of order, &c.
at the time of serving a plea, tendering an issue in the cause ; and it
shall be the duty of the plaintiff to attend the trial pursuant to such
order, to be examined as above provided.  For such attendance the
plaintiff shall be entitled to the like fees as are allowed to a witness.[30]

§ 80. In case such plaintiff shall not attend such trial, he shall, on Effect of plaintiff's not attending.
proof of the due service of the order, be non-suited in such action,
unless such failure to attend shall be accounted for to the satisfaction
of the court, in which case the court may postpone the trial until its
next sitting, on payment by the plaintiff of the costs of the defendant
in preparing for trial, and on such plaintiff's entering into a stipula-
tion to try the said cause at the next sitting of such court, and then
to attend such trial.  And if such plaintiff shall not then attend, he
shall be non-suited in such action.[20]

§ 81. If any such plaintiff so required to be examined, or if any When plain tiff to be non suited.
other person being interested in the recovery of the suit, shall refuse
to answer, on oath, such questions as shall be pertinent to show a
violation of the provisions of this Article ; or if, on such examination,
it shall appear that the cause of action, on which such suit is found-
ed, has been bought or procured, contrary to the true intent of the
provisions of this Article, the plaintiff in such action shall be non-
suited.[20]

§ 82. No evidence derived from the examination of any such at- When testi mony not evidence.
torney, solicitor or counsellor, shall be admitted in proof, on any
criminal prosecution against him, for violating any of the provisions
of this Article.[20]

§ 83. It shall be the duty of the sheriff of each county in this state, Constables &c. to be summoned to attend courts.
within a reasonable time before the sitting of any circuit court, sit-
tings, court of oyer and terminer, court of common pleas or court of
general sessions, to summon personally so many marshals or con-
stables of his county, as he may have been directed to summon, by
the court or the presiding judge thereof, to appear and attend upon the
said court during its sitting.[21]

§ 84. If no direction shall have been given by such court or its Ib.
presiding judge, the sheriff shall, in like manner, summon so many
marshals or constables, as he may deem necessary for the purposes
above mentioned.[21]

§ 85. Every marshal or constable so summoned shall attend the Penalty for not attend ing.
sitting of such court, upon pain of being fined for every day's neglect
a sum not exceeding five dollars.[21]

Case: 25-73, 07/15/2025, DktEntry: 38.1, Page 199 of 237

SA-341

TITLE 2.



Liability of officers, &c. to arrest.

§ 86. All officers of the several courts of record, shall be liable to arrest, on any process against the body, and may be held to bail, in the same manner as other persons, except during the actual sitting of any court of which they are officers; and when sued with any other person, such officers shall be liable to arrest, and may be held to bail as other persons, during the sitting of the court of which they are officers; but no attorney or counsellor or solicitor, shall be exempt from arrest during the sitting of the court of which he is an officer, unless he shall be employed in some cause pending and then to be heard in such court.[22]

### ARTICLE FOURTH.

*Miscellaneous Provisions concerning Courts of Record.*

SEC. 87. Cases in which governor may change places of holding courts.
 88. How directed; to be recorded and published.
 89. Places of holding courts in New-York, how changed.
 90. Proclamation to be published.
 91. Process to be returned, &c. at place so appointed.
 92. Such courts how adjourned for want of quorum.
 93. When courts may be held at other place than court-house.
 94. Such place to be deemed court-house, &c.
 95. Spirituous liquors not to be sold in court-house.
 96. Penalty for violating last section.

Places of holding courts, how changed.

§ 87. The governor may, at any time during the vacation of any court of record, other than such as shall have been appointed to be held in the city of New-York, if he shall deem it requisite, by reason of war, pestilence, or other public calamity, or the danger thereof, that the next ensuing term or session of any such court, shall be held at a different place from that where such term or session is required to be held by law, appoint such different place for the holding of such court or session, as he shall deem expedient; and at any time thereafter he may revoke such appointment, and appoint a place anew, or leave such term or session to be held at the place where it would have been held by law.[23]

How directed, &c.

§ 88. Every such appointment or revocation, shall be by writing under the hand of the governor; and shall be recorded in the office of the secretary of this state. It shall also be published in such and so many newspapers as the governor shall direct; and the expense of such publication shall be paid out of the treasury.[23]

Ib. in New-York.

§ 89. The mayor of the city of New-York, or in his absence, the recorder thereof, may, by proclamation under his hand and seal, direct that the term of any court appointed to be held in the city-hall of that city, shall be held in any place or places within the city and county of New-York, other than the city-hall, whenever war, pestilence, or other public calamity, or the destruction or injury of the city-hall, shall render it necessary that some other place should be selected.[24]

Ib.

§ 90. Every such proclamation shall be published in two or more daily papers printed in the city of New-York.[24]

---

(22) 1 R. L. p. 418, § 12.  (23) Ib. 321, § 16.  (24) 2 R. L. p. 504, § 12.

SA-342

# EXHIBIT X

SA-343

**Looff v. Lawton, 52 Sickels 478 (1884)**

97 N.Y. 478

52 Sickels 478
Court of Appeals of New York.

MARGARET LOOFF et al., Respondents,
v.
CYRUS LAWTON, Appellant.

Argued Oct. 16, 1884.
|
Decided Dec. 2, 1884.

**\*\*1** **\*478** The provision of the Revised Statute (2 R. S. 287, § 68), making an attorney "who shall be guilty of any deceit or collusion, \* \* \* with intent to deceive the court or any party," liable for treble damages, has reference to a suit pending, and does not include a transaction between an attorney and his client before proceedings have been commenced or an action brought.

Plaintiffs' complaint alleged in substance that they were owners as tenants in common of certain real estate, which one of their number desired to purchase and the others had agreed to convey their interests to him; that defendant, an attorney upon being consulted, willfully, corruptly and fraudulently, and to induce them to institute and maintain a useless and expensive suit, that he might receive the fees, advised them that they were not competent to convey, and that the best way to accomplish the object was by partition suit, which advice plaintiffs followed, and were in consequence compelled to pay a large sum for costs and expenses. Judgment was asked for the amount paid and for treble damages, which were allowed. *Held* error; but that while the complaint stated a cause of action under the statute, it also stated one for a breach of professional duty, for which plaintiffs were entitled to recover the damages sustained.

The court charged in substance that the law required of attorneys a reasonable degree of skill, and that they shall exercise it honestly for the benefit of their clients, not for their own pecuniary profit, and if they failed in that, they are guilty of deceit and are liable under the statute. *Held,* that, while the latter portion of the charge was based upon the idea that the question was as to whether defendant had violated the statute, as the charge required the jury to find much more than was necessary to sustain a recovery for a breach of duty as an attorney, it could not have operated injuriously, and was not a legal error.

After the court had charged that if there was difficulty in perfecting the title, by means of a voluntary conveyance, the partition suit was proper and the advice honest, it charged that if defendant without any impediment or objection of the kind mentioned, advised that the suit was **\*479** necessary, the advice was dishonest and rendered him liable under the statute. *Held* no legal error.

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 14, 1880, which affirmed a judgment in favor of plaintiffs entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

West Headnotes (1)

[1]    **Attorneys and Legal Services** ⚷ Fraud, Deceit, and Misrepresentation

**Attorneys and Legal Services** ⚷ Damages

The provision of 2 Rev.St. p. 287, § 68, making an attorney "who shall be guilty of any deceit or collusion \* \* \* with intent to deceive the court or any party" liable to treble damages, applies to a suit pending, and not to the case of an attorney who fraudulently advises his client that he has a cause of action. In such case, however, while treble damages under the statute may not be recovered, single damages may be, there being an actionable breach of professional duty independent of statute.

