# 25-73

## United States Court of Appeals for the Second Circuit



ANDREW DELANEY,

*Plaintiff-Appellant,*

v.

HC2, INC.,
STEPHANOS ZANNIKOS,
MICHAEL JOHN ESKER NACCHIO,
and
TOYOTA MOTOR NORTH AMERICA, INC.,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE TOYOTA MOTOR NORTH AMERICA, INC.

BETH L. KAUFMAN, ESQ.
SCHOEMAN UPDIKE & KAUFMAN LLP
*Attorneys for Defendant-Appellee*
*Toyota Motor North America, Inc.*
551 Fifth Avenue
New York, New York 10176
(212) 661-5030
*bkaufman@schoeman.com*



www.dickbailey.com

**TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES ................................................................... *iii*

CORPORATE DISCLOSURE STATEMENT .......................................1

STATEMENT OF THE COURT'S JURISDICTION .............................1

COUNTER-STATEMENT OF THE ISSUES ......................................1

THIS APPEAL.........................................................................................2

STATEMENT OF THE CASE.................................................................4

       The Amended Complaint.........................................................8

ARGUMENT ..........................................................................................8

I.     THE DISTRICT COURT CORRECTLY GRANTED TMNA'S
      MOTION TO DISMISS .............................................................9

      A. Standard of Review .............................................................9

      B. There Are Insufficient Facts Alleged To Support Any Allegation
         That HC2 Was an Agent of TMNA, and the Assertion Is Otherwise
         Belied By Documentary Evidence. ............................................11

      C. Plaintiff Was Never an Employee of TMNA............................14

II.    EVEN IF THE COURT FINDS PLAINTIFF COULD BE A FORMER
      EMPLOYEE OF TMNA, THE COMPLAINT WAS PROPERLY
      DISMISSED AS TO TMNA ........................................................15

      A. The Federal Law Claims .......................................................16

         1. Plaintiff's Sixth Claim for Relief, Asserted to be under 42 U.S.C.
           § 12102 (the "ADA"), Was Properly Dismissed Because Plaintiff
           Does Not Allege a Disability ............................................16

2. Plaintiff's Seventh Claim for Relief, Asserted to be Under Title VII (42 U.S.C. §2000e et seq.) Was Properly Dismissed ................... 17

B. The State Law Claims ................................................................. 20

1. Plaintiff Misconstrues the District Court's Dismissal of His Alleged Violation of §487 of the New York Judiciary Law. .............. 20

2. The Second Claim for Relief for Alleged Conspiracy to Violate Judiciary Law §487 Was Properly Dismissed ................................ 22

3. Plaintiff's Third Claim for Relief, for Alleged Negligent Infliction of Emotional Distress, Was Properly Dismissed ............... 24

4. The Fourth Claim for Relief, for Alleged Breach of Contract, Fails Because There Was No Contract Between Plaintiff and TMNA. ..................................................................................... 26

5. Plaintiff's Fifth Claim for Relief for an Alleged Violation of New York's Labor Law § 740 Was Properly Dismissed ................... 27

III. PLAINTIFF WAS PROPERLY SERVE ....................................................... 29

IV. THE DISTRICT COURT CORRECTLY DENIED PLAINTIFF'S MOTION TO ENTER A DEFAULT JUDGMENT .................................... 31

V. THE DISTRICT COURT PROPERLY DISMISSED THE AMENDED COMPLAINT WITH PREJUDICE ............................................................ 32

CONCLUSION ............................................................................................... 33

CERTIFICATION PURSUANT TO Fed. R. App. P. 32(a)(7)(B) and (C) ............ 34

## TABLE OF AUTHORITIES

*Cases*                                                                                         *Page(s)*

*All. Network, LLC v. Sidley Austin LLP*,
   43 Misc. 3d 848, 865 (Sup. Ct. N.Y. Cnty. 2014) .................................................24

*Amalfitano v. Rosenberg*,
   533 F.3d 117, 126 (2d Cir. 2008) .........................................................................21

*Baram v. Doe*, No.
   23 Civ. 1758 (ER), 2024 WL 232319, at *10 (S.D.N.Y. Jan. 22, 2024)..20, 24, 25

*Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal*,
   556 U.S. at 668.......................................................................................................9, 10

*Beres v. Toyota Motor Corp.*,
   Case No. 5-2023-CA-001936-XXXX-MB (Fla. 15th Cir. Ct. 2023) ...................6

*Beres v. Toyota Motor North America, Inc.*,
   Case No.: 22-Civ.-05755(VEC)(SDA), (S.D.N.Y. 2022) ......................................6

*Boss v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths,*
   *Forgers & Helpers*, 567 F. Supp. 845, 847 n.1 (N.D.N.Y.),
   *aff'd sub nom. Boss v. Int'l Boilermakers*, 742 F.2d 1446 (2d Cir. 1983),
   cert. denied, 469 U.S. 819, 105 S.Ct. 89 (1984) ....................................................11

*Cagle v. Weill Cornell Med.*,
   680 F. Supp. 3d 428, 438 (S.D.N.Y. 2023) ..........................................................16

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230, 237 (2d Cir. 2006) ....................................................................22, 23

*Delaney v. HC2, Wilmer Hale and Toyota Motor North America, Inc.*,
   Case No. 25SL-CC00333 (Mo. Cir. Ct. 2025).......................................................6

*Doe v. Toyota Motor Corp.*,
   Case No: 05-2020-CA-024281 (Fla. 18th Cir. Ct. 2020).......................................6

*Doe v. Toyota Motor Corp.*,
   Case No: 56-2023-CA-000483-AXXXHC (Fla. 19th Cir. Ct. 2023) ....................6

*Faulkner v. City of Yonkers,*
105 A.D.3d 899, 900 (2d Dep't 2013) ....................................................23

*Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.,*
724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) ..........................................18

*Francis v. Kings Park Manor, Inc.,*
992 F.3d 67, 81 (2d Cir. 2021) ..............................................................25

*Hansen v. Miller,*
52 F.4th 96 (2d Cir. 2022) .....................................................................22

*Harris v. Mills,*
572 F.3d 66, 72 (2d Cir. 2009) ................................................................9

*Highland Cap. Mgmt. LP v. Schneider,*
607 F.3d 322, 327 (2d Cir. 2010) ..........................................................13

*In re Advance Watch Co., Ltd.,*
587 B.R. 598, 604–05 (Bankr. S.D.N.Y. 2018).....................................30

*Kirch v. Liberty Media Corp.,*
449 F.3d 388, 401 (2d Cir. 2006) ..........................................................22