16 Cases that cite this headnote

**Attorneys and Law Firms**

*D. P. Barnard* for appellant. To entitle plaintiffs to recover treble damages, the nature of defendant's deceit must be such as would make him guilty of a misdemeanor. (*Golschens v. Matheson,* 58 Barb. 152.) The deceit referred to in the statutes must consist of false and fraudulent representations of matters of fact and not of matters of opinion or judgment. It must be such as amounts to a misdemeanor, before a forfeiture can be recovered in a civil action. (2 Bouv. Inst. 543, 545;

**Looff v. Lawton, 52 Sickels 478 (1884)**

97 N.Y. 478

2 Whart. C. L., § 2327; Id. 514, § 2056; *Ranney v. People,* 22 N. Y. 413; *People v. Babcock,* 7 Johns. 201; *People v. Johnson,* 12 Id. 292; *People v. Miller,* 14 Id. 371; *People v. Williams,* 4 Hill, 9; 2 Whart. C. L., § 2118; *White v. Merritt,* 2 Seld. 352; *Gallagher v. Brunel,* 6 Cow. 346; *Starr v. Bennett,* 5 Hill, 303; ⚑*Duffany v. Ferguson,* 66 N. Y. 482.) Upon the facts stated by the plaintiffs to defendant that the intended purchaser was the husband of one of the plaintiffs, the doubt of the defendant that the wife was not competent to convey to her husband by deed is sustained by authority. (2 Kent's Com. 106; *Fry v. Fry,* 7 Paige, 461; *Jaques v. Methodist Church,* 17 Johns. 541; *Ferris v. Brush,* 1 Edw. 572; *Townsend v. Townsend,* 2 Sandf. 711; *Graham v. Van Dyke,* 14 Barb. 531; *Cropsey v. McKinney,* 30 Id. 47; *White v. Wagner,* 32 Id. 250; *S. C.,* 25 N. Y. 328; S. P., *Winans v. Reebles,* 32 Barb. 423; ⚑*Savage v. O'Neill,* 42 Id. 374.)

*E. B. Barnum* for respondents. Deceit, as used in the statute as to attorneys, is not confined to deceit as defined under **\*480** the statute of false pretenses or under indictments for fraud at common law. (2 Stat. at Large, 298.) Fraud, by statute and at common law, is felony and its punishment is provided for. (Laws of 1796, chap. 30; 5 Stat. at Large, 697, § 53.) While the complaint clearly states a cause of action under the statute, it also states facts sufficient to constitute a cause of action for breach of contract. (*Graves v. Waite,* 59 N. Y. 156; *Ledwich v. McKim,* 53 Id. 307; *Greentree v. Rosenstock,* 61 Id. 583; *Ross v. Terry,* 63 Id. 613.)

**Opinion**

MILLER, J.

**\*\*2** The plaintiffs, in their complaint in this action, claim to recover damages of the defendant for malpractice as an attorney and counselor of the Supreme Court.

The complaint alleges that the defendant advised the plaintiffs, who held title to certain real estate and were owners thereof as tenants in common, that they were not competent to convey said real estate and could not give a good title thereof to one of their number, who was desirous of purchasing the same at a price which was agreed upon, and that the best, shortest, and cheapest manner of accomplishing the object in view was by a partition suit, and sale of the property under a decree to be obtained in said suit; that such advice and counsel were so given willfully, corruptly, and fraudulently, with intent to deceive and defraud the plaintiffs, and to induce them to institute and maintain a useless and expensive suit, with full knowledge on the part of defendant;

that plaintiffs did accept and follow such advice and counsel, and the suit was instituted and prosecuted to judgment and the property sold, and purchased by one of the plaintiffs under an agreement executed by the advice of the defendant, before the commencement of the suit, with the intent on his part to deceive and defraud the plaintiffs; that by reason of said partition suit, plaintiffs were obliged to and did pay the amount named in the complaint as the fees and expenses of said suit. The complaint then alleges that the suit was unnecessary and needless, and that the advice and counsel given were false and untrue, and were so given with the intent to deceive the plaintiffs and induce them to consent to an expensive and needless litigation in order that the defendant might receive large and extravagant fees, and the plaintiffs claimed to **\*481** recover the amount actually paid and for treble damages under the statute.

The answer took issue with the allegations alleging malpractice and deceit on the part of the defendant. Upon the trial the principal question litigated was whether the advice given by the defendant to the plaintiffs, was justified under the facts and circumstances of the case and was so given honestly and in good faith. The evidence on behalf of the plaintiffs established that the defendant had full knowledge of the fact that all of the plaintiffs, except one, who had agreed to purchase the premises in question at a price named, were ready and willing to unite in a conveyance to the latter, and that all of them had signed an agreement to that effect. This testimony was contradicted and the defendant introduced evidence to show that he gave the advice he did under the belief that no one of the heirs would purchase the property, and that a partition suit was necessary in order to perfect the title to the same. The jury found in favor of the plaintiffs on the issue tried, and by direction of the judge upon the trial, after the verdict, the damages were trebled.

The plaintiffs' claim to recover in this action is based upon the ground that deceit was practiced upon them by the defendant, by means of which they consented that an action in partition might be brought, and that they were injured thereby to the amount of costs and expenses paid by them to the defendant on account thereof. The right to recover treble damages rests upon the provisions of 2 R. S. (1st ed.), 287, § 68, which is as follows: "Any counselor attorney or solicitor who shall be guilty of any deceit or collusion, or shall consent to any deceit or collusion, with intent to deceive the court or any party, shall be punished by fine or imprisonment, or both, at the discretion of the court. He shall also forfeit to the party injured by his deceit or collusion treble damages, to be recovered in a civil action." The article of the statutes

Looff v. Lawton, 52 Sickels 478 (1884)

97 N.Y. 478

which includes the section cited is entitled, "Of the officers of courts of record, their duties, privileges and liabilities," and it contains various provisions relating to the subject. In placing a construction upon the section cited, we should consider its provisions **\*482** in connection with others which relate to the same general subject, and in view of the object to be attained. The question then arises whether the section under consideration has reference to the giving of wrong advice, before any action has been commenced, by an attorney to his client, when either one of two courses may be pursued, and thereby inducing the client to take that course which is most expensive and injurious, and causing him unnecessarily to incur large expenses, which, if proper advice had been given, might have been avoided, or does it mean deceit and collusion practiced by the attorney in a suit actually pending in court, with the intent to deceive the court or the party? The latter interpretation would seem to be more consistent with the language employed, and the general object of the section in question, and other sections contained in the same article of the statutes. The words used relate to a case where the attorney intends to deceive the court or his client by collusion with his opponent, or by some improper practice. They do not, we think, include a transaction antecedent to the commencement of the action, as the court could have no connection with any such proceeding. The "party" referred to is clearly a party to an action pending in a court in reference to which the deceit is practiced, and not a person outside, not connected with the same at the time or with the court. This construction seems to be supported by sections 69, 70, 71 and 72, immediately following the section cited, as they clearly relate to suits brought, or intended to be brought, by attorneys, and not to proceedings which have no connection with such suits. In the case at bar, the advice given by the defendant, which is complained of, preceded the action subsequently brought, and at that time there was no court or party to be deceived within the meaning of the statute. It is obvious that a plain and intelligible distinction exists between the action of an attorney in reference to a suit pending in court, and a proceeding out of court.

**\*\*3** If the construction we have placed upon the statute is the correct one, the court was wrong in directing that the verdict of the jury upon the trial be trebled, and in this respect, the **\*483** judgment was erroneous. This conclusion does not, however, necessarily lead to a reversal of the judgment. The complaint, while it states a cause of action under the statute, also states facts which constitute a breach of duty for which the plaintiffs were entitled to recover damages, and the evidence upon the trial related to that breach of duty. Although the evidence was conflicting, it cannot be said that it was

insufficient to sustain the verdict rendered by the jury, and we think it should be upheld, unless some other error was committed by the judge upon the trial which authorizes a reversal of the judgment.