*Knopf v. Esposito,*
71 Misc. 3d 1201(A) (Sup. Ct. N.Y. Cnty. 2021) .................................23

*McCall v. Chesapeake Energy Corp.,*
509 F. App'x 62, 65 (2d Cir. 2013) .......................................................22

*Meese v. Miller,*
79 A.D.2d 237, 242 (4th Dep't 1981)....................................................11

*Meyer v. Seidel,*
89 F.4th 117, 128-129 (2d Cir. 2023)...............................................31, 32

*Musah v. Houslanger & Assocs., PLLC,*
962 F. Supp. 2d 636, 641 (S.D.N.Y. 2013) ...........................................20

*New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),*
266 F.3d 112, 122 (2d Cir. 2001) ..........................................................11

*Palin v. New York Times Co.*,
No. 22-558 (2d Cir. 2024) ........................................................................18

*Pensee Assocs., Ltd. v. Quon Indus., Ltd.*,
241 A.D.2d 354, 359, (1st Dep't 1997) ....................................................11

*Pierce v. Better Holdco, Inc.*,
2023 WL 6386920, at *4 (S.D.N.Y. Sept. 29, 2023) ...............................27

*Platt v. Berkowitz*,
203 A.D.3d 447 (1st Dep't 2022)........................................................20, 24

*Polanco v. NCO Portfolio Mgmt., Inc.*,
23 F. Supp. 3d 363, 375–76 (S.D.N.Y. 2014) ........................................20

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
33 F. Supp. 3d 245, 252 (S.D.N.Y. 2014) ...............................10, 11, 13

*Risco v. McHugh,*
868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012)................................................18

*S.E.C. v. Credit Bancorp, Ltd.*,
No. 99 Civ. 11395(RWS), 2011 WL 666158, at *4 (S.D.N.Y. Feb. 14,
2011),aff'd sub nom. *S.E.C. v. Blech*, 501 F. App'x 74 (2d Cir. 2012) ...............30

*Sacerdote v. New York University*,
9 F.4th 95, 106 (2d Cir. 2021) ..................................................................9

*Schertenleib v. Traum*,
589 F.2d 1156 (2d Cir. 1978) ...................................................................22

*Stewart v. City of New York,*
No. 22-cv-2775, 2023 WL 6970127, at *3 (2d Cir. Oct. 23, 2023).....................18

*Vasile v. Dean Witter Reynolds Inc.*,
20 F. Supp. 2d 465, 482 (E.D.N.Y.1998),
*aff'd,* 205 F.3d 1327 (2d Cir. 2000) .......................................................23

*Webb-Webber v. Community Action for Human Svcs., Inc.*,
23 N.Y.3d 448 (2014)................................................................................21

*v*

## *Statutes/Regulations/Miscellaneous*

20 N.Y. Jur. 2d, Conspiracy—Civ. Aspects §1 (2005)...............................................24

28 U.S.C. § 1331 ............................................................................................1

28 U.S.C. § 1367 ............................................................................................1

42 U.S.C. § 12101 et seq...............................................................................7

42 U.S.C. § 2000e et seq..........................................................................7, 17

Fed. R. Civ. P. 5 ...........................................................................................29

Fed. R. Civ. P. 5(b)(2)(C) ......................................................................29, 30

Fed. R. Civ. P. 5(b)(2)(E) ............................................................................30

Fed. R. Civ. P. 81(c)(2) ...........................................................................1, 31

Fed. R. Civ. P. 81(c)(2)(A) ............................................................................4

Labor Law §740 ....................................................................................8, 19, 27

Labor Law § 740(1)(b)..................................................................................29

Labor Law § 740(2)(a)..................................................................................29

N.Y. Jud. Law §487.................................................................................*passim*

N.Y. Jud. Law §487(1) ..................................................................................20

Rule 12(b)(6)............................................................................................9, 10

Title VII of the Civil Rights Act of 1964 ...........................................7, 8, 17, 18, 19

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for defendant-appellant Toyota Motor North America, Inc. ("TMNA") states that TMNA is a wholly owned subsidiary of Toyota Motor Corporation ("TMC"). TMNA is not publicly traded. TMC is publicly traded and has no parent corporation.

## STATEMENT OF THE COURT'S JURISDICTION

This Court has subject matter jurisdiction over the issues raised on appeal by plaintiff-appellant *pro se* Andrew Delaney ("Plaintiff" or "Delaney"), pursuant to 28 U.S.C. § 1331 and § 1367.

## COUNTER-STATEMENT OF THE ISSUES

(1)     Where the claims in an Amended Complaint fail to state a claim upon which relief may be granted, and are based solely on conclusory allegations and legal conclusions, should the Amended Complaint have been dismissed, with prejudice?

The District Court correctly answered: Yes.

(2)     Was the denial of a motion to enter a default judgment correct, where the District Court found that the reference to "the initial pleading stating the claim for relief" in Fed. R. Civ. P. 81(c)(2) means the pleading that provides grounds for removal, and TMNA timely responded to that pleading?

1

The District Court correctly answered: Yes.

## THIS APPEAL

TMNA submits this brief in response to Plaintiff's appeal from a decision and order of the U.S. District Court for the Southern District of New York (Liman, J.) dated September 13, 2024, denying Plaintiff's default judgment motion (the "Default Denial Order"), and from a decision and order dated January 3, 2025, dismissing with prejudice all of Plaintiff's claims in the Amended Complaint against defendants (the "Dismissal Order").

Plaintiff's brief depends entirely on conclusory statements, insufficient to establish any claim, as was the case with his opposition to the motion to dismiss and the Amended Complaint below. There is no support in Plaintiff's brief for any of his claims against TMNA.

As the District Court correctly found, all of the claims against TMNA are founded upon alleged conduct of other parties and non-parties, including HC2's general and outside counsel, defendants Stephan Zannikos ("Zannikos") and Michael John Esker Nacchio ("Nacchio"), respectively (Zannikos and Nacchio, together with HC2, are referred to collectively as the "HC2 Defendants"). The Amended Complaint alleges no factual basis supporting the assertion that any of those defendants are agents of TMNA or that Plaintiff was employed by TMNA. In fact, Plaintiff's brief states that he "worked for Toyota Motor Corporation and

2

its subsidiaries and specifically Toyota Motor Thailand Company Limited…."

Neither TMC nor Toyota Motor Thailand Company Limited are parties to this case.

This statement is also conclusory and baseless, but it bears noting that Toyota

Motor Thailand Company Limited was not mentioned in any filing in the District

Court.

Nor does the Amended Complaint sufficiently plead any of the purported

claims asserted against TMNA – under federal or state law. Indeed, TMNA is

referred to under the general term "defendants," without any factual basis for any

claim asserted specifically against TMNA.