This brings us to a consideration of the exceptions taken by the defendant to the charge. The court charged the jury, among other things, as follows: "The law requires of all attorneys a reasonable degree of skill, and that they shall exercise that skill in furtherance of the interest of the client, and not in furtherance of their own pecuniary profit or any other interest; in other words, and in plain English, they must have a reasonable degree of skill, and exercise that skill honestly and for the interest of their clients, and if they fail in that they are guilty of deceit, and, under this statute, they are amenable to the consequences provided by it." The latter portion of this proposition in the charge, which is excepted to, related to the liability of the defendant under the statute which has already been cited. It required the jury to find that the defendant had been guilty of deceit, which rendered him amenable, under the statute, to the penalty provided thereby, and for more than was necessary to sustain a recovery against the defendant for a failure to perform his duty as an attorney and counselor at law. It was thus more favorable to the defendant than the facts warranted. It is true that the portion of the charge excepted to was based upon the idea that the question to be determined was whether the defendant had violated the provisions of the statute cited; but inasmuch as this would include the wrongful acts of the defendant in the discharge of the obligation he owed to his client, for which he might otherwise be held liable, it could not operate injuriously to the defendant, and was not a legal error.

**\*484** An exception was also taken to that portion of the charge in which the court said "that if the defendant advised the plaintiffs, without any impediment or objection of the kind he had mentioned, that a proceeding in the Surrogate's Court, or a proceeding in the Supreme Court, was necessary, that was dishonest advice, and rendered him amenable to the provision of the statute." Here also the charge was made, having in view the provisions of the statute. The court had previously charged the jury that "if there was difficulty in perfecting the title by means of a voluntary conveyance by those parties interested in this property, why then the suit was proper, and Mr. Lawton's advice was honest advice." The "impediment or objection" referred to in the part of the charge excepted to evidently related to what the court had previously said as to the difficulty of obtaining a voluntary conveyance of the real estate. If the parties were willing to convey voluntarily, and the title could have been acquired without resort to legal

SA-346

**Looff v. Lawton, 52 Sickels 478 (1884)**

97 N.Y. 478

proceedings, then the advice given was clearly wrong, and must have been known to be so by the defendant, and in this respect it may be said that, in fact, it was dishonest, and the defendant would be liable for damages occasioned thereby in an action against him for malpractice. It could not injure the defendant because the judge charged that he was amenable to the provisions of the statute, instead of his being merely liable in an action for damages, and, therefore, this portion of the charge did not constitute such an error as authorized a reversal of the judgment.

**\*\*4** The appellant's counsel claims that as one of the plaintiffs could not give a good title by conveyance to her husband, who was the contemplated purchaser, the alleged advice given was not wrongful. This point is not presented by any of the exceptions taken upon the trial, and, therefore, does not arise upon this appeal.

The examination we have given to this case leads to the conclusion that the judgment should be reversed and a new trial granted, with costs to abide the event, unless the plaintiffs stipulate to deduct from the judgment the amount awarded as **\*485** treble damages, with interest on the same, in which case the judgment as modified is affirmed, without costs of this appeal to either party.

All concur, except ANDREWS and EARL, JJ., dissenting.

Ordered accordingly.

**All Citations**

52 Sickels 478, 97 N.Y. 478, 1884 WL 12457

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

SA-347

# EXHIBIT Y

2                ENUMERATION OF COURTS.           [§§ 2–4.

§ **2.** *Courts of record.*

Each of the following courts of the State is a court of record :

1. The court for the trial of impeachments.
2. The court of appeals.
3. The supreme court.
4. A circuit court in each county.
5. A court of oyer and terminer in each county.
6. The court of common pleas for the city and county of New York.
7. The superior court of the city of New York.
8. The court of general sessions of the peace in and for the city and county of New York.
9. The superior court of Buffalo.
10. The city court of Brooklyn.
11. The city court of Long Island City.
12. The city court of Yonkers.
13. A county court in each county, except New York.
14. A court of sessions in each county, except New York.
15. The marine court of the city of New York.
16. The mayor's court of the city of Hudson.
17. The recorder's court of the city of Utica.
18. The recorder's court of the city of Oswego.
19. The justices' court of the city of Albany.
20. A surrogate's court in each county.

From Co. Proc. § 9, and numerous acts establishing the local courts. By the act of 1876, surrogates' courts were included among those not of record. The act of 1877 transferred them.

§ **3.** *Courts not of record.*

Each of the following courts of the State is a court not of record :

1. Courts of justices of the peace in each town, and in certain cities and villages.
2. Courts of special sessions of the peace in each town, and in certain cities and villages.
3. The district courts in the city of New York.
4. The police courts in certain cities and villages.
5. The justices' court of the city of Troy.
6. The municipal court of the city of Rochester.

From Co. Proc. § 9; L. 1834, ch. 271, and amendatory acts; 3 R. S. 5 ed. 417; L. 1872, ch. 129, tit. 2, § 11.

**4.** *General provisions as to jurisdiction and powers.*

Each of those courts shall continue to exercise the jurisdiction and powers now vested in it by law, according to the course *and practice* of the court, except as otherwise prescribed in this act.

From Co. Proc. §§ 10 and 469. The section is intended to preserve the existing practice, &c., where the subsequent provisions of the act do not apply. The words "and practice" inserted. § 469 Co. Proc. is one of those not repealed by L. 1877, ch. 417.

Digitized by Google             Original from UNIVERSITY OF MINNESOTA

SA-349

# EXHIBIT Z

SA-350

FILED: NEW YORK COUNTY CLERK 03/25/2021 11:24 AM
NYSCEF DOC. NO. 8

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/25/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANDREW DELANEY,

      :  Index No. 651740/2021

             Plaintiff,   :

-against-                   :

HC2 INC. d/b/a HIRE COUNSEL,     :

            Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIRMATION OF MICHAEL NACCHIO, ESQ. IN
### SUPPORT OF DEFENDANT'S ORDER TO SHOW CAUSE
### TO SEAL AND REDACT PARAGRAPHS OF THE VERIFIED COMPLAINT

Michael Nacchio, an attorney-at-law duly admitted to practice in the Courts of the State of New York, hereby affirms, under penalty of perjury, pursuant to CPLR § 2106, as follows:

1. I am an attorney at law and a Shareholder in the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., attorneys for Defendant HC2 Inc. d/b/a Hire Counsel ("Defendant" or "HC2"), in the above captioned matter. As such, I am fully familiar with the facts set forth herein. I submit this affirmation in support of Defendant's Order to Show Cause to Seal and Redact Paragraphs of the Verified Complaint ("Complaint"). Paragraphs four (4) through eleven (11) of the Complaint should be sealed and redacted as they disclose confidential privileged information and confidential business information.

2. By way of brief background, Defendant filed a Verified Complaint in the United States District Court of the Southern District of New York ("Federal Court") on April 22, 2020, against Andrew Delaney ("Delaney") for injunctive relief and damages arising from Delaney's scheme to try to coerce HC2, HC2's law firm customer, Wilmer, Cutler, Pickering, Hale and Door LLP ("Wilmer Hale"), and Wilmer Hale's client, Toyota Motor Corporation ("Toyota"), to pay him

1

SA-351

FILED: NEW YORK COUNTY CLERK 03/25/2021 11:24 AM
NYSCEF DOC. NO. 8

INDEX NO. 651740/2021
RECEIVED NYSCEF: 03/25/2021

hundreds of thousands of dollars by threatening to disclose confidential privileged information he obtained during his employment with HC2 as a contract attorney[1] on a Wilmer Hale document review project of information belonging to Toyota. (*See HC2, Inc. v. Andrew Delaney*, No. 1:20-cv-03178-LJL-KNF, filed in the United States District Court for the Southern District of New York dated April 22, 2020 (the "Federal Complaint"), attached hereto as **Exhibit A**).