The District Court found:

Throughout his Complaint, Delaney asserts that he is TMNA's former employee. *See* Compl. ¶¶ 1, 83–84, 87, 96, 102. However, besides stating in a conclusory fashion that Toyota participated in or was responsible for various acts, Plaintiff does not plead any facts supporting Toyota's involvement in any of his causes of action. Plaintiff also does not plead any facts showing that he was an employee of Toyota. He simply states that he was an employee, Compl. ¶ 1, states that WilmerHale was Toyota's law firm, *id.* ¶¶ 26 n.9, 46, and quotes from certain court documents (which Plaintiff alleges contain falsehoods) suggesting Delaney participated in a "document review project" for WilmerHale and Toyota, *id.* ¶ 22. There is no factual basis to infer that this relationship, whatever it was, would make TMNA responsible for any of the allegations in the Complaint. New York Judiciary Law § 487 applies only to attorneys, and the relevant actions were taken in the Bankruptcy Proceeding by attorneys for HC2, not TMNA. The NIED and breach of contract claims also stem from the Bankruptcy Proceeding. Plaintiff has not pled that TMNA was involved in that proceeding. The New York Labor Law § 740 claims concern HC2's failure to provide Delaney with a Summary Plan Description, not TMNA's.

3

> As to the ADA and Title VII claims, the allegations of the Complaint are entirely insufficient to establish that Delaney was an "employee" as required by those statutes.

(A306-307.)

Because the Complaint fails to state any claim against TMNA, and it cannot be cured by amendment, the District Court properly dismissed with prejudice all of Plaintiff's claims against TMNA. Accordingly, the Dismissal Order should be affirmed.

The District Court correctly interpreted the language of Federal Rule of Civil Procedure ("FRCP") 81(c)(2)(A) – "the initial pleading stating the claim for relief" – to mean the pleading containing a claim that is grounds for removal, not necessarily the first pleading filed. In this case, that was the Amended Complaint, filed August 18, 2024, because the original complaint filed in state court contained no federal claims or other grounds for removal. Even if there had been a default, as the District Court stated, it would have also allowed TMNA to file its response based on discretionary grounds, rendering any error harmless. Notably, Plaintiff does not challenge that part of the Default Denial Order. Accordingly, the Default Denial Order should also be affirmed.

## STATEMENT OF THE CASE

Plaintiff's claims against TMNA allegedly arise from Plaintiff's employment by defendant HC2, Inc. ("HC2"), a legal staffing company, and his placement by

4

HC2 as a temporary attorney to support the law firm Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") on a project to review documents for WilmerHale's client TMC. Out of this experience, Plaintiff alleges that somehow he became an employee of TMNA, a separate company that, among other things, supports the manufacturing, sales, and marketing of Toyota vehicles in the United States. Plaintiff's conclusion is belied not only by common sense, but also by Plaintiff's employment contract with HC2 and HC2's contract governing the document review project (the "Project") (SA94-96; SA98-107.)[1]

The Project ended in March 2020 due to the Covid-19 outbreak. Despite the pandemic, Plaintiff has asserted, repeatedly, that the termination of the Project constituted wrongful termination of his employment. He commenced a series of meritless lawsuits predominantly against his actual former employer HC2, but also against other parties, including TMNA, which has no connection to him and was not involved in the Project. As of this writing, Plaintiff has sued TMNA and/or TMC in at least four cases in state and federal courts, and his attorney, Christopher Beres, has sued TMNA in another two cases, one in state court and the other in

---

[1] Even though these exhibits flatly contradict Plaintiff's claims (see SA94-96; SA98-107), the District Court found "these documents are not necessary to the Court's holding, [and] there is no need to decide whether they may be properly considered." (A307-308, FN 29.)

federal.[2]  Every one of these cases has been either dismissed or abandoned by Plaintiff.

Prior to filing this action, Plaintiff filed an almost identical action in the Supreme Court of the State of New York, New York County, on June 6, 2024, Index No. 155158/2024.  On June 14, 2024, Plaintive filed a corrected complaint in that action, which added two federal claims.  On July 10, 2024, TMNA removed the action to the United States District Court for the Southern District of New York, Case No. 1:24-cv-05211-LJL (Doc. No. 1).  On July 17, 2024, HC2 filed a motion to dismiss (Doc. Nos. 12-14), but that same day, Plaintiff then voluntarily dismissed the action (Doc. No. 15).

This action was originally commenced in the Supreme Court of the State of New York, New York County, on August 5, 2024. (SA5-7.)  The original complaint asserted claims solely under state law.  (*See*, SA22-29.) Plaintiff filed an amended complaint and a corrected amended complaint on August 18, 2024. (A15-38.)  The corrected amended complaint, which is the operative complaint in this case

---

[2] These cases are:
- *Doe v. Toyota Motor Corp.*, Case No: 05-2020-CA-024281 (Fla. 18th Cir. Ct. 2020);
- *Beres v. Toyota Motor North America, Inc.*, Case No.: 22-Civ.-05755(VEC)(SDA), (S.D.N.Y. 2022);
- *Beres v. Toyota Motor Corp.*, Case No. 5-2023-CA-001936-XXXX-MB (Fla. 15th Cir. Ct. 2023);
- *Doe v. Toyota Motor Corp.*, Case No: 56-2023-CA-000483-AXXXHC (Fla. 19th Cir. Ct. 2023);
- *Delaney v. HC2, Wilmer Hale and Toyota Motor North America, Inc.*, Case No. 25SL-CC00333 (Mo. Cir. Ct. 2025).

6

("Amended Complaint"), asserted claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (the "ADA Claim"), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (the "Title VII Claim") (A36-38.)  TMNA removed the action to the United States District Court for the Southern District of New York on August 20, 2024. (SA1-3.) The case was referred to Judge Liman as related to a prior lawsuit brought by HC2 against Plaintiff.

On August 26, 2024, the HC2 Defendants filed a motion to dismiss the Amended Complaint. (SA35-70.)  On September 6, 2024, Plaintiff filed a motion for default against TMNA (A 204-205), to which TMNA responded on September 6, 2024 (SA80-86.)  On September 9, 2024, TMNA filed a motion to dismiss. (SA89-136.)

The District Court denied Plaintiff's motion for default on September 13, 2024. (A244-251.)  Plaintiff filed a motion for reconsideration on September 15, 2024 (A256-258), which the District Court denied on September 17, 2025.  (A259-260.)

The District Court issued its Opinion and Order on January 3, 2025 granting the motions to dismiss. (A266-308.)