3.  Central to Delaney's scheme was a lawsuit that Delaney filed under a "John Doe" pseudonym on April 15, 2020 against Toyota in a Florida State Court ("Florida Complaint") after Toyota refused to pay Delaney a day earlier. The Florida Complaint revealed confidential, attorney-client privileged and attorney-work product information that Delaney obtained during his employment with HC2 as a contract attorney. Indeed, on December 30, 2020, the Florida Court, after holding hearings, issued an order sealing a multitude of Complaint paragraphs because they revealed Toyota's "confidential, attorney-client privileged and attorney work product information." (*See* Sealing Order Granting Defendant's Motion to Determine Confidentiality of Court Records Pursuant to Fla. R. Jud. Admin. 2.420(c)(9), *John Doe v. Toyota Motor Corp., Toyota Motor North America, Inc., and Akio Toyota*, No. 05-2020-CA-024281 (18th Fla. Cir. Ct., Dec. 30, 2020)). Delaney's filing of the April 15, 2020 Florida Complaint necessitated Defendant's April 22, 2020 action against him in the Southern District of New York.

4.  In response to Defendant's Federal Complaint, on May 13, 2020, Delaney filed an Answer asserting nine Counterclaims: fraudulent inducement, fraudulent misrepresentation, whistleblower retaliation, breach of confidential relationship, intentional infliction of emotional distress, invasion of privacy, failure to pay New York Paid Sick Leave, defamation, and abuse of process. The Federal Court (Liman, J.) granted HC2's motion to dismiss all counterclaims on July

---

[1] Upon information and belief, Delaney has since resigned from the New York State Bar.

2

SA-352

FILED: NEW YORK COUNTY CLERK 03/25/2021 11:24 AM

NYSCEF DOC. NO. 8

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/25/2021

17, 2020, but permitted repleading. (*See* Transcript, *HC2, Inc. v. Andrew Delaney*, 1:20-cv-03178-LJL-KNF (S.D.N.Y. July 17, 2020)).

5. Then, on July 31, 2020, Delaney alleged four amended counterclaims of whistleblower retaliation, breach of confidentiality, intentional infliction of emotional distress, and abuse of process against HC2. (*See* Amended Answer and Counterclaims, *HC2, Inc. v. Andrew Delaney*, 1:20-cv-03178-LJL-KNF).

6. HC2 moved to dismiss Delaney's amended counterclaims, which the Federal Court again granted on December 18, 2020. (*See* Opinion and Order by Lewis J. Liman, U.S.D.J., *HC2, Inc. v. Andrew Delaney*, 1:20-cv-03178-LJL-KNF (S.D.N.Y. Dec. 18, 2020)).[2]

7. One week later, Delaney also filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code, on December 23, 2020. (*See In re Andrew J. Delaney*, No. 1-20-44372 (Bankr. E.D.N.Y. Dec. 23, 2020)). Delaney did not notify the Federal Court of his Chapter 7 filing.[3]

8. On February 9, 2021, Defendant first learned of Plaintiff's Chapter 7 petition and informed the Federal Court that day by letter. As a result of Delaney filing for bankruptcy, the Federal Court stayed the Complaint before it pursuant to 11 U.S. Code § 362, pending further of the Court. (*See* Order at 1, *HC2, Inc., v. Delaney*, No. 1:20-cv-03178 (S.D.N.Y. Feb. 22, 2021)). The February 22, 2021 stay has not been lifted.

---

[2] On January 14, 2021, Delaney filed an appeal of the Order dismissing his counterclaims, which is currently pending before the Second Circuit Court of Appeals. He simultaneously filed to proceed in forma pauperis, which is also pending.

[3] One week later, on December 28, 2020, Delaney also moved to dismiss the Federal Complaint for lack of subject matter jurisdiction. Defendant submitted opposition on January 11, 2021. That motion is fully briefed but not yet decided.

3

SA-353

FILED: NEW YORK COUNTY CLERK 03/25/2021 11:24 AM

NYSCEF DOC. NO. 8

INDEX NO. 651740/2021

RECEIVED NYSCEF: 03/25/2021

9. On March 16, 2021, Delaney filed the instant Complaint, alleging virtually identical claims as those since dismissed by the Federal Court and revealing confidential privileged and business information.

10. Defendant now moves by Order to Show Cause to redact Paragraphs Four through Eleven of the instant Complaint because they contain confidential and privileged information.

11. Yesterday, I notified Andrew Delaney that HC2 would be filing an Order to Show Cause to Seal and Redact Paragraphs of the Complaint, and would be seeking a temporary restraining order to temporarily seal the Complaint pending determination of the motion.

12. Mr. Delaney did not respond.

13. Based on the foregoing, as well as the arguments raised in Defendant's Memorandum of Law in support of its Motion to Seal and Redact Paragraphs of the Complaint, Defendant respectfully requests that the Court seal and redact paragraphs four through eleven of the Complaint.

14. No previous application has been made for the relief requested herein.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March 25, 2021

Michael Nacchio

46522295.1

4

SA-354

# EXHIBIT AA

SA-355

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:

ANDREW JOHN DELANEY,

Debtor.
--------------------------------------------------------------x

Chapter 7

Case No. 20-44372 (JMM)

### ORDER, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a), APPROVING THE STIPULATION BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND HC2, INC., RESOLVING ALL CLAIMS

Upon the motion ("Motion") **[ECF No. 90] (JMM)** dated September 1, 2021 of Gregory Messer, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the estate (the "Estate") of Andrew John Delaney (the "Debtor" or "Delaney"), by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking entry of an Order, pursuant to §105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules for the Eastern District of New York (the "Local Rules"), approving the Stipulation of Settlement by and between the Trustee and HC2, Inc. ("HC2") resolving all claims of the Estate and HC2 (the "Stipulation"); and upon the Affidavit of Service of the Motion; ~~and there being no opposition to the relief sought in the Motion~~ **and objections, if any, to the motion having been withdrawn, settled, or overruled (JMM)**; and a hearing on the Motion having been held before the Court on September 28, 2021 at 2:00 p.m.; and the Court having found that the relief sought by the Trustee in the Motion is warranted; and no additional notice being necessary or required, now, therefore, it is

**ORDERED,** that the Stipulation, annexed as **Exhibit A**, is hereby approved; and it is further

**ORDERED,** that the Trustee has the authority to settle or otherwise resolve all of the Pre-Petition Claims (as defined in the Stipulation); and it is further

SA-356

**ORDERED,** that the Pre-Petition Claims (as defined in the Stipulation) include only those claims and causes of action that arose prior to December 23, 2020 (the "Filing Date") and that belong to the Estate; and it is further

**ORDERED,** that the releases set forth in paragraph 3 of the Stipulation refer only to those claims and causes of action that arose prior to the Filing Date or that otherwise belong to the Estate; and it is further

**ORDERED**, that the Trustee is authorized and empowered to do such things, execute such documents and expend such funds as may be reasonably necessary to implement the terms of this Order and the Stipulation; and, it is further

**ORDERED**, that this Court shall retain exclusive jurisdiction over the terms, conditions, interpretations, implementations and any and all disputes relating to the Stipulation and this Order.

**Dated: Brooklyn, New York**
        **October 6, 2021**

                                     **Jil Mazer-Marino**
                              **United States Bankruptcy Judge**

SA-357

# EXHIBIT BB

SA-358

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

P. CHRISTOPHER LEARY,

        Plaintiff and Counter Defendant,

   -v-                                 No.  18-CV-0048-LTS-HBP

FAWAZ AL-MUBARAKI and WAFRA
INVESTMENT ADVISORY GROUP, INC.,

        Defendants and Counter Claimants.