**The Amended Complaint**

The Amended Complaint, originally filed in New York Supreme Court on August 18, 2024, asserts seven claims against TMNA, all premised on the unsupported legal conclusion that HC2 was an agent of TMNA and, thus, Plaintiff is a "former employee" of TMNA. The Amended Complaint added two claims purportedly asserted under federal law – thus providing the basis for removal – for: 1) the ADA Claim; and 2) the Title VII Claim, both asserted against TMNA as well as the other defendants. Five claims from the original complaint – purportedly asserted under New York State common and statutory law, are for: 3) alleged violations of New York Judiciary Law § 487; 4) alleged civil conspiracy to violate New York Judiciary Law § 487; 5) alleged negligent infliction of emotional distress; 6) alleged breach of contract; and 7) alleged violation of New York Labor Law § 740.

## ARGUMENT

Plaintiff pleads no factual allegations as to any alleged misconduct by TMNA. He asserts only the legal conclusions that TMNA employed him and that HC2 was TMNA's agent (*see* A15, ¶¶ 1-2; A33, ¶ 74; A34, ¶¶ 83-84; A35, ¶ 87; A36, ¶ 96; A37, ¶ 102). He does not provide even threadbare factual support for either conclusion of law. Based on these naked assertions of employment and agency relationships, the Amended Complaint alleges TMNA is liable for the

8

conduct of others. Because these assertions are mere conclusory statements devoid of any supporting factual allegations, they are not entitled to the presumption of truthfulness.

## I. THE DISTRICT COURT CORRECTLY GRANTED TMNA'S MOTION TO DISMISS

### A. Standard of Review

This Court reviews "the grant of a motion to dismiss a claim under Rule 12(b)(6) de novo." *Sacerdote v. New York University*, 9 F.4th 95, 106 (2d Cir. 2021). "We apply the well-established pleading standard articulated in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*: To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* at 106-107. When assessing the complaint, the Second Circuit construes it liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor. However, we disregard conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" Even with a *pro se* complaint, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 668) (affirming District Court's dismissal of *pro se* plaintiff's claims under the ADA and § 1983 with prejudice). The ultimate question is whether "the plaintiff pleads factual content that allows the court to

9

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider "only the complaint, … any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily. Allegations in the complaint that are contradicted by more specific allegations or documentary evidence are not entitled to a presumption of truthfulness." *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 252 (S.D.N.Y. 2014) (internal quotation marks, citations and footnotes omitted) (finding conduct alleged did not give rise to a plausible inference of an agency relationship).

The District Court applied these same standards in its assessment of the Amended Complaint. And, notwithstanding Plaintiff's statements to the contrary, the District Court did not consider any documents proffered by TMNA in granting TMNA's motion to dismiss the Amended Complaint. Even though these documents flatly contradict Plaintiff's claims (*see* SA94-96; SA98-107), the District Court found "these documents are not necessary to the Court's holding, [and] there is no need to decide whether they may be properly considered." (A307-308, FN 29.)

10

**B. There Are Insufficient Facts Alleged To Support Any Allegation That HC2 Was an Agent of TMNA, and the Assertion Is Otherwise Belied By Documentary Evidence.**

New York common law "provides that an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001) (citing *Meese v. Miller*, 79 A.D.2d 237, 242 (4th Dep't 1981) and *Pensee Assocs., Ltd. v. Quon Indus., Ltd.*, 241 A.D.2d 354, 359, (1st Dep't 1997)). "The elements of common law agency are thus: (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; and (4) control by the principal." *Boss v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers*, 567 F. Supp. 845, 847 n.1 (N.D.N.Y.), *aff'd sub nom. Boss v. Int'l Boilermakers*, 742 F.2d 1446 (2d Cir. 1983), cert. denied, 469 U.S. 819, 105 S.Ct. 89 (1984). Critically, "[t]here is no agency relationship where the alleged principal has no right of control over the alleged agent." *Precedo*, 33 F. Supp. 3d at 253 (citation omitted). Here, Plaintiff does not even allege, nor could he, that TMNA had control over HC2, at any point in time.

Allegations that are "contradicted by . . . documentary evidence are not entitled to a presumption of truthfulness." *Id.* Here, the agreement governing the Project and Plaintiff's employment agreement with HC2 are incorporated by

11

reference into the Amended Complaint. (*See* A15, ¶ 1; A16, ¶ 6; A20-21, ¶ 22; A23-24, ¶ 27; A34, ¶¶ 83-84; A37, ¶ 102). In the contracts regarding the Project and Plaintiff's employment with HC2, agency relationships are expressly disclaimed, and an independent contractor relationship is expressly included. The agreement between WilmerHale and HC2 for the Project ("Project Agreement") provides the following:

> Relationship of Parties. The relationship of the parties hereunder is that of independent contractors, and nothing in this Agreement shall be construed as authorizing any party to act as an agent of another. No party shall have any right to enter into any contracts or commitments in the name of, or on behalf of, any other party, or to bind any other party in any respect whatsoever. Vendor [HC2] agrees that all persons furnished by Vendor [HC2] shall be considered Vendor's [HC2's] employees or agents and that Vendor [HC2] shall be responsible for payment of all unemployment, social security, and other payroll taxes, including contributions from them when required by law.

(SA103, ¶ 11.) This agreement was countersigned by TMC, not TMNA, but the fact that the parties actually involved in the Project were not deemed to be the agents of each other, but rather independent contractors, shows that HC2 could not be the agent of TMC, let alone TMNA, or vice versa.

While an agent can have actual or apparent authority to act on behalf of a principal, "actual authority is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all circumstances attending those manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the

12

facts of which both parties are aware." *Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) (citation omitted) (no actual authority where record contained no evidence of express or implied permission for agent to enter into a contract without principal's approval). In contrast to actual authority, "apparent authority hinges upon the principal's communications to [a] third party. Thus, to adequately plead the existence of apparent authority, a plaintiff must allege words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority" to act on behalf of the principal. *Precedo*, 33 F. Supp. 3d at 254 (citation and internal quotation marks omitted) (plaintiffs failed to plead apparent authority where the complaint did not contain "a single allegation that [the alleged principal] communicated with plaintiffs"). Here, Plaintiff makes no allegations concerning HC2's authority to act on behalf of TMNA, and, the Project Agreement between the relevant parties expressly forecloses any finding that HC2 would have actual or apparent authority to act on behalf of WilmerHale and TMC.