---------------------------------------------------------------x

<u>M</u>EMORANDUM <u>O</u>PINION AND <u>O</u>RDER

        Plaintiff P. Christopher Leary ("Leary" or "Plaintiff") brings this action against

Fawaz Al-Mubaraki ("Al-Mubaraki") and Wafra Investment Advisory Group, Inc. ("Wafra,"

together with Al-Mubaraki, "Defendants") pursuant to the Age Discrimination in Employment

Act of 1967 ("ADEA"), 29 U.S.C. § 623 <u>et</u> <u>seq.</u>, the New York State Human Rights Law

("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law

("NYCHRL"), N.Y. Charter & Admin. Code § 8–107.  (Amended Complaint ("AC"), Docket

Entry No. 11.)  Plaintiff alleges that Defendants, who are his former supervisor and former

employer, discriminated and retaliated against him based on his age and disability.  Plaintiff also

asserts claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 <u>et</u> <u>seq.</u>, for

unlawful interference with the exercise of his rights under the FMLA, and discrimination and

retaliation for Plaintiff's attempt to exercise those rights.  Wafra has asserted counterclaims for

breach of fiduciary duties and breach of contract.  (Defendants' Answer to the Amended

Complaint with Amended Counterclaims ("Def. Answer" or "Def. Counterclaims"), Docket

SA-359

Entry No. 24.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

Plaintiff moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Wafra's counterclaims (Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims, docket entry no. 25), and for leave to file his proposed Second Amended Complaint ("PSAC," docket entry no. 35-6) to assert claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA"), ADEA, NYSHRL, and NYCHRL (Plaintiff's Motion for Leave to File a Second Amended Complaint, docket entry no. 33).

The Court has considered the parties' submissions carefully.  For the following reasons, Plaintiff's motion to dismiss the counterclaims is granted in its entirety and his motion for leave to amend is granted in part and denied in part.

BACKGROUND

The following summary is drawn from the factual allegations in the parties' relevant pleadings that are taken as true for purposes of this motion practice, and documents relied upon or incorporated by the relevant pleadings.

Plaintiff's Employment Tenure, Medical Condition, and Termination

Leary began working for Wafra in February 1999 as a Senior Vice President in charge of fixed income investments. (Def. Counterclaims ¶¶ 1-2.)

On February 15, 2016, Plaintiff was diagnosed with a heart condition and, after experiencing further health-related complications, Plaintiff requested and received approval for FLMA leave beginning on July 11, 2016.  (AC ¶¶ 6-7.)  Plaintiff alleges that, when he returned from FMLA leave on September 12, 2016, many of his duties had been reassigned to a younger, more junior co-worker.  (AC ¶ 8.)  In July 2017, Plaintiff's supervisor, Fawaz Al-Mubaraki,

SA-360

allegedly told Plaintiff that he was "too old" for his job and that, because of his health, he should not come to the office every day.  (AC ¶ 9.)  Shortly after this conversation, Plaintiff complained to human resources about Mr. Al-Mubaraki's "discriminatory comments."  (Id.)  On August 29, 2017, Wafra terminated Plaintiff's employment, and his position was reassigned to a younger Wafra employee.  (AC ¶ 10.)  At the time he was terminated, Plaintiff held the position of "Head of Securities."  (Def. Answer ¶ 4.)

Wafra Employee Handbook

When Leary initially accepted his offer of employment, which was at-will, he "acknowledge[d] in writing . . . that he read and understood all of the terms and conditions contained in Wafra's employee handbook."  (Def. Counterclaims ¶¶ 4-5, 7.)  The employee handbook was revised on at least two occasions during Mr. Leary's employment, and he acknowledged his reading and understanding of the handbook's terms and conditions with each iteration.  (See Docket Entry Nos. 30-6 and 30-7.)  Each version of the employee handbook contained language stating that violation of any company policies and procedures may result in "disciplinary action, up to and including termination of employment."  (Declaration of Brette Tannenbaum in Support of Defendant Wafra Inc.'s Memorandum of Law in Opposition to Motion to Dismiss Amended Counterclaims ("Tannenbaum Decl.") Ex. 6, Docket Entry No. 30-6 at 5 (emphasis in original).)

Each version of Wafra's employee handbook contained a disclaimer: "this employee handbook should not be construed as, and does not constitute, a contract of employment, either express or implied," or "[t]his handbook is not a contract, express or implied."  (Tannenbaum Decl. Ex. 6, Docket Entry No. 30-6 at 5; Tannenbaum Decl. Ex. 7, Docket Entry No. 30-7 at 4.)  Each acknowledgement form Plaintiff signed also contained

SA-361

contract disclaimers.  For example, the acknowledgement form Plaintiff signed on February 22, 2017, stated, "I understand that this Handbook . . . should not be construed as, and does not constitute, a contract of employment, either express or implied."  (Tannenbaum Decl. Ex. 2, Docket Entry No. 30-2 at 1.)  The acknowledgement form Plaintiff signed on February 8, 1999, stated, "[n]othing contained in this handbook should be considered to be a contract or guarantee of employment."  (Tannenbaum Decl. Ex. 3, Docket Entry No. 30-3 at 1.)  The acknowledgement form Plaintiff signed on November 26, 2001, stated that "this handbook is not a contract of employment, express or implied, between me and [Wafra]."  (Tannenbaum Decl. Ex. 4, Docket Entry No. 30-4 at 1.)  And the acknowledgement form dated June 22, 2011, stated that, "this handbook is not a contract, express or implied, guaranteeing employment for any specific duration."  (Tannenbaum Decl. Ex. 5, Docket Entry No. 30-5 at 1.)

Wafra's employee handbook contained rules of conduct that expressly prohibited Wafra employees from "working under the influence of alcohol, either on Wafra's premises or while conducting business-related activities off-premises," and from "using the organization's time and resources for personal gain and sending or posting confidential material outside of the organization."  (Def. Counterclaims ¶¶ 9, 11.)  According to Wafra, Plaintiff violated both rules. Plaintiff frequently used his work email to send personal emails and "regularly forwarded work-related emails containing Wafra's confidential, proprietary information . . . from his Wafra email account to his own personal email account."  (Def. Counterclaims ¶¶ 12-13.)  Wafra does not allege any additional facts regarding Plaintiff's alleged use of Wafra's confidential information. Further, during Plaintiff's employment with Wafra, multiple, unspecified Wafra employees observed Plaintiff consume alcoholic beverages during the workday, including at business lunches with Wafra employees and clients.  (Def. Counterclaims ¶ 14.)

SA-362

Mr. Leary initiated this action on January 3, 2018, and amended his complaint on March 13, 2018.  On June 8, 2018, Defendant Wafra asserted counterclaims for breach of fiduciary duties and breach of contract.  Both counterclaims are based on Plaintiff's "repeated" violations of the Wafra employee handbook.  On June 22, 2018, Plaintiff moved to dismiss Defendants' counterclaims.  (Docket Entry No. 25.)  On August 31, 2018, Plaintiff moved for leave to assert claims of discrimination and retaliation under the ADA as well as retaliation claims based on Wafra's counterclaims.  (Docket Entry No. 33.)  Defendants oppose only the addition of claims based on Wafra's counterclaims.

<div align="center">DISCUSSION</div>

Plaintiff's Motion to Dismiss

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Defendant Wafra's counterclaims in their entirety.  (See Docket Entry No. 25.)  The standard applicable to a motion to dismiss counterclaims is the same as the standard applied to motions to dismiss a complaint.  Walton v. Hadley, No. 13 Civ. 7907 ER, 2014 WL 3585525, at *3 (S.D.N.Y. July 10, 2014).  In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [it is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555

SA-363

(internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).