Finally, although a principal may be found liable for the acts of an agent if they affirm or ratifies an act done by a person purporting to be his agent, under New York law, "ratification is a form of retroactive activity that occurs when the principal, having knowledge of the material facts, accepts the benefits of the agent's action already made on his behalf." *Id.* at 254, 257 (plaintiff failed to plead

ratification where "[t]he [c]omplaint's allegations fall far short of permitting an inference that [defendant] knew that [alleged agent] was holding itself out as [defendant]'s agent and failed to take action to prevent it from doing so").

Here, the Complaint is devoid of allegations that TMNA benefitted from any action undertaken by HC2, and it is clear that there is no plausible theory by which Plaintiff could legitimately argue ratification.

Because there is no agency relationship between TMNA and HC2 sufficiently pleaded in the Complaint, all claims against TMNA based on an alleged agency relationship with HC2 were properly dismissed.

## C. **Plaintiff Was Never an Employee of TMNA.**

Plaintiff's employment contract with HC2 confirms that HC2, and only HC2 was Plaintiff's employer at all relevant times. (*See* SA94) ("THIS EMPLOYMENT AGREEMENT . . . is made . . . by and between HC2, Inc. . . . and Andrew Delaney . . . . [HC2] is in the business of providing attorneys . . . and needs of its third party clients."); § 1 ("[HC2] in its sole and absolute discretion will determine the suitability of Contract Professional for any temporary placement with [HC2]'s client(s)"); § 3 ("If Contract Professional is placed by [HC2] with an [HC2] Client, Contract Professional remains a Contract Professional of [HC2] during the period of such temporary placement."); § 4 ("Contract Professional

14

understands that Contract Professional's At-Will employment may be terminated by [HC2] at any time, for any reason, or for no reason . . . .").

Plaintiff's allegation that he was an employee of TMNA is based upon his allegation that HC2 was TMNA's agent. (A15, ¶¶ 1-2.) Yet, he now claims in his appellate brief that he worked "specifically [for] Toyota Motor Thailand Company Limited." Regardless, because there is no agency relationship between HC2 and TMNA sufficiently pleaded in the Complaint (and because none could exist under the terms of the Project Agreement), Plaintiff's allegation that he was employed by TMNA, and the claims derived from that allegation, must be rejected. Accordingly, the employment-based claims against TMNA were properly dismissed on this ground also.

Taken together, the Project Agreement and Plaintiff's employment agreement with HC2 contradict all allegations premised on the notion that Plaintiff is a former employee of TMNA. Thus, any allegations to the contrary are not entitled to a presumption of truthfulness, and formed no basis for any claim for relief in the Complaint purportedly asserted against TMNA.

## II. EVEN IF THE COURT FINDS PLAINTIFF COULD BE A FORMER EMPLOYEE OF TMNA, THE COMPLAINT WAS PROPERLY DISMISSED AS TO TMNA.

Even if Plaintiff could be deemed a former employee of TMNA, each individual claim in the Complaint alleged against TMNA is insufficient as pleaded,

15

and was properly dismissed for failure to state a claim. Moreover, as to Plaintiff's federal claims, dismissal is further warranted due to Plaintiff's failure to exhaust administrative remedies.[3]

## A. The Federal Law Claims

### 1. Plaintiff's Sixth Claim for Relief, Asserted to be under 42 U.S.C. § 12102 (the "ADA"), Was Properly Dismissed Because Plaintiff Does Not Allege a Disability.

As the District Court noted, "[w]hen a plaintiff alleging employment discrimination under the ADA does not state a disability or perceived disability in the complaint, their claim fails as a matter of law." (A304-305, citing *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 438 (S.D.N.Y. 2023).) Beyond the conclusory statement that "plaintiff is an individual with a disability" (A37, ¶ 103), Plaintiff's Sixth Claim for Relief does not state the nature of his disability. Nor does the Complaint describe any discrimination by TMNA or facts upon which an inference of discrimination against Plaintiff by TMNA could be found. Finally, there are no allegations of any specific action by TMNA that would constitute harassment, threatening, or stalking under the ADA. (*See* A37, ¶¶ 103-106). The District Court's dismissal of this claim with prejudice should be affirmed.

---

[3] Given that the Complaint frequently groups all "Defendants" together with no differentiation, TMNA herein adopts and incorporates the points made in the HC2 Defendants' Respondent's Brief with respect to Plaintiff's failure to plead each element of each of his claims.

16

**2. Plaintiff's Seventh Claim for Relief, Asserted to be Under Title VII (42 U.S.C. §2000e et seq.) Was Properly Dismissed.**

In the absence of an employment relationship between Plaintiff and TMNA, no Title VII claim lies. The District Court properly found that "besides stating in a conclusory fashion that TMNA participated in or was responsible for various acts, Plaintiff does not plead any facts supporting [TMNA's] involvement in any of his causes of action. Plaintiff also does not plead any facts showing that he was an employee of Toyota." (A306.) The District Court further correctly found that the allegations in the Amended Complaint provide "no basis to infer that TMNA had functional or formal control over Plaintiff's work, as required to plead an employment relationship." (A307.)

Even if there had been an employment relationship, the District Court properly dismissed the Title VII claim, because it found that "Plaintiff does not plead any facts to support his Title VII Claim" but rather "a 'formulaic recitation of the elements of a cause of action,' 'which will not do.'" cite , p. 41 (quoting *Twombly*, 550 U.S. at 555). Contrary to Plaintiff's argument, the District Court did not evaluate this claim under the *McDonnell Douglas* three-step burden-shifting

test relating to establishing a *prima facie* case. *McDonnell Douglas* is not referenced at all in the Dismissal Order.[4]

Plaintiff's Title VII claim states as its basis only that:

The defendants retaliated against the plaintiff by giving negative references and thus prevented another employer from unknowingly discriminating against applicants. The defendants also retaliated against the plaintiff in connection with their benefits plan. The defendants discriminated against the plaintiff because he has opposed their unlawful employment practices, or because 'he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' concerning their unlawful employment practices.

(A37, ¶¶ 110-12.) General allegations such as these "are not protected activity under Title VII." *Risco v. McHugh,* 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) (citation omitted)*; see also Stewart v. City of New York,* No. 22-cv-2775, 2023 WL 6970127, at *3 (2d Cir. Oct. 23, 2023) (recognizing that the protected activity must be connected to "any category protected by Title VII (race, color, national origin, religion, or sex)"); *Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.,* 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim when the plaintiff's "own allegations . . . show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex").

---

[4] Plaintiff's use of *Palin v. New York Times Co.*, No. 22-558 (2d Cir. 2024) as precedent for how not to decide a motion to dismiss is inapposite. *Palin* was a case that went to trial, had a jury decision, and then a retrial. There was no motion to dismiss standard at issue. See, e.g., App. Br., pp. 7, 10, 26.