*Breach of Fiduciary Duties*

Defendant Wafra asserts that, in committing "repeated violations of the rules of conduct codified in Wafra's employee handbook," Mr. Leary breached his fiduciary duties to Wafra, "including the fiduciary duties of loyalty, fidelity, and good faith."  (Def. Counterclaims ¶¶ 26-27.)  Specifically, Wafra asserts that "Leary breached his duty of loyalty when he repeatedly used Wafra's information systems to covertly send Wafra's confidential and proprietary business information to his Gmail address for personal use between February 2013 and August 2017, in violation of Wafra's workplace policies."  (Defendant Wafra Inc.'s Memorandum of Law in Opposition to Motion to Dismiss Amended Counterclaims ("Def. Br."), Docket Entry No. 29 at 14.)

"Under New York law, at-will employees owe their employers a fiduciary duty of loyalty, including a duty not to use the employer's confidential information to compete with the employer."  Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326, 353 (S.D.N.Y. 2018).  "A breach of fiduciary duty, and generally in tandem, of loyalty, occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including misappropriation of trade secrets, misuse of confidential information, solicitation of employer's customers before cessation of employment, conspiracy to bring about mass resignation of an employer's key employees, or usurpation of the employer's business opportunity."  DeWitt Stern Grp., Inc. v. Eisenberg, 257 F. Supp. 3d 542, 585 (S.D.N.Y. 2017) (internal quotation marks omitted).  "[T]he gravamen of

fiduciary duty is 'undivided and undiluted loyalty,' . . . barring self-dealing, use of confidential information, and other conflicts of interest." Gortat v. Capala Bros., Inc., 585 F. Supp. 2d 372, 377 (E.D.N.Y. 2008), aff'd, 568 F. App'x 78 (2d Cir. 2014) (internal citations omitted).

Wafra's counterclaims are devoid of any allegation that Mr. Leary used Wafra's confidential information to compete against it, to divert Wafra's business opportunities, or to engage in financially advantageous self-dealing.  While Wafra argues that misuse of confidential information alone constitutes a breach of fiduciary duty, the decisions Wafra cites—none of which is binding on this Court—do not provide support for its argument that the act of sending internal information to a personal email address, standing alone, constitutes a breach of fiduciary duty.  See Carco Group, Inc. v. Maconachy, 383 F. App'x 73, 76-77 (2d Cir. 2010) (affirming district court's finding that the defendant had breached his fiduciary duty because he put and kept "a family member on the [employer's] payroll against his superior's direct orders[, which] benefit[ted] his own interests at the expense of his employer"); see also Mercer Health & Benefits LLC, 307 F. Supp. 3d at 353-54 (finding plaintiff likely to succeed on the merits of its breach of fiduciary duty claim where plaintiff provided evidence that defendants "took confidential information from [plaintiff] while they were employed at [plaintiff]," and "used [plaintiff's] proprietary . . . information to pitch current and prospective  . . . clients about whom they had confidential information from [plaintiff]"); Levy v. Young Adult Inst., Inc., 103 F. Supp. 3d 426, 436 (S.D.N.Y. 2015) (upholding counterclaims against employee where employer alleged that, "through influence and manipulation of [employer's] compensation process and mismanagement of [employer's] finances," employee facilitated "excessive compensation for [himself] and government enforcement actions and heightened regulatory oversight against [employer]").  Without allegations demonstrating that Mr. Leary engaged in self-interested

SA-365

conduct that negatively affected Wafra's interests, Wafra's counterclaims for breach of fiduciary duty fail to state claims upon which relief may be granted and must be dismissed.

Wafra further argues that Leary breached his duty of loyalty by acting as a "faithless servant." (Def. Br. at 14-15.) Under New York common law, "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 200 (2d Cir. 2003) (citations omitted). In order to state a claim under the "faithless servant doctrine," the employer plaintiff must show "(1) that the employee's disloyal activity was related to the performance of his duties, and (2) that the disloyalty permeated the employee's service in its most material and substantial part." Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009) (internal quotation marks omitted). Acts of disloyalty are not "substantial" where "the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." Phansalkar, 344 F.3d at 201-02.

Wafra's counterclaims fail to state a claim under the "faithless servant doctrine." Wafra has not specifically alleged how Plaintiff's alleged disloyalty substantially affected his job performance. Wafra alleges only that, "[b]etween 2014 and 2017, Mr. Leary's work performance suffered significantly, leading to underperformance by his clients' securities portfolios and causing his division to not be profitable." (Def. Counterclaims ¶ 23.) Wafra omits any facts concerning how its clients' portfolios "underperform[ed]," and it omits facts from which the Court could infer that Plaintiff's consumption of alcohol or forwarding of information to his personal email address contributed to such underperformance. The Court could just as easily infer that any such portfolio underperformance or lack of profitability was

LEARY MTD-MLA.docx                        VERSION SEPTEMBER 30, 2019                        8

caused by external market forces.  Further, Wafra has not cited—and the Court has not found—any case holding that an employee's (i) on-the-job consumption of alcohol, (ii) use of company email for personal communications, or (iii) transmission of confidential information to personal email accounts, without additional allegations that such information was used to the employer's detriment, supported liability under the "faithless servant doctrine."  Cf. Sanders v. Madison Square Garden, L.P., No. 06 Civ. 589 GEL, 2007 WL 1933933, at *5 (S.D.N.Y. July 2, 2007) (noting lack of precedential support for proposition that faithless servant doctrine applies whenever an employee violates work rules).  Thus, Wafra has failed to allege sufficiently a connection between these activities and Plaintiff's job responsibilities.

Further, Wafra's allegations indicate that it "knew of and tolerated [Plaintiff's] behavior" for at least three years before taking disciplinary action against him.  Wafra alleges generally that Plaintiff was observed working while intoxicated on several occasions "[d]uring the time that Mr. Leary was employed at Wafra."  (Def. Counterclaims ¶ 14.)  Plaintiff was employed with the company for 18 years.  Defendant Wafra specifically alleges that Plaintiff's intoxication negatively impacted his job performance from 2014 to 2017—a three-year period.  (Def. Counterclaims ¶ 23.)  Defendant's counterclaims do not specify any occasion, other than his termination on August 29, 2017, upon which Plaintiff was disciplined for consuming alcohol while working.  Thus, Defendant's allegations indicate that it "knew of and tolerated the behavior" for several years before taking any corrective action.  For these reasons, Defendant's "faithless servant" claim must fail.

*Breach of Contract*

Wafra alleges that, "by working under the influence of alcohol and conducting business while intoxicated," and by "using his Wafra email account to send personal emails and

to forward confidential, proprietary information to his personal email account," Mr. Leary "breached his agreement with Wafra to comply with the terms of the employee handbook." (Def. Counterclaims ¶¶ 34-35.)  To state a claim for breach of contract, a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted).  Wafra has failed to adequately allege (i) the existence of an agreement, and (ii) damages.

"To form a binding contract there must be a 'meeting of the minds,' such that there is 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'"  Stonehill Capital Mgmt. LLC v. Bank of the West, 28 N.Y.3d 439, 448 (N.Y. 2016) (internal citations omitted).  The New York Court of Appeals has held that "employee manuals, handbooks and policy statements" containing contract disclaimers are not "binding employment agreements" because the "disclaimer prevents the creation of a contract."  Lobosco v. New York Tel. Co./NYNEX, 96 N.Y.2d 312, 317 (N.Y. 2001).  Here, both the Wafra employee handbook and the acknowledgement forms contained disclaimers that "prevent[ed] the creation of a contract."  Lobosco, 96 N.Y.2d at 317.[1]  Because the Wafra handbook explicitly stated that it was "not a contract," Mr. Leary could not have agreed to be contractually bound by its terms based merely on his receipt of the handbook and execution of acknowledgments.