18

Plaintiff incorporated by reference in his Title VII claim an allegation made in his Fifth Claim for Relief (for violation of N.Y. Labor Law §740) that "[s]tarting in March 2022, the plaintiff engaged in the protected activity of complaining to the government about HC2's violation of the law regarding its pension and stock ownership plans by failing to furnish him with a copy of the Summary Plan Description in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and the labor laws." (A35, ¶ 86.) He alleges only that "[t]he defendants retaliated against [him] by giving negative references and thus prevented another employer from unknowingly discriminating against applicants." (A37, ¶ 110.)

However, the vague allegation that "defendants" gave Plaintiff negative references and otherwise "discriminated against" Plaintiff are not tied at all to Plaintiff's being a member of a protected class, or to Plaintiff having engaged in any protected activity. There are no allegations anywhere in the Complaint concerning discrimination by TMNA based on Plaintiff's or anyone's race, sex, or any other protected characteristic. Thus, no Title VII claim against TMNA is pleaded sufficiently, and the District Court properly dismissed this claim.

**B. The State Law Claims**

**1. Plaintiff Misconstrues the District Court's Dismissal of His Alleged Violation of §487 of the New York Judiciary Law.**

Judiciary Law §487 prohibits an attorney from engaging in any deceit or collusion, or consenting to any deceit or collusion, with intent to deceive the court or any party. N.Y. Jud. Law §487(1). It is well-settled that the statute "only applies to wrongful conduct by an attorney in a pending proceeding in which the plaintiff was a party." *Platt v. Berkowitz*, 203 A.D.3d 447 (1st Dep't 2022) (claim properly dismissed where "the complaint does not allege that [defendant] was counsel of record in any pending proceeding to which plaintiff was a party"); *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 641 (S.D.N.Y. 2013) ("[t]he alleged deceit forming the basis for a cause of action §487, if it is not directed at a court, must occur during the course of a pending judicial proceeding"); *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 375–76 (S.D.N.Y. 2014) (dismissing §487 claim against non-attorney, noting that "clients may not be held derivatively liable under the statute for the misconduct of their counsel") (collecting NY cases). Notably, "filing an action, raising non-meritorious arguments, and pleading unfounded or false allegations are not bases for §487 liability even when made for improper purpose." *Baram v. Doe*, No. 23 Civ. 1758 (ER), 2024 WL 232319, at *10 (S.D.N.Y. Jan. 22, 2024).

20

TMNA is not an attorney and there are no allegations against it concerning misconduct that occurred in a New York court. The District Court correctly dismissed this claim against TMNA for that reason and because TMNA was not even involved in the cases in which the Amended Complaint alleges the §487 claim arose. (A306-308.)

In defense of his §487 claim, Plaintiff only conclusorily states: "Because the Plaintiff's amended complaint satisfies the standards for pleading, respectfully submits that the Court should reverse the district court and remand for discovery." App. Br., p. 27.

Plaintiff's cite to *Webb-Webber v. Community Action for Human Svcs., Inc.*, 23 N.Y.3d 448 (2014), claiming the District Court should have certified to the New York Court of Appeals the question of whether §487 claims apply in federal court is irrelevant and incorrect. *Webb-Webber* is a state court case that began in New York's Supreme Court and worked its way to the Court of Appeals. The federal courts were not involved. Further, *Webb-Webber* involved a Labor Law claim, not a Judiciary Law one. Here, even if this case raised an issue that should be certified to the New York Court of Appeals, it is the Second Circuit that has the power to do so; the District Court has no such authority. *Amalfitano v. Rosenberg*, 533 F.3d 117, 126 (2d Cir. 2008) (addressing certification of two questions regarding §487

to the New York Court of Appeals and noting, "the district court did not have the authority to" do so).

Similarly, Plaintiff misstates that the Second Circuit "has previously ruled that §487 applies in the New York federal court system" citing *Schertenleib v. Traum*, 589 F.2d 1156 (2d Cir. 1978). In *Schertenleib*, though, the Second Circuit affirmed the District Court's dismissal of the §487 claim based on the attorneys' misconduct in a Geneva, Switzerland court, holding §487 claims do not apply extraterritorially. *Id.* at 1166. Plaintiff also cites *Hansen v. Miller*, 52 F.4th 96 (2d Cir. 2022) for support, but the *Hansen* Court was applying §487 to claims brought for attorneys' conduct occurring in a New York State court. *Id.* at 99-100.

Accordingly, the dismissal of the Judiciary Law §487 claim as to TMNA, should be affirmed.

### 2. The Second Claim for Relief for Alleged Conspiracy to Violate Judiciary Law §487 Was Properly Dismissed.

As the District Court correctly noted, "because Plaintiff does not state a primary claim under Judiciary Law § 487, his claims alleging conspiracy to violate Section 487 must also be dismissed." *See Kirch v. Liberty Media Corp*., 449 F.3d 388, 401 (2d Cir. 2006); *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 237 (2d Cir. 2006)." (A299, FN 24.) There is no independent cause of action for civil conspiracy in New York. *See McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 65 (2d Cir. 2013); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 237 (2d Cir.

2006) ("Under New York law, civil conspiracy . . . standing alone, is not actionable if the underlying independent tort has not been adequately pleaded.") (citing *Vasile v. Dean Witter Reynolds Inc.,* 20 F. Supp. 2d 465, 482 (E.D.N.Y.1998), *aff'd,* 205 F.3d 1327 (2d Cir. 2000)). Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 900 (2d Dep't 2013); *see also Knopf v. Esposito*, 71 Misc. 3d 1201(A) (Sup. Ct. N.Y. Cnty. 2021) ("[t]o make out a claim for conspiracy, a plaintiff must demonstrate (i) the primary tort; (ii) an agreement between multiple parties; (iii) an overt act in furtherance of that agreement; (iv) the parties' 'intentional participation in the furtherance of a plan or purpose'; and (v) resulting damage to the plaintiff.").

The civil conspiracy claim also was properly dismissed as against TMNA because, as established above, and held by the District Court, the underlying tort (violation of Judiciary Law §487) cannot be asserted against TMNA because it is not a lawyer. *See Crigger*, 443 F.3d at 237 ("The essence of the cause of action for civil conspiracy is the tortious conduct of the defendants; therefore the dismissal of the underlying substantive cause of action also requires the dismissal of the accompanying charges of conspiracy based on the same facts or allegations.")