---

[1] The Court can consider the Wafra employee handbooks and acknowledgement forms in connection with this motion practice because Wafra's counterclaims incorporate them by reference.  (See Def. Counterclaims ¶¶ 3-7; see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (finding that "[a] complaint is deemed to include . . . materials incorporated in it by reference").)

SA-368

Wafra asserts, however, that Plaintiff agreed to be bound contractually by the terms of the employee handbook when he signed his initial offer letter to join Wafra as "Senior Vice President in charge of U.S. Fixed Income." (Def. Br. at 7; Tannenbaum Decl. Ex. 1, Docket Entry No. 30-1 at 1-2.) The relevant paragraph of the December 28, 1998, offer letter reads in its entirety as follows:

> Your appointment is subject to your acceptance of the terms and conditions contained in the enclosed employee handbook and following submission of the attached employment application. You must acknowledge in writing your having read and understood all the terms and conditions contained therein prior to employment. The application is a requirement due to the securities aspect of the firm, which has to follow certain SEC guidelines.

(Tannenbaum Decl. Ex. 1, Docket Entry No. 30-1 at 2.) Wafra argues that execution of the offer letter was sufficient to render Plaintiff contractually bound to comply with the rules and policies in the handbook because "New York courts repeatedly have recognized that an employee handbook constitutes a valid contract between employer and employee where the employee expressly agrees to comply with its terms." (Def. Br. at 6.) However, none of the cases Wafra cites for this proposition is binding on this Court, and each is factually and/or procedurally distinguishable. For example, in Apple Mortgage Corp. v. Barrenblatt, the court denied summary judgment where there remained a question as to whether the parties separately and explicitly agreed to be bound by a particular provision of the employee handbook. 162 F. Supp. 3d 270, 285 (S.D.N.Y. 2016). Similarly, in both Currier, McCabe & Assocs., Inc. v. Maher, and Evans v. Ithaca Urban Renewal Agency, the Third Department upheld the plaintiff's breach of contract claim where the defendant had executed an employment contract that explicitly incorporated the terms of the employee handbook. 906 N.Y.S.2d 129 (3d Dep't 2010) (concluding that "[i]t was defendant's execution of this [separate employment agreement], and not any provision of the handbook, that created [the employee's] contractual obligations"); 613

N.Y.S.2d 446 (3d Dep't 1994) (finding employer bound by terms of employee handbook where employee was "employed pursuant to a one-year contract of employment whose terms incorporated the terms of the [employee handbook]"). These cases involved separate, employment agreements that explicitly incorporated the terms of the employer's handbook, rather than the offer letter involved here. In <u>Pinsky v. JP Morgan Chase & Co.</u>, the court did not consider the question of whether a disclaimer in defendant's employee handbook precluded contract formation. <u>See</u> 576 F. Supp. 2d 559 (S.D.N.Y. 2008); <u>see also</u> Docket No. 07-Civ-3328, Entry Nos. 48 and 54.

Here, the letter cited by Defendant is at best ambiguous as to whether it purported to incorporate the provisions of the employee handbook at all. Its express provisions merely required "acceptance of the terms and conditions contained in the . . . handbook" and a written acknowledgment of Plaintiff's understanding of those terms. As explained above, the handbook's terms included a specific disclaimer of contract formation.

However, assuming that Wafra's initial offer letter incorporated the employee handbook such that Plaintiff was contractually bound by its terms while serving as Wafra's Senior Vice President in charge of U.S. Fixed Income, Defendant has alleged no facts sufficient to support an inference that the offer letter continued to govern the terms of Plaintiff's employment after Plaintiff was promoted to Head of Securities. <u>See</u> <u>Lubliner v. Helmsley-Spear, Inc.</u>, 642 N.Y.S.2d 240, 241 (1st Dep't 1996) (holding that "[i]t is settled that where an employee under contract agrees to change positions, the previous employment contract comes to an end and a new relationship is formed"); <u>see also</u> <u>Walsh v. Automatic Sys. Developers, Inc.</u>, 515 N.Y.S.2d 586, 587 (2d Dep't 1987) ("upon the plaintiff's agreement to change positions, the previous employment contract came to an end, and a new one took its place"). Wafra has not

alleged that any of the terms set forth in Plaintiff's initial offer letter carried over to govern Plaintiff's employment as Head of Securities, which was the position he held at the time of the alleged breach.  Indeed, the February 2017 handbook acknowledgment that Defendant has proffered recites that Plaintiff's "continued employment is contingent on" compliance with Wafra's policies as stated in the handbook, and provides for disciplinary action "up to and including termination of my employment," but otherwise disclaims employment contract formation and nowhere purports to create a contract that would support an action for damages for breach.  (See Tannenbaum Decl. Ex. 2, Docket Entry No. 30-2.)

Moreover, Wafra has failed to state a claim for breach of contract because it has not alleged plausibly that it suffered damages as a result of Plaintiff's breach.  Wafra alleges in a conclusory fashion that "[a]s a direct and proximate result of Mr. Leary's breach, Defendant Wafra Inc. has been injured and suffered losses, including lost profits, lost business opportunities, and reputational harm."  (Def. Counterclaims ¶ 36.)  However, Wafra has not alleged any facts from which the Court could plausibly infer that Plaintiff caused any such damage to Wafra by "using his Wafra email account to send personal emails and to forward confidential, proprietary information to his personal email account."  See Jinno Int'l Co. v. Premier Fabrics, Inc., No. 12 Civ. 7820 LGS, 2013 WL 4780049, at *3 (S.D.N.Y. May 24, 2013) ("[w]ithout asserting any facts about how it was damaged . . . [defendant's] pleading fails to support an inference that it has actually suffered damages as a result of [plaintiff's] breach of any agreement").  Wafra does not allege that Plaintiff used Wafra's confidential information in any way that adversely affected Wafra.  To the extent that Wafra's breach of contract claim stems from Plaintiff's "working under the influence of alcohol and conducting business while intoxicated," Wafra alleges only that such behavior resulted in poor performance.  (Def.

Counterclaims ¶ 23.)  Under New York law, Wafra's sole remedy for poor performance is termination.  Kurniawati v. JI Club Corp., No. 12 Civ. 3494 PGG, 2013 WL 1225865, at *2 (S.D.N.Y. Mar. 20, 2013) ("an employer's sole remedy under New York law for an employee's poor performance is termination") (internal quotation marks omitted); see also Farricker v. Penson Dev., Inc., No. 07 Civ. 11191 DAB, 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010) (same).  Because Plaintiff's employment has already been terminated, Wafra has not demonstrated that it is entitled to further relief for Plaintiff's alleged breach of contract and Wafra has failed to state a breach of contract claim upon which relief may be granted.  Cf. Fed. R. Civ. P. 8(a)(2) (pleading must show "that the pleader is entitled to relief").

Accordingly, Wafra's counterclaim for breach of contract is dismissed.

Plaintiff's Motion for Leave to Amend

Federal Rule of Civil Procedure 15 provides that the court may permit a party to amend its pleading when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Such leave may be denied on grounds of futility, however, if the proposed amended pleading could not withstand a motion to dismiss, such as a motion under Rule 12(b)(6) for failure to state a claim.  Griffith-Fenton v. Coldwell Banker Mortg., No. 13 Civ. 7449 VB, 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014); Oneida Indian Nation of N.Y. v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted).  The party opposing the motion to amend bears the burden of establishing that the amendment would be futile.  Ballard v. Parkstone Energy, LLC, No. 06 Civ. 13099 RWS, 2008 WL 4298572, at *3 (S.D.N.Y. Sep. 19, 2008).