23

(citing 20 N.Y. Jur. 2d, Conspiracy—Civ. Aspects §1 (2005)); *see also Platt*, 203 A.D.3d at 448 (determining that "[i]n the absence of any actionable tort [for violation of Section 487], the court properly dismissed the civil conspiracy claim against both [attorney] defendants"); *All. Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 865 (Sup. Ct. N.Y. Cnty. 2014) ("[a] civil conspiracy claim requires a demonstration of an underlying tort. Having failed to make that demonstration, [p]laintiffs' conspiracy claim [for conspiracy to violate Section 487] must be dismissed") (internal citations omitted) ; *Baram*, 2024 WL 232319, at *10 (same, noting that "New York does not recognize civil conspiracy to commit a tort as an independent cause of action, and a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort") (citation omitted).

Plaintiff puts forth no argument for his conspiracy claim, save to say: "Regarding the conspiracy claim, it was plausible because the underlying § 487 was plausible and should therefore not have been dismissed." App. Br., p. 29.

Based on the foregoing, Plaintiff's civil conspiracy claim was properly dismissed with prejudice and should be affirmed.

### 3. Plaintiff's Third Claim for Relief, for Alleged Negligent Infliction of Emotional Distress, Was Properly Dismissed.

Under New York law, to plead a negligent infliction of emotional distress ("NIED") claim, a plaintiff must allege: "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach

and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021). The District Court found "Delaney does not allege a plausible NIED claim" and his "allegations of emotional distress are entirely conclusory." (A299-300.)

The Amended Complaint alleges that "[u]nder the New York Bar Civility Standards, Zannikos and Nacchio owed the plaintiff a duty of care 'to not mislead' (IX) and also had ethical duties to the plaintiff," that "Zannikos and Nacchio flagrantly breached their duty to the plaintiff especially as a self-represented party," and that "[t]he defendants' breach of their professional duties was at least negligent and was the direct cause of the plaintiff's injuries." (A32-33, ¶¶ 66, 68-69). Again, with regard to TMNA, Plaintiff alleges no conduct, but avers only that it "and HC2 are liable to the plaintiff under the doctrine of *respondeat superior*." (A33, ¶ 74.)

Such a claim cannot lie against TMNA because it was not the "master" of either of the lawyers. As in *Baram*, Plaintiff "has stated no duty that [TMNA] . . . owed him," anywhere in the Complaint. 2024 WL 232319, at *10 (dismissing negligence claim against non-attorney where plaintiff sued both attorneys and clients under §487). Moreover, the *Baram* court noted that a negligence claim may not be asserted "on the basis of purported violation of the Rules of Professional

Conduct or Federal Rules of Civil Procedure," as those rules do not "constitute duties owed to adversaries or third parties." *Id.* "To the contrary, courts regularly hold that violations of the Rules of Professional Conduct do not create a private cause of action." *Id.* (internal quotation marks omitted).

Thus, even if Plaintiff could conflate TMNA with the attorney defendants via some theory of vicarious liability, "[i]n the absence of any authority indicating that either the rules of Professional Conduct or the Federal Rules of Civil Procedure establish duties that attorneys owe to their adversaries, [Plaintiff] may not assert a negligence claim." *Id.*

Plaintiff's negligent infliction of emotional distress claim was properly dismissed by the District Court and should be affirmed.

### 4. The Fourth Claim for Relief, for Alleged Breach of Contract, Fails Because There Was No Contract Between Plaintiff and TMNA.

The District Court dismissed Plaintiff's breach of contract claim against TMNA because that claim stemmed from a bankruptcy proceeding and Plaintiff "has not pled that TMNA was involved in that proceeding." (A306.) TMNA is not mentioned at all in this cause of action, and throughout the Complaint there are no factual allegations concerning any action taken by TMNA constituting a breach of a contract with Plaintiff. In fact, there was no contract between TMNA and

26

Plaintiff, and the alleged facts underlying Plaintiff's breach of contract claim accordingly have nothing to do with TMNA:

> On July 21, 2022, in specific retaliation for the plaintiff's complaint to the government about HC2's violations of ERISA and other laws, Goldstein appeared at a hearing and opposed the plaintiff's motions. The defendants violated the settlement agreement between the parties and also the August 1, 2021 order for it to exit the bankruptcy case with prejudice. The defendants also lied repeatedly in HC2's motion in support of the withdrawal of their proof of claim with prejudice. The defendants were working in concert and are liable to the plaintiff for damages.

(A34, ¶¶ 78-80.)

As such, the breach of contract action was properly dismissed as to TMNA, and the dismissal should be affirmed.

### 5. Plaintiff's Fifth Claim for Relief for an Alleged Violation of New York's Labor Law § 740 Was Properly Dismissed.

A properly pleaded § 740 claim must allege "(1) [a] retaliatory action, (2) [an] activity protected by the statute, and (3) a causal link between the two." *Pierce v. Better Holdco, Inc.*, 2023 WL 6386920, at *4 (S.D.N.Y. Sept. 29, 2023). The District Court held Plaintiff "has not alleged a claim under Labor Law §740." (A304.)

New York Labor Law § 740 prohibits retaliation against an employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses

27

a substantial and specific danger to the public health or safety."  Labor Law § 740(2)(a).  Here, this claim contains no allegations that have anything to do with TMNA.

Plaintiff alleges that "[s]tarting in March 2022, [he] engaged in the protected activity of complaining to the government *about HC2's violation* of the law regarding its pension and stock ownership plans by failing to furnish him with a copy of the Summary Plan Description in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") and the labor laws."  (A35, ¶ 86) (emphasis added).  He further alleges that: (1) "[TMNA] and HC2 retaliated against [him] by repeatedly refusing to send him a copy of the Summary Plan Description."; (2) "On July 21, 2022, [TMNA] and HC2 further retaliated against [him] for engaging in a protected activity by having Goldstein interfere in and appear at a hearing to successfully oppose the plaintiff's voluntary dismissal of his bankruptcy case."; (3) "On April 12, 2023, [TMNA] and HC2 further retaliated against [him] by having or conspiring with Wilmer Hale to continue to falsely accuse the plaintiff of extortion."; and (4) On May 3, 2023, [TMNA] and HC2 further retaliated against [him] by having or conspiring with Kasowitz to falsely accuse [him] of extortion and to write: 'How the term 'extort' is used could easily be a matter of opinion.'"  (A35, ¶¶ 89-92.)

28

Although TMNA is lumped in with HC2 in connection with this claim, the allegations concerning TMNA are purely conclusory, and there are no facts alleged concerning any protected activity that Plaintiff undertook with regard to TMNA. Paragraphs 44 and 86 both state that Plaintiff complained about *HC2*'s alleged violation of law only, and throughout the Complaint there are no specific retaliatory acts attributed to Toyota. (*See* A28, 35.) Moreover, TMNA was not Plaintiff's "employer" within the meaning of Section 740(1)(b). Plaintiff himself claims to have worked "specifically [for] Toyota Motor Thailand Company Limited…" While this conclusory statement is also baseless, it renders his claim that he was employed by TMNA not only moot, but frivolous.