*ADA Claims for Discrimination and Retaliation*

Defendants do not oppose the addition of Plaintiff's proposed Sixth, Seventh, and Eighth Causes of Action for discrimination and retaliation under the ADA.  (See Docket Entry

SA-372

No. 39 at 1; PSAC ¶¶ 69-80.)  Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading . . . with the opposing party's written consent."  Fed. R. Civ. P. 15(a)(2).  Therefore, Plaintiff's motion is granted as to the proposed Sixth, Seventh, and Eighth Causes of Action.  (PSAC ¶¶ 69-80.)

*Retaliation Claims Based on Wafra's Counterclaims*

Plaintiff also seeks to amend his complaint to add claims pursuant to the ADEA, ADA, NYSHRL, and NYCHRL, based on Wafra's allegedly retaliatory counterclaims.  (See PSAC ¶¶ 65-68, 81-84, 101-04, 125-28.)  Defendants do not consent to these amendments. Plaintiff asserts that Defendants' counterclaims were filed in retaliation for filing this lawsuit, and that his reputation has been negatively affected as a result.  As an initial matter, the Court denies Plaintiff's motion for leave to assert its proposed Fifth, Ninth, Fourteenth, and Twentieth Causes against Defendant Fawaz Al-Mubaraki, as Mr. Al-Mubaraki did not assert the allegedly retaliatory counterclaims.  (See Def. Counterclaims.)

To establish a prima facie case of retaliation, a plaintiff must allege: (1) participation in a protected activity; (2) knowledge by plaintiff's employer of the protected activity; (3) that plaintiff suffered a "materially adverse" action; and (4) that there is a causal connection between the protected activity and the materially adverse action.  Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016); Acheampong v. New York City Health & Hosps. Corp., No. Civ 9205 LTS, 2015 WL 1333242, at *12 (S.D.N.Y. Mar. 25, 2015). "Materially adverse actions" are those that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); see also Alexander v. Possible Prods., Inc., 336 F. Supp. 3d 187, 196 (S.D.N.Y.

2018) (adverse actions under the NYCHRL must be "reasonably likely to deter a person from engaging in protected activity").

The parties do not dispute that Plaintiff has alleged adequately the first and second elements of his retaliation claim. There is a dispute, however, as to whether Plaintiff has suffered a "materially adverse" action. Wafra contends that Plaintiff could not have suffered an adverse employment action because Wafra filed its counterclaims months after Plaintiff was terminated. However, actions that may support retaliation claims are not limited to those affecting the Plaintiff's employment with the alleged retaliator. In the retaliation context, a materially adverse action is any action that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. This may include "actions injurious to . . . the ability to secure future employment." Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (emphasis omitted). "The terminated employee . . . may have tangible future employment objectives, for which he must maintain a wholesome reputation." Id. Actions injurious to the employee's reputation may be sufficiently "adverse" to support a claim of retaliation.

Plaintiff has pleaded plausibly that his reputation has been negatively affected by Wafra's claims that he mishandled the company's confidential information, and that, on more than one occasion, he reported to work while intoxicated. Indeed, prospective employers may be hesitant to hire an individual who is the subject of such allegations, which are public and readily accessible. Mr. Leary need not allege exactly how he has been affected by Wafra's allegations; Plaintiff's allegation that he has suffered "damage to his reputation," is sufficient at this stage to describe a "materially adverse action." Moreover, being forced to defend a federal lawsuit and

incur the associated legal costs could certainly dissuade a reasonable worker from making or supporting a charge of discrimination.  See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68.

Wafra also argues that Mr. Leary cannot establish the fourth element of his retaliation claim.  According to Wafra, the Court cannot infer a causal connection from the temporal proximity between the filing of Plaintiff's complaint and the filing of its counterclaims because its counterclaims were compulsory under Rule 13 of the Federal Rules of Civil Procedure.  Assuming, arguendo, that Wafra's counterclaims were indeed compulsory, this Court, like others in this District, "is unwilling to adopt a rule stating that compulsory counterclaims . . . cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws."  Yankelevitz v. Cornell University, No. 95 Civ. 4593 PKL, 1996 WL 447749, at *4 (S.D.N.Y. 1996); see also Santi v. Hot in Here, Inc., No. 18 Civ. 3028 ER, 2019 WL 290145, at *5 (S.D.N.Y. Jan. 22, 2019).  Here, Wafra had the opportunity to bring its claims against Mr. Leary well before he filed the complaint in this action.  See Yankelevitz, 1996 WL 447749, at *6.  Mr. Leary's alleged handbook violations date back as early as 2014 and last occurred in August 2017.  Therefore, the Court finds sufficiently plausible at this pleading stage a causal connection based on the short period of time between the date on which Plaintiff filed his complaint and the date when Wafra asserted its counterclaims, the compulsory counterclaim provisions of the Federal Rules of Civil Procedure notwithstanding.

Defendant further argues that "compulsory counterclaims cannot be deemed retaliatory unless they are 'totally baseless.'"  (Docket Entry No. 39 at 10-12.)  The Court need not determine at this amendment stage whether Plaintiff will ultimately be able to demonstrate that the counterclaims are utterly baseless, although it bears noting that they have now been dismissed.  "A counterclaim, like many adverse actions, may be meritorious or not, but that

SA-375

determination cannot be made at the pleading stage without the benefit of discovery." Santi, 2019 WL 290145, at *5.

The Court concludes that Wafra has failed to meet its burden of demonstrating that Plaintiff's amendment would be futile. Ballard, 2008 WL 4298572, at *3. Therefore, the Court grants Plaintiff's motion for leave to amend to assert his proposed Fifth, Ninth, Fourteenth, and Twentieth Causes of Action against Wafra.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant Wafra's Counterclaims is granted in its entirety. Plaintiff's motion for leave to amend his complaint is granted as to Defendant Al-Mubaraki only for the Sixth, Seventh, and Eighth Causes of Action. Plaintiff's motion for leave to amend his complaint is granted in its entirety as to Defendant Wafra. Mr. Leary is directed to revise the proposed SAC to reflect the foregoing determinations and file the revised SAC within 14 days from the date hereof.

This Memorandum Opinion and Order resolves docket entry nos. 25 and 33.

SO ORDERED.

Dated: New York, New York
September 30, 2019

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

SA-376

# EXHIBIT CC

SA-377

# EXHIBIT Z

SA-378

*The Law Office of Christopher T. Beres*
*1600 Sarno Road, No. 1*
*Melbourne, FL 32935*
*Tel. (321) 339-9301*
*christopherberes8@gmail.com*

*April 07, 2020*

███████████

*Toyota Motor Corporation*
*1 Toyota-Cho*
*Toyota City*
*Aichi Prefecture 471-8571*
*Japan*
████████*@toyota.co.jp*

*Dear Mr.*███████████████:

*I represent Andrew Delaney against Toyota.*

*You used Mr. Delaney to be a* ████ *language document reviewer to assist you with* ████████
███████████████████████████ *starting on September 30, 2019.*

*On March 17, 2020, you had Mr. Delaney illegally fired for raising concerns about unlawful and unsafe conditions in your workplace.*

*Prior to this date, you illegally disclosed Mr. Delaney's identity, involvement, and work-product to the other side.*

*At first, you did not inform him about the subject matter of the case which was* ██████████████
███████████████████████████████████████

*Toyota insisted on* ███████████████████████████
███████████████

CONFIDENTIAL

HC2-05000511

SA-379

*For Toyota,* ███████████████████████████████ *but you had no right to drag Mr. Delaney into this.*

███████████████████████████████ *You have destroyed Mr. Delaney's residence and business and placed his life in grave danger.*

*After Mr. Delaney was a whistleblower and complained about* ██████████ *, you defamed him, made up lies about him, and threatened him.*

*I hereby grant you 7 days from the date of this letter to contact me with your offer to settle this case.*

*If you fail to contact me by this date, I will commence legal action against you without further notice.*

*Very truly yours,*

*Christopher T. Beres*

*Christopher T. Beres*