Accordingly, the Fifth Claim for Relief was properly dismissed as to TMNA and should be affirmed.

## III. PLAINTIFF WAS PROPERLY SERVED

The District Court properly determined that Plaintiff was served with, and had actual notice of, TMNA's motion to dismiss. As the District Court correctly held, "[s]ervice of papers subsequent to the initial complaint is governed by Federal Rule of Civil Procedure 5." (*See* A13) (citing Fed. R. Civ. P. 5). According to Rule 5, a paper may be served by "mailing it to the person's last known address—in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). Service may also be completed by "sending it to a registered user by

29

filing it with the court's electronic-filing system." Fed. R. Civ. P. 5(b)(2)(E). Here, TMNA filed the motion papers on ECF, mailed the motion papers to Plaintiff's last known address in the Philippines, and e-mailed the motion papers to Plaintiff at the e-mail address he provided in his Amended Complaint. (*See* A279; SA137.) Under Rule 5(b)(2)(C), service of the motion papers was complete upon mailing. (*See* A279; F.R.C.P. 5(b)(2)(C).)

Plaintiff's continued reliance on application of the Hague Convention is misplaced.  The District Court correctly found that "'the Hague Service Convention only applies to the initial service of process, namely the summons, not subsequent judicial documents.'" (A279) (quoting *S.E.C. v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395(RWS), 2011 WL 666158, at *4 (S.D.N.Y. Feb. 14, 2011),aff'd sub nom. *S.E.C. v. Blech*, 501 F. App'x 74 (2d Cir. 2012)) (citing *In re Advance Watch Co., Ltd.*, 587 B.R. 598, 604–05 (Bankr. S.D.N.Y. 2018)).

That Plaintiff had actual notice of the motions, by e-mail and/or by viewing the docket, is evidenced by Plaintiff's response to "several motions and letters within a day or two of their filing."  (A279-80.)  Plaintiff had actual notice of the motions, and responded well within his time to respond. Thus, he cannot now claim he was improperly served or prejudiced in any way. Accordingly, TMNA's motion to dismiss was properly served and considered, and the District Court's ruling in that regard should be affirmed.

## IV. THE DISTRICT COURT CORRECTLY DENIED PLAINTIFF'S MOTION TO ENTER A DEFAULT JUDGMENT

Federal Rule of Civil Procedure 81(c)(2) states that "[a] defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods: (A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief; (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or (C) 7 days after the notice of removal is filed." Fed. R. Civ. P. 81(c)(2). Plaintiff focuses solely on the term "initial pleading," but ignores that it is the "initial pleading stating the claim for relief." It makes no sense for a state court complaint with no removable claim to be the initial pleading referenced in the Rule. The District Court noted several "absurd" results that could occur if the Rule were enforced in that way. (See A247.)

Here, when the state court complaint was amended to add two federal claims, which initiated a basis for removal, and the Amended Complaint could be the only "initial pleading" regarding Rule 81(c)(2). Regardless, the District Court also held "the Court would set aside the entry for good cause shown, even if default had been entered." Plaintiff has not argued against that part of the ruling and has therefore waived that argument on appeal. *Meyer v. Seidel*, 89 F.4th 117, 128-129 (2d Cir. 2023) (an argument is waived "that, in the party's initial brief, is

31

made only perfunctorily or is unaccompanied by some effort at developed argumentation.") (internal quotation and citation omitted).

## V. THE DISTRICT COURT PROPERLY DISMISSED THE AMENDED COMPLAINT WITH PREJUDICE.

The District Court properly dismissed the Amended Complaint with prejudice. Plaintiff simply states his "claims should not have been dismissed with prejudice where it would not have been futile for him to amend his complaint, where he could have added Goldstein and the trustee as defendants, and where he could refile the § 487 claim in state court." (App. Br., p. 32) Adding new parties, though, would have no effect on Plaintiff's failed claims against TMNA. And as explained above, a § 487 claim does not apply to attorneys' conduct outside New York state court. Accordingly, Plaintiff's suggested amendments to his Amended Complaint would be futile regarding his claims against TMNA.

To the extent Plaintiff has failed to make other arguments about the dismissal being with prejudice, he has waived those arguments. *Meyer*, 89 F.4th at 128-129 (an argument is waived "that, in the party's initial brief, is made only perfunctorily or is unaccompanied by some effort at developed argumentation.") (internal quotation and citation omitted).

32

## CONCLUSION

For the foregoing reasons, the Court should affirm the District Court's Dismissal Order and the Default Denial Order and dismiss the Amended Complaint with prejudice.

Dated: July 14, 2025
     New York, New York

                          Respectfully Submitted,

By:     *[signature]*               
BETH L. KAUFMAN, ESQ.
SCHOEMAN UPDIKE & KAUFMAN LLP
Attorneys for Defendant-Appellee
Toyota Motor North America, Inc.
551 Fifth Avenue
New York, New York 10176
(212) 661-5030
bkaufman@schoeman.com

33

## <u>CERTIFICATION PURSUANT TO</u>
## <u>Fed. R. App. P. 32(a)(7)(B) and (C)</u>

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 7,530 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2018, Times New Roman, Size 14.

Dated: July 14, 2025
     New York, New York

_____
BETH KAUFMAN, ESQ

34



**Dick Bailey Service INC**
A P P E L L A T E   S E R V I C E S

4809 Avenue N, Suite 38
Brooklyn, NY 11234
tel: 718.522.4363 | 800.531.2028
email: appeals@dickbailey.com | dickbailey.com

**Affirmation of Service by Mail**                                    25-73

ANDREW DELANEY,

v.

HC2, INC., STEPHANOS ZANNIKOS, MICHAEL JOHN ESKER NACCHIO, and
TOYOTA MOTOR NORTH AMERICA, INC.,

I, JONATHAN DIDIA, affirm under the penalties of perjury that, I am over 18 years of age, and am not a party to the action.

On Monday, July 14, 2025  deponent  served 1 copy of the within Brief upon

Andrew Delaney, Andrew Delaney, Sen. Gil Puyat Avenue Makati Central No. 1057, Makati Central, Philippines 1250

by mailing true copies to the person at the address designated by him or her for the purpose of depositing the same in a regular mail, postpaid, properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the United States Postal Service within the State of Florida.

I affirm this 14th day of July, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

JONATHAN DIDIA

101391

Page **1** of 1